## IN THE UNITED STATES DISTRICT COURT
## FOR WESTERN DISTRICT OF TENNESSEE, MEMPHIS DIVISION

C. FRED DANIELS, as Trustee *ad Litem*
in substitution for Regions Bank dba
Regions Morgan Keegan Trust as trustee
for the JUANITA H. SCHAFFER
IRREVOCABLE TRUST; the TRUST
UNDER WILL OF MARY B. WELCH;
the TRUST UNDER LAST WILL AND
TESTAMENT OF J. S. COOPER FOR
BENEFIT OF CORINNE COOPER; the
TRUST UNDER WILL OF WILLIAM
THOMAS HARDISON, SR.; the TRUST
UNDER WILL OF HORACE SMALL
FOR BENEFIT OF ROGER SMALL; the
MAMIE C. HOWELL TRUST UNDER
AGREEMENT; the DAVID T.
UNDERWOOD, JR. REVOCABLE
TRUST; the TRUST FOR NOEL A. M.
GAYLOR UNDER LAST WILL AND
TESTAMENT OF ANN GAYLOR; the
TRUST UNDER WILL OF JESSE S.
COOPER FOR BENEFIT OF JUDITH
ANNE CARRAWAY; the SANDRA
CARR REVOCABLE TRUST UNDER
AGREEMENT; and for a CLASS OF
ALL SIMILARLY SITUATED TRUSTS
AND CUSTODIAL ACCOUNTS,
TOGETHER WITH THEIR
RESPECTIVE TRUSTEES,
REPRESENTATIVES, AND
FIDUCIARIES,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  2:09-cv-02800-SHM-cgc

Second   Amended   Trustee   Class
Action Complaint

                                      Plaintiffs,   )
                                                     )
                                                     )
                                                     )
                                                     )
                  vs.                                )
                                                     )
                                                     )
MORGAN ASSET MANAGEMENT,                             )
INC.; MORGAN KEEGAN &                                )
COMPANY, INC.; MK HOLDINGS,                          )
INC.; REGIONS FINANCIAL                              )

**CORPORATION; JAMES C. KELSOE,** )
**JR.; ALLEN B. MORGAN, JR.; J.** )
**KENNETH ALDERMAN; BRIAN B.** )
**SULLIVAN; JOSEPH C. WELLER; J.** )
**THOMPSON WELLER; CHARLES D.** )
**MAXWELL; MICHELE F. WOOD;** )
**DAVID H. TANNEHILL; JOHN** )
**BOSTON; CHARLIE A. MURRAY;** )
**MATT R. SMITH; DOUG WILLIAMS;** )
**GARY PARTRIDGE; JENNY JOHNS;** )
**GUILLERMO R. ARAOZ; and** )
**DEFENDANTS JOHN DOE ONE** )
**through TWENTY,** )
)
)
**Defendants.** )

## SECOND AMENDED COMPLAINT

Without consenting to the jurisdiction of this Court or waiving any grounds for remand, the Plaintiffs amend their First Amended Complaint as follows:

1.   This is an action by the Plaintiffs on behalf of a Class of all trusts (the "Trusts") and custodial accounts (the "Custodial Accounts") (and their respective trustees, representatives and fiduciaries): (a) for which Regions Bank dba Regions Morgan Keegan Trust ("Regions Trust") is or was a trustee or a directed trustee, custodian, or agent; and (b) that owned or held shares at any time during the period from November 9, 2006, through November 9, 2009 (the "Class Period") of one or more classes of any one or more of the following: Regions Morgan Keegan Select Short Term Bond Fund; Regions Morgan Keegan Select Intermediate Bond Fund; Regions Morgan Keegan Select High Income Fund (collectively, the "RMK Open-End Funds"); RMK Multi-Sector High Income Fund, Inc.; RMK Advantage Income Fund, Inc.; RMK Strategic Income Fund, Inc.;  or RMK High Income Fund, Inc. (collectively, the "RMK Closed-End Funds").   The Open-End Funds and the Closed-End Funds are referred to collectively elsewhere in this Complaint as the "RMK Funds."

2

**Background And Parties**

2.      Regions Trust is and was the trustee of Trusts, and the directed trustee, agent, or custodian of Custodial Accounts, that held shares of the RMK Funds during the Class Period. Regions Trust's status or capacity as trustee, directed trustee, custodian, or agent for Trusts or Custodial Accounts is called simply "as trustee" elsewhere in this Complaint.

3.      Perceiving at least a potential conflict between Regions Trust's interests as a defendant (and as a corporate affiliate of other defendants) in several federal securities class actions concerning the RMK Funds filed in the United States District Court For The Western District of Tennessee and elsewhere (the "Securities Class Actions") on the one hand, and its interests and duties as a fiduciary for Trusts and Custodial Accounts that hold or held shares of the RMK Funds on the other, Regions Trust petitioned the Judge of Probate of Jefferson County, Alabama for an order appointing a Trustee *ad Litem* for the limited and specific purposes of monitoring, evaluating, and participating in the Securities Class Actions and taking other appropriate litigation actions in substitution for Regions Trust on behalf of the Trusts and the Custodial Accounts relating to the RMK Funds.  The Court granted that petition.  A copy of the resulting "Amended Order Appointing Trustee *ad Litem*" (the "Appointment Order") is attached to this Complaint as Exhibit A and incorporated by reference.

