IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE:  REGIONS MORGAN KEEGAN CLOSED-END FUND LITIGATION | ) ) ) | |
| ELIZABETH P. WILLIS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case Nos. 07-02830 MDL 2009 |
| MORGAN KEEGAN & CO., INC., et al., | ) ) ) | |
| Defendants. | ) | |

ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL AND
CONSOLIDATING CASES

Before the Court are the July 2, 2010 Motions of the Jones
Group,[1] Joseph W. Gilmore, the RMK Investor Group, and James N.
Maddox to appoint lead plaintiff and lead counsel in In re
Regions Morgan Keegan Closed-End Fund Litigation, No. 07-2830.
(ECF Nos. 162-65.)  On July 16, 2010, the Movants responded in
opposition to the competing Motions for Appointment as Lead
Plaintiff.  (See ECF Nos. 168-70.)  They filed Reply Briefs on

---

[1] The Jones Group has filed four separate Motions for Appointment as Lead
Plaintiff.  (See ECF Nos. 151, 155-56, 162.)  The initial Motion seeks the
Jones Group's appointment, followed by two amending Motions made necessary by
the group's shifting membership.  (See ECF Nos. 151, 155, 162.)  The
remaining Motion seeks to have the Jones Group appointed "temporary lead
plaintiff."  (See ECF No. 156.)  Because the Court appoints the RMK Investor
Group as lead plaintiff, the Jones Group's Motion for Appointment as Lead
Plaintiff is DENIED (ECF No. 162), and the remaining Motions are DENIED AS
MOOT.  (ECF Nos. 151, 155-56.)

July 30, 2010.  (See ECF Nos. 173-75.)  Evaluating these Motions under the factors mandated by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a),[2] the Court finds that the RMK Investor Group, as modified, is the presumptive most adequate plaintiff and that the remaining Movants have failed to rebut that presumption.  The Court, therefore, APPOINTS the RMK Investor Group as Lead Plaintiff and approves its selection of Labaton Sucharow LLP as Lead Counsel and Branstetter Stranch & Jennings ("BSJ") as Liaison Counsel.  The remaining Motions for Appointment as Lead Plaintiff are DENIED.  The RMK Investor Group's Motion to Consolidate is GRANTED.

## I.   PROCEDURAL HISTORY

Plaintiffs in these consolidated actions have filed suit against Defendants Morgan Keegan & Co., Inc.; Morgan Asset Management, Inc.; Regions Financial Corporation; MK Holding, Inc.; PricewaterhouseCoopers LLP; and the officers and directors of four closed-end funds (the "Funds") offered by Defendant Morgan Keegan and its affiliated entities.  The Funds traded under the stock symbols RMA, RSF, RMH, and RHY.  (Compl. ¶ 1, ECF No. 1.)

A closed-end fund is one of two categories of funds established by the Investment Company Act of 1940.  See 15

---

[2] The PSLRA amended two separate sections of the federal securities laws with almost identical language.  See 15 U.S.C. §§ 77z-1, 78u-4.  For ease of citation, the Court will cite the language in § 78u-4, which is identical in all material respects to § 77z-1.

U.S.C. § 80a-5(a).  In a closed-end fund, the issuer releases a limited number of shares that are traded on the secondary markets like standard shares of stock.  Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 20.5 n.1 (4th ed. 2002).  Plaintiffs generally allege that the Defendants misrepresented the types of assets in which the Funds invested. (Compl. ¶¶ 7-8.)  Plaintiffs assert that, although the Defendants advertised the Funds as conservative investments, the Funds actually invested a substantial portion of their assets in collateralized debt obligations ("CDOs") backed by subprime mortgages.  (Id. ¶ 5.)  There was a limited market for those CDOs, rendering them illiquid.  (Id. ¶ 9.)  This exposed the Funds to substantial risks because, should the Funds need to sell the investments, they might not be able to do so except at a steep loss because of the limited number of available purchasers.  (Id.)  When the subprime mortgage market collapsed in 2007, these risks came to fruition and the four Funds suffered large losses.  (See, e.g., id. ¶ 13 (noting that the RHY fund lost 63% of its value).)

After the collapse in the Funds' value, numerous parties filed actions against Defendants in federal courts across the nation.  The Joint Panel on Multidistrict Litigation transferred these and all future, related actions to this Court for adjudication.  In re:  Regions Morgan Keegan Secs., Derivative,

3

and ERISA Litig., 598 F. Supp. 2d 1379, 1382 (J.P.M.L. 2009). This Court then consolidated all related pending actions addressing the closed-end funds into one proceeding.  Willis v. Morgan Keegan Co., No. 07-2830, Order Granting in Part and Denying in Part Mots. for Partial Consolidation, Appointment of Lead Pl., and Approval of Counsel, at 18-19, ECF No. 94 (W.D. Tenn. Sept. 23, 2008).  The Court denied all pending motions for appointment of lead plaintiff and lead counsel because of defects in the required, published notice. (Id. at 35-38.)  The Court ordered the parties to the Closed-End Fund Litigation to publish a new notice within twenty days of the Court's Order. (Id. at 40.)

