IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

|  |  |  |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) ) | No. 2:09-md-02009-SHM |
| This Document Relates to: | ) ) | |
| *In re Regions Morgan Keegan Closed-End Fund Litigation*, | ) ) ) | |
| No. 2:07-cv-02830-SHM-dkv | ) ) ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FILED BY ALLEN B. MORGAN, JR., J. KENNETH ALDERMAN, BRIAN B. SULLIVAN, JOSEPH T. WELLER, AND JAMES C. KELSOE, JR.

SUTHERLAND ASBILL &
BRENNAN LLP

S. Lawrence Polk
999 Peachtree Street NE
Atlanta, GA 30309
(404)853-8225
larry.polk@sutherland.com

*Attorney for Allen B. Morgan, Jr.,*
*J. Kenneth Alderman, Brian B. Sullivan,*
*Joseph T. Weller, and James C. Kelsoe, Jr.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................ 1

STANDARD OF REVIEW ................................................................ 2

ARGUMENT ................................................................ 5

I.      Plaintiffs Fail to Plead Facts Showing That Each of the Officer Defendants Acted with the Requisite Scienter. ................................................................ 5

        A.      Plaintiffs Ignore the Most Plausible Inference Stemming from Their Allegations. ................................................................ 6

        B.      Plaintiffs Rely on Group Pleading Allegations, Which Are Insufficient under the PSLRA to Establish a Strong Inference of Scienter. ................................ 8

        C.      Plaintiffs Fail to Allege That the Officer Defendants Had a Motive to Commit Securities Fraud. ................................................................ 11

        D.      Plaintiffs Otherwise Fail to Plead Particularized Facts Demonstrating Conscious Misbehavior or Reckless Conduct Relating to Any of the Alleged Misrepresentations or Omissions. ................................................................ 13

                1.      Plaintiffs' Allegations Regarding the Valuation of the Funds' Assets Fail to Show a Strong inference of Scienter ................................ 13

                2.      Plaintiffs' Allegations Regarding the Concentration of the Funds' Assets Fail to Show a Strong Inference of Scienter. ................................ 15

                3.      The Funds' Choice of a Benchmark Index Fails to Show that the Officer Defendants Acted with the Requisite Level of Scienter. ........................ 17

                4.      Allegedly Inadequate Due Diligence Fails to Support a Strong Inference of Scienter. ................................................................ 17

II.     Plaintiffs Fail to State a Claim Against the Director Defendants under § 11 of the 1933 Act ................................................................ 18

III.    Plaintiffs Fail to Plead Facts Sufficient to Demonstrate That Any of the Individual Defendants Are Control Persons under § 15 or § 20(a) ................................ 18

CONCLUSION ................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)............................................................................2, 3, 19

*Azzolini v. CorTS Trust II for Provident Fin. Trust I*,
2005 U.S. Dist. LEXIS 31853 (E.D. Tenn. Sept. 16, 2005) ............................. 18-19

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................3

*Frank v. Dana Corp.*,
649 F. Supp. 2d 729 (N.D. Ohio 2009)..........................................................19

*Hensley Mfg., Inc. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) .......................................................................3

*In re Huffy Corp. Sec. Litig.*,
577 F. Supp. 2d 968 (S.D. Ohio 2008) ..........................................................9

*In re Merrill Lynch & Co, Inc. Research Reports Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) ....................................................................4

*In re MRU Holdings Sec. Litig.*,
-- F. Supp. 2d --, 2011 WL 650792 (S.D.N.Y. Feb. 17, 2011) ..................................8

*In re Regions Morgan Keegan Open-End Mut. Fund Litig.*,
743 F. Supp. 2d 744 (W.D. Tenn. 2010), *recons. den.*
2010 WL 5464792 (W.D. Tenn. Dec. 30, 2010) ............................................*passim*

*In re SCB Computer Tech., Inc. Sec. Litig.*,
149 F. Supp. 2d 334 (W.D. Tenn. 2001)......................................................4, 15

*In re Societe Generale Sec. Litig.*,
2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010)..................................................8

*In re Telxon Corp. Sec. Litig.*,
133 F. Supp. 2d 1010 (N.D. Ohio 2000)........................................................19

*In re Wachovia Equities Sec. Litig.*,
2011 U.S. Dist. LEXIS 36129 (S.D.N.Y. March 31, 2011) ..................................12

*Kalnit v. Eichler*,
85 F. Supp. 2d 232 (S.D.N.Y. 1999)..............................................................18

*Konkol v. Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) ..................................................................................10, 16

*La. Sch. Emp. Ret. Sys. v. Ernst & Young LLP*,
   622 F.3d 471 (6th Cir. 2010) ...............................................................................6

*Lemmer v. Nu-Kote Holding, Inc.*,
   2001 U.S. Dist. LEXIS 13978 (N.D. Tex. Sept. 6, 2001),
   *aff'd* 71 Fed. Appx. 356 (5th Cir. 2003) ...........................................................18

*Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth
   Third Bancorp*,
   731 F. Supp. 2d 689 (S.D. Ohio 2010) .......................................................... *passim*

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ..................................................................................3

*PR Diamonds, Inc. v. Chandler*,
   364 F.3d 671 (6th Cir. 2004) ......................................................................... *passim*

*Rubke v. Capital Bancorp Ltd.*,
   460 F. Supp. 2d 1124 (N.D. Cal. 2006), *aff'd* 551 F.3d 1156 (9th Cir. 2009) .........................3

*Tellabs v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................................5

*Woodward v. Raymond James Fin., Inc.*,
   732 F. Supp. 2d 425 (S.D.N.Y. 2010)......................................................................8

