IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION<br><br>This Document Relates to:<br><br>*In re Regions Morgan Keegan Closed-End Fund Litigation*,<br><br>No. 2:07-cv-02830-SHM-dkv | No. 2:09-md-02009-SHM |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF ALLEN B. MORGAN, JR., J. KENNETH ALDERMAN, BRIAN B. SULLIVAN, JOSEPH T. WELLER, AND JAMES C. KELSOE, JR.**

SUTHERLAND ASBILL & BRENNAN, LLP
S. Lawrence Polk
999 Peachtree Street NE
Atlanta, GA 30309
(404)853-8225
larry.polk@sutherland.com

*Attorney for Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph T. Weller, and James C. Kelsoe, Jr.*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..................... 1

ARGUMENT ..................... 1

I. Plaintiffs Fail to State a Claim Against the Director Defendants under § 11 of the 1933 Act ..................... 1

II. Mr. Kelsoe May Not Be Held Liable for Alleged Misrepresentations and Omissions Made by the Funds. ..................... 2

A. Mr. Kelsoe Did Not Sign the Funds' Public Filings And Did Not Make Statements on Behalf of the Funds. ..................... 2

B. Plaintiffs Have Failed to Plead Facts Giving Rise to a Strong Inference of Scienter on the Part of Mr. Kelsoe And May Not Impute Scienter to the Funds And the Other Officer Defendants. ..................... 5

III. Plaintiffs Have Failed To Plead Any Facts Demonstrating that the Officer Defendants Acted with the Requisite Scienter. ..................... 5

IV. Plaintiffs Continue to Ignore the Most Plausible Inference Stemming from Their Allegations. ..................... 7

V. Plaintiffs Fail To State a Claim for Control Person Liability Under Either § 15 of the 1933 Act or § 20(a) of the 1934 Act. ..................... 8

CONCLUSION ..................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........ 9

*Azzolini v. CorTS Trust II for Provident Fin. Trust I*,
2005 WL 2253971 (E.D. Tenn. Sept. 16, 2005) ........ 8

*Desai v. Gen. Growth Props.*,
654 F. Supp. 2d 836 (N.D. Ill. Sept. 17, 2009) ........ 8

*Graham v. Barriger*,
699 F. Supp. 2d 612 (S.D.N.Y. 2009) ........ 9

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002) ........ 9

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........ 8

*In re Ford Motor Co. Sec. Litig.*,
381 F.3d 563 (6th Cir. 2004) ........ 4

*In re Regions Morgan Keegan Open-End Fund Litig.*,
743 F. Supp. 2d 744 (W.D. Tenn. 2010) ........ 9

*Ind. State Dist. Council of Laborers v. Omnicare, Inc.*,
583 F.3d 935 (6th Cir. 2009) ........ 4

*Janus Capital Group, Inc. v. First Deriv. Traders*,
131 S. Ct. 2296 (2011). (*See also* MAM/MK Reply at 14.) ........ 2, 3, 4

*Local 295/Local 851 IBT Employer Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*,
731 F. Supp. 2d 689 (S.D. Ohio 2010) . (*See also* Ind. Defs.' Mem. at 11-12.) ........ 6, 7

*Miller v. Champion Enters. Inc.*,
346 F.3d 660 (6th Cir. 2003) ........ 4

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ........ 7

*Reese v. BP Exploration (Alaska), Inc.*,
643 F.3d 681 (9th Cir. 2011) ........ 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ....................................................................................................................9

Defendants Allen B. Morgan, Jr. ("Morgan"), J. Kenneth Alderman ("Alderman"), Brian B. Sullivan ("Sullivan"), Joseph T. Weller ("Weller"), and James C. Kelsoe, Jr. ("Kelsoe") (collectively, the "Individual Defendants") respectfully submit this reply memorandum in further support of their Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC").[1]

