## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| In re REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) | |
| This Document Relates to: | ) ) | |
| In re Regions Morgan Keegan Closed-End Fund Litigation, | ) ) ) | No. 2:09-2009 SMH V |
| No. 2:07-cv-02830-SHM-dkv | | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Before the Court are Defendants' April 13, 2011 Motions to Dismiss the Consolidated Amended Class Action Complaint ("CAC"). (See ECF. Nos. 196, 198, 200-02.) Plaintiffs filed an Omnibus Memorandum of Law in Opposition ("Omnibus") on June 17, 2011. (See ECF No. 213.) Defendants filed their Replies on August 12 and 15, 2011. (See ECF Nos. 223, 226[1], 228-30.) For the following reasons, Defendants' Motions are GRANTED IN PART AND DENIED IN PART.

### I.    BACKGROUND

---

[1] Individual Defendants are Allen B. Morgan, Jr. ("Morgan"), J. Kenneth Alderman ("Alderman"), Brian B. Sullivan ("Sullivan"), Joseph T. Weller ("Weller"), James C. Kelsoe, Jr. ("Kelsoe"). Individual Defendants filed their Reply as ECF Nos. 225 and 226. They have submitted the same Reply for both docket entries. The Court will refer to ECF No. 226 when discussing Individual Defendants' Reply.

Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore (collectively, the "Lead Plaintiffs"), and C. Fred Daniels as court-appointed Trustee *ad Litem* ("TAL")[2] (collectively, the "Plaintiffs") have filed suit against Defendants in the Closed-End Fund Litigation.  Plaintiffs assert claims on behalf of a class of individuals and entities that purchased or acquired publicly traded securities of four closed-end mutual Funds[3] that were "issued, underwritten, sold, and managed by two wholly owned and controlled subsidiaries of Defendant Regions Financial Corporation ("RFC")."  (CAC ¶ 4.)  Plaintiffs bring a federal securities class action generally alleging that the Defendants misrepresented the types of assets and the true value of the assets in which the Funds invested.  (CAC ¶¶ 5-6.)  Plaintiffs assert that the Funds heavily invested in Asset-Backed Securities ("ABS") and, in particular, subprime mortgage-related ABS, in violation of a "fundamental investment limitation" meant to assure diversification of assets in which the Funds could invest.  (CAC ¶¶ 6, 15-16.)  Plaintiffs also allege that the Funds falsely classified their portfolio securities as corporate

---

[2] C. Fred Daniels is the court-appointed Trustee for the Leroy McAbee, Sr. Family Foundation Trust, the Harold G. McAbee Family Trust, the KPS Group, Inc. Profit Sharing Retirement Plan, the Boyd F. Horn IRA Rollover Trust, the Alice C. Cade for the benefit of Carroll Corbin Bays Trust, and the Patricia Penzone Irrevocable Trust for the benefit of Charles A. Penzone.  (CAC ¶ 1.)
[3] "Funds" refers to the RMK High Income Fund, Inc. ("RMH"), RMK Strategic Income Fund, Inc. ("RSF"), RMK Advantage Fund, Inc. ("RMA"), and RMK Multi-Sector High Income Fund, Inc. ("RHY").  (Id.)  The names of the Funds in this action were changed to Helios High Income Fund, Inc., RMK Strategic Income Fund, Inc., Helios Advantage Fund, Inc., and Helios Multi-Sector High Income Fund, Inc. after the Funds were acquired by Hyperion Brookfield Asset Management, Inc. on July 29, 2008.  (Id. at n.1.)

bonds and preferred stocks in SEC filings, overstated the values of their portfolio securities, mischaracterized the Funds as "high yield," and misrepresented the professional management of the Funds' portfolios.  (CAC ¶¶ 6, 17-18, 21-22, 26-28, 25.)

Plaintiffs filed suit on December 21, 2007. (See ECF No. 1.)  This Court consolidated two then-separately pending suits and appointed Lead Plaintiffs and Lead Counsel by Order dated December 15, 2010.  (See ECF No. 179, Order Appointing Lead Plaintiff and Lead Counsel and Consolidating Cases.)  Plaintiffs filed the CAC on February 22, 2011.  The CAC alleges five causes of action, all based on federal law.  Plaintiffs allege Defendants violated §§ 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. § 77a ("'33 Act"), and §§ 10(b) and 20(a), and Rule 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a ("'34 Act").  (CAC ¶¶ 317-67.)  Plaintiffs seek preliminary and permanent injunctive relief, restitution in the form of compensatory damages for their losses, prejudgment interest, rescission rights, costs, and reasonable attorneys' fees.  (Id. at Section XIII.)  Defendants filed the present Motions to test the adequacy of Plaintiffs' Complaint.

