IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION )))))) | )<br>)<br>)<br>)<br>) No. 2:09-md-02009-SHM |
| This Document Relates to: | ) |
| *In re Regions Morgan Keegan Closed-End Fund Litigation*, | )<br>)<br>) |
| No. 2:07-cv-02830-SHM-dkv | )<br>) |

**MEMORANDUM IN SUPPORT OF MOTION TO AMEND ORDER OF
MARCH 30, 2012 TO CERTIFY FOR IMMEDIATE INTERLOCUTORY
APPEAL AND FOR STAY OF PROCEEDINGS PENDING APPEAL BY
DEFENDANTS MORGAN KEEGAN & COMPANY, INC., MORGAN ASSET
MANAGEMENT, INC., MK HOLDING, INC., REGIONS FINANCIAL CORP.,
<u>AND INDIVIDUAL DEFENDANTS</u>**

Morgan Keegan & Company, Inc., Morgan Asset Management, Inc. ("MAM"), MK Holding, Inc., Regions Financial Corporation, J. Kenneth Alderman, Allen B. Morgan, Jr., Brian B. Sullivan, Joseph T. Weller, and James C. Kelsoe, Jr. (collectively, "Defendants"), respectfully submit this memorandum in support of their Motion, pursuant to Fed. R. Civ. P. 59 and 60 and 28 U.S.C. § 1292(b), for this Court to amend its Order of March 30, 2012 (ECF No. 246 (the "Order")) to include a statement certifying the decision for interlocutory appeal for three specific questions of law. Defendants further move this Court to stay all proceedings in this action until the Court of Appeals determines whether to grant or deny the permission to appeal the Order, and if such permission to appeal is granted, to stay all proceedings until the Court of Appeals has issued a final decision in the appeal.

As discussed below, the Court's Order involves three controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation.

## CONTROLLING QUESTIONS OF LAW

1. Whether Sixth Circuit precedent as stated in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), prohibits Plaintiffs from relying on a previously filed class action to toll the statutes of limitations for a subsequently filed class action, under the doctrine set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

2. Whether Plaintiffs may rely on the *American Pipe* tolling doctrine to toll the Securities Act of 1933's three-year statute of repose.

3. Whether, in light of *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), Defendant Kelsoe, an employee of MAM (the Funds' investment adviser), made any alleged false or misleading statement or omission himself, as required under the Securities Exchange Act of 1934.[1]

## ARGUMENT

**I. THE COURT'S ORDER SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b).**

Under 28 U.S.C. § 1292(b), an interlocutory appeal is appropriate if the moving party, shows that: "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the district court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the

---

[1] The four closed-end funds include RMK High Income Fund, Inc. ("RMH Fund"), RMK Strategic Income Fund, Inc. ("RSF Fund"), RMK Advantage Fund, Inc. ("RMA Fund"), and RMK Multi-Sector High Income Fund, Inc. ("RHY Fund") (collectively the "Funds"). (*See* Order at 2 n.3).

2

litigation." *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993) (citing *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974)).[2]

First, a "question of law" concerns the meaning of a statutory or constitutional provision, regulation or common law doctrine. *See Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Second, the Sixth Circuit has stated that "[a] legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). Thus, "an issue may be considered controlling if its resolution has precedential value, if it is central to liability, or if it would save the Court and the litigants substantial time and resources." *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1018-19 (W.D. Tenn. 2000) (internal citations omitted); *see also In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992). Third, "[s]ubstantial grounds for a difference of opinion exist when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *City of Memphis*, 138 F. Supp. 2d at 1019 (internal citations omitted). Finally, an "[i]nterlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens. Interlocutory appeal is most appropriate early in the proceedings." *Id.* at 1026 (internal citations omitted). As further set forth herein, Defendants' three questions meet all the criteria supporting a certification for interlocutory appeal at this early stage of the proceedings.

---

[2] 28 U.S.C. § 1292(b) provides, in relevant part, that when the "district judge . . . shall be of the opinion that [an interlocutory] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . ."