4.      The Appointment Order appoints Plaintiff C. Fred Daniels as Trustee *ad Litem* (the "TAL").  The TAL files this action in substitution for Regions Trust as trustee of the Juanita H. Schaffer Irrevocable Trust; the Trust Under Will Of Mary B. Welch; the Trust Under Last Will And Testament Of J. S. Cooper For Benefit Of Corinne Cooper; the Trust Under Will Of William Thomas Hardison, Sr.; the Trust Under Will Of Horace Small For Benefit Of Roger Small; the Mamie C. Howell Trust Under Agreement; the David T. Underwood, Jr. Revocable Trust; the Trust For Noel A. M. Gaylor Under Last Will And Testament Of Ann Gaylor; the

Trust Under Will of Jesse S. Cooper For Benefit Of Judith Anne Carraway; the Sandra Carr Revocable Trust Under Agreement (collectively, the "Representative Plaintiff Trusts") and as substitute trustee, directed trustee, custodian, or agent for a Class of all Trusts and Custodial Accounts (and their respective trustees, representatives, and fiduciaries): (a) for which Regions Trust is or was a trustee or a directed trustee, custodian, or agent; and (b) that held shares of one or more classes of one or more of the RMK Funds during the Class Period.  The Class excludes those Trusts and Custodial Accounts that were effectively removed from representation by the TAL pursuant to Paragraphs 8 or 9 of the Appointment Order.

5.     Defendant Regions Financial Corporation ("Regions Financial") sits atop and controls a tight cluster of overlapping and interwoven enterprises that operates as a single, unified concern and includes defendants Morgan Asset Management, Inc. ("Morgan Management"); Morgan Keegan & Company, Inc. ("Morgan Keegan"); and MK Holding, Inc. ("Morgan Keegan Holding").  Regions Financial acquired Morgan Keegan and Morgan Management in 2001 for the purpose of using them to generate fee-based income from Regions Financial's customers.  Collectively, all of the defendants identified in this Paragraph are referred to as the "Regions Morgan Keegan Entity Defendants" elsewhere in this Complaint.

6.     At all material times, defendant Morgan Management was not operated as an independent and distinct corporate entity.  Rather, Morgan Management was operated as a mere instrumentality, agent, or alter ego of the other Regions Morgan Keegan Entity Defendants.

7.     Although written Advisory Agreements were executed with the RMK Funds in the name of Morgan Management to manage investments of the RMK Funds, and written Investment Advisory Services Agreements with Regions Trust were executed in the name of Morgan Management to manage investments of Trusts and Custodial Accounts for which

Regions Trust served as trustee, Regions Financial in public filings, press releases, and marketing materials treated and described these services, and the income they generated, as having been provided or generated by Regions Financial or Morgan Keegan rather than Morgan Management.

    8.    In public filings and statements, Regions Financial and other Regions Morgan Keegan Entity Defendants have themselves treated and described services ostensibly undertaken in the name of Morgan Management as services of other Regions Morgan Keegan Entity Defendants instead, including the following examples (Emphasis supplied):

    (a)    "Regions Trust ... has been combined with Morgan Keegan Trust Co. to form Regions Morgan Keegan Trust . . . Regions is also combining the investment management expertise of Morgan Keegan and Regions Trust into Morgan Asset Management ...."

    (b)    "Regions [Financial's] investment and securities brokerage, **_trust and asset management division, Morgan Keegan, Inc.,_** provides services from over 400 offices."

    (c)    "Morgan Keegan . . . offers products and services including **_asset management_** . . . **_Morgan Keegan also manages the delivery of trust services, which are provided pursuant to the trust powers of Regions Bank._**"

    (d)    "Regions [Financial] provides . . . brokerage and trust services in over 400 offices of Morgan Keegan . . ." **"Morgan Keegan's lines of business include . . . trust and asset management."**

    (e)    "Regions [Financial's] primary source of brokerage, investment banking, and **_trust revenue_** is its subsidiary, **_Morgan Keegan_**. **_Morgan Keegan's_** revenues are

predominantly recorded in the brokerage and investment banking and **trust department** income lines ... [of Regions Financial's Form 10-K Annual Reports.]"

(f)   "In addition to General Banking/Treasury, Regions [Financial Corporation] has designated as distinct reportable segments the activity of its Investment Banking/Brokerage/Trust and Insurance divisions. Investment Banking/Brokerage/Trust includes *trust activities* and all brokerage and investment activities *associated with Morgan Keegan.*"

9.   Morgan Keegan's website describes services contractually undertaken in the name of Morgan Management as being in fact provided by Morgan Keegan rather than Morgan Management (Emphasis supplied):

Determining who to trust to help grow, preserve and transfer your legacy to future generations is one of the most important decisions you can make in your lifetime.

. . .

These decisions are often compounded in their complexity because they usually involve choosing between the stability of a bank or the investment resources of a brokerage firm.

Now you can have the best of both worlds. **Regions Morgan Keegan Trust allows you the security of Regions Bank, a top 15 financial institution, and the resources of Morgan Keegan, a nationally known investment firm.**

. . .

Click on the topics in the menu above to learn more about Regions Morgan Keegan Trust, or contact **Morgan Keegan** today for more information about **our Trust Services**.

Morgan Management is not mentioned.

10.   Elsewhere, Morgan Keegan's website describes "trust services" and "asset management services" as being provided by a "division" of Morgan Keegan; again, Morgan Management is not even mentioned (Emphasis supplied):

6

Regions Morgan Keegan Trust is the trust and asset management unit of Regions Financial Corporation (NYSE: RF) and operates as a ***division of Morgan Keegan***, one of the nation's premiere full service investment banking and securities brokerage firms.

. . .

RMKT serves as fiduciary to more than $36 billion in assets.

**RMKT provides the following services:**

- Financial and Estate Planning Trusts

- Revocable Living Trusts

- Testamentary Trust

. . .

- Corporate Trusts

- Non-Profit Trusts

. . .

**RMKT will serve the following capacity:**

- Executor

- Agent

- Trustee/Co-trustee

- Custodian

. . .

11.    Regions Financial treated the revenue generated by Morgan Management as generated by Morgan Keegan in Regions Financial's Form 10-K Annual Reports.