Counsel complied with the Court's Order and published a new notice by Business Wire on October 6, 2008, giving all interested parties sixty days to file motions for appointment as lead plaintiff. (See Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit Concerning Certain Mutual Funds Offered by Regions Morgan Keegan Trust, ECF No. 148-2.)  Despite that notice, no parties filed motions seeking appointment as lead plaintiff.  In 2010, the parties and the Court took independent action to revive the case.  On April 28, 2010, the Law Offices of Napoli Bern & Ripka, LLP and Sonn & Erez, PLC, counsel to the Jones Group, published a notice in Investor's Business Daily. (See ECF No. 162-2, Ex. A.)  Napoli Bern & Ripka and Sonn & Erez

4

took that action without the Court's knowledge.   Trustee <u>ad</u>
<u>Litem</u> C. Fred Daniels, a plaintiff in the consolidated closed-
end fund actions, moved the Court to unconsolidate his suits or
appoint him lead plaintiff so that the case could proceed. (<u>See</u>
ECF No. 139.)   The Court responded by issuing an Order on June
2, 2010, denying Daniels' Motion to Unconsolidate but asking the
parties to file new motions for appointment as lead plaintiff.
<u>Willis v. Morgan Keegan & Co.</u>, No. 07-2830, 2010 U.S. Dist.
LEXIS 54391, at *4-5 (W.D. Tenn. June 2, 2010).   The Order
established a July 2, 2010 deadline to file those motions.   <u>Id.</u>
at *5.   Labaton Sucharow LLP, counsel to the RMK Investor Group,
published notice of this new deadline by <u>Globe Newswire</u> on June
3, 2010. (<u>See</u> ECF No. 164-2, Ex. D.)   Any party who had already
filed a motion for appointment as lead plaintiff was not
required to refile its Motion.   <u>Willis</u>, 2010 U.S. Dist. LEXIS
54391, at *5.

Five parties moved for appointment as lead plaintiff by the
July 2, 2010 deadline.   In addition to Daniels, the Movants
were:   individual investors James N. Maddox and Joseph W.
Gilmore, the Jones Group, and the RMK Investor Group.   The Jones
Group, in its final formulation, consists of Charles Jones; Edge
Partners, Ltd., a closely-held corporation in which Jones owns
90% of the stock; Taylor Henry; Floyd Kopf; and Greg and Joy
Pohl, a married couple. (Jones Group's Reply Br. in Supp. of

Its Mot. for Appointment as Lead Pl., at 3, 6, ECF No. 173.) ("Jones Group Reply") The RMK Investor Group consists of The Lion Fund LP, a hedge fund; Dr. J. Samir Sulieman; Jimmie L. Moon; and Larry Lattimore.   (RMK Investor Group Mot. for Appointment as Lead Pl., at 4 n.3, ECF No. 164-1.) ("RMK Mem.") Movants Gilmore and Daniels filed notices with the Court on July 16, 2010, that they would conditionally withdraw their Motions and support the appointment of the RMK Investor Group as lead plaintiff.  (See ECF Nos. 166-67.)  The Court, therefore, will select the lead plaintiff from among the remaining Movants:  the RMK Investor Group, the Jones Group, and James N. Maddox.

## II.   ANALYSIS

The PSLRA requires the Court to make a decision about the appointment of the lead plaintiff "as soon as practicable" following its decision on consolidation.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Each plaintiff who seeks appointment as lead plaintiff must file a statement with the Court that:

> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
>
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter [15 USCS §§ 78a et seq.];
>
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

6

(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

(v) identifies any other action under this chapter [15 USCS §§ 78a et seq.], filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and

(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

Id. § 78u-4(a)(2)(A).  The putative lead plaintiff must file its certification within the same sixty days it is given to move for appointment as lead plaintiff.  In re Able Labs. Sec. Litig., 425 F. Supp. 2d 562, 565-66 (D.N.J. 2006).  Each of the three remaining applicants for lead plaintiff has filed the required certification in the proper form within the deadline established by the Court.  (See Exs. B-F, ECF No. 162-2; Ex. A, ECF No. 164-2; Ex. C., ECF No. 165-5.)

The PSLRA next creates a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the one who 1) has either filed the initial complaint or made a motion for appointment in response to the sixty-day notice; 2) in the Court's judgment "has the largest financial interest in the relief sought by the class"; and 3) "otherwise satisfies the

7

requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A member of the class may rebut the statutory presumption that the Court should appoint the most adequate plaintiff as lead plaintiff by showing that the most adequate plaintiff "will not fairly and adequately protect the interests of the class" or that it "is subject to unique defenses that render such plaintiff incapable of representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

### A. Largest Financial Interest

The sequential process required by the PSLRA to appoint a lead plaintiff mandates that the Court first identify the applicant with the largest financial interest in the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Herrogott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh), 306 F.3d 726, 729-30 (9th Cir. 2002). Once the Court has identified the party with the largest financial interest, the Court analyzes that party alone to see if it complies with the requirements of Rule 23. Id. at 730. If it does, it becomes the presumptive lead plaintiff – a status subject to rebuttal by the other movants. Id.; In re Cendant Corp. Litig., 264 F.3d 201, 262-63 (3d Cir. 2001).

Courts generally consider four factors when determining which movant has the largest financial interest: 1) the number of shares purchased; 2) the number of net shares purchased; 3)

the total net funds expended; and 4) the approximate loss suffered. In re Cardinal Health, Inc. Sec. Litig., 226 F.R.D. 298, 303 (S.D. Ohio 2005) (citations omitted); In re Concord EFS, Inc. Sec. Litig., No. 02-2697, slip op. at 5 (W.D. Tenn. Dec. 2, 2002) (applying same four-factor test). Each of these factors considers only transactions that took place within the defined class period. In re Cardinal Health, 226 F.R.D. at 303. The Court has discretion in deciding the calculation method to employ when computing these amounts, Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp., 256 F.R.D. 620, 623-24 (E.D. Wis. 2009), but any method it may choose must be "both rational and consistently applied." In re Cavanaugh, 306 F.3d at 730 n.4. The PSLRA does not specify a preferred accounting method. Plumbers & Pipefitters Local 562, 256 F.R.D. at 623.

The RMK Investor Group, the Jones Group, and Maddox disagree about the calculation method and the class period the Court should adopt for the lead plaintiff analysis. (Compare Jones Group Reply at 1 (recommending a class period from December 6, 2004 until February 6, 2008), with RMK Mem., at 4 n.3 (proposing a longer class period from December 6, 2004 until July 14, 2009).) The Jones Group did not always have such a constrained view of the proper class period. (See Mem. of Law in Support of Jones Group's Second Am. Mot. for Appointment as

Lead Pl., Ex. F, ECF No. 162-2 (listing transactions that took place after February 6, 2008).)