## STATUTES

15 U.S.C. § 78u-4 ..............................................................................................................5, 9

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..........................................................................................................2

Fed. R. Civ. P. 12(f)...............................................................................................................4

Defendants Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph T. Weller, and James C. Kelsoe, Jr. (collectively, the "Individual Defendants") respectfully submit this memorandum in support of their Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC").[1]

## PRELIMINARY STATEMENT

Plaintiffs allege they are investors in four closed-end investment funds, formerly known as RMK High Income Fund, Inc. ("RMH Fund"), RMK Strategic Income Fund, Inc. ("RSF Fund"), RMK Advantage Fund, Inc. ("RMA Fund"), and RMK Multi-Sector High Income Fund, Inc. ("RHY Fund") (collectively, the "Funds").  Plaintiffs filed this action seeking to recover losses concerning their investment in the Funds in the wake of the mid-2007 global credit crisis.

The Individual Defendants were directors and officers of these Funds, with the exception of Mr. Kelsoe, who was an employee of MAM, the Funds' investment advisor.  (*See* CAC ¶¶ 56, 58-62.)  Plaintiffs have filed suit against Messrs. Morgan and Alderman (referred to the CAC as "Director Defendants") in their capacity as directors of the RHY Fund under § 11 of the Securities Act of 1933 ("1933 Act"), alleging that the RHY Fund's Offering Documents[2] contained false and misleading information.  Plaintiffs have filed suit against Messrs. Kelsoe, Weller, and Sullivan (referred to in the CAC as the "Officer Defendants"), under § 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5, alleging that these Defendants committed securities fraud by virtue of alleged misrepresentations and omissions in the Funds'

---

[1]     The Individual Defendants incorporate and adopt the statement of facts and arguments of Morgan Keegan & Company, Inc., Morgan Asset Management, Inc., MK Holding, Inc., and Regions Financial Corporation in their respective motions to dismiss and memoranda of law to the extent such arguments are applicable to the claims asserted against the Individual Defendants.

[2]     The Funds' "Offering Documents" refers to each Fund's respective Registration Statement, Prospectus and Statement of Additional Information.

public filings.  Plaintiffs have also brought "control person" claims against these same Director and Officer Defendants under § 15 of the 1933 Act, and § 20(a) of the 1934 Act.

Plaintiffs' claims fail as a matter of law for multiple reasons, which are set forth fully in the motion to dismiss of Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), and MK Holding, Inc. (referred to as the "Morgan Keegan Motion to Dismiss" or "MK Mem.")  Those grounds for dismissal include the fact that Plaintiffs' claims are time-barred, Plaintiffs' allegations, at most, state claims for mismanagement and not securities fraud, and Plaintiffs fail to plead facts showing actionable misrepresentations and omissions or loss causation.

In addition to the foregoing, Plaintiffs' § 10(b) claim fails as a matter of law for reasons that pertain more directly to the Officer Defendants.  Plaintiffs have failed to plead any facts demonstrating that these Defendants engaged in knowing or intentional misconduct or otherwise acted with the requisite scienter.  This failure requires dismissal of Plaintiffs' § 10(b) claim.

Plaintiffs likewise have failed to plead facts stating a claim for control person liability against the Director and Officer Defendants under §§ 15 or 20(a).  Plaintiffs have failed to plead a primary violation of either the 1933 Act or the 1934 Act and otherwise have failed to plead facts showing that the Director and Officer Defendants exercised the requisite level of control over the primary violators needed to state a claim for control person liability.  Accordingly, these claims fail as a matter of law.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations "'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the well-pleaded factual allegations in a complaint must be construed in favor of

Plaintiffs, the court need not accept as true legal conclusions or unwarranted factual inferences. *See id.* at 1950.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.  A complaint has "facial plausibility" when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  The inference of a "mere possibility of misconduct" is insufficient.  *Id.* at 1950; *see also Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  The Complaint must include more than "labels and conclusions," and must plead facts sufficient "to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.

Because Plaintiffs have brought claims for fraud, Plaintiffs must satisfy the requirements of the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure.[3]  Rule 9(b) requires that all averments of fraud or mistake be pleaded with particularity.  As this Court explained in *Regions Morgan Keegan Open-End Mutual Fund Litig.*, "[t]his heightened pleading standard mandates that plaintiffs alleging fraud 1) specify which statements were fraudulent, 2) identify the defendant(s) who spoke the fraudulent statements, 3) describe when and where the statements were made and 4) explain why the statements were fraudulent."  743 F. Supp. 2d at 754 (quotation marks and citation omitted).

The PSLRA imposes two heightened pleading requirements for securities fraud claims beyond the requirements of Rule 9(b).  First, "'the complaint shall specify each statement alleged

---

[3]     Plaintiffs must meet the heightened pleading requirements with respect to their 1933 Act claims because they have chosen to premise their claims on allegations of fraudulent conduct.  *See In re Regions Morgan Keegan Open-End Mut. Fund Litig.*, 743 F. Supp. 2d 744, 759 (W.D. Tenn. 2010) (citing *Indiana State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009), *recons. den.* 2010 WL 5464792 (W.D. Tenn. Dec. 30, 2010).

    Plaintiffs incorporate allegations of fraud into each of their claims, notwithstanding boilerplate disclaimers to the contrary.  (*See* CAC ¶¶ 317, 332, 343.)  Accordingly, each claim sounds in fraud.  *See, e.g., Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (holding that a "complaint's wholesale adoption of [fraud] allegations" under non-fraud claims for relief subjects a complaint to the requirements of Rule 9(b)); *Rubke v. Capital Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1135 (N.D. Cal. 2006) (same) (quotation omitted), *aff'd* 551 F.3d 1156 (9th Cir. 2009).  For this reason, Plaintiffs must satisfy Rule 9(b)'s requirement with respect to their 1933 Act claims as well.