**PRELIMINARY STATEMENT**

In addition to the arguments set forth in the motions to dismiss of the other Defendants, Plaintiffs' claims also fail as a matter of law for reasons that pertain specifically to the Individual Defendants. First, as an employee of MAM, the Funds' investment advisor, Mr. Kelsoe may not be held liable under § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") for alleged misstatements and omissions contained in the Funds' public filings, nor may his purported scienter be imputed to the Funds or any of the Funds' officers. Further, Plaintiffs have failed to plead any facts giving rise to a strong inference of scienter on the part of Messrs. Kelsoe, Sullivan, or Weller, as required to state a claim under § 10(b). Finally, Plaintiffs have failed to plead facts that plausibly allege that any of the Individual Defendants were "control persons" under § 15 of the Securities Act of 1933 ("1933 Act"), or § 20(a) of the 1934 Act.

**ARGUMENT**

**I. Plaintiffs Fail to State a Claim Against the Director Defendants under § 11 of the 1933 Act**

Plaintiffs have brought claims against Messrs. Morgan and Alderman (referred to the CAC as the "Director Defendants") under § 11 of the 1933 Act on the grounds that they were signatories of the RHY Fund's registration statement. (CAC ¶ 322.) Plaintiffs, however, have

---

[1] The Individual Defendants incorporate and adopt the arguments of Morgan Keegan & Company, Inc. ("Morgan Keegan" or "MK"), Morgan Asset Management, Inc. ("MAM"), MK Holding, Inc. ("MK Holding"), and Regions Financial Corporation ("Regions") in support of their respective motions to dismiss to the extent such arguments are applicable to the claims asserted against the Individual Defendants. The defined and/or capitalized terms set forth herein are the same as those set forth in the initial memorandum submitted by the Individual Defendants, except as otherwise indicated.

failed to identify any material misstatements and/or omissions in the RHY Fund's Offering Documents, and have not overcome the detailed risk disclosures contained therein. (*See* MAM/MK Mem. Part V; Pls.' Opp. at 9 n.6; MAM/MK Reply Part V.) Accordingly, Plaintiffs' 1933 Act claims against Messrs. Alderman and Morgan fail as a matter of law.

## II. Mr. Kelsoe May Not Be Held Liable for Alleged Misrepresentations and Omissions Made by the Funds.

Plaintiffs have asserted claims against Messrs. Kelsoe, Sullivan, and Weller (referred to in the CAC as the "Officer Defendants"), under § 10(b) of the 1934 Act and Rule 10b-5. Only Messrs. Weller and Sullivan, however, were actual officers of the Funds. (*See* CAC ¶¶ 56, 58-59.) Plaintiffs assert no meaningful allegations against these individuals. Rather, Plaintiffs focus on the alleged conduct of Mr. Kelsoe, who was an employee of MAM, which served as the Funds' investment adviser. Only an investment company, however, may be held liable under § 10(b) as the "maker" of an allegedly fraudulent misstatement or omission contained in that company's public filings, *not* the investment adviser or its employees. *See Janus Capital Group, Inc. v. First Deriv. Traders*, 131 S. Ct. 2296 (2011). (*See also* MAM/MK Reply at 14.) Thus, Plaintiffs' claim against Mr. Kelsoe fails as a matter of law, as well as Plaintiffs' effort to use their allegations against Mr. Kelsoe to impute scienter to the Funds and/or the other Officer Defendants.

### A. Mr. Kelsoe Did Not Sign the Funds' Public Filings And Did Not Make Statements on Behalf of the Funds.

Mr. Kelsoe was an employee of MAM, not the Funds. This fact is not in dispute. (*See* MAM/MK Mem. at 25 n.24; Pls.' Opp. at 37-38; CAC ¶ 56.) In light of *Janus*, and the Supreme Court's holding that investment advisors are not "makers" of statements issued by funds, MAM may not be held liable for statements made by the Funds under § 10(b). *See Janus*, 131 S. Ct. at 2302. Plaintiffs certainly cannot circumvent *Janus* by characterizing Mr. Kelsoe as an "agent" of

the Funds or by labeling him an "Officer Defendant." (*See* Pls.' Opp. at 37; CAC ¶¶ 60, 354.) As Plaintiffs must concede that MAM may not be held liable under § 10(b), it logically follows that Mr. Kelsoe, as a MAM employee, may not be held liable for statements made by the Funds, for the same reasons.