## II. Jurisdiction

Plaintiffs bring all their claims under the federal securities laws.  This Court has federal question jurisdiction under 28 U.S.C. § 1331.

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555.)

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "This

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

Where a plaintiff makes allegations of fraud, including securities fraud, it must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Frank v. Dana Corp., 547 F.3d 564, 569-70 (6th Cir. 2008). Rule 9(b) requires that a party "alleging fraud or mistake . . . state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard mandates that plaintiffs alleging fraud 1) specify which statements were fraudulent, 2) indentify the defendant(s) who spoke the fraudulent statements, 3) describe "when and where the statements were made" and 4) "explain why the statements were fraudulent." Frank, 547 F.3d at 570 (citation and internal quotation marks omitted). "At a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied" to satisfy Rule 9. Id. (citing Bender v. Southland Corp, 749 F.2d 1205, 1216 (6th Cir. 1984)).

## IV.  Analysis

### A. '34 Act Claims

Plaintiffs' CAC alleges three claims under the '34 Act. Count IV alleges that the Funds and the Officer Defendants[4] violated § 10 of the '34 Act and Rule 10b-5 promulgated thereunder.  (CAC §§ 353-59); see also 15 U.S.C. § 78j(b); 17 C.F.R § 240.10b-5.  Count V alleges that the Officer Defendants, Director Defendants[5], Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), MK Holding, Inc. ("MK Holding"), and Regions Financial Corporation ("RFC") were "control persons" under § 20 of the '34 Act.  (CAC §§ 360-67); see 15 U.S.C. § 78t(a).

Plaintiffs' control person claims may only stand if Plaintiffs successfully plead primary violations of § 10(b). See 15 U.S.C. § 78t(a); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 696 (6th Cir. 2004).  Section 10(b) prohibits, "in connection with the purchase or sale of any security," the use of "any manipulative device or contrivance." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the Securities Exchange Commission ("SEC"), implements that prohibition.  See C.F.R. § 240.10b-5; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 318 (2007).

---

[4] "Officer Defendants" refers to James C. Kelsoe, Jr., Brian B. Sullivan, Joseph T. Weller, and Carter Anthony.
[5] "Director Defendants" refers to Allen B. Morgan, Jr. and J. Kenneth Alderman.

### 1. Plaintiffs' '34 Act claims have been timely filed

Defendants argue that Plaintiffs' claims are barred by the applicable two-year statute of limitations provided by 28 U.S.C. § 1658(b)(1). (Mem. of Law in Supp. of Mot. to Dismiss Filed by Morgan Asset Mgmt., Inc., Morgan Keegan & Co., Inc., and MK Holdings, Inc. ("Defs.' Mem.") 11.)   Defendants argue that Plaintiffs' claims have not been timely filed because: 1) American Pipe does not apply to subsequently-filed class actions and therefore that the previously-filed complaint in DeJoseph cannot toll the statute of limitations; 2) if American Pipe does apply to subsequently-filed actions, it does not apply absent identity of claims and parties; 3) DeJoseph did not toll the statute of limitations for any claims because it was voluntarily dismissed; and 4) Plaintiffs' allegations, with respect to claims asserted by the TAL Subclass, are time-barred because they: a) establish that Plaintiffs filed their claims more than two years after they knew or should have known of violations alleged in the CAC; and b) do not relate back to Daniels. (Id. 11-17.)

DeJoseph v. Morgan Keegan, No.08-cv-2455, filed on April 4, 2008, asserted '34 Act claims on behalf of all persons and entities that purchased or acquired shares of RMA, RSF, or RMH. Daniels v. Morgan Keegan, No. 08-cv-2456, filed on July 11,

2008, was a securities class action on behalf of all persons who purchased or acquired shares of RMA, RSF, RMH, and RHY.