### A. Whether Sixth Circuit Precedent Prohibits Tolling the Statute of Limitations for Subsequently Filed Class Actions.

The plain language of the Sixth Circuit's decision in *Andrews v. Orr* prohibits Plaintiffs from using previously filed class actions to toll the statute of limitations for subsequently filed class actions. *See* 851 F.2d at 149 (holding that "there was no tolling for future class actions by putative class members" because "pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class"). The Sixth Circuit analyzed the tolling issue under *American Pipe* as it related to "individuals" vis-à-vis subsequent "class actions." The court held that the district court was "clearly correct in holding that pendency of [previous] class actions tolled the limitations periods for the plaintiffs' *individual* claims." *Andrews*, 851 F.2d at 148 (emphasis added) (citing *American Pipe* and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). The court then concluded, however, that while the "limitations period for filing *individual* [claims] was tolled during the pendency of the earlier class actions, . . . there was *no tolling for future class actions by putative class members.*" *Id.* at 149 (emphasis added). Although the underlying facts in that case did involve a previous class in which class certification was denied, the Sixth Circuit did not state that a class certification determination was relevant to the issue of tolling. In fact, the court plainly stated that tolling was not applicable to later filed class actions. *Id.* at 148-49.

This Court, however, relied upon other district court opinions in ruling that *Andrews* only applies when a prior determination of class certification has been made. (Order at 8-9). The Sixth Circuit did not limit its holding in *Andrews* and has not done so in any subsequent decision, as recognized by numerous other courts. Defendants submit that this Court is bound by that Sixth Circuit opinion. *See Gilbert v. Beavercreek Tp.*, 2006 WL 3524392, at *7 (S.D. Ohio Dec. 6, 2006) (noting that "[t]rial courts are obliged to follow precedent set by Supreme Court and

4

Courts of Appeals . . . 'no matter how misguided the judges of those courts may think it to be.'") (citing *Hutto v. Davis*, 454 U.S. 370, 375 (1982)).

The Court's interpretation of the Sixth Circuit's holding in *Andrews* presents a substantial ground for difference of opinion for purposes of an interlocutory appeal. Other opinions from district courts within the Sixth Circuit have interpreted *Andrews* as advocating a blanket prohibition on tolling the statute of limitations for all subsequently filed class actions. *Compare* Order at 8-9 *with Abner v. County of Saginaw*, 496 F. Supp. 2d 810, 822 (E.D. Mich. 2007) ("The Sixth Circuit has rejected the view that serial class actions can perpetuate themselves under the *American Pipe* rule.") (quoting *Andrews*, 851 F.2d at 149); *see also Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) (the tolling rule set forth in *American Pipe* is not "meant to permit the stacking of class actions"). (*See also* ECF No. 197-1 at 12-13; ECF No. 224-1 at 4-7.)

Moreover, the true reach of the Sixth Circuit's holding in *Andrews*, and the *American Pipe* doctrine, raises an important policy issue for courts in the Sixth Circuit. The court in *Andrews* explained that the entire purpose of *American Pipe* was to toll individual claims – not class claims – during the pendency of a putative class action and not to allow the serial filing of putative class actions. 851 F.2d at 148-49. In *Crown, Cork & Seal*, 462 U.S. at 354, Justice Powell forewarned that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse." (Powell, J., concurring), *quoted approvingly in Andrews*, 851 F.2d at 149; *see also Krinsk v. Fund Asset Mgmt., Inc.*, 1986 WL 205, at *3 (S.D.N.Y. May 9, 1986) ("[T]he broad reading of *American Pipe* sought by the plaintiffs would logically lead to an endless succession of representative actions not contemplated by the Supreme Court in holding that the *individual* claims in *American Pipe* were not time barred.").