12.    According to Regions Financial's Form 10-K Annual Reports for fiscal years ended December 31, 2006, 2007, and 2008, ***Morgan Keegan*** actually provided trust, asset management, and investment advisory services which were ostensibly contracted or provided by Morgan Management for Regions Trust and the RMK Funds. Regions Financial described

7

trust, investment advisory, and investment management services undertaken contractually by

Morgan Management as having in fact been provided by Morgan Keegan or Regions Financial

instead (Emphasis supplied):

> "Regions [Financial] provides brokerage, investment banking and ***trust services*** in over 300 offices of Morgan Keegan & Company, Inc. . . ."

> "Morgan Keegan & Company, Inc. ("Morgan Keegan"), a subsidiary of Regions Financial Corporation, is a full-service regional brokerage and investment banking firm. . . . Morgan Keegan also *manages the delivery of trust services, which are provided pursuant to the trust powers of Regions Bank*."

> "Morgan Keegan is registered as an *investment adviser* in [numerous] following states: . . . ."

> "Morgan Keegan's pre-tax income was negatively affected during 2007 by $42.8 million in losses on investments in *two open-ended mutual funds* [RMK Funds] ***managed by Morgan Keegan . . . .***"

> "Also included in other assets during the year were investments of approximately $55.0 million in the Regions Morgan Keegan ("RMK") Select High Income Fund and approximately $75.0 million in the RMK Select Intermediate Bond Fund, purchased by Morgan Keegan to provide liquidity support to these funds. Both of these funds are *proprietary open-end mutual funds* [RMK Funds] ***managed by Morgan Keegan*** . . . ."

> "During 2007, Regions invested approximately $130 million in *two open-end mutual funds* [RMK Funds] ***managed by Morgan Keegan***."

> "Morgan Keegan's pre-tax income was negatively affected during 2008 by $49.4 million in losses on investments in *two open-end mutual funds* [RMK Funds] ***managed by Morgan Keegan***."

> "Included in professional fees during 2008 and 2007 were $7.4 million and $34.6 million, respectively, of merger-related charges. The 2008 increase is primarily due to higher *legal expenses incurred at Morgan Keegan*."

13.   Nowhere in its 2006, 2007, or 2008 Form 10-K Annual Reports does Regions

Financial even mention "Morgan Asset Management," except buried in a long list of over 50

subsidiaries included in a schedule to the report.

14.    Even though Morgan Management is named as a defendant in most or all of the many lawsuits arising out of the RMK Funds, legal fees attributable to the litigation arising from the RMK Funds are described as being incurred solely by Morgan Keegan.

15.    Regions Financial's 2007 Form 10-K Annual Report provides additional detail regarding its relationship with Morgan Keegan. Regions Financial is said to have provided its trust services through Morgan Keegan: "Regions [Financial] provides investment banking, brokerage and *trust services* in over 400 offices of Morgan Keegan & Company, Inc. . . . , a subsidiary of Regions [Financial] and one of the largest investment firms based in the South. Morgan Keegan contributed $165.9 million to consolidated net income in 2007. Its lines of business include private client retail brokerage services, fixed-income capital markets, equity capital markets, *trust and asset management*." "Regions [Financial's] *primary source of* brokerage, investment banking and *trust revenue* is its subsidiary, *Morgan Keegan*. Morgan Keegan's revenues are predominantly recorded in the brokerage and investment banking and *trust department* income lines of the consolidated statements of income, while a smaller portion is reported in other non-interest income." "In addition to General Banking/Treasury, Regions [Financial] has designated as distinct reportable segments the activity of its Investment Banking/Brokerage/*Trust* and Insurance divisions. Investment Banking/Brokerage/*Trust* includes *trust activities* and all brokerage and investment activities *associated with Morgan Keegan*." (Emphasis supplied).

16.    In its 2007 Form 10-K, Regions Financial did not separately identify its 2007 operating results from its mutual fund management business, instead apparently including that activity with Morgan Keegan's "asset management division":

> "Revenues from the private client division, which was the top revenue producing line of business, totaled $393.5 million, or 30 percent of Morgan Keegan's total

revenue in 2007 compared to $305.1 million, or 30 percent in 2006. The private client line of business benefited from equity markets volatility, as well as the *increased number of financial advisors and branch outlets* in 2007 related to *opening Morgan Keegan offices in former AmSouth branches* throughout the footprint. *Fixed-income capital markets revenue* totaled $244.4 million and $187.4 million in 2007 and 2006, respectively, benefiting from higher trading volumes. Equity capital markets revenue totaled $103.3 million in 2007, essentially unchanged from the 2006 level. The *asset management division* produced $188.9 million of revenue in 2007 and $149.5 million in 2006." (Emphasis supplied).

17.   According to Regions Financial's 2007 Form 10-K, "Asset Management," which—based on the absence of any reference to "Morgan Asset Management"—appears to include Morgan Management's management of the RMK Funds and Morgan Management's services under its Investment Advisory Services Agreements with Regions Trust, is treated as a "division" of Morgan Keegan, and "Asset Management" revenues are included in Morgan Keegan's operating results.

18.   Morgan Management's federal Form ADV (Uniform Application For Investment Advisor Registration) shows that Morgan Management's records, including account records and "compliance" records, were maintained not at offices of Morgan Management, but instead at offices of Morgan Keegan and Regions Trust.

19.   Exhibits to a "Joint Notice Of Intent To Revoke Registration And Impose Administrative Penalty" ("State Regulatory Complaint") filed against Morgan Management and Morgan Keegan on April 7, 2010, by the Alabama Securities Commission, The Kentucky Department of Financial Institutions, The Mississippi Secretary of State's Office, and the South Carolina Office Of The Attorney General, further demonstrate that Morgan Management was not operated as a separate and independent entity.  Instead, new evidence in those Exhibits ("State Regulatory Complaint Exhibits") shows that the other Regions Morgan Keegan Entity

Defendants dominated and controlled Morgan Management and abused their control and domination of Morgan Management.