Under either class period, the RMK Investor Group has the largest financial interest in the litigation. (Compare RMK Mem. at 7 ($4.6 million financial interest under longer class period), and Jones Group Mem. of Law in Opp. to RMK Investor Group Mot., at 12, ECF No. 168 (calculating that RMK Investor Group has $3,402,827 financial interest under the Jones Group's proposed shorter class period) ("Jones Group Opp."),[3] with Jones Group Reply at 1 & n.1 (stating that the Jones Group has a financial interest of $2,613,622 under the shorter class period or $4,332,162 under the longer class period).) Maddox does not dispute that he, as an individual investor, has the smallest financial interest of the three lead plaintiff candidates. (See Mem. of Law in Support of James N. Maddox's Mot. for Appointment as Lead Pl., at 5, ECF No. 165-1 (stating his financial interest is $948,000).) The Court finds that the RMK Investor Group has suffered the largest loss and has the largest financial interest in the case regardless of the class period and calculation method employed. Cf. Plumbers & Pipefitters Local 562, 256 F.R.D. at 624 (declining to decide which calculation methodology

---

[3] The RMK Investor Group declined to calculate its financial interest under the Jones Group's proposed shorter class period. The Court adopts the Jones Group's calculation of the RMK Investor Group's interest for the shorter class period arguendo to demonstrate that, even under the most favorable scenario, the RMK Investor Group has suffered the largest loss.

is best where all calculations lead to the same conclusion about
who has the greatest financial interest).

### B. Initial Assessment under Rule 23

As the Movant having the largest financial interest, the
RMK Investor Group is subject to an initial assessment under
Federal Rule of Civil Procedure 23.   15 U.S.C. § 78u-
4(a)(3)(B)(iii)(I)(cc); In re Cavanaugh, 306 F.3d at 730 (noting
that only the movant with the largest financial interest is
assessed under Rule 23); In re Cendant, 264 F.3d at 262 (same).
Rule 23 establishes two requirements for appointing a lead
plaintiff:  1) "the claims or defenses of the representative
parties are typical of the claims or defenses of the class," and
2) "the representative parties will fairly and adequately
protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)-
(4); In re Cendant, 264 F.3d at 263 (noting that these are the
only two provisions of Rule 23 that apply at the lead plaintiff
stage).   These two requirements are commonly known as
"typicality" and "adequacy."  In re Cendant, 264 F.3d at 263.
If the RMK Investor Group satisfies the typicality and adequacy
requirements, it is the presumptive lead plaintiff.  15 U.S.C. §
78u-4(a)(3)(B)(iii)(I).

Other movants may then challenge the presumptive lead
plaintiff's typicality and adequacy to rebut the presumption.
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  It would seem difficult

for a party to rebut a presumption based on two factors that
have already been satisfied.  Courts have rectified this seeming
inconsistency in the statutory language by holding that the
initial inquiry into typicality and adequacy required to trigger
the presumption is only a prima facie one.  In re Cendant, 264
F.3d at 264.  When making this initial inquiry, courts may
consider all pleadings filed by the parties as well as any other
information they have required the parties to submit.  Id.

Typicality requires the Court to consider whether the
claims of the potential lead plaintiff are similar to those of
the class as a whole.  Fed. R. Civ. P. 23(a)(3); In re Cendant,
264 F.3d at 265; In re Cardinal Health, 226 F.R.D. at 304.
Here, the RMK Investor Group brings claims under the Securities
Act of 1933 and the Securities and Exchange Act of 1934 alleging
that the Defendants issued false and materially misleading
statements about the quality of the Funds' investments.  (RMK
Mem. at 1.)  The members of the RMK Investor Group purchased
shares in all four of the affected Funds.  (See Exs. A-B, ECF
No. 164-2.)  Therefore, the RMK Investor Group has made a prima
facie showing of typicality.

To demonstrate adequacy, a potential lead plaintiff must
demonstrate that it has both the ability and the incentive to
represent the class's claims aggressively.  Fed. R. Civ. P.
23(a)(4); In re Cendant, 264 F.3d at 265.  The RMK Investor

Group is composed of five investors who cumulatively have losses of up to $4.6 million. (RMK Mem. at 7.) It has hired Labaton Sucharow LLP as its counsel, an experienced securities litigation firm. (Id. at 9.) Labaton Sucharow LLP, among other successful efforts, gained a $624 million settlement for the class in In re Countrywide Financial Securities Litigation, No. 07-cv-5295 (C.D. Cal.), a case also involving subprime securities. (RMK Mem. at 9.) That the RMK Investor Group has hired such accomplished counsel supports a finding that it has the intention of aggressively prosecuting the class's claims. Cf. In re Cendant, 264 F.3d at 265 (noting that, "[b]ecause one of a lead plaintiff's most important functions is to select and retain lead counsel," it is permissible to consider its choice of counsel when making the initial adequacy determination (internal quotation marks and citation omitted)).