3

to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omissions is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 344 (W.D. Tenn. 2001) (quoting 15 U.S.C. § 78u-4(b)(1)). Second, "'the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)). "[T]he PSLRA mandates that district courts 'shall, on the motion of any defendant, dismiss the complaint if the requirements of [§§ 78u-4(b)(1) and (2)] are not met.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(3) (alterations in original)); *see also Regions Morgan Keegan Open-End Mut. Fund Litig.*, 743 F. Supp. 2d at 754-55.

Plaintiffs may not satisfy their pleading burden by repeating mere allegations made in other proceedings.[4] Allegations in regulatory proceedings are nothing more than allegations; they are not facts, have not been tested by any court, are immaterial, and cannot, as a matter of law, salvage an otherwise deficient Complaint. *See In re Merrill Lynch & Co, Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("[R]eferences to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure."); *see also Ryan v. Morgan Asset Mgmt., Inc., et al.*, No. 2:08-cv-02162-SHM-dkv (W.D. Tenn. Dec. 15, 2009), Order at 2 (Docket Entry No. 58) ("This Court has no duty to examine a separate complaint filed [in another case] and determine exactly what additional claims for relief Plaintiff intends to plead in this case." (quotation marks and citation

---

[4]    *See* CAC ¶¶ 175-176 (repeating allegations contained in the SEC's Cease and Desist Order); *id.* ¶¶ 177-178 (repeating allegations made in the State Task Force Proceeding); ¶ 179 (repeating allegations made by FINRA); *see also id.* ¶¶ 138-142, 144-150, 151-153 (with respect to each allegation, citing to paragraphs contained in the SEC Cease & Desist Order and prefacing certain allegations with "[a]s alleged by the SEC." Plaintiffs have attached copies of the SEC and State Task Force pleadings as Exhibits D and V to the CAC.

4

omitted)).  The CAC must rise and fall on its own merit, irrespective of generalized allegations made in other proceedings.

## ARGUMENT

I.     Plaintiffs Fail to Plead Facts Showing That Each of the Officer Defendants Acted with the Requisite Scienter.

Plaintiffs assert claims under § 10(b) and Rule 10b-5 of the 1934 Act against the Officer Defendants, which include Messrs. Kelsoe, Weller, and Sullivan.  (*See* CAC Count IV.)  While Plaintiffs make numerous generalized allegations that these Defendants engaged in fraud, Plaintiffs fail to support their claims with particularized facts giving rise to a strong inference that any of these Defendants acted with the requisite level of scienter.

To state a claim under § 10(b) and Rule 10b-5, Plaintiffs must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  "That 'particular state of mind' is known as scienter and requires a plaintiff to show that a defendant's intention was 'to deceive, manipulate, or defraud.'"  *Regions Morgan Keegan Open-End Mut. Fund Litig.*, 743 F. Supp. 2d at 754 (quoting *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)).

A strong inference of scienter is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  At a minimum, Plaintiffs must plead facts demonstrating that each of these Defendants acted intentionally or recklessly, which the Sixth Circuit defines as "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care.'"  *Regions Morgan Keegan Open-End Mut. Fund Litig.*, 743 F. Supp. 2d at 755 (quoting *Mansbach v. Prescott, Ball, & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)).

The Sixth Circuit has identified nine factors probative of strong inference of scienter, which this Court has applied in a related action:

(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Regions Morgan Keegan Open-End Mut. Fund Litig.*, 743 F. Supp. 2d at 756-757 (quoting

*Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001), abrogated in part on other grounds by

*Tellabs,* 551 U.S. at 326).

Plaintiffs' efforts to show scienter with respect to Messrs. Kelsoe, Weller or Sullivan fail as a matter of law for a number of reasons.  First, as a number of courts have recognized, based on the facts pleaded by Plaintiffs, the most compelling inference is that the Funds suffered sharp declines as a result of the global economic crisis, not as the result of fraud by these Defendants. Second, Plaintiffs may not rely on "group pleading" to show sceinter; rather, Plaintiffs must plead facts showing that each of these Defendants acted with the requisite intent.  Finally, the complaint fails to allege facts showing that each of these Defendants had a motive and opportunity to commit securities fraud or otherwise engaged in conscious or reckless misbehavior.

> A.    Plaintiffs Ignore the Most Plausible **Inference Stemming from Their** Allegations.

Under *Tellabs*, "'[t]he Court must take into account plausible opposing inferences.'"  *La. Sch. Emp. Ret. Sys. v. Ernst & Young LLP*, 622 F.3d 471 (6th Cir. 2010) (quoting *Tellabs*, 551 U.S. at 323).  In light of the nature of investments made by these Funds (*i.e.*, the Funds' investments were concentrated in below investment grade debt securities) and in the wake of the global credit crisis, Plaintiffs' allegations suggest a much more plausible inference that must be

drawn; namely, that the statements or omissions at issue stem from the consequences of the global credit crisis and its impact on the Funds, rather than misconduct by the Officer Defendants evidencing a strong inference of scienter.