Plaintiffs nevertheless attempt to premise liability with respect to Mr. Kelsoe under § 10(b) on alleged misstatements and/or omissions in the Funds' public filings by relying on letters Mr. Kelsoe signed, which were included in the Funds' annual and semi-annual reports. (*See* Pls.' Opp. at 38.) Importantly, however, the allegations in the CAC and the Funds' public filings themselves clearly show that Mr. Kelsoe never actually signed or certified the Funds' annual or semi-annual reports or any of the Funds' other public filings. *See* Declaration of Matthew M. Curley ("Curley Dec.") Exs. I, J, K, L, M, N (Docket No. 199). (*See also* CAC ¶ 300.) And, Plaintiffs do not allege that Mr. Kelsoe signed the Funds' registration statements or quarterly reports. Rather, the Funds' public filings, as filed with the SEC *by the Funds*, were signed by the Funds' officers, not Mr. Kelsoe. *See* Curley Dec. Exs. I, J, K, L, M, N; *see also Reese v. BP Exploration (Alaska), Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011) (applying *Janus* and observing that a defendant cannot be held liable under the federal securities laws when another entity "bore a statutory obligation to file with the SEC, and there is no allegation that [the defendant] made the filings and falsely attributed them to the [entity filing the SEC documents]").

The letters signed by Mr. Kelsoe took the form of "Management Discussions of Fund Performance" for each Fund. *See* Curley Dec. Exs. I, J, K, L, M, N. To the extent Mr. Kelsoe could be held liable for anything in the Funds' public filings, such liability would necessarily be limited to the statements made in the letters that are directly attributable to him. *See Janus*, 131 S. Ct. at 2302 (holding that a party can only be liable for statements he made, and ordinarily "a statement was made by – and only by – the party to whom it is attributed"). Plaintiffs, however,

have failed to establish that these Management Discussions contained any actionable misstatements or omissions. (*See* CAC ¶¶ 185-230.)

Each Management Discussion signed by Mr. Kelsoe contained generalized, high-level overviews of each Fund's performance over the time period in question, including discussions of the Funds' dividend and performance vis-à-vis the Funds' chosen benchmark index. *See* Curley Dec. Exs. I, J, K, L, M, N. These analyses of historical performances and forward-looking statements[2] regarding the Funds' future prospects are far too generalized and vague to give rise to liability under the federal securities laws. *Id.* It is well-settled that such generalized statements of corporate optimism, or "puffery," are not actionable under the federal securities laws. *See Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 944 (6th Cir. 2009) ("statements of optimism about earnings and claim predicting 'income growth consistent with . . . historically superior performance' were 'puffery'") (citation omitted); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570-71 (6th Cir. 2004) ("Courts everywhere 'have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace-loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available.'") (citations omitted).[3]

---

[2] Forward-looking statements were also accompanied by meaningful cautionary language, within the meaning of the PSLRA's safe harbor. *See, e.g.*, Curley Dec. Ex. J (2006 Ann. Rep. at 3 (providing, *inter alia*, that "[m]arket forecasts provided in this report may not necessarily come to pass" and "[t]here is no assurance that the Fund will achieve its investment objectives"); *see also Miller v. Champion Enters. Inc.*, 346 F.3d 660, 678 (6th Cir. 2003) (holding that because "the statements in . . . Letter to Shareholders were both forward-looking within the meaning of the PSLRA, and that they were accompanied by meaningful cautionary language, [they] are subject to the safe harbor provisions of the PSLRA and are therefore not actionable").