Defendants first argue that American Pipe & Construction Co. v. Utah, 414 U.S. 538, 553 (1974), in which the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," does not apply to the Plaintiffs' case.   (Defs.' Mem. 12.) Defendants rely primarily on Andrews v. Orr, 851 F.2d 146, 149 (6th Cir. 1988), which held that American Pipe "does not toll the limitations period for additional class actions by putative members of the original asserted class."

District courts within the Sixth Circuit have held that previously-filed class action complaints may toll the statute of limitations in cases in which no determination about class certification has been made.   See In re Vertrue Mktg. & Sales Practices Litig., 712 F.Supp.2d 703, 712 (N.D. Ohio 2010); see also In re AEP ERISA Litig., No. 03-cv-067, 2009 WL 614951, at *5 (S.D. Ohio Mar. 6, 2009).

By limiting the application of American Pipe, the Court in Andrews sought to prevent plaintiffs from seizing the opportunity to "argue and reargue the question of class certification by filing new but repetitive complaints."

<u>Andrews</u>, 851 F.2d at 149, quoting <u>Korwek v. Hunt</u>, 827 F.2d 874, 879 (2d Cir. 1987). Thus, "[t]here is a clear distinction between the subsequent filing of an otherwise stale class action where a prior court has already ruled that class certification is improper and one where no court has spoken on the class certification issue." <u>Vertrue</u>, 712 F.Supp.2d at 712-13.

The court did not address class certification in <u>DeJoseph</u> and that fact distinguishes it from cases in which courts have declined to apply <u>American Pipe</u> to toll the statute of limitations after class certification has been denied. See <u>id.</u>; see also <u>Salazar-Calderon v. Presidio Valley Farmers Ass'n.</u>, 765 F.2d 1334, 1350 (5th Cir. 1985); <u>Robbins v. Fluor Corp.</u>, 835 F.2d 213, 214 (9th Cir. 1987). "The concerns about repose, inefficiency, and wasteful litigation expressed in <u>Korwek</u>, however, are inapposite where, as here, there never has been a definitive class certification determination." <u>In re IndyMac Mortgage-Backed Sec. Litig.</u>, 718 F.Supp.2d 495, 504 (S.D.N.Y 2010). Defendants' argument that the <u>Korwek</u> limitation on the application of <u>American Pipe</u> should apply to this case is unpersuasive.

Defendants next argue that, even if <u>American Pipe</u> applies to subsequently-filed class actions, the doctrine is inapplicable in the instant case because "the CAC asserts different claims from those asserted in any previously-filed

actions." (Defs.' Mem. 13; Johnson v. Ry. Express Agency, Inc.,
421 U.S. 454, 467 & n.14 (1975) ("Only where there is complete
identity of the causes of action will the protections [against
the running of the limitations period] necessarily exist.")).
Defendants also argue that American Pipe does not apply because
"a prior class action must have involved the same parties."
(Defs.' Mem. 14.)

According to the Plaintiffs, "[t]he first class action
complaint asserting Section 10(b) and 20(a) claims . . . was
DeJoseph. . . ." (Omnibus 71.) DeJoseph addressed '34 Act
claims on behalf of all persons and entities who purchased or
acquired shares of RMA, RSF, or RMH and named, as defendants,
all the Defendants in the present case, but for RHY, MK Holding,
and Anthony. The first class action complaint asserting '34 Act
claims against RHY, MK Holding, and Anthony was Daniels.

Defendants argue that the statute of limitations on the
claims against them was not tolled by the filing of Daniels and
DeJoseph because those actions were brought on "behalf of
different putative classes than the claims asserted in the CAC."
(Defs.' Mem. 14-15.) Defendants note that "[t]he CAC includes
an expanded putative class of members that were not members of
earlier actions . . . [which] precludes the application of
American Pipe." Id. at 15, n. 13, citing In re Syntex Corp.
Sec. Litig., 95 F.3d 922, 936 (9th Cir 1996).

Plaintiffs in In re Syntex filed a second complaint expanding the class after the court had certified the class in the first complaint. In re Syntex, 95 F.3d at 936-39. The present action is distinguishable because Plaintiffs have expanded the class before the Court has addressed class certification. Determining class membership is a fact-based inquiry that requires further development and must be addressed at a later stage in the litigation.