5

Finally, the proper interpretation of *Andrews* is a controlling question of law, and an immediate appeal addressing this issue will materially advance the ultimate termination of this litigation. For instance, Plaintiffs' Securities Act of 1933 (the "1933 Act") and Securities Exchange Act of 1934 (the "1934 Act") claims are all time-barred as a matter of law under a plain interpretation of *Andrews*. Plaintiffs did not file the *Jones* and *Palmour* actions until April 8, 2010 and May 19, 2010, respectively (ECF No. 197-1 at 11-12, 17-18; ECF No. 224-1 at 3), despite being on notice of their claims more than three years earlier. (*Id.*)[3] Without tolling, the 1933 Act and 1934 Act claims are time barred under the one and two-year statutes of limitations set forth in 15 U.S.C. § 77m and 28 U.S.C. § 1658(b)(1). (*See* ECF No. 197-1 at 11-13, 17-18; ECF No. 224-1 at 4-7, 8-9.) Defendants request that the Court certify this issue for interlocutory appeal.

### B. Whether the *American Pipe* Doctrine Tolls Statutes of Repose.

In its Order, the Court refused to apply the 1933 Act's three-year statute of repose, effectively holding that Plaintiffs may rely on *American Pipe* tolling. (Order at 23-24). Defendants submit, however, that the three-year statute of repose may not be tolled under any circumstances. *See* 15 U.S.C. § 77m. The plain language of the 1933 Act's statute of repose creates an absolute limitation on tolling: "*In no event* shall any such action be brought to enforce a liability created under [section 11 or section 12(a)(1)] of this title *more than three* years after the security was bona fide offered to the public, or under [section 12(a)(2)] of this title *more than three* years after the sale." 15 U.S.C. § 77m (emphasis added). As the Seventh Circuit has

---

[3] Once the Consolidated Amended Class Action Complaint (the "CAC") is dismissed as time barred, the only underlying actions that could go forward based on the Court's Order are the *Daniels* actions for the limited subclass of trusts and custodial accounts for which Regions Bank is or was a trustee or a directed trustee, custodian, or agent. *See* Order at 12-13.

explained, "[u]nless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years . . ., it serves no purpose at all . . . ." *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391 (7th Cir. 1990); *see also In re Lehman Bros. Secur. Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011) ("Section 13 of that act states quite clearly that '[i]n no event' shall such claims be asserted 'more than three years after' the pertinent offerings. That language is absolute. . . . In the absence of further legislation, this Court must apply the statute as written."); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 704 (2d Cir. 1994) (discussing the "absolute limitation" nature of the statute).

To date, the Sixth Circuit has not addressed whether the 1933 Act's statute of repose is subject to tolling under *American Pipe*. Thus, independent of whether *Andrews* permits tolling for subsequently filed class actions, whether the *American Pipe* tolling doctrine applies at all to statutes of repose is another question of law ripe for certification as a matter of first impression in the Sixth Circuit.

Moreover, several recent cases have held that the 1933 Act's statute of repose is not subject to tolling under *American Pipe*, although a split of opinion exists among district courts. *Compare Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 623-627 (S.D.N.Y. 2011) (no tolling of repose period); *In re Lehman Bros. Secur. Litig.*, 800 F. Supp. 2d at 481-83 (same); *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642-643 (S.D.N.Y. 2011) (same); *with In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 667 (S.D.N.Y. 2011) (permitting tolling of repose period); *International Fund Management S.A. v. Citigroup Inc.*, 2011 WL 4529640, at *6 (S.D.N.Y. Sept. 30, 2011) (same).

Not only is this issue a controlling question of law for which there is no Sixth Circuit guidance and for which there is an existing split of authority among other district courts, but also

an immediate appeal could resolve Plaintiffs' 1933 Act claims relating to the RHY Fund. The repose period expired three years after the initial public offering of the RHY Fund on January 19, 2006. (*See* ECF No. 197-1 at 18.) Thus, absent tolling, the 1933 Act claims asserted on behalf of the Class, which were not filed until April 8, 2010 (*id*. at xiii, 18-19), are time-barred. Defendants, therefore, request that this issue also be certified for interlocutory appeal.