20.     State Regulatory Complaint Exhibit 130 is a transcript of sworn testimony given by Carter Anthony on October 15, 2009.  Mr. Anthony was President of Morgan Management from 2001 through 2006.

21.     Mr. Anthony reported to Kenneth Alderman, who was President and CEO of "Regions Morgan Keegan Trust" and also a senior officer of Regions Financial.  Alderman in turn reported to Doug Edwards, who was President and CEO of Morgan Keegan.  Finally, Edwards reported to Allen Morgan, who was the Chairman of Morgan Keegan's Board of Directors and Vice Chairman of Regions Financial's Board of Directors.

22.     Although Morgan Management was ostensibly (and contractually) the Investment Manager for the RMK Funds, and James C. (Jim) Kelsoe was ostensibly Morgan Management's "Portfolio Manager" for the RMK Funds, Doug Edwards of Morgan Keegan and Allen Morgan of Morgan Keegan and Regions Financial directed Morgan Management's President, Carter Anthony, to "leave Kelsoe alone."

23.     Mr. Anthony, Morgan Management's President, testified under oath:

> Time and time again I was told by [Allen] Morgan [of Morgan Keegan and Regions Financial] and [Doug] Edwards [of Morgan Keegan] to leave Kelsoe alone, he's doing what we want him to do, he's also a little bit strange, he gets mad easy, leave him alone; and I left him alone.  I did what I was told to do.
>
> Now, what [Kenneth] Alderman . . . what went on with Doug [Edwards] and Ken [Alderman] I don't know.  They talked an awful lot.  Ken came down and said they have negotiated a new contract with Kelsoe, they are going to send it to you.  When it comes down here, sign it.  Well, it came to me, Ken said to sign it, Allen Morgan has already signed it; I signed it.

24.    Mr. Anthony, as President of Morgan Management, was told by Doug Edwards, as President and CEO of Morgan Keegan, to give Kelsoe whatever he wanted or needed.  Mr. Anthony stated under oath:

> Jim, for lack of a better word, was sort of like an island out there.  And whenever he had . . . whenever he wanted something or needed something, he went to Doug [Edwards, of Morgan Keegan].  And then if it was something I could furnish, Doug would call me.

25.    Mr. Anthony, as President of Morgan Management, knew and understood that because he and Morgan Management were under the control of Morgan Keegan and Regions Financial, and Morgan Keegan and Regions Financial were financially interested in the RMK Funds [also called the "Kelsoe Funds"], if Mr. Anthony, as President of Morgan Management, attempted to keep RMK Funds out of the Trusts and Custodial Accounts, he would be fired.  He stated under oath:

> . . . you understand I'm walking a tightrope here.  I have to answer to Ken Alderman and Doug Edwards and Allen Morgan over here at Morgan Keegan.  But I have got portfolio managers who have trust clients over here (indicating), so if I stand up and beat on the table and say we are not putting any of those Kelsoe funds [RMK Funds] in our trust accounts, I'm fired, I'm gone.

> * * *

> "I mean, I could have pounded on the table and said don't buy those funds [the RMK Funds] and I would have been looking for a job."

26.    Mr. Anthony's testimony also establishes that operations of the Regions Morgan Keegan Entity Defendants were so overlapping and intertwined, even the President of Morgan Management could not understand the relationships.  It is clear, however, that Morgan Keegan and Regions Financial completely controlled Morgan Management and the investments made in the Trusts and Custodial Accounts:

> Ken used to tell us [Morgan Management] in meetings that we were part of Morgan Keegan and for reporting purposes only, that we were . . . the charter was still held by Regions Financial Corp. and we were still in the

bank.  But we were over here in Morgan Keegan reporting through them, which gave Morgan Keegan a better revenue and net income line. . . .

* * *

We had like some annual meetings and he would say stuff like well, you know, we really aren't part of Morgan Keegan, but it works better for Morgan Keegan if we are over there; we are not legally part of Morgan Keegan. . . .

* * *

But Ken [Alderman] and Doug [Edwards] and Allen [Morgan] figured out that . . . probably that Morgan Keegan would look better if it had trust revenues and earnings. . . .  So they figured out it would be better to take Regions Trust and put it over in Morgan Keegan and call it Regions Morgan Keegan Trust.  And Morgan Asset Management was part of trust. . . .  But when the merger came about, we became Morgan Asset Management and we went over . . . as part of trust we were over in Morgan Keegan.

27.     State Regulatory Complaint Exhibit 107 includes sworn testimony of defendant Michelle Wood at a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding against Morgan Keegan.  Ms. Wood testified that:

[I]n April 2006 I became Chief Compliance Officer for Regions Morgan Keegan Select Funds [RMK Funds] and for Morgan Asset Management

But although she was the Chief Compliance Officer for Morgan Management:

A.     My paycheck comes from Morgan Keegan.

Q.     Have you ever received any paychecks over the past couple of years from Morgan Asset Management?

A.      No.

In addition to serving as Chief Compliance Officer for Morgan Management and the RMK Funds, Ms. Wood was also a Senior Attorney and First Vice President of Morgan Keegan.

28.     In addition to Ms. Wood, all other individuals who ostensibly served as Morgan Management's compliance personnel were actually Morgan Keegan employees:

Q.     The other people who performed compliance functions for Morgan Management, were all of them Morgan Keegan employees?

A.     Yes.

29.     James (Jim) Kelsoe ostensibly served as a Senior Portfolio Manager for Morgan Management, but he was actually employed by Morgan Keegan and was registered with FINRA as a representative of Morgan Keegan.