    The Lion Fund, one of the members of the RMK Investor Group, is a hedge fund. (RMK Reply Br. at 14.) One of the main purposes Congress sought to advance when enacting the PSLRA was to promote the appointment of institutional investors as lead plaintiffs. See, e.g., In re Cendant, 264 F.3d at 243-44 (citing the legislative history); In re Cardinal Health, 226 F.R.D. at 305-06 (noting that some courts have found the presence of an institutional investor "tipped the scales in favor of its appointment as lead plaintiff" (citation omitted));

13

In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999) (amicus brief of the Securities and Exchange Commission ("SEC") stating that if a group is to be appointed lead plaintiff, it should have an ability to manage the litigation "comparable" to an institutional investor).  The Lion Fund's presence as part of the RMK Investor Group and the group's sound choice of counsel lead the Court to find that it has satisfied the initial test for adequacy.  The Court, thus, finds that the RMK Investor Group is the presumptive lead plaintiff.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### C. Rebutting the Presumption

The competing Movants, or any other concerned class member, may rebut the presumption that the Court should appoint the RMK Investor Group as the lead plaintiff.  Id. § 78u-4(a)(3)(B)(iii)(II); In re Cavanaugh, 306 F.3d at 730 (observing that the true test for typicality and adequacy occurs once the process becomes adversarial).  Evidence that the RMK Investor Group "will not fairly and adequately protect the interest of the class" or will be "subject to unique defenses that render [it] incapable of adequately representing the class" rebuts the presumption.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).  The statute's language requires any objector to present "proof" of these deficiencies, emphasizing that speculative defects are not enough to defeat the presumption.  Id. ("The presumption

described in subclause (I) . . . . may only be rebutted upon <u>proof</u> by a member of the purported plaintiff class . . . ." (emphasis added)); <u>In re Cendant</u>, 264 F.3d at 264 (emphasizing that objectors bear the burden of proving inadequacy or atypicality).

The Jones Group attacks the typicality and adequacy of the individual members of the RMK Investor Group. (<u>See</u> Jones Group Opp. at 5-16; Jones Group Reply at 9-18.) Maddox joins the arguments of the Jones Group in questioning the adequacy and typicality of certain RMK Investor Group members and raises an additional concern – the propriety of allowing a group of investors with aggregated losses to serve as lead plaintiff. (<u>See</u> Maddox Mem. in Opp. to Competing Mots. for Appointment as Lead Plaintiff at 12-19, ECF No. 170 ("Maddox Opp. Mem."); Maddox Reply Mem. at 4-8, ECF No. 175.) The Court will consider the challenges to the individual members of the RMK Investor Group first. Should it survive as the presumptive lead plaintiff, the Court will consider the challenge to the RMK Investor Group as a whole. <u>See</u> <u>In re Cavanaugh</u>, 306 F.3d at 731 (noting that, if the presumption is rebutted, a court must repeat the examination process with the movant having the second largest financial stake in the litigation).

When considering the Jones Group's and Maddox's challenges to individual members of the RMK Investor Group, it will be necessary to refer to the individual members' financial stakes.

That determination, in turn, requires a decision about the class period to use in calculating the parties' financial interests. For these purposes alone, the Court will accept _arguendo_ the class period proposed by the Jones Group, which ends on February 6, 2008, as opposed to the class period proposed by the RMK Investor Group, which ends on July 14, 2009. (_See_ Jones Group Opp. at 12; Jones Group Reply at 1.) But _see_ _Plumbers and Pipefitters Local 562_, 256 F.R.D. at 625 (finding that it is generally appropriate to use the longer of the suggested class periods unless "the allegations supporting the longer class period are . . . obviously frivolous."); _Eichenholtz v. Verifone Holdings, Inc._, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) (questioning why proposed lead plaintiffs would assert that the class period should be shorter when such an "argument is inimical to the interest of the class members those plaintiffs purportedly represent"); _Piven v. Sykes Enters._, 137 F. Supp. 2d 1295, 1303 (M.D. Fla. 2000) ("Any limitation of the class period at this stage in the litigation would be improper, as there is no such motion pending before the Court, the issue has not been adequately briefed, and would in effect be tantamount to entry of partial summary judgment limiting damages that may be sought in this case."). The Court's acceptance _arguendo_ of the period proposed by the Jones Group does not in any way affect the ability of the ultimate

16

lead plaintiff to select an appropriate class period when filing its consolidated complaint. See, e.g., Plumbers and Pipefitters Local 562, 256 F.R.D. at 624 (noting that a district court's determination about the class period made during the process of appointing a lead plaintiff is not binding because the class period should only be definitively determined with the participation of the defendants); Eichenholtz, 2008 U.S. Dist. LEXIS 64633, at *9-10 (observing that the job of the appointed lead plaintiff is "to allege an appropriate class period"). The sole purpose of the Court is to demonstrate that, even using the numbers least favorable to the RMK Investor Group, the ultimate result is the same.

### 1. Arguments about Individual Group Members

#### a. Lion Fund

The Jones Group and Maddox advance three main arguments against the Lion Fund's inclusion in the RMK Investor Group. The Jones Group questions whether Corbin J. Robertson, III, who signed the Lion Fund's PSLRA certification, had the authority to authorize the Lion Fund to file suit against the Defendants. (Jones Group Opp. at 7-8.) Maddox asserts that 1) hedge funds such as the Lion Fund are always atypical investors and therefore inappropriate lead plaintiffs, and 2) Robertson's other business dealings, including some with the Funds, create a

conflict of interest that prevents the Lion Fund from serving as lead plaintiff. (Maddox Opp. Mem. at 13-16.)

The Lion Fund is a limited partnership organized under the laws of the State of Texas. (See Certificate of Limited Partnership, ECF No. 168-3.) The general partner of the Lion Fund is Robertson Fund Management L.P. (Robertson Aff. ¶ 3, ECF No. 174-3.) Texas law allows a general partner to authorize a limited partnership to file suit on behalf of the partnership. See Texas Bus. Orgs. Code § 153.401 (noting that a limited partner may bring suit on behalf of the partnership only if all general partners have refused to bring an action). Robertson is the Managing Partner of Robertson Fund Management L.P. and has been authorized to allow the Lion Fund to file suit. (Robertson Aff. ¶ 3.) No party has presented any evidence to cast doubt on Robertson's sworn declaration that he is the Managing Partner of the Lion Fund's general partner. The evidence before the Court, thus, does not support finding that the Lion Fund would be subject to a unique defense that its PSLRA certification is invalid.