There can be no question that the Funds disclosed the risk associated with an investment in the Funds and the Funds' investment strategy, which likewise involved considerable risk.  (*See* MK Mem. Part III.A, IV.B.).  The Funds similarly disclosed the risk associated with the Funds' investments in certain types of securities and disclosed that an investment in the Funds amounted to an indirect investment in the securities owned by the Funds.  (*See id.*)  As such, the Funds disclosed that the value of the securities in which the Funds invested were susceptible to market forces and could move up or down, rapidly and unpredictably.  (*See id.* at 23.)

In addition to the Funds' disclosures, there can be no question that the Funds' share price sharply declined in value in the wake of the global credit crisis and that this crisis impacted the market for debt securities in an unprecedented manner.  As former Federal Reserve Chairman Alan Greenspan explained, "[o]n August 9, 2007, and the days immediately following, financial markets in much of the world seized up.  Virtually overnight the seemingly insatiable desire for financial risk came to an abrupt halt as the price of risk unexpectedly surged."  Curley Dec. Ex. S (A. Greenspan, "The Roots of the Mortgage Crisis").[5]

In light of the foregoing, it is certainly a much more plausible inference that the Funds' losses were the result of the impact of global credit crisis on the value of the assets held by the Funds, rather than fraudulent misconduct.  As a number of courts have observed following the financial crisis, "it is much more likely that Defendants . . . underestimated the magnitude of the coming economic crisis and believed that they were taking adequate risk management and cautionary measures to account for any future downturn."  *Woodward v. Raymond James Fin.,*

---

[5]        References to the "Curley Dec." refer to the Declaration of Matthew M. Curley submitted in support of the Morgan Keegan Motion to Dismiss.

*Inc.*, 732 F. Supp. 2d 425, 436 (S.D.N.Y. 2010); *see also In re Societe Generale Sec. Litig.*, 2010
WL 3910286, *7-8 (S.D.N.Y. Sept. 29, 2010) (same); *In re MRU Holdings Sec. Litig.*, -- F.
Supp. 2d --, 2011 WL 650792, *14 (S.D.N.Y. Feb. 17, 2011) (discussing "the opposing and
compelling inference" that defendants engaged in bad business judgments (quotations and
citations omitted));

At most, Plaintiffs in this action have alleged that the Officer Defendants participated in
the possible mismanagement of the Funds.  Even if that were the case, this would be insufficient
to establish scienter.  *See Local 295/Local 851 IBT Employer Group Pension Trust and Welfare
Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 719 (S.D. Ohio 2010).  (*See also* MK Mem.
Part V.)

### B. Plaintiffs Rely on Group Pleading Allegations, Which Are Insufficient under the PSLRA to Establish a Strong Inference of Scienter.

Even if the global credit crisis and its impact on the Funds were not an inference more
compelling than fraud, Plaintiffs plead no facts specific to Messrs. Kelsoe, Weller or Sullivan
showing that these Defendants acted with the requisite scienter.  In lieu of pleading facts
specifically pertaining to each of these Defendants, Plaintiffs largely rely on group pleading
allegations in the hope of showing that these Defendants acted with the requisite level of
scienter.  (*See* CAC ¶¶ 300-303.)   Group pleading, however, is inconsistent with the
requirements of the PSLRA and insufficient to adequately plead scienter.

Plaintiffs do not allege that the Officer Defendants personally made actionable
misrepresentations or other statements that failed to disclose material information.  Rather,
Plaintiffs' allegations pertaining to their § 10(b) claim focus largely on alleged misstatements
and/or omissions in the Funds' public filings.  Plaintiffs then attempt to attribute any
misstatements and/or omissions by the Funds to the Officer Defendants as a result of their
positions vis-à-vis the Funds and/or MAM and their alleged involvement in the preparation of

the Funds' public filings.  Beyond the positions the Officer Defendants may have occupied, however, Plaintiffs fail to specifically tie the Officer Defendants to any particular false statements or omissions in any of the Funds' public filings.   This group pleading technique cannot rescue Plaintiffs' deficient § 10(b) claim against the Officer Defendants.

"'Under the group pleading doctrine, the identification of the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents, such as Annual Reports, prospectuses, registration statements, press releases, or 'other group published information' that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation.'"   *Fifth Third Bancorp*, 731 F. Supp. 2d at 719 (quoting *Durgin v. Mon*, 659 F. Supp. 2d 1240, 1253 (S.D. Fla. 2009)). As this Court is aware, a number of courts have rejected the use of the group pleading doctrine as sufficient to show scienter under the PSRLA.   *See Regions Morgan Keegan Mut. Fund Litig.*, 743 F. Supp. 2d at 756 (assuming applicability of group pleading doctrine, but noting that its use has been rejected by the Fifth Circuit and many district courts).[6]   Respectfully, the Court should not endorse its use here.

The group pleading doctrine runs directly counter to the PSLRA's mandate that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *see also Fifth Third Bancorp*, 731 F. Supp. 2d at 719-720; *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d at 984-87.  Courts rejecting the use of the group pleading doctrine have explained that the use of the phrase "'the defendant' can only be understood to mean each defendant in a multiple defendant case because 'it is inconceivable that Congress intended liability of any defendants to depend on whether they were

---

[6]      "The Sixth Circuit neither adopted nor rejected the group pleading doctrine either before or after the passage of the PSLRA."  *See In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 984 (S.D. Ohio. 2008).

all sued in a single action or were each sued alone in several separate actions.'"  *Fifth Third Bancorp*, 731 F. Supp. 2d at 719-20 (quoting *Huffy Corp.*, 577 F. Supp. 2d at 984)).