[3] Plaintiffs' allegation that it was misleading for Mr. Kelsoe to compare the Funds' performance to their chosen benchmark index fails to support a claim under § 10(b). (*See, e.g.,* CAC ¶ 194.) Plaintiffs plead no facts alleging that Mr. Kelsoe played any role in choosing a benchmark index for the Funds, nor

**B. Plaintiffs Have Failed to Plead Facts Giving Rise to a Strong Inference of Scienter on the Part of Mr. Kelsoe And May Not Impute Scienter to the Funds And the Other Officer Defendants.**

Plaintiffs' § 10(b) claims against Mr. Kelsoe also fail because the CAC fails to plead facts giving rise to a strong inference that Mr. Kelsoe made any of the statements attributable to him with the requisite scienter. Each of the allegations regarding Mr. Kelsoe's purported scienter relates to the valuation of each Fund's portfolio securities and calculation of each Fund's daily NAV. (*See* CAC ¶¶ 137-160; Pls.' Opp. at 30-40.) A fund's daily publication of its NAV is a statement by the fund itself, not its investment advisor. (Pls.' Opp. at 58 ("The Funds, like all mutual funds, published their NAVs each trading day.") Mr. Kelsoe cannot be held liable for these statements. In any event, Plaintiffs have failed to plead any facts giving rise to a strong inference that Mr. Kelsoe knowingly misvalued securities. (Ind. Def. Mem. at 13-15.)

Plaintiffs rely nearly exclusively on conclusory allegations that Mr. Kelsoe engaged in intentional or conscious misbehavior to plead scienter against the Funds and the other Officer Defendants. (*See* Pls.' Opp. at 30-40; MK/MAM Reply at 15-17.) Plaintiffs, therefore, have failed to plead facts giving rise to a strong inference of scienter on the part of any Defendant who can actually be held primarily liable under § 10(b), and their claims fail as a matter of law.

**III. Plaintiffs Have Failed To Plead Any Facts Demonstrating that the Officer Defendants Acted with the Requisite Scienter.**

Plaintiffs likewise have failed to plead facts giving rise to a strong inference of scienter on the part of Messrs. Weller and Sullivan. (*See* Ind. Defs.' Mem. at 5-17; *see also* Pls.' Opp. at 30-40; CAC ¶¶ 299-304.) Importantly, Plaintiffs have failed to allege specific and particular facts showing that either Mr. Weller or Mr. Sullivan had any motive to commit securities fraud.

---

do they plead any facts plausibly alleging that he made any such statements knowing that the Funds' choice of a benchmark index was improper. (*See* MK/MAM Reply at 20.) Plaintiffs also fail to plead any violation of the Funds' "25% 'same industry' fundamental investment limitations," (CAC ¶¶ 189, 193, 211, 214), much less that Mr. Kelsoe had an obligation to disclose such "violations" in his limited Management Discussion of Fund performance, or that any such failure to disclose was material in light of the Funds' quarterly disclosure of their portfolio holdings. (*See* MK/MAM Reply at 17-19.)

(*See* Pls.' Opp. at 47, n.34). Plaintiffs merely make conclusory allegations of generalized motives common to all individuals who may be executives, officers or directors. (*See* CAC ¶¶ 21, 71.) Such allegations are insufficient to show scienter. *See Local 295/Local 851 IBT Employer Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 720 (S.D. Ohio 2010) (holding that motives such as an officer's desire to protect his job and compensation, or for the company to appear successful, are generalized motives that do not support a strong inference of scienter). (*See also* Ind. Defs.' Mem. at 11-12.)

Rather than plead such facts, Plaintiffs focus on alleged wrongdoing by Mr. Kelsoe, hoping the Court will overlook the glaring deficiencies in their allegations against Messrs. Weller and Sullivan. (*See* Pls.' Opp. at 37-38, 38 n.28, 47-48.) This strategy fails for two reasons: (1) Mr. Kelsoe was an employee of the Funds' investment adviser, not the Funds; and (2) Plaintiffs plead no facts alleging that either Messrs. Weller or Sullivan knew of any alleged misconduct, other than conclusory assertions of access to information by virtue of their positions. (*Id.* at 38-39, 38 n.28, 47-48.) For example, Plaintiffs suggest that Mr. Weller ignored valuation procedures by turning a "blind eye" to Mr. Kelsoe's allegedly "bogus 'price adjustments,'" yet plead no facts alleging how Mr. Weller had knowledge of the alleged fraud. (*Id.* at 38-39.) Instead, Plaintiffs merely rely on Mr. Weller's role with the Funds in the hope of imputing this alleged knowledge and intent to him. (*Id.*) Similarly, Plaintiffs allege that Mr. Weller was reckless by not requesting "supporting documentation" for Mr. Kelsoe's price adjustments, yet fail to identify what exactly Mr. Weller should have requested or how it would have revealed purported "fraud." (*Id.*; MK/MAM Reply at 16-17.)