Defendants argue that Plaintiffs cannot rely on DeJoseph to toll the statute of limitations because DeJoseph was voluntarily dismissed on February 18, 2010. (Defs.' Mem. 14.) Defendants argue that "the law treats a voluntarily dismissed complaint as if it never had been filed." Id., quoting IndyMac, 718 F.Supp.2d 495, 504. In IndyMac, the Court "was faced with an atypical scenario in which the first class action complaint filed in California, was voluntarily dismissed after a second complaint was filed in federal court asserting the same claims." (Omnibus 76).

DeJoseph was voluntarily dismissed before a second class action was filed. Denying tolling in the present case would not comport with the purposes served by statutes of limitations. "Limitation periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." Crown v. Parker, 462 U.S. 345, 352 (1983). Unless the

statute of limitations was tolled by the filing of DeJoseph, putative class members relying on the existence of the suit to protect their rights would have to intervene or take other action in order to ensure that their rights were not lost if class certification were denied, or, as in the present case, if the case were voluntarily dismissed before addressing the class certification issue. "The result would be a needless multiplicity of actions -- precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid." Id. at 350-51. Defendants' argument that DeJoseph cannot be relied to toll the statute of limitations because DeJospeh was voluntarily dismissed is unpersuasive.

Defendants argue that the claims asserted in the CAC against RHY are time-barred because "Plaintiffs' allegations establish that the TAL Subclass claims were time-barred as of the filing of the Daniels Actions" and because the CAC inappropriately expands the putative class of members and thus precludes the application of American Pipe based on an alleged lack of identity of parties in the actions. (Defs.' Mem. 15.) Defendants argue that public documents available to Plaintiffs "alerted Plaintiffs to the very information they now allege Defendants concealed" as early as March 2006, more than two years before the filing of Daniels. Id. at 15-16. Determining

when Plaintiffs would have discovered facts constituting a violation is, necessarily, a fact-intensive inquiry, making the resolution of the issue inappropriate for a motion to dismiss. Reid ex rel. First Horizon Nat. Corp. v. Baker, No. 10-2413-STA, 2011 WL 976547, at *8 (W.D. Tenn. Mar. 16, 2011) ("Generally, the time at which a claim accrues is a question of fact.") Whether the Funds' Offering Documents or reports sufficiently disclosed risks of investments sufficient to put investors on "inquiry notice" is not an appropriate issue for the Court to determine at this time.   Defendants' arguments about the determination of appropriate class membership are premature and should be addressed in later proceedings.

## 2. The heightened pleading standard

When a plaintiff alleges a violation of § 10(b) and Rule 10b-5, the Private Securities Litigation Reform Act ("PSLRA") mandates a heightened pleading standard, a standard higher than that required by Rule 9(b).   Compare 15 U.S.C. § 78u-4(b)(2), with Fed. R. Civ. P. 9(b); Konkol v. Diebold, Inc., 590 F.3d 390, 396 (6th Cir. 2009) (noting "the more exacting pleading requirements of the PSLRA (citation and internal quotation marks omitted)).

The PSLRA requires a plaintiff 1) "to state with particularity" the facts constituting the alleged violation, including "specifying each statement alleged to have been

misleading," 15 U.S.C. § 78u-4(b)(1), and 2) to "state with particularity the facts giving rise to a strong inference that the defendant acted with the particular state of mind." Id. § 78u-4(b)(2). That "particular state of mind" is known as scienter and requires a plaintiff to show that a defendant's intention was "to deceive, manipulate or defraud." Tellabs, 551 U.S. at 313, quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 (1976). An inference of scienter is "strong" within the meaning of the PSLRA if it is "more than merely plausible or reasonable – it must be cogent and at least as compelling as an opposing inference of nonfraudulent intent." Id. at 314. Allegations of negligence do not support a finding of scienter. Konkol, 590 F.3d at 396. In the Sixth Circuit, a plaintiff at least must state allegations sufficient to find that a defendant acted with recklessness. Mansbach v. Prescott, Ball, & Turben, 598 F.2d 1017, 1023 (6th Cir. 1979); see also Konkal, 590 F.3d at 396. The Sixth Circuit defines recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." Mansbach, 598 F.2d at 1025. The danger "must be so obvious that any reasonable man would have known of it." Id.