### C. Whether Plaintiffs' claims against Defendant Kelsoe Fail Under the Supreme Court's *Janus* Decision.

To state actionable claims of misrepresentations or omissions under Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder, Plaintiffs must allege a material misrepresentation or omission as to each Defendant. The Private Securities Litigation Reform Act of 1995 (the "PSLRA") also requires that plaintiffs asserting a claim under Section 10(b) and Rule 10b-5 must "state with particularity" "each statement alleged to have been misleading." (Order at 13-14.) In the Order, this Court does not discuss any public statements made by Kelsoe, but rather Kelsoe's alleged "efforts to 'adjust' the prices . . . failing to follow procedures . . . and manipulating valuations and pricing . . ." (Order at 15.) These allegations relate only to Kelsoe's alleged participation, or substantial assistance, in the preparation of statements on behalf of the Funds (*Id.* (citing CAC ¶¶ 138-41, 143-53; Pls.' Opp. at 30-37).) Defendants submit that such allegations are not actionable under the recent Supreme Court decision, *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), and expect that the Sixth Circuit would apply *Janus* according to its plain terms in this instance. In its Order, this Court did not consider the impact of *Janus* and, specifically, whether any of the alleged misstatements

8

issued by the Funds, in the Funds' name, can be attributed to Kelsoe, the Funds' portfolio manager and an employee of MAM (the Funds' investment adviser).[4]

*Janus* is controlling. In *Janus*, the Supreme Court considered a question identical to that presented in this action: "whether . . . a mutual fund investment adviser, can be held liable in a private action under [SEC] Rule 10b-5 for false statements included in its client mutual funds' prospectuses," *id.* at 2299, ultimately concluding that the investment adviser "cannot be held liable because it did not make the statements in the prospectuses." *Id.* In determining who "made" the statement, the Supreme Court found that *attribution* is key:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed.

*Id.* at 2302. The Supreme Court specifically declined to grant any significance to the "well-recognized and close relationship between a mutual fund and its investment adviser," and declined the invitation to "disregard the corporate form" and assume "that an investment adviser should generally be understood to be the 'maker' of statements by its client mutual fund, like a playwright whose lines are delivered by an actor." *Id.* at 2304. Whether or not an investment adviser might have been "significantly involved" in preparing a fund's statements is irrelevant. *Id.* at 2305.

---

[4] While the Court ruled that "Plaintiffs have met the PSLRA's enhanced burden [for pleading scienter] as to Officer Defendant Kelsoe and the Funds," (Order at 15) the Court bypassed the key issue only recently highlighted by *Janus*: whether or not Kelsoe ever actually "made" a false or misleading statement himself.

9

It follows that, under *Janus*, Kelsoe did not *make* any of the statements at issue in Plaintiffs' Complaint. All of the statements forming the basis for Plaintiffs' claims were contained in the Funds' registration statements and annual, semi-annual, and quarterly reports. (*See* CAC ¶¶ 185-256.) These filings were all issued in the name of the Funds, not MAM or Kelsoe. It is undisputed that Kelsoe was not an employee of the Funds, much less an officer. (*See* CAC ¶ 56; ECF No. 197-1 at 25 n.24.) The Funds' prospectuses and other public filings, which are incorporated by reference into the complaint, make clear that Kelsoe was the Funds' portfolio manager and an employee of MAM. (*See id.; see also* ECF No. 199, Exs. G (RHY Prosp. at 34 ("The following individuals at the Adviser share primary responsibility for the management of the Fund," naming Kelsoe and Tannehill)); H (RHY SAI at 48-50 (discussing how Messrs. Kelsoe and Tannehill are compensated by MAM, and how they serve as portfolio managers for other funds managed by MAM)).)

Moreover, in his capacity as portfolio manager, Kelsoe did not sign any public filings. In fact, the only public statements that can be attributable to Kelsoe are the management statements of Fund performance included in the annual and semi-annual reports, and similar statements that took the form of a "letter to shareholders." (*See* ECF No. 199, Ex. L (2007 Consol. Ann. Rept. at 4, 22, 39, 58 (indicating that Mr. Kelsoe signed the Management Discussion of Fund Performance as an employee of MAM)); *see also id.* at Exs. I, J, K.) Plaintiffs do not allege that any of these statements were false or misleading.