30.     Morgan Management officers have been presented as though they were officers of Regions Trust. At annual investment luncheons sponsored by Regions Bank at "The Club" in Birmingham, Alabama, presentations were made by persons who were presented as Regions Trust officers, but who were ostensibly officers and/or employees of Morgan Management.

31.     In the second half of 2007, when RMK Funds suffered a precipitous drop in their net asset values and share prices, Regions Financial caused another of its subsidiaries, Morgan Properties, LLC, to prop up those share prices and net asset values by purchasing a large volume of shares in RMK Open-End Funds (many of which were soon sold).

32.     Regions Financial wholly owns, directly or indirectly, the other Regions Morgan Keegan Entity Defendants.  Morgan Keegan, Morgan Management, and Regions Financial have had common and interlocking officers and directors. Morgan Management is effectively controlled by the other Regions Morgan Keegan Entity Defendants and does not operate as a separate, distinct, and independent entity.

33.     Services ostensibly undertaken contractually by Morgan Management were in reality undertaken, performed, or executed by other Regions Morgan Keegan Entity Defendants.

34.     Within the Class Period, defendant Allen B. Morgan, Jr. ("Morgan") served as Vice Chairman of Regions Financial's Board of Directors, a Director of Morgan Management, and Chairman of Morgan Keegan's Board of Directors.  Morgan personally directed and controlled actions of Morgan Management's ostensible President.

14

35.    Within the Class Period, defendant J. Kenneth Alderman ("Alderman") served as an Officer of Regions Financial, Regions Trust, and Morgan Management.    Alderman personally directed and controlled actions of Morgan Management's ostensible President.

36.    Within the Class Period, defendant Brian B. Sullivan ("Sullivan") served as President and Chief Investment Officer of Morgan Management, and was held out as an Officer of Regions Trust.

37.    Within the Class Period, defendant Joseph C. Weller ("Joseph Weller") served as an Officer and Director of Morgan Keegan.

38.    Within the Class Period, Defendant J. Thompson Weller ("Thompson Weller") served as an Officer and Director of Morgan Keegan and a Director of Morgan Management.

39.    Within the Class Period, Defendant Charles D. Maxwell ("Maxwell") served as an Officer and Director of Morgan Keegan, and he has also served as an Officer of Morgan Management.

40.    Within the Class Period, Defendant Michelle F. Wood ("Wood") served as an Chief Compliance Officer for Morgan Management as well as an Officer of Morgan Keegan.

41.    Within the Class Period, Defendant David H. Tannehill ("Tannehill") served as a Portfolio Manager for Morgan Management.

42.    Within the Class Period, Defendant John Boston ("Boston") served as an Officer of Morgan Management.

43.    Within the Class Period, Defendant Charlie A. Murray ("Murray") served as an Officer and Portfolio Manager of Morgan Management.

44.     Within the Class Period, Defendant Jenny Johns ("Johns") served as an Officer and Head Equity Trader of Morgan Management, with responsibility for management of traders and overall oversight of trading activities.

45.     Within the Class Period, Defendant Matt R. Smith ("Smith") served as an Officer and Regional Portfolio Manager for Morgan Management with responsibilities for trust accounts.

46.     Within the Class Period, Defendant Doug Williams ("Williams") served as an Officer and Regional Portfolio Manager for Morgan Management with responsibilities for trust accounts.

47.     Within the Class Period, Defendant Gary Partridge ("Partridge") served as an Officer of Morgan Management.

48.     Within the Class Period, Defendant Guillermo R. Araoz ("Araoz") served as an Officer and Director of Equity Research for Morgan Management.

49.     Within the Class Period, Defendant James C. (Jim) Kelsoe ("Kelsoe") was a Senior Portfolio Manager of Morgan Management and was also employed by Morgan Keegan. He was registered with FINRA as a representative of Morgan Keegan.

50.     Defendants Morgan, Alderman, Sullivan, Joseph Weller, Thompson Weller, Maxwell, Wood, Tannehill, Boston, Murray, Johns, Smith, Williams, Partridge, Araoz, and Kelsoe are collectively referred to as the "Individual Defendants" elsewhere in this Complaint.

## The Contracts

51.     On April 1, 2003, Regions Trust[1] entered into a written Investment Advisory Services Agreement (the "2003 Contract") for investment management, asset reviews, lists of approved investments, and other related services to Regions Trust as trustee for the benefit of

---

[1] Regions Morgan Keegan Trust FSB, a federally chartered savings bank, was also a party to this agreement.

the Trusts and the Custodial Accounts.  A copy of the 2003 Contract is attached to this Complaint as Exhibit B and incorporated by reference.  Region Trust's counterparty to the 2003 Contract is ostensibly Morgan Management, but Morgan Management also entered into the 2003 Contract as an instrumentality, alter ego, or agent of the other Regions Morgan Keegan Entity Defendants.

52.     On February 5, 2007, a new written Investment Advisory Services Agreement (the "2007 Contract") was entered into for investment management, asset reviews, lists of approved investments and other related services to Regions Trust as trustee for the benefit of the Trusts and Custodial Accounts.  A copy of the 2007 Contract is attached to this Complaint as Exhibit C and incorporated by reference.  Region Trust's counterparty to the 2007 Contract is ostensibly Morgan Management, but Morgan Management also entered into the 2007 Contract as an instrumentality, alter ego, or agent of the other Regions Morgan Keegan Entity Defendants.  The services provided in connection with the 2007 Contract were substantially the same as those provided under the 2003 Contract, with the following addition:

> -- "Performing due diligence on Morgan Keegan investment products, e.g., separate account platform, annually and making a report to [Regions Trust] of findings."