Other courts "routinely appoint hedge funds . . . even foreign hedge funds, as lead plaintiffs." In re Tronox, Inc., 262 F.R.D. 338, 347 & n.65 (S.D.N.Y. 2009) (citing cases). Hedge funds are institutional investors, exactly the type of sophisticated market participants Congress intended to take on

the role of lead plaintiff following the PSLRA's reforms.   See In re Cendant, 264 F.3d at 243-44 (acknowledging Congress' preference for "a large institutional investor" to be appointed lead plaintiff).   Arguments that hedge funds are per se inappropriate candidates for appointment as lead plaintiff are unsupported by statute or case law.

Maddox makes a targeted attack against the Lion Fund, asserting that it has a severe conflict of interest that makes it an inappropriate lead plaintiff.   Maddox asserts that Robertson, who effectively controls the Lion Fund, is a director of Quintana Maritime, Ltd. ("Quintana").   (Maddox Opp. Mem. at 15.)   Robertson and the Lion Fund are investors in Quintana, "owning hundreds of thousands of shares." (Id.)   The four Funds were also investors in Quintana.   (Id.)   Robertson's father, Corbin J. Robertson, Jr., served as Quintana's chairman.   (Id.) Maddox argues that these interrelated business interests raise questions about the Lion Fund's ability to act in the class's best interest.   (Id. at 15-16.)

Robertson has responded to these allegations by his sworn affidavit.   Quintana was a publicly traded company listed on the NASDAQ stock exchange under the symbol "QMAR." (Robertson Aff. ¶ 6.)   It provided "dry bulk marine transportation services" for commodities like coal, iron ore, and grain.   (Id.)   As of February 25, 2008, Quintana had more than 58 million shares

outstanding.  (Id.)  Quintana ceased to exist as an independent
company after its shareholders approved a $2.45 billion merger
with Excel Maritime Carriers ("Excel"), another publicly traded,
dry bulk maritime carrier.  (Id. ¶ 7.)  Shareholders received
$13 per Quintana share and 0.4084 shares of Excel as
consideration for the sale.  (Id.)  Robertson resigned as a
director of Quintana after the merger.  (Id. ¶ 6.)  The Funds'
only involvement with Quintana was purchasing its shares on the
open market.  (Id. ¶ 8.)  Robertson avers that he was unaware
that the Funds had been Quintana shareholders (id.), and the RMK
Investor Group calculates that the Funds collectively held no
more than 0.3% of the outstanding shares of Quintana.  (RMK
Investor Group Reply at 15, ECF No. 174.)

That Robertson served as a director of a separate, publicly
traded corporation in which, by chance, the Funds independently
decided to invest through transactions on the open market does
not create a conflict of interest.  Any person or other legal
entity may purchase the shares of a publicly traded corporation.
Holding a 0.3% stake in a corporation is not a substantial
investment.  Cf. 17 C.F.R. § 240.13d-1 (requiring any person who
acquires "beneficial ownership of any equity security" of more
than 5% of the total shares outstanding to file a report with
the SEC detailing his holdings); Sup. Ct. R. 29.6 (requiring
incorporated parties to notify the Court of any public company

that holds a stake of 10% or more in them); Fed. R. App. P. 26.1(a) (same).  Maddox and the Jones Group have not proffered any evidence suggesting that the Funds were in a position to take an active role in managing Quintana or that the Funds otherwise engaged in business activities with Robertson or the Lion Fund.  <u>Cf.</u>  <u>Newby v. Enron Corp. (In re Enron Corp. Secs.</u> <u>Litig.)</u>, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (disqualifying a movant for lead plaintiff because it employed an investment advisor that was also <u>one of the defendant's largest</u> <u>shareholders</u> because that relationship could subject the potential lead plaintiff to unique defenses).  The coincidence that two parties to a litigation once owned stock in the same entity does not create a conflict.  Neither Maddox nor the Jones Group has cast doubt on the typicality of the Lion Fund's claims or the adequacy of its representation.  <u>In re Cendant</u>, 264 F.3d at 264 (holding that more than speculation is necessary to rebut the presumption).

### b. Lattimore

The Jones Group attacks the adequacy of RMK Investor Group member Larry Lattimore.  It argues that he would be subject to the unique defense of failure to demonstrate loss causation.  (Jones Group Opp. at 14.)  The Jones Group asserts that Lattimore sold all of his positions in two of the Funds, RSF and RHY, before the end of the class period and did not purchase

additional shares until the alleged fraud was at least partially revealed. (Id.) It makes no similar assertions about Lattimore's trading in the shares of the remaining two Funds, RMA and RMH. (See id.)

The Jones Group alleges that Lattimore is a "day trader," someone who buys and sells stocks or other financial instruments on a hyperfrequent basis and hopes to profit from their intra-day market movements. (Id. at 13-14.) Although the other members of the RMK Investor Group succinctly summarize their trading in the shares of the Funds, the required disclosure of Lattimore's trading activity spans sixteen pages. (Compare Decl. of J. Gerard Stranch, IV, Ex. A at 11, ECF No. 164-2 (trading activity of Jimmie L. Moon), with id. at 14-29 (trading activity of Lattimore).) This Court has previously decided that one's status as a day trader alone does not preclude serving as a lead plaintiff. In re Concord EFS, slip op. at 14-15. Regardless of how frequently he trades, an investor typically relies on the quoted market price of a stock as an accurate representation of the value of the company. Id.

Courts, however, will not automatically assume that an investor relied on an integrity-based market. In re Cardinal Health, 226 F.R.D. at 310. The fraud-on-the-market presumption applies only where five factors are present: 1) the defendants publically made misrepresentations; 2) those misrepresentations

were material; 3) the stock traded on an efficient market; 4) the misrepresentations would cause a reasonable investor to misjudge the stock's value; and 5) the plaintiff traded in the stock between the time of the misrepresentations and the revelation of the truth. Id. (citing Freeman v. Laventhol & Horwath, 915 F.2d 193, 197-98 (6th Cir. 1990)). Here, the Jones Group questions whether Lattimore can satisfy the fifth factor: that his losses were caused by the alleged fraud because some of his share transactions occurred before the revelation of the fraud. (Jones Opp. at 13-15.)