"Moreover, a plain reading of the statute indicates that the use of 'the defendant' in the context of the requirement to plead scienter with particularity can only mean that the complaint must plead scienter with particularity as to each defendant in the case." *Id.* at 720 (citing *Tran v. Gonzales*, 447 F.3d 937, 940-41 (6th Cir. 2006)). "Group pleading, dispensing as it does with the need to identify the individual responsible for the alleged misstatement or omission, conflicts with the PSLRA's requirement to plead scienter with particularity as to 'the defendant.'"  *Id.*

With the exception of Mr. Kelsoe (discussed below), Plaintiffs do not plead *any* facts demonstrating that the Officer Defendants knowingly made false or misleading statements and acted with the requisite scienter when doing so.[7]  (*See* CAC ¶¶ 294-299.)  Plaintiffs merely allege that "[o]wing to their positions with the Funds . . . [the Officer Defendants] knew or should have known about the failure to conduct due diligence, the inappropriate and inaccurate NAV calculations, the deficiencies in risk management, and the failure to follow pricing and risk assessment policies during the Class Period."  (CAC ¶ 304; *see also id.* ¶¶ 299.)  This is insufficient, as "[s]cienter . . . cannot be inferred merely because of the defendants' positions in the company or the fact that they had access to the company's financial information.  Instead, 'the [c]omplaint must allege specific facts and circumstances suggestive of their knowledge.'" *Fifth Third Bancorp*, 731 F. Supp. 2d at 726 (quoting  and citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004)); *see also Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009) (rejecting "[g]eneralized facts alleging that the Defendants had access to [a company's] financial information . . . .").

---

[7]      Plaintiffs make certain allegations regarding the alleged conduct of Mr. Kelsoe, discussed *infra*, which are deficient and fail to give rise to a strong inference of scienter.

The CAC contains "no factual allegations . . . that Defendants actually read or reviewed information available . . . and that their review of the available information was sufficiently comprehensive to appreciate the alleged" misstatements or omissions.  *See Fifth Third Bancorp*, 731 F. Supp. 2d at 726.  Plaintiffs' bare allegations that the Officer Defendants knew, or should have known, of the alleged fraud "simply from their review of [information] and their service on committees is tantamount to an allegation of fraud by hindsight and thus is insufficient to establish scienter."  *Id.* at 726.

### C.   Plaintiffs Fail to Allege That the Officer Defendants Had a Motive to Commit Securities Fraud.

Plaintiffs' reliance on group pleading is not surprising given their inability to allege specific and particular facts showing that Messrs. Kelsoe, Weller or Sullivan had a motive to commit securities fraud.  Plaintiffs merely plead motives common to all individuals who may be executives, officers or directors.  This is insufficient to show scienter.  *See PR Diamonds*, 364 F.3d at 689-691.

As an initial matter, Plaintiffs do not allege that any of the Officer Defendants engaged in insider trading or had a self-interested motivation aside from their jobs or salaries.  "[T]he absence of insider sales dulls allegations of fraudulent motive."  *Id.*  Moreover, as discussed further below, motives common to executives and other officers generally, such as a desire for the company to appear successful or a desire to protect their position and increase compensation, are not suggestive of a strong showing of scienter and "are insufficient as a matter of law to establish scienter."  *Fifth Third Bancorp*, 731 F. Supp. 2d at 720.

In hopes of showing scienter, Plaintiffs allege that "Kelsoe, Anthony, Sullivan, and Weller all had an incentive to maximize the reported NAVs of the Funds" in order to increase MAM's 0.65% advisory fee, paid pursuant to the Funds' Investment Advisory Agreements. (CAC ¶ 71.)  Further, Plaintiffs assert that these Individual Defendants received incentive-based

bonus compensation partially "determined by investment management results compared to the Funds' Benchmark Index." (*Id.* ¶ 71; *see also id.* ¶ 21.)

Allegations of a general motive to increase corporate profit and, therefore, an executive's compensation tied to performance fail to support a strong inference of scienter. "[I]f scienter could be pled on the sole basis of executive compensation, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'" *In re Wachovia Equities Sec. Litig.*, 2011 U.S. Dist. LEXIS 36129, at *38 (S.D.N.Y. March 31, 2011) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995)); *see also Regions Morgan Keegan Open-End Mut. Fund Litig.*, 743 F. Supp. 2d at 758 (quoting *PR Diamonds*, 364 F.3d at 690) ("When analyzing the self-interest factor, a court must differentiate between 'motives common to corporation and executives generally' and "'motives to commit fraud.'").

Plaintiffs' allegations of self-interest on the part of the Officer Defendants rely entirely on regurgitated details regarding compensation drawn from the Funds' public disclosures. The CAC is devoid of facts demonstrating that the terms of compensation were anything other than standard industry practice. More importantly, Plaintiffs fail to plead any facts demonstrating that the Officer Defendants ever benefited from the alleged fraud in the form of materially increased compensation. For example, Plaintiffs plead no facts showing how the alleged overvaluation of securities held by the Funds materially inflated the Funds' NAVs or improved the Funds' overall performance, which according to Plaintiffs' theory would have increased the amount of the Officer Defendants' compensation. The failure to include such allegations demonstrates that Plaintiffs cannot show scienter with respect to Messrs. Kelsoe, Weller or Sullivan.

**D.**      **Plaintiffs Otherwise Fail to Plead Particularized Facts Demonstrating Conscious Misbehavior or Reckless Conduct Relating to Any of the Alleged Misrepresentations or Omissions.**

Plaintiffs remaining allegations are an attempt to plead scienter by alleging that Mr. Kelsoe engaged in intentional or conscious misbehavior.  Plaintiffs' allegations, however, are insufficient as a matter of law, as these allegations fail to show a strong inference of scienter with respect to Mr. Kelsoe.