With respect to Mr. Sullivan, Plaintiffs similarly suggest that he should have known from his position that errors existed in the Funds' public filings regarding the classification of securities, the level of diversification in the portfolios, and the alleged misleading nature of the

Funds' chosen benchmark index. (*See* Pls.' Opp. at 47-48.) Bare allegations that an officer "should have known" something are insufficient as a matter of law. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) ("Contrary to Plaintiffs' assertions, fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information.").

Beyond the positions these Defendants may have occupied, Plaintiffs fail to specifically allege facts giving rise to a strong inference that either Mr. Weller or Mr. Sullivan had personal knowledge of alleged misstatements or omissions in any of the Funds' public filings. *See id.* Plaintiffs cannot use "group pleading" to plead scienter and salvage their deficient 1934 Act claims against the Officer Defendants. (*See* Ind. Defs.' Mem. at 8-11; MK/MAM Mem. at 24-26; MK/MAM Reply at 12-13.)

## IV. Plaintiffs Continue to Ignore the Most Plausible Inference Stemming from Their Allegations.

It is certainly a much more plausible inference that the Funds' losses were the result of the impact of the global credit crisis on the value of the assets held by the Funds, rather than fraudulent misconduct. (*See* MAM/MK Reply at 20-23.) Moreover, without any specific allegations that the Officer Defendants' acted with scienter, a far more plausible inference to be drawn from Plaintiffs' allegations is that the Funds failed to anticipate the extent to which risks inherent in securities held by the Funds would materialize in the midst of a severe financial downturn. But, inferences of mismanagement combined with the onset of a global financial crisis simply do not give rise to an inference of scienter or an actionable claim under the federal securities laws. *See Fifth Third Bancorp*, 731 F. Supp. 2d at 719. (*See also* MK Mem. Part V; MAM/MK Reply at 25-27.)

## V. Plaintiffs Fail To State a Claim for Control Person Liability Under Either § 15 of the 1933 Act or § 20(a) of the 1934 Act.

Plaintiffs have failed to plead facts alleging that any of the Individual Defendants were "control persons" within the meaning of § 15 of the 1933 Act or § 20(a) of the 1934 Act. Plaintiffs have failed to plead a primary violation of the securities laws, which is a prerequisite to control person liability. Additionally, Plaintiffs have failed to establish that each Individual Defendant possessed both "power to control the specific transaction or activity upon which the primary violation is predicated" as well as "actual participation (i.e., exercise [of] control) in the operations of the primary violator." *Azzolini v. CorTS Trust II for Provident Fin. Trust I*, 2005 WL 2253971, at *13 (E.D. Tenn. Sept. 16, 2005) (quoting *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 692 (M.D. Tenn. 2000)).

Plaintiffs' theory of control-person liability rests on a conclusory recitation of the Director Defendants' "senior executive positions" that allegedly involved them in the RHY Fund's "'day-to-day' operations." (Pls.' Opp. at 89 n.65, 91-92.)[4] Plaintiffs may not rely solely on an inference of control drawn from an individual's position as an officer or director of a company alleged to have violated the federal securities laws to state a claim for control person liability. *See, e.g.*, *Desai v. Gen. Growth Props.*, 654 F. Supp. 2d 836, 863 (N.D. Ill. Sept. 17, 2009) (holding that where a plaintiff "'self-servingly pleads a bare legal conclusion that the . . . defendants were control persons,' without alleging facts other than defendants' status to support their conclusion, a count for control person liability is improperly pleaded and must be dismissed" (quotations omitted)); *In re Downey Sec. Litig.*, 2009 WL 2767670, *15 (C.D. Cal.