### 3. Pleading Scienter

Plaintiffs argue that they have pled scienter adequately as to the Defendants in Count IV of the CAC. (Omnibus 28-51.) An

examination of the CAC and the relevant case law demonstrates that Plaintiffs have met the PSLRA's enhanced burden as to Officer Defendant Kelsoe and the Funds, but not as to Officer Defendants Weller, Sullivan, and Anthony.

Plaintiffs' CAC names the Funds and Officer Defendants as Defendants in the § 10(b) claims. (CAC ¶ 355.) Defendants argue that Plaintiffs have failed to make specific allegations of scienter as to the Funds and the Officer Defendants, and that Plaintiffs do not satisfy the "group pleading" doctrine. (Defs.' Mem. 24.) Plaintiffs assert that the Officer Defendants and the Funds knew or recklessly disregarded facts contradicting public statements about the level of investment risk, types of portfolio holdings, and Net Asset Values ("NAVS"). (Omnibus 30).

As to Officer Defendant Kelsoe, Plaintiffs have met the PSLRA's requirement that a plaintiff "state with particularity" all facts surrounding the alleged misrepresentations or omissions and why a finding of scienter is appropriate. See 15 U.S.C. § 78u-4(b)(1)-(2). Plaintiffs allege in great detail Kelsoe's efforts to "adjust" the prices of portfolio securities by screening third-party broker-dealer quotes, failing to follow procedures adequately to determine fair values assigned to portfolio securities, and manipulating valuations and pricing of at least three specific portfolio securities. (CAC ¶¶ 138-41,

143-53; see also Omnibus 30-37.)

Plaintiffs have not pled facts with sufficient particularity to demonstrate that, as to Officer Defendants Weller, Sullivan, and Anthony, "an inference of scienter . . . [is] at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 314. Plaintiffs predicate their allegations of fraud against these Officer Defendants on the corporate positions that they held. (CAC ¶¶ 297-98; see also Omnibus 30, 38-39.) "[S]cienter . . . cannot be inferred merely because of the defendants' position in the company or the fact that they had access to the company's financial information. Instead, 'the [c]omplaint must allege specific facts and circumstances suggestive of their knowledge.'" (Defs.' Mem. 26, quoting Fifth Third Bancorp., 731 F.Supp.2d at 726 (citation omitted)).

In addition to citing Weller, Sullivan, and Anthony's corporate positions, Plaintiffs attempt to establish scienter by alleging that they had self-interested motivations and "maximized the reported NAVs of the Funds" to receive incentive-based bonus compensation. (CAC ¶ 71.) When analyzing such an allegation, the Court seeks to differentiate between "motives common to corporation and executives generally" and "motives common to fraud"." In re Regions Morgan Keegan Open-End Mut. Fund Litig., 743 F.Supp.2d at 738, quoting PR Diamonds, 384 F.3d

at 690. That Weller, Sullivan, and Anthony "stood to profit from the success of the Funds does not make a 'cogent' case for fraud." Id., quoting Tellabs, 551 U.S. at 314.

Plaintiffs do not allege that Weller, Sullivan, or Anthony ever benefitted monetarily from the alleged fraud beyond any general benefit they may have received in their executive capacities. Plaintiffs' Complaint fails to tie Weller, Sullivan, or Anthony to the alleged misstatements and false classifications in the Funds' offering documents and other public filings, other than to say that they signed off on the disclosure materials. Plaintiffs fail to state with particularity all facts surrounding the alleged misrepresentations or omissions. Plaintiffs argue that "Defendants have still not explained how the false classifications came about or how they were not the result of intentional conduct." (CAC ¶ 98.) The Sixth Circuit has not held "that a securities-fraud defendant must proffer a non-fraudulent explanation." Konkol, 590 F.3d at 403. Because Plaintiffs fail to support their claims with particularized facts giving rise to the strong inference that Weller, Sullivan, or Anthony acted with the requisite level of scienter, Plaintiffs' § 10(b) claims against those officers must necessarily be DISMISSED.