Because the Court did not apply the recent *Janus* decision at all, and because the proper application of *Janus* is an issue of first impression within the Sixth Circuit that would resolve not

only Plaintiffs' 1934 Act claims against Kelsoe but would also resolve all of Plaintiffs' remaining 1934 Act claims,[5] this issue is ripe for interlocutory appeal.

## II. THIS COURT SHOULD STAY ALL PROCEEDINGS IN THIS ACTION PENDING RESOLUTION OF PROCEEDINGS IN THE COURT OF APPEALS.

District courts possess the power to stay proceedings pending interlocutory appeal. 28 U.S.C. § 1292(b). In fact, district courts commonly stay all proceedings until resolution of an interlocutory appeal when certifying securities laws issues. *See Thompson v. Shaw Group Inc.*, 2006 WL 2038025 (E.D. La. Jul. 18, 2006); *Miron v. BDO Seidman, LLP*, 2006 WL 3742772 (E.D. Pa. Dec. 13, 2006). "In evaluating whether a stay should be granted pending the circuit court's disposition of an interlocutory appeal, the Court considers the same factors as it does for a preliminary injunction: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *City of Memphis*, 138 F. Supp. 2d at 1027 (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

All four elements of this inquiry should be balanced, and strength in one area can make up for any weakness of another. *See Griepentrog*, 945 F.2d at 153 ("These factors are not

---

[5] Because Kelsoe was not the "maker" of any statements issued by the Funds, it logically follows that his purported scienter cannot be imputed to the Funds. *See City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 442 Fed. Appx. 672, 676 (3d Cir. 2011) (affirming dismissal in "that plaintiff had not pled scienter against Horizon" because "there was no individual at Horizon who made actionable statements with scienter"). The Court states that "the scope of the agency relationship between Kelsoe and the Funds is a question of fact inappropriate for this review" (Order at 18). Such an analysis, however, is inconsistent with the Supreme Court's holding in *Janus*. Because the Court largely relied on Kelsoe's purported scienter to sustain Plaintiffs' 1934 Act claims against the Funds—the only remaining 10(b) Defendant—a determination that Kelsoe's scienter cannot be imputed to the Funds would defeat those claims as well, along with Plaintiffs' control person claims under § 20(a) of the 1934 Act.

11

prerequisites that must be met, but are interrelated considerations that must be balanced together."). Here, all four factors favor granting a stay.

First, as discussed *supra*, Defendants' positions are supported by controlling statutory or case law, and there is at least some likelihood they will prevail on an eventual appeal on one or more issues. *See Griepentrog*, 945 F.2d at 153-54. Second, Defendants would certainly be burdened by being subjected to discovery absent a stay. To proceed with voluminous and costly discovery while the three questions are before the Sixth Circuit on appeal would result in a significant waste of time, money and resources for both the parties and the Court in the event the appeal is successful. If the Sixth Circuit determines that the claims were either time-barred or otherwise legally deficient from the beginning, the costly discovery would be irreparable and significant.

Moreover, any burden upon Plaintiffs of having the stay continue while the matter is on appeal would be light. For one, Discovery has already been automatically stayed by the PSLRA during the entire time this matter has been pending. A few more months would not materially impact Plaintiffs. More importantly, Plaintiffs have not sought relief from the automatic stay under the PSLRA's exceptions. The PSLRA allows discovery pending resolution of a motion to dismiss in two narrow circumstances—to either "preserve evidence or to prevent *undue prejudice* to that party." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). As Plaintiffs have not presented any motion to date that requests discovery based on any "undue prejudice" or preservation justifications, they will be hard pressed to show any harm of a stay now while the matter is pending appeal.