Elsewhere in this Complaint, the services provided for Regions Trust as trustee for the benefit of the Trusts and the Custodial Accounts in connection with the 2003 Contract and the 2007 Contract are collectively referred to as the "Services," and the 2003 Contract and 2007 Contract are collectively referred to as the "Contracts."

53.     Under the 2003 Contract and the 2007 Contract, the Services were required to be performed "with ordinary skill and diligence."

54.     In suits by Trust beneficiaries against Regions Trust alleging breaches of fiduciary duties arising from investment of Trust assets in RMK Funds, Regions Trust has

characterized the Contracts as a "delegation" by Regions Trust to Morgan Management of Regions Trust's investment and asset management duties as trustee, asserting as a defense to breach of fiduciary claims that:

> Plaintiff's claims are barred by T.C.A. § 35-15-807 and § 35-14-111 in that investment functions related to the Plaintiff's account were reasonably delegated to Morgan Asset Management, Inc.

### Deficient Performance Of The Contracts And The Services

55.     In connection with the 2003 Contract and the 2007 Contract, Morgan Management and the other Regions Morgan Keegan Entity Defendants were responsible for: (a) determining the "securities, money market investments, and other investments to be purchased for, or sold from," Trusts and Custodial Accounts; (b) "60-day reviews of assets held in [Trusts and Custodial Accounts]"; (c) providing "[R]egularly updated list[s] of approved securities for [Trusts and Custodial Accounts]; and (d) "exercis[ing] investment discretion with respect to [Trusts and Custodial Accounts] and to initiate the purchase or sale of securities or other assets therefore . . .".  Morgan Management and the other Regions Morgan Keegan Entity Defendants were required to carry out these obligations and duties with at least ordinary diligence and skill.

56.     Compliance with their duties and obligations arising from the Contracts, and their undertakings to perform the Services, required Morgan Management and the other Regions Morgan Keegan Entity Defendants to continuously evaluate and investigate whether the RMK Funds were appropriate and advantageous investments for the Trusts and Custodial Accounts, using all available information.

57.     Information concerning the RMK Funds and the vulnerability of their assets that was reasonably available to Morgan Management and the other Regions Morgan Keegan Entity Defendants at the end of 2006 and the first half of 2007 would have required them to determine, in the exercise of at least ordinary skill and diligence, that the RMK Funds were not, or at least

were no longer, appropriate or advantageous investments for the Trusts and the Custodial Accounts. Morgan Management was also the investment advisor for the RMK Funds and Morgan Management and Morgan Keegan supplied officers and employees for RMK Funds. James C. (Jim) Kelsoe, the Senior Portfolio Manager for the RMK Funds, was an employee of both Morgan Management and Morgan Keegan. The RMK Funds were disproportionately invested (as compared with the RMK Funds' peer funds) in relatively new types of thinly traded (i.e., illiquid), exotic, complex-structural fixed income securities, whose uncertain valuations had to be estimated, that had not been tested through market cycles, and/or had a history of suddenly becoming unsalable at their estimated values. These are often generically referred to as "structured debt instruments," "asset-backed securities," "mortgage-backed securities," "collateralized mortgage obligations," or "collateralized debt obligations." Moreover, the RMK Funds were invested in the lower, implicitly leveraged, and most risky "tranches," or slices, of these structured debt instruments. The vulnerabilities of these assets became even more apparent in 2007 when the collapse of the RMK Funds share prices, net asset values, and redemption prices began and accelerated.

58.    Compliance with their duties and obligations arising from the Contracts, and their undertakings to perform the Services, required Morgan Management and the other Regions Morgan Keegan Entity Defendants to cause the Trusts and Custodial Accounts (through Regions Trust as trustee) to discontinue investments in the RMK Funds during the Class Period and to liquidate their existing investments in the RMK Funds promptly to avoid the losses resulting from the impending and accelerating catastrophic collapse of the RMK Funds' share prices, net asset values, and redemption prices. Because the RMK Funds were disproportionately invested (compared to peer funds) in the illiquid securities and assets

59.    In breach of their duties and obligations arising from the Contracts, and their undertakings to perform the Services, Morgan Management and the other Regions Morgan Keegan Entity Defendants nevertheless caused the Trusts and Custodial Accounts (through Regions Trust as trustee) to make, continue, and hold investments in the RMK Funds during the Class Period, rather than to discontinue and liquidate them.  Morgan Management and the other Regions Morgan Keegan Entity Defendants did this by actually ***determining*** the investments to be made and held by or in the Trusts and Custodial Accounts.  This Complaint is not based on misrepresentations, untrue statements, omissions of material fact, or manipulative or deceptive devices or contrivances.    Rather, it is based on the defendants' ***actions***.    As Morgan Management's former President stated under oath in State Regulatory Complaint Exhibit 130:

> "We didn't do advice.  We managed money."

60.    Because Morgan Management and other Regions Morgan Keegan Entity Defendants breached their duties and obligations as described above, the Trusts and Custodial Accounts suffered large financial losses that could have and would have been avoided if they had not made, continued, or held investments in the RMK Funds during the Class Period.  The RMK Funds suffered losses during the Class Period that were vastly greater than losses suffered by similar peer funds in which Regions Trust could have and should have invested as trustee for the benefit of the Trusts and the Custodial Accounts.

20

61.     The Regions Morgan Keegan Entity Defendants, through their officers, directors, and employees, participated in, supervised, managed, or directed some or all of the deficient performance of the Contracts and the Services.

62.     For purposes of determining and enforcing obligations, duties, and liabilities to the Plaintiffs, the Regions Morgan Keegan Entity Defendants are not entitled to treatment as separate and distinct entities.

63.     Individual Defendants at material times participated in, performed, supervised, or directed some or all of the deficient performance of the Contracts and the Services.