This argument does not account for what the Jones Group's Complaint alleges. The Complaint states that the Funds' share price declined because of "multiple disclosures about declining net asset value." Jones v. Morgan Keegan & Co., No. 10-2248, Compl. ¶ 71, ECF No. 1 (emphasis added). Although the Supreme Court has recognized that, where "the purchaser sells his shares quickly before the relevant truth begins to leak out," no loss based on a misrepresentation occurs, Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005), that defect does not preclude claims where there are partial disclosures before an investor sells the majority of his shares. See Christiansen v. Immelt (In re GE Secs. Litig.), No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009). Multiple partial disclosures are what the Jones Group alleges in its Complaint.

23

(See Compl. ¶ 71.)   It cannot escape its own allegations in an effort to disqualify the presumptive lead plaintiff.   The Jones Group has failed to demonstrate that Lattimore's frequent trading activity will subject him to a unique defense.

### c. Sulieman

Both Maddox and the Jones Group challenge Dr. J. Samir Sulieman's adequacy to serve as a member of the presumptive lead plaintiff RMK Investor Group based on his susceptibility to the unique defense of lacking constitutional standing to bring his claims.   (Maddox Opp. at 17-19; Jones Group Reply at 16-18.) They observe that Sulieman's stated financial interest in the litigation includes not only accounts for his own benefit but also accounts that benefit his wife and children.   (See Decl. of J. Gerard Stranch, IV, Ex. A at 10 (detailing Sulieman's stock transactions).)   Citing the Second Circuit's opinion in W. R. Huff Asset Management Co. v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008), the Jones Group and Maddox argue that Sulieman lacks standing to bring claims on behalf of accounts other than his own.

In Huff, the Second Circuit held that, although prior case law interpreting Section 10(b) of the Securities and Exchange Act of 1934 confers statutory standing on any investment advisor who has "unrestricted decision making authority" over the accounts at issue and is the "attorney-in-fact for its clients,"

the satisfaction of those two requirements does not automatically satisfy the required constitutional standing inquiry under Article III. 549 F.3d at 106. A purchaser for purposes of Section 10(b) must still prove that it satisfies the traditional standing inquiry requiring 1) an injury-in-fact, 2) causation traceable to the defendant's actions, and 3) an injury judicial relief can adequately redress. Id. The Second Circuit noted that, for a party to suffer an injury, it must have, at a minimum, "legal title to, or a property interest in, the claim." Id. at 108 (citing Sprint Communs. Co. v. APCC Servs., Inc., 554 U.S. 269, 289 (2008)). This does not mean that a third party can never assert claims on behalf of another. Where a third party can show 1) "a close relationship to the injured party" and 2) "a barrier to the injured party's ability to assert its own interests," courts make a prudential exception to the injury-in-fact requirement. Huff, 549 F.3d at 109 (citing Kowalski v. Tesmer, 543 U.S. 125, 130 (2004)). Applying these principles, federal courts have traditionally allowed 1) trustees to bring suits on behalf of their trusts; 2) guardians ad litem, on behalf of their wards; 3) receivers, on behalf of their receiverships; 4) bankruptcy assignees, on behalf of bankruptcy estates; and 5) executors, on behalf of the testator's estate. Sprint Communs., 554 U.S. at 287-88.

Sulieman asserts claims on behalf of four types of accounts: his own individual retirement account, a joint account he holds with his wife, a trust for one of his children of which he is trustee, and another account for one of his children for which he is custodian under the Uniform Transfers to Minors Act ("UTMA"), Ark. Code Ann. §§ 9-26-201 — 227.[4] Sulieman has standing to bring an action on behalf of his individual retirement account and his joint account because he has a direct ownership interest in both. See Huff, 549 F.3d at 108 (requiring a legal interest in property to file suit for an injury). Sulieman, as trustee, has a well recognized right to sue on behalf of the trust for his child. Sprint Communs., 554 U.S. at 287. That leaves the account for which Sulieman is custodian for his child under the UTMA. At least one state appellate court has cast doubt on the ability of a UTMA custodian, under certain circumstances, to assert claims on behalf of a minor child. See Pike v. N. Y. Life Ins. Co., 901 N.Y.S. 2d 76, 82 (App. Div. 2010). There is also a more basic problem. Under the UTMA, a custodian has authority on behalf of the child only while that child is a minor. Once the child reaches the age of twenty-one, the custodian's authority ends. See, e.g., Ark. Code Ann. §9-26-201(11) (defining a "[m]inor" as

---

[4] Sulieman is a resident of the State of Arkansas. There is no indication of the state in which the UTMA account is held.

any person "who has not attained the age of twenty-one (21) years"); Hovarth v. Craddock, 828 A.2d 1212, 1213-15 (R.I. 2003) (per curiam) (holding that, because the child had attained the age of twenty-one, the custodian lacked standing to sue for an accounting of the child's UTMA account); cf. Chavis v. Brackenbury, 291 S.W.3d 570, 571-73 (Ark. 2009) (declining to determine whether a UTMA account beneficiary who is eighteen, but not yet twenty-one, is a necessary party in a suit seeking an accounting of funds because the parties did not preserve the issue).  Sulieman's certification nowhere states the age of the child over whose account he claims control.  (See Decl. of J. Gerard Stranch, IV, Ex. A at 9-10.)  Because Sulieman may be subject to a unique defense on his claims on behalf of the UTMA account, that account must be excluded from the RMK Investor Group's financial interest calculation.[5]  See In re Bally Total Fitness Secs. Litig., No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) (finding that the PSLRA requires only that a court determine if a defendant would be "subject to" to unique defense, not that the defense would succeed); cf. In re Cardinal Health, 226 F.R.D. at 308 ("A group vying for lead plaintiff status does not necessarily rise and