1.      Plaintiffs' Allegations Regarding the Valuation of the Funds' Assets Fail to Show a Strong Inference of Scienter.

The CAC parrots allegations from a complaint filed by the SEC in a separate proceeding, which alleged that Mr. Kelsoe "manipulated" and/or "screened" price quotations from broker-dealers, and submitted "phony 'price adjustments' to the Fund Accounting Department" that he knew were being used to calculate the Funds' NAV.  (CAC ¶¶ 137-153.)  As set forth by in Morgan Keegan's Motion to Dismiss, such rote copying from a pleading in another action is improper.  (*See* MK Mem. at 10-11.)  Regardless, these allegations fail to give rise to a strong inference of scienter with respect to Mr. Kelsoe or any of the other Officer Defendants.

First, the CAC alleges that "Morgan Keegan's Fund Accounting Department was responsible for the calculation of the Funds' NAVs and for pricing portfolio securities," and "MAM's Valuation Committee . . . oversaw the Fund Accounting Department's processes."  (*Id.* ¶ 133.)  Rather than pleading fraudulent intent, such allegations would support the more compelling inference that Mr. Kelsoe was *not* responsible for the final valuation of the Funds' assets, only for providing his input into the valuation process.  (*See* CAC ¶¶ 127-136.)

Second, according to the very valuation policies cited by Plaintiffs, Mr. Kelsoe was permitted to question a quotation and/or provide proposed price adjustments to Fund Accounting if he had a "reasonable basis to believe that the price provided [did] not accurately reflect the fair value of the portfolio security."  (*Id.* ¶ 133 (quotations omitted).)  Again, such allegations

13

support the more compelling inference that broker-dealer quotes submitted to the Funds to be used in verifying the price of securities were *not* determinative of the values assigned to the securities, not a strong inference of scienter.

Under Plaintiffs' theory, in order to plead a strong inference of scienter, Plaintiffs must have pleaded particularized facts demonstrating that Mr. Kelsoe sent price adjustments to Fund Accounting that he did not believe accurately reflected a security's value, while also *knowing* that Fund Accounting was failing to take any action to verify his adjustments.[8]  Plaintiffs' allegations fail to make this connection.

Plaintiffs' remaining allegations likewise weigh *against* a strong inference of scienter. For example, Plaintiffs allege that Mr. Kelsoe tardily informed Fund Accounting of an impending asset devaluation, coupled with the assertion that the delayed report was "deliberate." Plaintiffs acknowledge, however, that Mr. Kelsoe informed Fund Accounting of the quotation prior to March 31, 2007, the date the broker-dealer was scheduled to deliver it.  This date appears to coincide with end of the quarter, undercutting any inference that Mr. Kelsoe intentionally withheld information required to be included in quarterly disclosures.   (CAC ¶¶ 151-153.)

Plaintiffs' allegation that Mr. Kelsoe interfered with internal Morgan Keegan due diligence in order to conceal alleged fraud is speculation that is not supported by any factual allegations.  (*See* CAC ¶¶ 154-160 (alleging that Mr. Kelsoe "stalled [Kim Escue, a Morgan Keegan WMS analyst], ignored her calls, and tried to persuade her that a telephonic meeting might suffice" in order to conceal "his lack of professional management, as well as his manipulation of the Funds' NAV and portfolio securities' prices").)  According to documents

---

[8]     Similarly, the allegation that Mr. Kelsoe "pressured" broker-dealers to increase the quoted prices of certain securities does not establish fraud.  (*See* CAC ¶¶ 140-153.)  From the facts alleged by Plaintiffs, it is a more plausible inference that Mr. Kelsoe simply asked a broker to increase a quote because he believed it was inadequate, especially where the Funds' valuation guidelines authorized the use of multiple sources of information to verify prices, and where another entity was responsible for verifying any proposed adjustments.

submitted by Plaintiffs, the due diligence in question does not even relate to the Funds at issue in this litigation.  (*See* Stranch Decl., Ex. T, E-mail from K. Escue ("I was told that *the Intermediate fund* [sic] had experienced no defaults and *the High Yield product* had experienced no more defaults than what would be expected . . . .") (emphasis supplied).)[9]

Finally, Plaintiffs' allegations address only Mr. Kelsoe and plead no particularized facts regarding Messrs. Weller or Sullivan.  Plaintiffs allege that "Weller was a member of the 'Valuation Committee' that purportedly oversaw the Funds' accounting processes and evaluated the prices assigned to securities," but rely entirely on his service on the committee as evidence of scienter.  (CAC ¶¶ 298-99.)  This is insufficient to show scienter.  "[F]raudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information."  *PR Diamonds*, 364 F.3d at 688.  Similarly, merely alleging that "[h]ad the Fund Accounting Department followed stated policies and procedures, it would have discovered that the price Kelsoe provided was false" is insufficient.  (CAC ¶ 145.)  As set forth above, such allegations do not show scienter.  *Cf. In re SCB Computer Tech. Sec. Litig.*, 149 F. Supp. 2d at 346 (failure to follow accounting standards insufficient to show scienter).

2.   **Plaintiffs' Allegations Regarding the Concentration of the Funds' Assets Fail to Show a Strong Inference of Scienter.**

Plaintiffs allege that unspecified Defendants intentionally "conceal[ed] significant risks—including a lack of diversification—resulting from the concentration of the Funds' portfolio securities in ABS."  (CAC ¶ 14.)  Plaintiffs' inability to tie allegations regarding concentration to the Officer Defendants renders these allegations insufficient to show scienter.