---

4 The vague, nonspecific assertion that Mr. Morgan told Carter Anthony to "'leave Kelsoe alone' and to give Kelsoe whatever he wanted or needed" is not sufficient to establish "day-to-day involvement" in the Funds' operations, much less the purportedly fraudulent conduct alleged in the CAC. (CAC ¶ 363.)

Aug. 21, 2009) (holding that similar "boilerplate allegations are insufficient to state a claim for control person liability").[5]

With respect to Mr. Kelsoe, the allegations of control are too inconsistent to plead a plausible claim. Plaintiffs allege that Mr. Kelsoe controlled the Funds, even though their own allegations concede that, at most, Mr. Kelsoe had input into the valuation process, and that he did not make final decisions regarding the valuation of assets in the Funds' portfolio, much less calculate and publish the Funds' NAVs. (*See* Ind. Def. Mem. at 13-14.)

While this Court has held that "[w]hether a party exercised the requisite control involves a factual analysis best saved for later determination," *In re Regions Morgan Keegan Open-End Fund Litig.*, 743 F. Supp. 2d 744, 761 (W.D. Tenn. 2010), where a party fails to plead facts supporting a plausible claim and simply parrots the standard of liability, dismissal is appropriate. *See Iqbal*, 129 S. Ct. at 1949-50. As such, Plaintiffs fail to state a claim for control person liability against any Individual Defendant in support of their claim under § 15 of the 1933 Act or § 20 of the 1934 Act.

**CONCLUSION**

For the reasons set forth herein, the Individual Defendants respectfully request that the Court dismiss the CAC.

DATED this 12th day of August, 2011.

---

[5] Plaintiffs suggest that control person allegations are not subject to a heightened pleading standard. (Pls.' Opp. at 87-88.) *But see In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 551 (D. Del. 2002). Even if this Court were to apply Federal Rule of Civil Procedure 8(a) to Plaintiffs' control person claims, Plaintiffs' claims still fail. In the wake of the Supreme Court's decisions in *Twombly* and *Iqbal*, Plaintiffs may not rely on "control person allegations [which] are limited to legal conclusions and therefore are not entitled to the presumption of truth." *Graham v. Barriger*, 699 F. Supp. 2d 612, 635 (S.D.N.Y. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)).

Respectfully submitted,

SUTHERLAND ASBILL &
BRENNAN, LLP

/s/ S. Lawrence Polk
S. Lawrence Polk
999 Peachtree Street NE
Atlanta, GA 30309
(404)853-8225
larry.polk@sutherland.com

*Attorney for Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph T. Weller, and James C. Kelsoe, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**BRANSTETTER STRANCH JENNINGS, PLLC**
J. GERARD STRANCH, IV
227 Second Avenue, North
Nashville, TN 37201

**LABATON SUCHAROW LLP**
JOEL H. BERNSTEIN
LOUIS GOTTLIEB
DAVID J. GOLDSMITH
STEFANIE J. SUNDEL
MICHAEL WOOLLEY
140 Broadway
New York, NY 10005

**PEARSON SIMON WARSHAW & PENNY, LLP**
GEORGE S. TREVOR
44 Montgomery Street, Suite 2450
San Francisco, CA 94104

**CABANISS JOHNSTON GARDNER DUMAS & O'NEAL LLP**
CRAWFORD S. MCGIVAREN
R. CARLTON SMYLY
Suite 700, Park Place Tower
2001 Park Place North
Birmingham, AL 35203

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
75 E. 55th Street
New York, NY 10022

**BASS, BERRY & SIMS PLC**
Michael L. Dagley
Matthew M. Curley
Britt K. Latham
150 Third Avenue South, Suite 2800
Nashville, TN 37201

**BASS, BERRY & SIMS PLC**
Shepherd D. Tate
Michael A. Brady
100 Peabody Place, Suite 900
Memphis, TN 38103-3672

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York 1004

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

**PURSLEY LOWERY MEEKS LLP**
R. HAL MEEKS
260 Peachtree Street NW
Atlanta, GA 30303

/s/ S. Lawrence Polk_____________