Defendants argue that Plaintiffs do not allege facts

sufficient to support an inference of scienter with as to the Funds. (Defs.' Mem. 25; Mem. of Law in Supp. of Fund Defs.' Mot. to Dismiss Consolidated Amended Class Action Complaint ("Fund Defs.' Mem.") 6.) To plead scienter as to the Funds, Plaintiffs may plead facts that "create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter. In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008)). Plaintiffs allege that Kelsoe, as Senior Portfolio Manager of the Funds, was "responsible for selecting and purchasing the Funds' portfolio assets and managing their day-to-day operations." (Omnibus 37, CAC ¶¶ 56, 294.) Although the scope of the agency relationship between Kelsoe and the Funds is a question of fact inappropriate for this review, Plaintiffs have sufficiently pled that Kelsoe, in his management of the Funds, had effective control of the operations of the Funds on a daily basis and used the Funds as a "vehicle of fraud." (See Omnibus 37-38; see also SEC v. Haligiannis, 470 F.Supp.2d 373, 381-82 (S.D.N.Y. 2007)).

Plaintiffs also assert an inference of scienter as to the Funds based on alleged misstatements about valuation procedures and the overconcentration of portfolio assets. (Omnibus, 11,

15-21.)   "It is possible to raise the required inference [of scienter] with regard to a corporate defendant without doing so with regard to a specific individual defendant. As the Seventh Circuit recently observed in the wake of the Supreme Court's remand in Tellabs, '[I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud.'"   Teamsters 531 F.3d at 195-196, quoting Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702, 710 (7th Cir. 2008).   Plaintiffs allege particularized facts sufficient to establish the Funds' recklessness with regard to classifications and misrepresentations of the Funds' investments and financial statements.   Among numerous allegations, Plaintiffs assert particular instances in which independent auditors determined the Funds had issued "unreliable" financial statements and the Funds had "falsely classified" assets in which they were invested (CAC ¶¶ 180-84, 90-112).   Defendants argue that Plaintiffs allege misstatements and classifications that are "essentially . . . expressions of judgment" involving "subjectivity and uncertainty." (Defs.' Mem. 44, 28.)   On a 12(b)(6) motion to dismiss, the Court must consider Plaintiffs' allegations as true.   Determining whether statements or classifications are correct requires decisions about questions of fact that are inappropriate on a motion to dismiss.

Plaintiffs have established scienter as to the Funds under the heightened pleading requirements of the PSLRA.

The PSLRA expressly provides that a plaintiff has "the burden of proving" that a defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." 15 USC §78u-4(b)(4); see also Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 345-46 (2005). Plaintiffs need only plead "a short and plain statement" showing "indication of the loss and causal connection that the plaintiff has in mind." Id. In the instant case, Plaintiffs have made factual allegations supporting their loss causation claims under the '34 Act (See e.g., CAC ¶¶ 264, 267, 274; Omnibus 58-60). Defendants' arguments about whether Plaintiffs have established the causal relationship invite a factual inquiry unsuited to a Rule 12(b)(6) Motion.

The Court DISMISSES Count IV against Officer Defendants Weller, Sullivan, and Anthony and DENIES Defendants' Motions to Dismiss Count IV against Officer Defendant Kelsoe and the Funds.

### 4. § 20(a) Control Persons Claims

Count V asserts claims under § 20(a) of the '34 Act against the Officer Defendants, the Director Defendants, MAM, Morgan Keegan, MK Holding and RFC. (CAC ¶ 361.) The CAC alleges that each of these Defendants, "by virtue of its position as the manager of, and investment advisor to, the Funds, as administrator of the Funds, or as the wholly owning parent of a

Defendant, were [sic] controlling persons of the Funds." (CAC ¶ 363.) Plaintiffs assert that "the Defendants named in this Count abused their control and domination of the Funds." Id.

Section 20(a) of the '34 Act creates a cause of action for "control person" liability, stating that, "Every person who, directly or indirectly, controls any person liable under the provisions of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce that act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a); PR Diamonds, 364 F.3d at 696.

Defendants argue that, because the control claim liability asserted under § 20(a) involves '34 Act claims, it is necessary to "scrutinize Plaintiffs' allegations of control person liability at the pleading stage." (Defs.' Mem. 57.) The Court has already concluded that whether a party has exercised the requisite control "involves a factual analysis best saved for later determination." In re Regions, 743 F.Supp.2d at 761. Defendants' Motions to Dismiss Count V against the Officer Defendants, Director Defendants, MAM, Morgan Keegan, MK Holding, and RFC are DENIED.