Public policy considerations also strongly support extending the PSLRA discovery stay pending interlocutory appeal. The discovery stay allows companies to fight the legal sufficiency

of a putative class action at the motion to dismiss stage of litigation without the threat of costly discovery, a harm that can be crippling in securities litigation. In enacting the PSLRA, Congress explained that the "cost of discovery often forces innocent parties to settle frivolous securities actions" and that "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." H.R. Conf. Rep. No. 104-369, 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736; *see also Ohio Public Employees Ret. Sys. v. Fed. Home Loan Mortgage Corp.*, 2010 WL 1628059, at *2 (N.D. Ohio April 22, 2010) (describing the PSLRA discovery stay and noting that the stay "'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery'") (citing *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003)). Staying this action pending interlocutory appeal would further the PSLRA's congressional policy by allowing Defendants to challenge the sufficiency of the CAC for the three stated legal questions.

Accordingly, this Court should stay all proceedings in this matter until the Court of Appeals determines whether to grant or deny permission to appeal this Court's Order, and if such permission to appeal is granted, stay all proceedings until the Court of Appeals has issued a final decision in the interlocutory appeal.

## CONCLUSION

For the reasons stated above, Defendants respectfully request the Court amend its Order that denied, in part, Defendants' motions to dismiss and certify the Order for appeal pursuant to 28 U.S.C. § 1292(b), stating that the Court is of the opinion that the motion to dismiss involves three controlling questions of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the Order may materially advance the ultimate

termination of this litigation.  Defendants also respectfully request the Court grant a stay of these proceedings pending appeal.

Dated:  April 25, 2012

        BASS, BERRY & SIMS PLC

By: /s/ Britt K. Latham
    Michael L. Dagley
    Britt K. Latham
    W. Brantley Phillips, Jr.
    150 Third Avenue South, Suite 2800
    Nashville, TN 37201
    blatham@bassberry.com
    mdagley@bassberry.com
    bphillips@bassberry.com
    (615) 742-6200

    Shepherd D. Tate
    Michael A. Brady
    100 Peabody Place, Suite 900
    Memphis, Tennessee   38103-3672
    state@bassberry.com
    mbrady@bassberry.com
    (901) 543-5900

    *Attorneys for Morgan Keegan & Company, Inc., Morgan Asset Management, Inc., and MK Holding, Inc.*

    SUTHERLAND, ASBILL & BRENNAN, LLP

By: /s/ S. Lawrence Polk (by BKL with permission)
    S. Lawrence Polk
    999 Peachtree Street N.E.
    Atlanta, GA 30309-3996

*Attorney for Defendant J. Kenneth Alderman, Allen B. Morgan, Jr., Brian B. Sullivan, Joseph T. Weller, and James C. Kelsoe, Jr.*

MAYNARD, COOPER & GALE, P.C.

By: /s/ Peter S. Fruin (by BKL w/ Permission)
Peter S. Fruin
1901 Sixth Avenue, North
Suite 2400
Birmingham AL 35203
(205) 254-1068

*Attorneys for Regions Financial Corporation*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on April 25, 2012, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**BRANSTETTER STRANCH JENNINGS, PLLC**
J. GERARD STRANCH, IV
227 Second Avenue, North
Nashville, TN 37201

**LABATON SUCHAROW LLP**
JOEL H. BERNSTEIN
LOUIS GOTTLIEB
DAVID J. GOLDSMITH
STEFANIE J. SUNDEL
MICHAEL WOOLLEY
140 Broadway
New York, NY 10005

**PEARSON SIMON WARSHAW & PENNY, LLP**
GEORGE S. TREVOR
44 Montgomery Street, Suite 2450
San Francisco, CA 94104

**CABANISS JOHNSTON GARDNER DUMAS & O'NEAL LLP**
CRAWFORD S. MCGIVAREN
R. CARLTON SMYLY
Suite 700, Park Place Tower
2001 Park Place North
Birmingham, AL 35203

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
75 E. 55th Street
New York, NY  10022

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street NE
Atlanta, GA  30309

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York  1004

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203

**PURSLEY LOWERY MEEKS LLP**
R. HAL MEEKS
260 Peachtree Street NW
Atlanta, GA 30303

                /s/ Britt K. Latham

10751505.1