**Count One - Breach Of Contract - The 2003 Contract**

64.     Paragraphs 1 through 63 above are incorporated by reference.

65.     Compliance with the obligations of the 2003 Contract precluded the Regions Morgan Keegan Entity Defendants from causing Regions Trust as trustee of the Trusts and Custodial Accounts to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

66.     The Regions Morgan Keegan Entity Defendants breached the 2003 Contract by, among other things, causing Regions Trust as trustee of the Trusts and Custodial Accounts to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during the periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

67.     As a direct and proximate result of these breaches of the 2003 Contract, the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class suffered substantial financial losses that could have and would have been avoided if they had not made, continued, or held investments in the RMK Funds during the Class Period.

21

68.     All conditions precedent to the obligations and liabilities of the Regions Morgan Keegan Entity Defendants under the 2003 Contract have been satisfied or excused.

### Count Two - Breach Of Contract - The 2007 Contract

69.     Paragraphs 1 through 63 above are incorporated by reference.

70.     Compliance with the obligations of the 2007 Contract precluded the Regions Morgan Keegan Entity Defendants from causing Regions Trust as trustee for the Trusts and the Custodial Accounts to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

71.     The Regions Morgan Keegan Entity Defendants breached the 2007 Contract by, among other things, causing Regions Trust as trustee of the Trusts and Custodial Accounts to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

72.     As a direct and proximate result of these breaches of the 2007 Contract, the Representative Plaintiff Trusts and the Trusts and the Custodial Accounts in the Class suffered substantial financial losses that could have and would have been avoided if they had not made, continued, or held investments in the RMK Funds during the Class Period.

73.      All conditions precedent to the obligations and liabilities of the Regions Morgan Keegan Entity Defendants under the 2007 Contract have been satisfied or excused.

**Count Three - Negligence - Regions Morgan Keegan Entity Defendants**

74.    Paragraphs 1 through 63 above are incorporated by reference.

75.    The Regions Morgan Keegan Entity Defendants undertook to perform, supervise, or direct Services for Regions Trust as trustee for the benefit of the Trusts and Custodial Accounts.

76.    At material times, the Regions Morgan Keegan Entity Defendants could reasonably foresee that performing, supervising, or directing the Services without due and reasonable diligence, skill, and care would result in substantial financial losses to the Trusts and Custodial Accounts for whose benefit the Services were provided.

77.    The Regions Morgan Keegan Entity Defendants also accepted a delegation from Regions Trust of duties and obligations regarding investment and management of Trust and Custodial Account assets.   Tenn. Code Ann. §§ 35-15-807 and 35-14-111 provide at Subparagraph (b):

> In performing a delegated function, an agent owes a duty to the trust to exercise reasonable care to comply with the terms of the delegation.

Similarly, the corresponding Alabama statute (Ala. Code § 19-3B-807) provides at Subparagraph (b):

> In performing a delegated function, an agent owes a duty to the trust to exercise reasonable care, skill, and caution to comply with the terms of the delegation.

78.    The Regions Morgan Keegan Entity Defendants owed to Regions Trust, as trustee for the benefit of the Trusts and Custodial Accounts, a duty to exercise reasonable diligence, skill, and care in performing, supervising, or directing the Services.

79.    The Regions Morgan Keegan Entity Defendants negligently breached this duty by, among other things, causing Regions Trust, as trustee for the benefit of the Trusts and

Custodial Accounts, to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

80.    As a direct and proximate result of the Regions Morgan Keegan Entity Defendants' negligent breaches of duty, the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class for whose benefit Regions Trust served as trustee suffered substantial financial losses that could have and would have been avoided if they had not made, continued, or held investments in the RMK Funds during the Class Period.

### Count Four - Negligence - Individual Defendants

81.    Paragraphs 1 through 63 above are incorporated by reference.

82.    The Individual Defendants undertook to perform, supervise, or direct some or all of the Services for Regions Trust as trustee for the benefit of the Trusts and Custodial Accounts.

83.    At material times, the Individual Defendants could reasonably foresee that performing Services without due and reasonable diligence, skill, and care would result in substantial financial losses to the Trusts and Custodial Accounts for whose benefit the Services were provided to Regions Trust.

84.    The Individual Defendants also accepted a delegation from Regions Trust of duties and obligations regarding investment and management of Trust and Custodial Account assets.  Tenn. Code Ann. §§ 35-15-807 and 35-14-111 provide at Subparagraph (b):

> In performing a delegated function, an agent owes a duty to the trust to
> exercise reasonable care to comply with the terms of the delegation.

Similarly, the corresponding Alabama statute (Ala. Code § 19-3B-807) provides at Subparagraph (b):

> In performing a delegated function, an agent owes a duty to the trust to exercise reasonable care, skill, and caution to comply with the terms of the delegation.

85.    The Individual Defendants owed to Regions Trust, as trustee for the benefit of the Trusts and Custodial Accounts, a duty to exercise reasonable diligence, skill, and care in performing, supervising, or directing Services.

86.    The Individual Defendants negligently breached this duty by, among other things, causing Regions Trust, as trustee for the benefit of the Trusts and Custodial Accounts, to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

87.    As a direct and proximate result of the Individual Defendants' negligent breaches of duty, the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class for whose benefit Regions Trust served as trustee suffered substantial financial losses that could have and would have been avoided if they had not made, continued, or held investments in the RMK Funds during the Class Period.

## Class Allegations

88.     Paragraphs 1 through 87 above are incorporated by reference.

89.     The Class that the TAL, in substitution for Regions Trust as trustee for the Representative Plaintiff Trusts, seeks to represent is a Class of all Trusts and Custodial Accounts (and their respective trustees, representatives, and fiduciaries): (a) for which Regions Trust is or was a trustee or a directed trustee, custodian, or agent; and (b) that held shares of one or more classes of one or more of the RMK Funds during the Class Period, but excluding those Trusts and Custodial Accounts that effectively opted out of representation by the TAL pursuant to Paragraphs 8 or 9 of the Appointment Order.