---

[5]  The UTMA assets represent less than one percent (0.89%) of Sulieman's financial stake in the litigation, a de minimis amount.  Because of the inconsequential nature of the problematic claim and Sulieman's otherwise forthcoming disclosures, the Court finds that striking Sulieman from the group would be unwarranted.  The better course of action is to consider the UTMA account claim abandoned.

fall as a group.   Segmentation is a viable remedy and finds support in the case law." (citations omitted)).   Accepting the calculations of the Jones Group, this reduces the financial interest of the RMK Investor Group by $6,469, leaving an interest of $3,396,358.[6]   (See Jones Group Reply at 17.)   That amount is larger than the Jones Group's financial interest of $2,613,622.   (Id. at 1.)

### d. Moon

The Jones Group and Maddox assert the same lack-of-standing argument against Jimmie L. Moon they asserted against Sulieman. (Maddox Opp. at 17-19; Jones Group Reply at 16-18.)   Moon asserts claims based on his own trust account, his wife's trust account, and an account held by his adult daughter.   (RMK Investor Group Reply at 18; Decl. of J. Gerard Stranch, IV, Ex. A at 12 (detailing Moon's stock transactions).)   Unlike its response to the attacks on Sulieman's standing, the RMK Investor Group does not affirmatively state that Moon is the trustee of his wife's trust or detail what legal power he holds over his daughter's account.   (See RMK Investor Group Reply at 18-19.) There is also no indication about why Moon's wife and daughter face a barrier in bringing their own claims.   See Huff, 549 F.3d at 109 (noting that there must be a barrier to a party's assertion of his or her own claim for a third-party to have

---

[6] $3,402,827 - $6,469 = $3,396,358 > $2,613,622

standing to assert that claim). The discrepancy between the level of detail in Sulieman's disclosures and Moon's disclosures is relevant. A lead plaintiff must be able to advance the litigation without delay caused by unique defenses. In re Cendant, 264 F.3d at 265 (explaining Rule 23's adequacy requirement). That Moon has not adequately clarified his interest in his wife's and daughter's accounts at this late stage means that litigation about his standing to bring those claims is certain. Moon is an inadequate candidate for inclusion in the RMK Investor Group and the Court STRIKES him from the group.[7] See In re Cardinal Health, 226 F.R.D. at 308; In re Sunbeam Corp. Secs. Litig., No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *23-25 (S.D. Cal. Jan. 5, 2004) (striking one plaintiff from a group seeking lead plaintiff status and noting that such segmentation is "routine[]"); Burke v. Ruttenberg, 102 F. Supp. 2d 1280, 1327-30 (N.D. Ala. 2000) (summarizing with approval numerous cases in which courts have considered and accepted groups as lead plaintiffs but have stricken some members according to a "rule of reason").

The Jones Group calculated Moon's total financial interest as $678,324, including $365,754 for Moon's own account, $278,971 for his wife's account, and $33,599 for his daughter's account.

---

[7] The financial interest represented by the questioned accounts is not de minimis. Based on the calculations of the Jones Group, it amounts to 46.07% of Moon's claimed financial interest in the litigation. (See Jones Group Opp. at 17.)

(Jones Group Reply at 17.)  Subtracting that total from the
$3,396,358 financial interest remaining after striking
Sulieman's questionable account yields a new total financial
interest for the RMK Investor Group of $2,718,034.  That is
$104,412 more than the Jones Group's stated financial interest.
(See Jones Reply at 1.)  Thus, the modified RMK Investor Group
continues to hold the largest financial stake in the litigation
after the removal of atypical and inadequate members from the
calculation.

## 2. Arguments based on status as a group

That the modified RMK Investor Group has survived the
challenges to its remaining individual members does not end the
inquiry.  Maddox challenges the adequacy of the RMK Investor
Group to serve as lead plaintiff because of the complexities
introduced by its status as a group.  (Maddox Reply at 4-7.)  He
argues that there is no reason the members of the RMK Investor
Group came together other than to attempt to aggregate their
claims to achieve lead plaintiff status.  (Id. at 4.)  That,
Maddox asserts, is impermissible under the PSLRA.  (Id.)  Maddox
also questions how the RMK Investor Group's members will
function together as a cohesive unit to advance the litigation
diligently.  (Id. at 5-6.)

Maddox is correct that, shortly after the PSLRA's passage,
some courts questioned the appropriateness of appointing a group

30

as lead plaintiff. *See, e.g., In re Telxon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 812-13 (N.D. Ohio 1999) (finding that the constant usage of the singular in the PSLRA means that a group must meet additional hurdles if it seeks appointment as lead plaintiff). However, the text of the PSLRA explicitly permits the appointment of a group as lead plaintiff: "[T]he court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Because of this explicit statutory language, most courts now find that groups may serve as lead plaintiff if they demonstrate that they can perform the active supervisory role the PSLRA envisions. *See, e.g., In re Cendant*, 264 F.3d at 266 (noting that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner" and disapproving of *In re Telxon*, 67 F. Supp. 2d at 811-16); *In re Cardinal Health*, 226 F.R.D. at 307 (finding that most courts examine groups on a case-by-case basis).

The SEC has provided guidance about how to inquire into the adequacy of groups seeking appointment as lead plaintiff. *See In re Baan Co.*, 186 F.R.D. at 223-228. A group should have no more than three to five members; a court should evaluate each member separately for typicality and adequacy; and Congress' preeminent goal of ensuring that federal securities litigation

31

is client, rather than lawyer, driven should be paramount. <u>Id.</u> at 223-24. Each member of the group should have "a sufficiently large stake in the litigation" to prevent any member from failing to participate in the management of the case. <u>Id.</u> at 224; <u>see also</u> <u>In re Cendant</u>, 264 F.3d at 266-67; <u>In re Cardinal Health</u>, 226 F.R.D. at 307.