---

[9]   Moreover, Plaintiffs' assertion that Ms. Escue "determined that it was in Morgan Keegan's best interest to 'drop coverage' of the Funds" is contradicted by the very contents of the documents submitted by Plaintiffs, in which it is shown that Morgan Keegan decided to drop WMS analyst coverage of *all* proprietary products.  (*See* Stranch Decl., Ex. U, E-mail from K. Escue (discussing how "Wealth Management dropp[ed] coverage of all proprietary products").

Moreover, the conclusion that the Funds concealed risk associated with the concentration of the Funds' respective portfolio securities is entirely undermined by the Funds' public filings. The Funds disclosed their respective investments at all relevant times in annual, semi-annual, and quarterly reports.  (*See* MK Mem. at 30-32; Part IV.C.)  The Funds also disclosed each and every asset contained in the Funds' portfolios on a quarterly basis, each of which unequivocally disclosed that the Funds' invested more than 25% of their assets in ABSs.  Such disclosures run directly contrary Plaintiffs' theory of scienter.  *See, e.g., Fifth-Third Bancorp*, 731 F. Supp. 2d at 727 ("[C]utting strongly against a finding of scienter is the fact that much of the information that Plaintiffs claim was concealed was actually reported.").

Further, Plaintiffs' conclusory allegation that certain assets were misclassified in "a deliberate effort to cover up the Funds' concentration in ABS (particularly subprime mortgage-related ABS) and to create the appearance of proper diversification," fails to give rise to a strong inference of scienter.  (*See* CAC ¶ 99.)  The CAC contains no allegations that any of the Officer Defendants intentionally misclassified any assets.  (*See* CAC ¶¶ 98-99.)  Instead, Plaintiffs rely entirely on the argument that the alleged misclassifications "involve[] basic financial concepts that were (or should have been) well-within the portfolio managers' knowledge and expertise." (CAC ¶ 98.)  Allegations that someone "should have known better" fall well short of pleading scienter.[10]  In fact, Plaintiffs' own allegations undermine any inference of scienter.  It is entirely inconsistent with a strong inference of scienter for any of the Defendants to misclassify such securities and then disclose the misclassification in the Funds' periodic filings, where, according to Plaintiffs, it would have been obvious that such securities had been misclassified.

---

[10]     Defendants are not required to "proffer a nonfraudulent explanation" or other alternative to Plaintiffs' fraud theory. *See Konkol*, 590 F.3d at 403.  (*See* MK Mem. at 31.)  Plaintiffs themselves bear the burden of pleading facts giving rise to a strong inference that any alleged misclassification was fraudulent—a burden which they have not met here.

16

### 3. The Funds' Choice of a Benchmark Index Fails to Show that the Officer Defendants Acted with the Requisite Level of Scienter.

While Plaintiffs allege that the Funds' choice of a benchmark index was "fraudulent," they plead no facts alleging that any of the Officer Defendants played any role in selecting the index.   (*See* CAC ¶¶ 26-28; 161-173.)   Likewise, Plaintiffs plead no facts supporting an inference that any of these Defendants knowingly or recklessly chose an incorrect index for the purpose of misrepresenting the content of the Funds' portfolios.  (*See* MK Mem. at 32-33; Part IV.E.)

### 4. Allegedly Inadequate Due Diligence Fails to Support a Strong Inference of Scienter.

Plaintiffs allege that a non-defendant, Al Landers, failed to perform adequate due diligence on the Funds' investments, relying on a set of e-mails purportedly demonstrating that Mr. Landers, "a MAM portfolio analyst who was known to be Kelsoe's confidant," made belated requests for information to broker dealers about securities that had already been purchased by the Funds.  (*See, e.g., id.* ¶¶ 115-126.)  Plaintiffs, however, fail to plead any facts showing that any of the Officer Defendants knew of the supposed inadequacy of the due diligence at issue.

Plaintiffs otherwise rely on vague allegations of a confidential witness, "Confidential Witness 1," who supposedly alleges that Kelsoe "admitted that he was too busy to do research on the securities purchased for the Funds' portfolios and that he did not have time to conduct pre-purchase diligence."  (*Id.* ¶ 114.)  Plaintiffs admittedly fail to plead basic information demonstrating that CW1 was in a position to know whether such facts were true.  (*See Id.* ¶ 114 n. 23 (admitting that Plaintiffs failed to plead such information).)  Accordingly, such allegations fail to give rise to a strong inference of scienter on the part of the Officer Defendants.  (*See* MK Mem. at III.E.)

## II.     Plaintiffs Fail to State a Claim Against the Director Defendants under § 11 of the 1933 Act

Plaintiffs allege that the Director Defendants, Messrs. Alderman and Morgan, violated § 11 of the 1933 Act, as a result of their status as signatories to the RHY Fund's Offering Documents.   As set forth in the Morgan Keegan Motion to Dismiss, Plaintiffs have failed to identify material misstatements and/or omissions in the RHY Fund's Offering Documents, particularly in light of the disclosures actually contained in those Documents.   (*See* MK Mem. Part V.)  Plaintiffs' failure to identify any such misstatements and/or omissions renders their § 11 claims against Messrs. Alderman and Morgan inadequate as a matter of law.

## III.    Plaintiffs Fail to Plead Facts Sufficient to Demonstrate That Any of the Individual Defendants Are Control Persons under § 15 or § 20(a).