## B. '33 Act Claims

The CAC alleges three claims under the '33 Act brought by

the Trustee ad *Litem*.   Count I alleges that RHY, the Director
Defendants, and Morgan Keegan violated § 11 of the '33 Act. (CAC
¶¶ 317-31); <u>see also</u> 15 U.S.C. § 77k.   Count II alleges that RHY
and Morgan Keegan violated § 12(a)(2) of the '33 Act (CAC ¶¶
332-42); <u>see also</u> 15 U.S.C. § 77l.   Count III alleges control
person liability under § 15 of the '33 Act against the Director
Defendants (CAC ¶¶ 343-52); <u>see</u> 15 U.S.C. § 77(o).   As with
control person liability under the '34 Act, Plaintiffs must
successfully state a primary violation of the '33 Act to
maintain their control person claims.   <u>See</u> 15 U.S.C. 77(o)(a);
<u>J&R Mktg. v. Gen. Motors Corp.</u>, 549 F.3d 384, 398 (6th Cir.
2008).

### 1. Plaintiffs' '33 Act claims have been timely filed

Under 15 U.S.C. § 77m, plaintiffs asserting claims under
the '33 Act have a one-year statute of limitations, and a three-
year statute of repose providing that "[i]n no event shall any
such action be brought to enforce a liability created under
section 11 . . . more than three years after the security was
bona fide offered to the public, or under § 12(a)(2) more than
three years after the sale." 15 U.S.C. §77m.

Plaintiffs and Defendants assert that the first complaint
asserting '33 Act claims on behalf of RHY purchasers was <u>Willis
v. Morgan Keegan</u>, No. 07-2830, filed on December 21, 2007.

(Omnibus ¶ 80; Defs.' Mem. 18.) Defendants argue that Plaintiffs' claims are time-barred based on Willis because the filing of Willis placed Plaintiffs "on notice." (Defs.' Mem. 18.) Defendants also argue that American Pipe does not apply to a subsequently-filed class action and does not toll a statute of repose. Defendants assert that, even if Plaintiffs' claims could relate back to the filing of Willis, Plaintiffs' claims would be time-barred because the filing of Willis itself was barred by the statute of limitations.

As discussed in this Order, Defendants' argument about the application of American Pipe to subsequently-filed class actions is unpersuasive. Defendants' arguments that the filing of Willis placed Plaintiffs "on notice" and that the filing of Willis was untimely are equally unpersuasive. Determining when Plaintiffs would have discovered facts constituting a violation is, necessarily, a fact-intensive inquiry, making the resolution of the issue inappropriate for a motion to dismiss. "Tolling the limitations period while class certification is pending does not compromise the purposes of statutes of limitation and repose." Joseph v. Wiles, 223 F.3d 1155, 1167 (10th Cir. 2000). Many courts have applied American Pipe tolling to statutes of repose when addressing the issue of legal tolling under the '33 Act. See e.g., Maine State Ret. Sys. v. Countrywide Fin. Corp., 722 F.Supp.2d 1157, 1166 (C.D. Cal. 2010); In re Flag Telecom

Holdings, Ltd. Sec Litig., 352 F.Supp.2d 429, 455, n. 19
(S.D.N.Y. 2005). As this Court noted in In re Regions,
arguments about the application of statutes of repose "should
await factual development of the claims." 743 F.Supp.2d at 761.

### 2. Section 11 Claims

The Court has held that, although the heightened pleading
standards of the PSLRA do not apply to claims under the `33 Act,
when the claims "sound in fraud" the pleading requirements of
Rule 9(b) do apply. Id. at 759-60 (internal citations omitted).
Thus, "[a]t a minimum, Plaintiffs must allege the time, place
and contents of the misrepresentations upon which they relied."
Id., quoting Frank, 547 F.3d at 570.

Section 11 prohibits making "untrue statement[s] of
material fact" or omitting statements of material fact in a
security's registration statement. 15 U.S.C. § 77k(a). It
protects investors who "acquired" securities in reliance on the
representations contained in the registration statement. Id.
The CAC identifies with particularity when the supposedly
misleading statements were made. (CAC ¶¶ 251-256.) It also
makes clear which statements are alleged to have been
misleading: e.g., RHY claimed to abide by restrictions that
prohibited it from holding more than 25% of its assets in
securities related to the same industry. (See id. ¶ 258.)
Plaintiffs allege that this statement was misleading because RHY

did not, in fact, abide by the restriction. (CAC ¶ 16.) The Funds' argument that RHY is not a proper § 11 defendant because RHY was "issued, underwritten, sold, and managed by two wholly owned and controlled subsidiaries of a co-defendant" is unpersuasive. (Fund Defs.' Mem. 2.) The Court has allowed similar § 11 claims to proceed. See In re Regions, 743 F.Supp.2d at 760 (allowing plaintiffs to pursue § 11 claims against Funds for similar alleged misrepresentations).