90.     There are questions of law and fact common to the claims of the Representative Plaintiff Trusts and other members of the Class that predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to this Class are:

(a)     The scope and extent of the Regions Morgan Keegan Entity Defendants' duties and obligations under or in connection with the 2003 Contract to Regions Trust as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class.

(b)     The scope and extent of the Regions Morgan Keegan Entity Defendants' duties and obligations under the 2007 Contract to Regions Trust as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class.

(c)     Whether the Regions Morgan Keegan Entity Defendants breached obligations under the 2003 Contract by causing Regions Trust, as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class, to make, continue, or hold investments in the RMK Funds during periods when collapse

of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

(d)     Whether the Regions Morgan Keegan Entity Defendants breached obligations under the 2007 Contract by causing Regions Trust, as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class, to make, continue, or hold investments in the RMK Funds during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

(e)     The scope and extent of the Individual Defendants' duties to Regions Trust as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class.

(f)     Whether one or more of the Individual Defendants negligently breached duties to Regions Trust as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class by causing Regions Trust, as trustee for the Trusts and Custodial Accounts, to make, continue, or hold investments in the RMK Funds during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

(g)     The scope and extent of the Regions Morgan Keegan Entity Defendants' duties to Regions Trust as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class.

(h)     Whether one or more of the Regions Morgan Keegan Entity Defendants negligently breached duties to Regions Trust as trustee for the benefit of the Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class by

causing Regions Trust, as trustee for the Trusts and Custodial Accounts, to make, continue, or hold investments in the RMK Funds during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun.

91.    This action is properly maintained as a class action for the following reasons:

(a)    The Class members are so numerous that joinder of all such Class members is impracticable;

(b)    There are questions of law or fact common to the Class;

(c)    The claims of the TAL in substitution for Regions Bank as trustee for the Representative Plaintiff Trusts are typical of the claims of the Class;

(d)    The TAL, in substitution for Regions Trust as trustee for the Representative Plaintiff Trusts, will fairly and adequately protect the interests of the Class;

(e)    The TAL, in substitution for Regions Trust as trustee for the Representative Plaintiff Trusts and the Class, is represented by counsel experienced in class action litigation;

(f)    The questions of law or fact common to the Class predominate over any questions affecting only individual Class members;

(g)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

(h)    The TAL, in substitution for Regions Trust as trustee for the Representative Plaintiff Trusts, knows of no difficulty that should be encountered in the management of this litigation that would preclude its maintenance as a class action.

92.     In addition, because it is likely that the damages suffered by many individual Class members are relatively small, the expense and burden of individual litigation would make it extremely difficult or impossible for some Class members to individually seek redress for the wrongful conduct alleged above.

93.     The names and addresses of the members of the Class are available to the defendants.  Notice can be provided to Class members via first class mail using techniques and a form of notice similar to those customarily used in class actions.

### Supplemental Allegations

94.     Paragraphs 1 through 93 are incorporated by reference.

95.     The Representative Plaintiff Trusts and the Trusts and Custodial Accounts in the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the breaches, negligence, and damages on which this Complaint is based more than three years before filing this Complaint.

96.     This Complaint does not allege, explicitly or implicitly, and is not based or dependent upon, directly or indirectly:

(a)     An untrue statement or omission of a material fact in connection with the purchase, sale, or retention of a security (including, but not limited to, shares of any of the RMK Funds), or

(b)     The use or employment by any of the defendants of any manipulative or deceptive device or contrivance in connection with the purchase, sale, or retention of a security (including, but not limited to, shares of any of the RMK Funds).

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves, and the other members of the Class, pray for judgment against Defendants as follows:

A.     Declaring this action to be a proper Class Action.

B.     Awarding Plaintiffs and the other members of the Class actual and compensatory damages in such amount as justified by the facts to be proven and as determined by the jury to be fair and reasonable.

C.     Awarding to Plaintiffs and the other members of the Class pre-judgment interest in the manner and at the maximum rate permitted by law.

D.     Awarding to Plaintiffs and the other members of the Class costs and expenses of this litigation, including reasonable attorney fees and costs, including discretionary costs.

E.     Granting such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for the issues joined.

Respectfully submitted,

**THOMASON, HENDRIX, HARVEY,
JOHNSON & MITCHELL, PLLC**


 s/ Albert C. Harvey
Albert C. Harvey, Esq.  (7955)
Justin E. Mitchell  (25578)
Attorneys for Plaintiffs
40 South Main, Suite 2900
Memphis, TN  38103-5529
(901)  525-8721


Crawford S. McGivaren, Jr.
R. Carlton Smyly, Esq.
**CABANISS, JOHNSTON, GARDNER
DUMAS & O'NEAL, LLP**
Suite 700, Park Place Tower
2001 Park Place North
Birmingham, AL   35203
(205) 716-5237

*Co-Counsel*


## CERTIFICATE OF CONSULTATION


On May 10, 2010, counsel for the Trustee *Ad Litem* discussed the relief requested in its Motion and Memorandum with Matthew Curley who, speaking on behalf of all defendants, could not agree to the relief requested because of the previous amendment and the pendency of the Motion to Dismiss.

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2010, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Matthew M. Curley
Michael L. Dagley
W. Brantley Phillips, Jr.
BASS, BERRY & SIM, PLC
150 Third Avenue South, #2800
Nashville, TN 37201

David B. Tulchin
David E. Swarts
Margaret E. Bartlett
SULLIVAN & CROMWELL, LLP
125 Broad Street
New York, NY 10004

s/ Albert C. Harvey

4844-9815-9110, v.  1

32