Here, the Court has conducted an individual inquiry into each member of the RMK Investor Group and culled a member who was an inadequate candidate for participation as lead plaintiff. The resulting group has three members, the smallest maximum number recommended by the SEC. <u>In re Baan Co.</u>, 186 F.R.D. at 224. Each member has a substantial stake in the litigation, and one of the members is an institutional investor – the type of plaintiff Congress, through the passage of the PSLRA, sought to encourage to serve as lead plaintiff. <u>Id.</u> at 223-24. The members aver that they have spoken with each other outside the presence of counsel and have established common goals for the litigation and a litigation strategy. (Joint Decl. of the RMK Investor Group ¶ 9, ECF No. 174-2.) The members' selection of experienced counsel to prosecute this action confirms their ability to work together to make wise decisions. Because Maddox offers only speculation to support his concern about the ability of the RMK Investor Group to function effectively, the Court

REJECTS this final challenge.[8]   See In re Cendant, 264 F.3d at
264.   No party has rebutted the presumption that the RMK
Investor Group, as modified by the Court, should serve as Lead
Plaintiff.   The Court, therefore, APPOINTS the Lion Fund, Dr. J.
Samir Sulieman, and Larry Lattimore, known as the RMK Investor
Group, as Lead Plaintiff in In re Regions Morgan Keegan Closed-
End Fund Litigation.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### D. Appointment of Lead and Liaison Counsel

The PSLRA provides that "the most adequate plaintiff shall,
subject to the approval of the court, select and retain counsel
to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).   "[T]he
power to 'select and retain' lead counsel belongs, at least in
the first instance, to the lead plaintiff, and the court's role
is confined to deciding whether to 'approve' that choice."   In
re Cendant Corp., 264 F.3d at 273 (citation omitted); see also
In re Cardinal Health, 226 F.R.D. at 312; In re Telxon Corp., 67
F. Supp. 2d at 824.   "[O]nly in very unusual circumstances will
[the] lead plaintiff have to accept counsel that it did not
itself choose."   In re Baan Corp., 186 F.R.D. at 229; see also
In re Cavanaugh, 306 F.3d at 734 (stating that Congress did not
mean to alter the prior practice of allowing the lead plaintiff

---

[8] By comparison, the Jones Group's membership has shifted multiple times.   See
supra text accompanying note 1.   That shifting membership would raise serious
questions about its ability to manage the litigation, lending credence to
Maddox's concerns about lawyer-created groups hijacking federal securities
litigation.   See In re Baan Co., 186 F.R.D. at 223-228.

to select lead counsel, absent extenuating circumstances). No party has found reason to object to the Lead Plaintiff's choice of counsel, and the series of substantial settlements in securities cases memorialized in its submissions to the Court demonstrates Labaton Sucharow LLP's competence to handle complex litigation like the present suit. The Court, therefore, APPOINTS Labaton Sucharow LLP as Lead Counsel. For similar reasons, the Court APPOINTS BSJ as Liaison Counsel.

### E. Consolidation

Lead Plaintiff RMK Investor Group has filed a Motion to Consolidate two related actions, Jones v. Morgan Keegan & Co., No. 10-2248 and Palmour v. Morgan Keegan & Co., No. 10-2380, with the consolidated action In Re Regions Morgan Keegan Closed-End Fund Litigation, No. 07-2830. (RMK Mot. to Consolidate, at 2, ECF No. 164.) No party has filed a response in opposition to the Motion to Consolidate.

Federal Rule of Civil Procedure 42(a) provides district courts with broad discretion to consolidate similar actions pending before them. Cantrell v. GAF Corp., 999 F.2d 1007, 1011 (6th Cir. 1993). District courts may consolidate related actions sua sponte and despite the objections of the parties. Id. When considering whether to consolidate actions under Rule 42, district courts evaluate a number of factors, including:

34

> [W]hether the specific risks of prejudice and possible
> confusion [are] overborne by the risk of inconsistent
> adjudications of common factual and legal issues, the
> burden on parties, witnesses and available judicial
> resources posed by multiple lawsuits, the length of
> time required to conclude multiple suits as against a
> single one, and the relative expense to all concerned
> of the single-trial, multiple-trial alternatives.

Id. (quoting Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (6th Cir. 1985)) (alterations in original).

Here, Jones and Palmour raise similar legal and factual issues surrounding the collapse of the four Funds. Consolidation would conserve judicial resources and allow a more expeditious adjudication of Plaintiffs' claims. No issues of prejudice or confusion exist. Because all relevant factors support consolidation of these actions, the Court GRANTS Lead Plaintiff's Motion to Consolidate. Cf. Cannaday v. Sullivan, Nos. 10-2188, 2190-92, 2010 U.S. Dist. LEXIS 119213, at *5-8 (W.D. Tenn. Nov. 5, 2010). The Clerk is DIRECTED to Consolidate the Jones and Palmour suits under case number 07-2830.

**III. CONCLUSION**

The Court GRANTS the Motion for Appointment as Lead Plaintiff of the RMK Investor Group AS MODIFIED. The RMK Investor Group shall consist of the Lion Fund; Sulieman, absent his de minimis UTMA claim; and Lattimore. The Court also APPOINTS Labaton Sucharow LLP as Lead Counsel and BSJ as Liaison

Counsel.  The Lead Plaintiff's Motion to Consolidate is GRANTED.

All other Motions for Appointment as Lead Counsel are DENIED.

    So ordered this 15th day of December, 2010.


                  s/ Samuel H. Mays, Jr.
                  SAMUEL H. MAYS, JR.
                  UNITED STATES DISTRICT JUDGE