In addition to alleging that the Director Defendants violated § 11 of the 1933 Act in connection with the RHY Fund's Offering Documents, and that the Officer Defendants violated § 10(b) the 1934 Act, Plaintiffs likewise allege that the Director Defendants are liable as "control persons" of the RHY Fund under § 15 of the 1933 Act (CAC ¶¶ 343-352), and that the Director and Officer Defendants are liable as "control persons" under § 20(a) of the 1934 Act (CAC ¶¶ 360-367).  These claims fail as a matter of law.

As an initial matter, Plaintiffs may not seek to hold the Director and Officer Defendants liable both primarily under §§ 11 and 10(b), and as control persons under §§ 15 and 20(a).  *See, e.g.,  Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999); *see also P.R. Diamonds*, 364 F.3d at 697 n.4 (noting this principle but declining to decide the issue where plaintiffs had not pleaded a primary violation).  Control person liability under §§ 15 and 20(a) is an alternative, and not a supplement to, primary liability under §§ 11 and 10(b).  *See Lemmer v. Nu-Kote Holding, Inc.*, 2001 U.S. Dist. LEXIS 13978, at *41-42 (N.D. Tex. Sept. 6, 2001), *aff'd* 71 Fed. Appx. 356 (5th Cir. 2003).

Even if such claims could be pleaded alternatively, Plaintiffs have not pleaded the elements of control person liability under §§ 15 or 20(a).  To state a claim, Plaintiffs must plead facts showing that each Director and Officer Defendant possessed both "'power to control the specific transaction or activity upon which the primary violation is predicated'" and "'actual participation (*i.e.*, exercise [of] control) in the operations of the primary violator in general.'" *Azzolini v. CorTS Trust II for Provident Fin. Trust I*, 2005 U.S. Dist. LEXIS 31853, *42 (E.D. Tenn. Sept. 16, 2005) (quoting *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 692 (M.D. Tenn. 2000)).[11]  Plaintiffs have failed to meet this standard.

First, Plaintiffs fail to establish primary violations of the 1933 Act and the 1934 Act, and therefore cannot state a claim for control person liability.  For example, the Director and Officer Defendants are alleged to be control persons of the Funds, yet Plaintiffs plead *no* allegations giving rise to any inference of the Funds' scienter.  *See P.R. Diamonds*, 364 F.3d at 697-698 (holding that "the Complaint fails to state a predicate Section 10(b) or Rule 10b-5 claim against [the company] because it fails—indeed, hardly attempts--to plead scienter on the Company's part").  (*See also* MK Mem. at 24-25.)

Second, Plaintiffs fail to plead facts sufficient to establish that the Director or Officer Defendants exercised control over the Funds with regard to the conduct in question.  They rely entirely upon recitations of the relevant legal standard, coupled with a conclusory assertion that the Director and Officer Defendants' positions and job descriptions automatically gave them control over the Funds and the purportedly fraudulent conduct.  (*See* CAC ¶¶ 347-349; 363-364.)  Such pleading is entirely insufficient and Plaintiffs' claims must be dismissed.  *Frank v. Dana Corp.*, 649 F. Supp. 2d 729, 746 (N.D. Ohio 2009).  While this Court has held that

---

[11]     Some district courts in the Sixth Circuit also have required Plaintiffs to show culpable participation, or that "the controlling person was in some meaningful sense a culpable participant in the primary violation." *In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1032 (N.D. Ohio 2000).

"[w]hether a party exercised the requisite control involves a factual analysis best saved for later determination," *Regions Morgan Keegan Open-End Fund Litig.*, 743 F. Supp. 2d at 761, where a party utterly fails to plead any facts to support their claims, dismissal is appropriate. *See Iqbal*, 129 S. Ct. at 1949-50.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Individual Defendants respectfully request that the Court dismiss the CAC.

DATED this 13th day of April, 2011.

Respectfully submitted,

SUTHERLAND ASBILL &
BRENNAN LLP

/s/ S. Lawrence Polk
S. Lawrence Polk
999 Peachtree Street NE
Atlanta, GA 30309
(404)853-8225
larry.polk@sutherland.com

*Attorney for Allen B. Morgan, Jr.,*
*J. Kenneth Alderman, Brian B. Sullivan,*
*Joseph T. Weller, and James C. Kelsoe, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**BRANSTETTER STRANCH JENNINGS, PLLC**
J. GERARD STRANCH, IV
227 Second Avenue, North
Nashville, TN 37201

**LABATON SUCHAROW LLP**
JOEL H. BERNSTEIN
LOUIS GOTTLIEB
DAVID J. GOLDSMITH
STEFANIE J. SUNDEL
MICHAEL WOOLLEY
140 Broadway
New York, NY 10005

**PEARSON SIMON WARSHAW & PENNY, LLP**
GEORGE S. TREVOR
44 Montgomery Street, Suite 2450
San Francisco, CA 94104

**CABANISS JOHNSTON GARDNER DUMAS & O'NEAL LLP**
CRAWFORD S. MCGIVAREN
R. CARLTON SMYLY
Suite 700, Park Place Tower
2001 Park Place North
Birmingham, AL 35203

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
75 E. 55th Street
New York, NY 10022

**BASS, BERRY & SIMS PLC**
Michael L. Dagley
Matthew M. Curley
Britt K. Latham
150 Third Avenue South, Suite 2800
Nashville, TN 37201

**BASS, BERRY & SIMS PLC**
Shepherd D. Tate
Michael A. Brady
100 Peabody Place, Suite 900
Memphis, TN 38103-3672

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York  1004

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203

**PURSLEY LOWERY MEEKS LLP**
R. HAL MEEKS
ROBIN A. BESAW
260 Peachtree Street NW
Atlanta, GA 30303

/s/ S. Lawrence Polk_____

12028743.1

21