Defendants argue that Plaintiffs have failed to plead loss causation. (Defs.' Mem. 55-56.) Loss causation is not an element of a § 11 claim; it is an affirmative defense unsuitable for adjudication in a motion to dismiss. 15 U.S.C. § 77l(b); see Indiana State Dist. Council of Laborers v. Omnicare, 583 F.3d 935, 947 (6th Cir. 2009). Plaintiffs have stated a claim under Section 11 of the `33 Act, and Defendants' Motions to Dismiss that claim are DENIED.

### 3. Section 12(a)(2) and 15 Claims

Section 12(a)(2) creates a cause of action based on "misleading statements, misstatements, or omissions in a . . . prospectus." J&R Mktg., 549 F.3d at 389; see also 15 U.S.C. § 77l(a)(2). Plaintiffs base their allegations in this Count on the misstatements alleged in the § 11 Count. (See, e.g., CAC ¶ 254.) For the reasons stated in the § 11 analysis, Plaintiffs have stated a claim under § 12(a)(2) of the `33 Act.

Certain Defendants argue that they are not "statutory sellers" under § 12(a)(2). (See, e.g., Funds' Mem. 4-5, Omnibus 86.) A seller is one who 1) passes title, or other interest in the security, to the purchaser for value or 2) successfully solicits the purchase based at least in part on a desire to further his own financial interests or those of the securities' owner. Pinter v. Dahl, 486 U.S. 622, 647 (1988); Smith v. Am. Nat'l Bank & Trust Co., 982 F.2d 936, 941 (6th Cir. 1992). As the test suggests, whether someone "solicits" a purchase is a fact-bound inquiry unsuited for a Rule 12(b)(6) motion.   The Court has addressed Defendants' arguments about Plaintiffs' alleged failure to plead facts sufficient to establish loss causation.  Defendants' Motions to Dismiss Plaintiffs' claims under § 12(a)(2) of the `33 Act are DENIED.

Plaintiffs have stated primary claims under the `33 Act, and as a result, they may also state a claim under § 15 for control person liability. 15 U.S.C. § 77o(a); In re Regions Morgan Keegan Open-End Mut. Fund Litig., 743 F.Supp.2d at 761. Section 15 places liability "jointly and severally" on any person who "controls any person liable under section 11 or 12." 15 U.S.C. § 77o(a).  Whether a party exercised the requisite control requires a factual analysis best saved for later determination. The Court DENIES Defendants' Motions to Dismiss Plaintiffs' control person liability claims under the `33 Act.

### 4. Standing

Defendants argue that C. Fred Daniels, as the TAL for Leroy McAbee, Sr. Family Foundation (the "MacAbee Foundation Trust"), lacks standing as a Rule 23 representative plaintiff to bring '34 Act claims on behalf of the more broadly defined Class of purchasers of the RHY shares. (Defs.' Mem. 59-60, Omnibus 94.) Nothing in the terms of the June 20, 2008 Amended Order Appointing Trustee *Ad Litem* ("Amended Order") prohibits the TAL from serving as a Rule 23 Representative. The TAL was appointed to serve in place of Regions Bank, the former "trustee or custodian for Trusts that purchased shares of the Funds, including the RHY Fund," to avoid the obvious conflict of interest that Regions Bank had in fulfilling its fiduciary duty to the Trusts. (Omnibus 95.) The TAL's authority to act in class litigation in the instant case is "coextensive with the authority . . . that Regions Bank itself would have as trustee . . . ." Id. at 96.

### V.  Conclusion

Defendants' Motions to Dismiss Count IV against Officer Defendants Weller, Sullivan, and Anthony are GRANTED.

Defendants' Motions to Dismiss are otherwise DENIED.


So ordered this 30th day of March, 2012


/s/Samuel H. Mays, Jr.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE