IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION<br><br>This Document Relates to:<br><br>*In re Regions Morgan Keegan Closed-End Fund Litigation*,<br><br>No. 07-cv-02830 SHM dkv | No. 09-md-02009-SHM |

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

This stipulation and agreement of settlement (the "Settlement Agreement" or "Settlement") is made and entered into by and between Lead Plaintiffs Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore (collectively, "Lead Plaintiffs"), and C. Fred Daniels, in his capacity as Court-appointed Trustee *Ad Litem* for the Leroy McAbee, Sr. Family Foundation Trust (the "McAbee Foundation Trust") (the McAbee Foundation Trust together with the Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Class and TAL Subclass (each defined below); and the Morgan Keegan Defendants (defined below), Defendant Regions Financial Corporation ("RFC"), the Closed-End Funds (defined below), the Officer Defendants (defined below), and the Director Defendants (defined below) (collectively, "Defendants"; and together with Plaintiffs, the "Parties").

**WHEREAS:**

A.      All capitalized words or terms herein shall have the meanings ascribed thereto herein and in Paragraph 1 below.

B.      Beginning in December 2007, shareholders filed several securities class action complaints in the United States District Court for the Western District of Tennessee (the "Court") on behalf of persons and entities who purchased or otherwise acquired shares of four "closed-end" investment companies and three "open-end" mutual funds (the "Open-End Funds") offered by Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan").  The "closed-end" investment companies are: RMK Multi-Sector High Income Fund, Inc., n/k/a Helios Multi-Sector High Income Fund, Inc. ("RHY"); RMK Advantage Income Fund, Inc., n/k/a Helios Advantage Income Fund, Inc. ("RMA"); RMK High Income Fund, Inc., n/k/a Helios High Income Fund, Inc. ("RMH"); and RMK Strategic Income Fund, Inc., n/k/a Helios Strategic Income Fund, Inc. ("RSF") (collectively, the "Closed-End Funds").

C.      On September 23, 2008, Judge Samuel H. Mays, Jr. issued an Order consolidating one set of actions on behalf of purchasers of shares in the Closed-End Funds under the style *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 07-cv-02830 SMH dkv (W.D. Tenn.) (the "Action"), and consolidating a separate set of actions on behalf of purchasers of shares in the Open-End Funds under the style *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 07-cv-02784 SMH dkv (W.D. Tenn.) (the "Open-End Funds Action").

D.      On August 26, 2009, Judge Mays issued another Order further consolidating the set of actions brought by C. Fred Daniels, in his capacity as Court-appointed Trustee *Ad Litem*, on behalf of certain Trusts and Custodial Accounts invested in the Closed-End Funds and the Open-End Funds under either the Action or the Open-End Funds Action.  This consolidated Action asserts and this Settlement is intended to settle all Released Claims relating to investments in the four Closed-End Funds only.

E.      On December 15, 2010, after notice concerning lead plaintiff proceedings

pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") was reissued, Judge

Mays appointed Lead Plaintiffs and approved their selection of Labaton Sucharow LLP as Lead

Counsel to represent the Class in this Action.

F.      C. Fred Daniels was appointed by the Probate Court of Jefferson County,

Alabama in June of 2008 to serve as a temporary special fiduciary known as a Trustee *Ad Litem*

(or "TAL") for the limited and specific purposes of monitoring, evaluating and participating in

securities litigation, and taking other litigation actions, in substitution for Regions Bank d/b/a

Regions Morgan Keegan Trust ("Regions Bank") in Regions Bank's capacities as trustee,

directed trustee, custodian, agent, or other fiduciary on behalf of certain trusts and custodial

accounts with investments in the Open-End Funds and the Closed-End Funds.

G.      Plaintiffs filed their Consolidated Amended Class Action Complaint for

Violations of the Federal Securities Laws (the "Complaint") on February 22, 2011.  The

Complaint asserts five claims for relief broadly alleging that Defendants misrepresented the

types of assets and the true value of the assets in which the Closed-End Funds invested.  Count I

asserts claims under Section 11 of the Securities Act of 1933 (the "Securities Act") against

Defendants RHY, Morgan Keegan, and the Director Defendants in connection with allegedly

materially false and misleading statements in the Registration Statement filed with the U.S.

Securities and Exchange Commission (the "SEC") for the public offering of RHY shares.  Count

II asserts claims under Section 12(a)(2) of the Securities Act against RHY and Morgan Keegan

in connection with allegedly materially false and misleading statements in the Prospectus filed

publicly with the SEC for the RHY offering.  Count III asserts claims under Section 15 of the

Securities Act against the Director Defendants as alleged controlling persons of RHY.  Count IV

asserts claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Closed-End Funds and the Officer Defendants for allegedly material misstatements of fact in various reports of the Closed-End Funds filed publicly with the SEC. Count V asserts claims under Section 20(a) of the Exchange Act against the Morgan Keegan Defendants, the Officer Defendants, the Director Defendants, and RFC as alleged controlling persons of the Closed-End Funds.

H.      On April 13, 2011, Defendants filed five motions to dismiss, which were fully briefed and *sub judice* as of August 2011.

I.      The Parties engaged Professor Eric D. Green, a respected and experienced mediator in securities class actions, to assist them in exploring a potential negotiated resolution of the claims asserted in the Action. On October 27 and 28, 2011, the Parties met with Professor Green in Nashville, Tennessee for two days of intensive settlement negotiations. The mediation sessions were preceded by an exchange of comprehensive mediation statements and supporting evidence, including information from expert reports. On July 11, 2011, Defendants also provided Lead Counsel with more than 6.7 million pages of confidential documents and other confidential information pursuant to an agreement in advance of the mediation. While these discussions narrowed the Parties' differences and clarified the merits and value of the Parties' claims and defenses, no agreement was reached.

J.      In January 2012, the Parties agreed to reconvene before Professor Green for resumed mediation efforts to proceed on April 26, 2012. On March 30, 2012, the Court issued an Order Granting in Part and Denying in Part Defendants' Motions to Dismiss. The Court dismissed Count IV as against Officer Defendants Weller, Sullivan, and Anthony, and otherwise denied the motions to dismiss.

K.      On April 25, 2012, the Morgan Keegan Defendants, RFC, and certain Individual Defendants moved the Court to amend its Order of March 30, 2012, to include a statement certifying the decision for interlocutory appeal to the United States Court of Appeals for the Sixth Circuit on three controlling questions of law.

L.      On April 26, 2012, the Parties engaged in resumed settlement negotiations facilitated by Professor Green, in Nashville.  The Parties ultimately reached an agreement-in-principle to settle the Action and signed a Settlement Term Sheet consistent with the terms and conditions set forth herein (the "Settlement Term Sheet").

M.      Plaintiffs, through Lead Counsel and other Plaintiffs' counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action.  This process included reviewing and analyzing: (i) nearly seven million pages of nonpublic e-mails, valuation-related materials and other pertinent documents produced by the Morgan Keegan Defendants; (ii) publicly available orders, reports and other information concerning the administrative and enforcement proceedings brought by the SEC, multiple State securities regulators, and the Financial Industry Regulatory Authority ("FINRA") against certain Defendants and concerning shares of the Closed-End Funds; (iii) documents filed publicly by the Closed-End Funds and certain Defendants with the SEC; (iv) other publicly available information and data concerning the Closed-End Funds and the claims asserted in the Complaint, including press releases, news articles, and other public statements issued by or concerning the Closed-End Funds and the Defendants; (v) research reports issued by financial analysts concerning the Closed-End Funds and securities held in the Closed-End Funds' portfolios; (vi) pleadings filed in other pending litigations naming certain of the Defendants herein as defendants or nominal defendants; and (vii) the applicable law governing the claims

and potential defenses.  Lead Counsel also identified and interviewed former employees of

Morgan Keegan and other persons with relevant knowledge (some of whom have provided

information as confidential witnesses), and consulted with a qualified expert on damages and

causation issues.

      N.     Defendants have denied and continue to deny any wrongdoing or any violation of

law, including any liability under the federal securities laws.  Defendants have denied and

continue to deny each of the claims alleged by Plaintiffs on behalf of the Class, including all

claims asserted in the Complaint.

      O.     This Settlement Agreement, whether or not consummated, any proceedings

relating to any settlement, or any of the terms of any settlement, whether or not consummated,

shall in no event be construed as, or deemed to be evidence of, an admission or concession on the

part of the Parties with respect to any claim of any liability or damage whatsoever, or any

infirmity in any claim or defense that has been or could have been asserted.  Defendants are

entering into this Settlement to eliminate the burden, expense, uncertainty, distraction and risk of

further litigation.

      P.     Plaintiffs believe that the claims asserted in the Action have merit and that the

facts and evidence reviewed and analyzed to date support the claims asserted.  However,

Plaintiffs and Lead Counsel recognize and acknowledge the expense and length of continued

proceedings necessary to prosecute the Action against Defendants through trial and appeals.

Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of

any litigation, especially in complex actions such as the Action, as well as the difficulties and

delays inherent in such litigation.  Lead Counsel also are mindful of the possible defenses to the

claims alleged in the Action.  Based on their investigation and evaluation, Plaintiffs and Lead

Counsel believe that the Settlement set forth in this Settlement Agreement confers substantial monetary benefits upon the Class and is in the best interests of Plaintiffs and the Class.

**NOW, THEREFORE**, without any concession by Plaintiffs that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby **STIPULATED AND AGREED**, by and among the Parties to this Settlement Agreement, through their respective attorneys, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties hereto, all Released Claims and all Released Defendants' Claims as against all Released Parties shall be compromised, settled, released and dismissed with prejudice and without costs, upon and subject to the following terms and conditions:

## <u>DEFINITIONS</u>

1. As used in this Settlement Agreement, the following terms shall have the meanings set forth below:

(a) "Action" means *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 07-cv-02830 SHM dkv (W.D. Tenn.), along with all the cases consolidated therewith, but only as to claims or any part of such claims based on the Closed-End Funds.

(b) "Alternative Judgment" means a form of final judgment that may be entered by the Court but in a form other than the form of Judgment provided for in this Settlement Agreement and where none of the Parties hereto elects to terminate this Settlement by reason of such variance.

(c) "Authorized Claimant" means a Class Member who timely submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment by the Court.

(d)    "Claims Administrator" means the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Class Members, process proofs of claim and administer the Settlement.

(e)    "Class" or "Class Member" means: all Persons who purchased or otherwise acquired the publicly traded shares of (i) RMH between June 24, 2003 and July 14, 2009, inclusive, and were damaged thereby; (ii) RSF between March 18, 2004 and July 14, 2009, inclusive, and were damaged thereby; (iii) RMA between November 8, 2004 and July 14, 2009, inclusive, and were damaged thereby; (iv) RHY between January 19, 2006 and July 14, 2009, inclusive, or pursuant or traceable to the Registration Statement, Prospectus, and Statement of Additional Information (the "RHY Offering Materials") filed by RHY on or about January 19, 2006 with the SEC, and were damaged thereby; and (v) all members of the TAL Subclass (defined below) (collectively, the "Class").  Excluded from the Class and as Class Members are the Defendants; the members of the immediate families of the Defendants; the subsidiaries and affiliates of Defendants; any person who is an executive officer, director, partner or controlling person of the Closed-End Funds or any other Defendant (including any of its subsidiaries or affiliates, which include but are not limited to Morgan Asset Management, Inc., Regions Bank, Morgan Keegan, RFC, and MK Holding, Inc.); any entity in which any Defendant has a controlling interest; any Person who has filed a proceeding with FINRA against one or more Released Defendant Parties concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and such proceeding was not subsequently dismissed to allow the Person to specifically participate as a Class Member; any Person who has filed a state court action that has not been removed to federal court, against one or more of the Defendants concerning the purchase of shares in one or more of the Closed-End Funds during the Class

Period and whose claims in that action have been dismissed with prejudice, released, or fully adjudicated absent a specific agreement with such Defendant(s) to allow the person to participate as a Class Member; and the legal representatives, heirs, successors and assigns of any such excluded person or entity.  These exclusions do not extend to trusts or accounts as to which the control or legal ownership by any Defendant (or by any subsidiary or affiliate of any Defendant) is derived or arises from an appointment as trustee, custodian, agent, or other fiduciary ("Fiduciary Accounts") unless with respect to any such Fiduciary Account any Person has filed a proceeding with FINRA against one or more Released Defendant Parties concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and such proceeding was not subsequently dismissed to allow the Person to specifically participate as a Class Member; any Person who has filed a state court action that has not been removed to federal court, against one or more of the Defendants concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and whose claims in that action have been dismissed with prejudice, released, or fully adjudicated absent a specific agreement with such Defendant(s) to allow the Person to participate as a Class Member (and such exclusion shall apply to the legal representatives, heirs, successors and assigns of any such excluded Person, entity or Fiduciary Account).  With respect to Closed-End Fund shares for which the TAL Orders authorize the Trustee *Ad Litem* to prosecute the claims or causes of action pleaded in the Complaint in the Action ("TAL Represented Closed-End Fund Shares"), "Class" and "Class Member" also excludes Persons who are, or were during the Class Period, trust and custodial account beneficiaries, principals, settlors, co-trustees, and others owning beneficial or other interests in the TAL Represented Closed-End Fund Shares ("Such Persons"), but this exclusion applies only to any claims or causes of action of Such Persons that the Trustee *Ad Litem* is not

authorized by the TAL Orders to prosecute.  With respect to Closed-End Fund Shares that are

not TAL Represented Closed-End Fund Shares and in which Such Persons have a beneficial or

other interest, the foregoing partial exclusion of Such Persons does not apply.  Also excluded

from the Class and as Class Members are those Persons who submit valid and timely requests for

exclusion from the Class in accordance with the requirements set forth in the Notice.

(f)     "Class Period" means the period between June 24, 2003 and July 14,

2009, inclusive.

(g)     "Closed-End Funds" means RMH, RSF, RMA, and RHY.

(h)     "Complaint" means the Consolidated Amended Class Action Complaint

for Violations of the Federal Securities Laws filed on February 22, 2011.

(i)     "Court" means the United States District Court for the Western District of

Tennessee.

(j)     "Defendants" means the Morgan Keegan Defendants, RFC, the Closed-

End Funds, the Officer Defendants, and the Director Defendants.

(k)     "Defendants' Counsel" means the law firms of Bass Berry & Sims PLC;

Maynard, Cooper & Gale, P.C.; Sullivan & Cromwell LLP; Paul Hastings LLP; Pursley Lowery

Meeks LLP; and Sutherland Asbill & Brennan, LLP.

(l)     "Director Defendants" means Allen B. Morgan, Jr. and J. Kenneth

Alderman.

(m)     "Distribution Order" means an order of the Court approving the Claims

Administrator's administrative determinations concerning the acceptance and rejection of the

claims submitted and approving any fees and expenses not previously paid, including the fees

and expenses of the Claims Administrator and, if the Effective Date has occurred, directing

payment of the Net Settlement Fund to Authorized Claimants.

(n)     "Effective Date" means the date upon which the Settlement shall become

effective, as set forth in Paragraph 38 below.

(o)     "Escrow Account" means the separate escrow account designated by Lead

Counsel at a national banking institution, into which the Settlement Amount is to be deposited

for the benefit of the Class.

(p)     "Escrow Agent" means Labaton Sucharow LLP.

(q)     "Final," with respect to a court order, means the later of: (i) if there is an

appeal from a court order, the date of final affirmance on appeal and the expiration of the time

for any further judicial review whether by appeal, reconsideration or a petition for a writ of

certiorari and, if certiorari is granted, the date of final affirmance of the order following review

pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final

dismissal of any proceeding on certiorari to review the order; or (iii) the expiration of the time

for the filing or noticing of any appeal from the order (or, if the date for taking an appeal or

seeking review of the order shall be extended beyond this time by order of the issuing court, by

operation of law or otherwise, or if such extension is requested, the date of expiration of any

extension if any appeal or review is not sought).  However, any appeal or proceeding seeking

subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement

Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect

the time set forth above for the Judgment or Alternative Judgment to become Final, or otherwise

preclude the Judgment or Alternative Judgment from becoming Final.

(r)     "Judgment" means the proposed judgment to be entered approving the Settlement substantially in the form annexed hereto as Exhibit B.

(s)     "Individual Defendants" means the Officer Defendants and Director Defendants.

(t)     "Lead Counsel" means the law firm of Labaton Sucharow LLP.

(u)     "Lead Plaintiffs" means Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore.

(v)     "Morgan Keegan Defendants" means Morgan Keegan & Company, Inc., Morgan Asset Management, Inc., and MK Holding, Inc.

(w)     "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court, including any award to Plaintiffs for reasonable costs and expenses (including lost wages) pursuant to the PSLRA.

(x)     "Notice" means the Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses, which is to be sent to members of the Class, subject to approval of the Court, and shall be substantially in the form annexed hereto as Exhibit A-1 to Exhibit A hereto.

(y)     "Notice and Administration Expenses" means all fees and expenses incurred in connection with providing notice to the Class and the administration of the Settlement, including but not limited to: (i) providing notice of the proposed Settlement by mail, publication and other means to Class Members; (ii) receiving and reviewing claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed

Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund.

(z)     "Officer Defendants" means James C. Kelsoe, Jr., Carter E. Anthony, Brian B. Sullivan, and Joseph Thompson Weller.

(aa)     "Party" or "Parties" means (i) Defendants and (ii) Plaintiffs on behalf of themselves and the other Class Members.

(bb)     "Person" means an individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust or custodial account (and their respective trustees, representatives, agents, and fiduciaries), unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, including all trusts and custodial accounts (and their respective trustees, representatives, agents, and fiduciaries) for which Regions Bank is or was a trustee or a directed trustee, custodian, or agent, or other fiduciary (which includes, but is not limited to, all trusts and custodial accounts within the scope of the TAL's appointment).

(cc)     "Plaintiffs" means Lead Plaintiffs and the TAL in his capacity as Trustee *Ad Litem* for the McAbee Foundation Trust.

(dd)     "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice to the Class of the pendency of the Action and of the Settlement, which, subject to the approval of the Court, shall be substantially in the form annexed hereto as Exhibit A.

- 13 -

(ee)    "Proof of Claim" means the Proof of Claim and Release form for submitting a claim, subject to approval of the Court, which shall be substantially in the form annexed as Exhibit A-2 to Exhibit A hereto.

(ff)    "PSLRA" means the Private Securities Litigation Reform Act of 1995.

(gg)    "Released Claims" means any and all claims, rights, causes of action, demands, actions, debts, sums of money, obligations, judgments, suits, and liabilities of every nature and description, including both known and Unknown Claims (as defined below), whether fixed or contingent, liquidated or un-liquidated, at law or in equity, known or unknown, suspected or unsuspected, disclosed or undisclosed, concealed or hidden, asserted or unasserted, whether class or individual in nature, that Plaintiffs or any other Class Member: (i) asserted in the Complaint filed in the Action; or (ii) that arise out of, relate to, or are in connection with the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations or omissions or failures to act involved, set forth, or referred to in the Complaint filed in the Action, but only as they relate to investments in the Closed-End Funds during the Class Period; *provided*, *however*, that Released Claims do not include (i) claims to enforce the Settlement; (ii) any governmental or regulatory agency's claims in any criminal, or civil, or administrative action against any of the Released Defendant Parties, or any claims or rights to compensation from the SEC Fair Fund, the States' Fund, or other victim compensation funds resulting from any such governmental or regulatory agency action; (iii) claims or causes of action of the types asserted in *In re Helios Closed-End Funds Derivative Litigation*, No. 11-cv-02935 SHM dkv (W.D. Tenn.) (the "Closed-End Funds Derivative Action")[1]; *In re Regions Morgan Keegan ERISA Litigation*,

---

[1]  The Settlement of the claims or causes of action asserted in the Closed-End Funds Derivative Action shall be provided in a separate Stipulation and Agreement of Settlement.

No. 08-cv-2192 SHM dkv (W.D. Tenn.); *Daniels v. Morgan Asset Management, Inc.*, No. 09-cv-02800 SHM (W.D. Tenn.) (the "*Daniels* State Law Action")[2]; *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 07-cv-02784 SMH dkv (W.D. Tenn.); or *Landers v. Morgan Asset Management, Inc*., No. 08-cv-2260 SHM dkv (W.D. Tenn.).  Neither this definition, the Settlement Agreement, nor any Final Judgment or Final Alternative Judgment shall limit or restrict the authority or power of the Probate Court of Jefferson County, Alabama to construe or enforce Regions Bank's duties and obligations under the TAL Orders, and no duties or obligations of Regions Bank created and existing under or by virtue of the TAL Orders are affected by this Settlement Agreement or any Final Judgment or Final Alternative Judgment, except to the extent that the release under this Settlement Agreement of claims or causes of action removes those claims and causes of action from the scope of the Trustee *Ad Litem*'s appointment and responsibilities.

(hh)    "Released Defendant Parties" means Defendants, their past or present subsidiaries, parents, successors and predecessors, officers, directors, shareholders, partners, agents, employees, attorneys, auditors, assigns, affiliates, and insurers; the spouses, members of the immediate families, representatives, and heirs of the Individual Defendants, as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their immediate family members; and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or

---

[2]  This Settlement includes claims, causes of action, losses, or damages of the type asserted in the *Daniels* State Law Action against Defendants only to the extent that they are based on or arise from the Closed-End Funds.  To the extent that claims, causes of action, losses, damages of the type asserted in the *Daniels* State Law Action are not based on and do not arise from the Closed-End Funds, they are excluded from this Settlement and are not affected by this Settlement.  This exclusion from the Settlement specifically applies to claims, causes of action, losses, or damages that are based on or arise from the Open-End Funds.

affiliated with any of the Defendants and the legal representatives, heirs, successors in interest or assigns of Defendants.

(ii)     "Released Defendants' Claims" means all claims, including both known and Unknown Claims (as defined below), whether arising under federal, state, common or administrative law, or any other law, that the Defendants could have asserted against any of the Released Plaintiff Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the Action (other than claims to enforce the Settlement).

(jj)     "Released Parties" means the Released Defendant Parties and the Released Plaintiff Parties.

(kk)     "Released Plaintiff Parties" means each and every Class Member, Lead Plaintiffs, Lead Counsel, other Plaintiffs' counsel, the TAL, the TAL's counsel, and their respective past, current, or future trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, general or limited partners or partnerships, affiliates, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of Class Members who are individuals, as well as any trust of which any Class Member is the settlor or which is for the benefit of any of their immediate family members.  Released Plaintiff Parties does not include any Class Member or Person who timely and validly seeks exclusion from the Class.

(ll)     "RFC" means Regions Financial Corporation.  Regions Financial Corporation is the parent company of Regions Bank, Morgan Asset Management (now known as Regions Investment Management, Inc.) as well as several other entities, and is the former parent company of Morgan Keegan & Company, Inc. and MK Holding, Inc.

(mm)   "Settlement" means the resolution of the Action as against Defendants in accordance with the terms and provisions of this Settlement Agreement.

(nn)   "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(oo)   "Settlement Amount" means the total principal amount of Sixty-Two Million Dollars ($62,000,000.00) in cash.[3]

(pp)   "Settlement Fund" means the Settlement Amount and any earnings thereon.

(qq)   "Settlement Hearing" means the hearing to be held by the Court to determine whether the proposed Settlement is fair, reasonable, and adequate and should be approved.

(rr)   "Summary Notice" means the Summary Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses for publication, which, subject to approval of the Court, shall be substantially in the form annexed as Exhibit A-3 to Exhibit A hereto.

(ss)   "TAL Orders" means the orders entered by the Probate Court of Jefferson County, Alabama, on June 20, 2008, and June 30, 2008, for the appointment of C. Fred Daniels as a temporary special fiduciary, or Trustee *Ad Litem,* to take certain litigation actions in substitution for Regions Bank in Regions Bank's capacity as trustee, directed trustee, custodian, agent, or other fiduciary on behalf of certain Regions Bank trusts and custodial accounts that

---

[3]  The Settlement Amount of the Closed-End Funds Derivative Action shall be provided in a separate Stipulation and Agreement of Settlement but in no event shall the Settlement Amount for this Action and the Closed-End Funds Derivative Action together exceed Sixty-Eight Million Dollars ($68,000,000.00).

were open and existing on June 30, 2008, and which hold or held shares of the Closed-End

Funds and the Open-End Funds.  The TAL Orders authorize the Trustee *Ad Litem* only to take

litigation actions that Regions Bank would otherwise have been authorized to take in its capacity

as trustee, directed trustee, custodian, agent, or other fiduciary on behalf of the trusts and

custodial accounts within the scope of the TAL Orders.

        (tt)    "TAL Subclass" means all trusts and custodial accounts for which Regions

Bank was on June 30, 2008, a trustee or a directed trustee, custodian, or agent, and which: (i)

purchased or otherwise acquired shares of RMH, RMA, RSF or RHY between June 24, 2003 and

July 14, 2009, inclusive, and were damaged thereby; and (ii) did not elect out of the TAL's

authority pursuant to the TAL Orders.

        (uu)    "Taxes" means all taxes on the income of the Settlement Fund and

expenses and costs incurred in connection with the taxation of the Settlement Fund (including,

without limitation, interest, penalties and the expenses of tax attorneys and accountants).

        (vv)    "Unknown Claims" means any and all Released Claims, which Plaintiffs

or any other Class Member does not know or suspect to exist in his, her or its favor at the time of

the release of the Released Defendant Parties, and any Released Defendants' Claims that

Defendants do not know or suspect to exist in his, her or its favor at the time of the release of the

Released Plaintiff Parties, which if known by him, her or it might have affected his, her or its

decision(s) with respect to the Settlement.  Unknown Claims include those claims in which some

or all of the facts comprising the claim may be unsuspected, or even undisclosed, concealed, or

hidden.  With respect to any and all Released Claims and Released Defendants' Claims, the

Parties stipulate and agree that, upon the Effective Date, Plaintiffs and Defendants, shall

expressly, and each other Class Member shall be deemed to have, and by operation of the

Judgment or Alternative Judgment shall have, expressly waived and relinquished any and all

provisions, rights and benefits conferred by any law of any state or territory of the United States,

or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code §

1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Plaintiffs, the other Class Members or Defendants may hereafter discover facts in addition to or

different from those which he, she, or it now knows or believes to be true with respect to the

subject matter of the Released Claims and the Released Defendants' Claims, but Plaintiffs and

Defendants shall expressly, fully, finally and forever settle and release, and each other Class

Member shall be deemed to have settled and released, and upon the Effective Date and by

operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally,

and forever, any and all Released Claims and Released Defendants' Claims, known or unknown,

suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden,

which now exist, or heretofore have existed, upon any theory of law or equity now existing,

heretofore have existed, or coming into existence in the future, including, but not limited to,

conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty,

law, rule or regulation, without regard to the subsequent discovery or existence of such different

or additional facts.  Plaintiffs and Defendants acknowledge, and other Class Members by

operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown

Claims" in the definition of Released Claims and Released Defendants' Claims was separately

bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.      The obligations incurred pursuant to this Settlement Agreement are subject to approval by the Court, such approval becoming Final, and are in full and final disposition of the claims in the Action with respect to the Released Parties and any and all Released Claims and Released Defendants' Claims.

3.      For purposes of this Settlement only, the Parties agree to: (i) certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Class as defined in Paragraph 1(e); (ii) the certification of Lead Plaintiffs as Class Representatives for the Class; (iii) the certification of the McAbee Foundation Trust as Subclass Representative for the TAL Subclass; and (iv) the appointment of Lead Counsel as Class Counsel for the Class.

4.      By operation of the Judgment or Alternative Judgment, as of the Effective Date, Plaintiffs and each and every other Class Member on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendant Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any of the Released Claims against any of the Released Defendant Parties.

5.      By operation of the Judgment or Alternative Judgment, as of the Effective Date, Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns by operation of the Judgment or Alternative Judgment, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Defendants' Claims, as against each and every one of the Released Plaintiff Parties and shall forever be barred and enjoined from commencing,

instituting, prosecuting, or maintaining any of the Released Defendants' Claims against any of the Released Plaintiff Parties.

## THE SETTLEMENT CONSIDERATION

6.      In full settlement of the claims asserted in the Action against Defendants and in consideration of the releases specified in Paragraphs 4-5 above, RFC and the Morgan Keegan Defendants collectively shall pay or cause to be paid the Settlement Amount into the Escrow Account within twenty (20) business days after the Court enters the Preliminary Approval Order and Lead Counsel has provided Defendants' Counsel (or their designee) with complete and accurate wiring instructions, payment address, and a complete and accurate W-9 form for the Settlement Fund.  Under no circumstances will Defendants collectively be required to pay or cause to be paid to the Class more than the principal amount of the Settlement Amount pursuant to this Settlement Agreement and the Settlement set forth herein.

7.      With the sole exception of RFC and the Morgan Keegan Defendants' obligation to pay, or cause payment of, the Settlement Amount into the Escrow Account as provided for in Paragraph 6, Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination of Lead Counsel, the Escrow Agent or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; (vi) the payment of Notice and Administration Expenses, other than as set forth in Paragraph 45

below; or (vii) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## USE AND TAX TREATMENT OF SETTLEMENT FUND

8.      The Settlement Fund shall be used: (i) to pay any Taxes; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court; (iv) to pay any costs and expenses allowed by the PSLRA and awarded to Plaintiffs by the Court; (v) to pay any other fees and expenses awarded by the Court; and (vi) to pay the claims of Authorized Claimants.

9.      The Net Settlement Fund shall be distributed to Authorized Claimants as provided in Paragraphs 22-34 below.  The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be disbursed or returned, pursuant to Paragraph 45 of this Settlement Agreement, and/or further order of the Court.  The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) up to the limit of Federal Deposit Insurance Corporation insurance.  Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent.

10.      After the Settlement Amount has been paid into the Escrow Account in accordance with Paragraph 6 above, the Parties agree to treat the Settlement Fund, as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the

provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing to occur.

(a)     For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Lead Counsel or its successors, who shall timely and properly file, or cause to be filed, all informational and other tax returns necessary or advisable with respect to the earnings on the fund deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) hereof.

(b)     All Taxes shall be paid solely out of the Escrow Account.  In all events, Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  In the event any Taxes are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Escrow Account.  Any taxes or tax expenses owed on any earnings on the Settlement Amount prior to its transfer to the Escrow Account shall be the sole responsibility of Defendants.

(c)     Taxes shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by Lead Counsel out of the Escrow Account without prior order from the Court or approval by Defendants, and Lead Counsel shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  The Parties agree to cooperate with Lead Counsel, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

11.     This is not a claims-made settlement.  As of the Effective Date, Defendants and/or such other persons or entities funding the Settlement on Defendants' behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## ATTORNEYS' FEES AND EXPENSES

12.     Lead Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and reimbursement of litigation expenses incurred in prosecuting the Action, plus any earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund ("Fee and Expense Application").  Defendants shall take no position with respect to the Fee and Expense Application.

13.     The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any attorneys' fees and expenses awarded by the Court shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the Order awarding such attorneys' fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.

14.     Any payment of attorneys' fees and litigation expenses pursuant to Paragraphs 12-13 above shall be subject to Lead Counsel's obligation to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued earnings at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated or fails to become effective for any reason or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or litigation expenses is reduced or reversed by Final non-appealable court order.  Lead Counsel shall make the appropriate refund or repayment in full no later than twenty (20) business days after receiving notice from a court of appropriate jurisdiction of the termination of the Settlement or notice of any reduction or reversal of the award of attorneys' fees and/or litigation expenses by Final non-appealable court order.

15.     With the sole exception of Defendants causing the payment of the Settlement Amount into the Escrow Account as provided for in Paragraph 6, Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Counsel (or any other counsel) in the Action that may occur at any time.

16.     Defendants shall have no responsibility for, and no liability whatsoever with respect to, the allocation of any attorneys' fees or expenses among any plaintiffs' counsel in the Action, or any other Person who may assert some claim thereto, or any fee or expense awards the Court may make in the Action.

17.     Defendants shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of the Class Members, whether or not paid from the Escrow Account.

18.     The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Settlement Agreement, and

- 25 -

are separate from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Settlement Agreement, and any order or proceeding relating to any Fee and Expense Application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, or affect or delay the finality of the Judgment or Alternative Judgment approving the Settlement Agreement and the Settlement set forth herein, including, but not limited to, the release, discharge, and relinquishment of the Released Claims against the Released Defendant Parties, or any other orders entered pursuant to the Settlement Agreement.  Plaintiffs and Lead Counsel may not cancel or terminate the Settlement Agreement or the Settlement in accordance with Paragraph 39 or otherwise based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

## CLASS ACTION FAIRNESS ACT NOTICE

19.     No later than ten (10) calendar days after the Settlement Agreement is filed with the Court, Defendants, through the Claims Administrator, shall cause to be served, upon the appropriate official(s), a notice of the proposed Settlement as required under 28 U.S.C. § 1715. Pursuant to 28 U.S.C. § 1715(d), the Judgment may be issued by the Court no earlier than ninety (90) days after the appropriate official has been served with the notice(s) required by 28 U.S.C. § 1715(b).  The expenses required to satisfy the notice requirements of 28 U.S.C. § 1715 shall be paid by RFC and the Morgan Keegan Defendants.

## ADMINISTRATION EXPENSES

20.     Except as otherwise provided herein, the Settlement Fund shall be held in the Escrow Account until the Effective Date.

21.     Prior to the Effective Date, without further approval from Defendants or further

order of the Court, Lead Counsel may expend up to Five Hundred Thousand Dollars ($500,000)

from the Settlement Fund to pay Notice and Administration Expenses actually incurred.  Taxes

and fees related to the Escrow Account and investment of the Settlement Fund may be paid as

incurred.  After the Effective Date, without further approval of Defendants or further order of the

Court, Notice and Administration Expenses may be paid as incurred.

### DISTRIBUTION TO AUTHORIZED CLAIMANTS

22.     Lead Counsel will apply to the Court for a Distribution Order, on notice to

Defendants' Counsel, approving the Claims Administrator's administrative determinations

concerning the acceptance and rejection of the claims submitted herein, and, if the Effective Date

has occurred, directing the payment of the Net Settlement Fund to Authorized Claimants.

23.     The Claims Administrator shall administer the Settlement under Lead Counsel's

supervision and subject to the jurisdiction of the Court.  Except as stated in Paragraphs 6, 7 and

36 herein, Defendants and Defendants' Counsel shall have no responsibility for, interest in, or

liability whatsoever with respect to the administration of the Settlement or the actions or

decisions of the Claims Administrator, and shall have no liability to the Class in connection with

such administration.

24.     The Claims Administrator shall determine each Authorized Claimant's *pro rata*

share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss, as

defined in the Plan of Allocation of Net Settlement Fund (the "Plan of Allocation") included in

the Notice, or in such other plan of allocation as the Court may approve.

25.     Defendants will take no position with respect to the Plan of Allocation.  The Plan

of Allocation is a matter separate and apart from the proposed Settlement between Plaintiffs and

Defendants, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of allocation be approved by the Court. Plaintiffs and Lead Counsel may not cancel or terminate the Settlement Agreement or the Settlement in accordance with Paragraph 39 or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action. Defendants and Defendants' Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

## ADMINISTRATION OF THE SETTLEMENT

26.     Any member of the Class who fails to timely submit a valid Proof of Claim (substantially in the form of Exhibit A-2 to Exhibit A hereto) will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment or Alternative Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

27.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any Proofs of Claim submitted. Defendants and Defendants' Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund

or reviewing or challenging of claims of Class Members.  Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

28.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Proof of Claim, substantially in the form annexed hereto as Exhibit A-2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Proofs of Claim must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Lead Counsel in their discretion, or by Order of the Court.  Any Class Member who fails to submit a Proof of Claim by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Settlement Agreement (unless, by Order of the Court or the discretion of Lead Counsel, late-filed Proofs of Claim are accepted), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment or Alternative Judgment and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim or Released Defendants' Claims.  Provided that it is received before the motion for the Distribution Order is filed, a Proof of Claim shall be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance

with the instructions thereon.  In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Settlement Agreement the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted.  The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

(e)     If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court; and

(f)      The administrative determinations of the Claims Administrator accepting and rejecting disputed claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Distribution Order.

29.      Each claimant who submits a Proof of Claim shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim.  In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Action or the Settlement.

30.      Payment pursuant to the Distribution Order shall be deemed Final and conclusive against all Class Members.  All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment or Alternative Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.

31.      All proceedings with respect to the administration, processing and determination of claims described by Paragraphs 22-34 of this Settlement Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment or Alternative Judgment nor require Defendants to participate in any such dispute, hearing, or controversy.  Defendants will, however, cooperate

and participate as necessary to aid the Court in answering any questions regarding such proceedings.

32.     No Person shall have any claim of any kind against the Released Defendant Parties or their counsel with respect to the matters set forth in Paragraphs 22-34 or any subsections of those Paragraphs.

33.     No Person shall have any claim against Plaintiffs or their counsel (including Lead Counsel), or the Claims Administrator, or other agent designated by Lead Counsel, based on the distributions made substantially in accordance with this Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

34.     If there is any balance remaining in the Net Settlement Fund after at least twelve (12) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if economically feasible, reallocate such balance among Authorized Claimants who have cashed their checks in an equitable fashion. Any balance that still remains in the Net Settlement Fund, after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian not-for-profit charitable organization serving the public interest, designated by Lead Plaintiffs and approved by the Court.

## TERMS OF THE PRELIMINARY APPROVAL ORDER

35.     Concurrently with its application for preliminary Court approval of the Settlement contemplated by this Settlement Agreement and promptly upon execution of this Settlement Agreement, Lead Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A, which application shall not be opposed by Defendants or Defendants' Counsel.  The Preliminary Approval Order will,

among other things, set the date and time for the Settlement Hearing and prescribe the method(s) for giving notice of the Settlement to the Class.

36.     Within seven (7) calendar days after this Settlement Agreement is filed with the Court, the Closed-End Funds shall provide or cause to be provided to Lead Counsel or the Claims Administrator, at no cost to Plaintiffs, Lead Counsel or the Claims Administrator, lists of the names and addresses of purchasers of the Closed-End Funds during the Class Period, to the extent available to them.  Within seven (7) calendar days after this Settlement Agreement is filed with the Court, the Morgan Keegan Defendants shall provide or cause to be provided to Lead Counsel or the Claims Administrator, at no cost to Plaintiffs, Lead Counsel, the Class or the Claims Administrator, lists of the names and addresses of purchasers who held shares of the Closed-End Funds through a Morgan Keegan account during the Class Period.

## TERMS OF THE JUDGMENT

37.     If the Settlement contemplated by this Settlement Agreement is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B:

(a)     finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b)     directing that the Action be dismissed with prejudice; directing that the Parties are to bear their own costs, except as otherwise provided in this Settlement Agreement; and releasing the Released Claims;

(c)     permanently barring and enjoining the institution and prosecution, by Plaintiffs and the Class Members, of any other action against the Released Defendant Parties in

Case 2:07-cv-02830-SHM-dkv   Document 260   Filed 10/12/12   Page 34 of 51   PageID 9687

any court or other tribunal, forum, or proceeding asserting any Released Claims;

(d)     reserving jurisdiction over the Action, including all future proceedings concerning the administration, consummation, and enforcement of this Settlement Agreement;

(e)     finding that all the filings made by each Party along with maintenance, prosecution, defense and settlement of the Action were done on a good faith basis in accordance with the PSLRA and Rule 11 of the Federal Rules of Civil Procedure;

(f)     finding, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delaying and directing entry of a final judgment; and

(g)     containing such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

38.     The Effective Date of this Settlement shall be the date when all of the following shall have occurred:

(a)     entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit A annexed hereto;

(b)     payment of the Settlement Amount into the Escrow Account;

(c)     RFC and the Morgan Keegan Defendants have not exercised their option to terminate the Settlement Agreement pursuant to Paragraph 39(e)-(f) or Paragraph 40;

(d)     approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(e)     a Judgment, which shall be in all material respects substantially in the form set forth in Exhibit B annexed hereto, has been entered by the Court and has become Final; or in the event that an Alternative Judgment has been entered and none of the Parties elects to terminate the Settlement by reason of such variance, that judgment has become Final.

39.     Defendants and Plaintiffs each shall have the right to terminate the Settlement and this Settlement Agreement by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other Parties hereto within fourteen (14) calendar days of: (a) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's Final refusal to approve this Settlement Agreement or any material part of it; (c) the Court's Final refusal to enter the Judgment in any material respect or an Alternative Judgment; (d) the date upon which the Judgment or Alternative Judgment is modified or reversed in any material respect by Final order of the United States Court of Appeals for the Sixth Circuit or the Supreme Court of the United States; (e) the Court's refusal to enter the judgment or an alternative judgment in the Closed-End Funds Derivative Action in any material respect; or (f) a date that is no later than one (1) year after the Court's entry of the judgment or an alternative judgment in the Closed-End Funds Derivative Action, provided that, as of that date, the settlement in the Closed-End Funds Derivative Action has failed to become effective as set forth in Paragraph 17 of the Stipulation of Settlement in the Closed-End Funds Derivative Action.

40.     The Morgan Keegan Defendants and RFC shall also have the right to terminate the Settlement on behalf of all Defendants in the event the Termination Threshold (defined below) has been reached.

(a)     Simultaneously herewith, counsel for the Parties are executing a confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement").  The Supplemental Agreement sets forth certain conditions under which the Morgan Keegan Defendants and RFC shall have the option, which must be exercised unanimously, to terminate the Settlement on behalf of all Defendants and render this Settlement Agreement null and void in the event that requests for exclusion from the Class exceed certain

agreed-upon criteria (the "Termination Threshold").  The Parties agree to maintain the confidentiality of the Termination Threshold in the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed to anyone other than the named Parties and their counsel unless ordered by the Court.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Termination Threshold submitted to the Court *in camera* or under seal.  The Claims Administrator shall keep the Parties apprised of all the requests for exclusion received on a regular basis and shall provide counsel for Defendants within five (5) business days of receiving any such exclusion or revocation as set forth in the Supplemental Agreement with a list of all Persons who have requested exclusion from the Class or have submitted a revocation of a request for exclusion, together with (to the extent disclosed in the request for exclusion or revocation of request for exclusion) the number of shares of each of the Closed-End Funds purchased by each such Person during the Class Period.  Defendants may also request from time to time copies of any or all requests for exclusion received, together with all written revocations of requests for exclusion, which shall be delivered to Defendants' Counsel promptly upon request.  Separate lists of all Persons who have validly or invalidly requested exclusion from the Class shall be provided to Defendants and the Court at least ten (10) calendar days before the Settlement Hearing.

(b)	In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Settlement Agreement shall become null and void and of no further force and effect, with the exception of the provisions of Paragraphs 44 and 45 which shall continue to apply.

- 36 -

41.     In addition to all of the rights and remedies that the Plaintiffs have under the terms of this Settlement Agreement, Plaintiffs shall also have the right to terminate the Settlement in the event that Defendants collectively do not pay, or cause to be paid, the Settlement Amount as provided in Paragraph 6 above.  In the event of such failure to pay, Plaintiffs can elect to terminate by providing written notice to all other Parties to this Settlement Agreement.  The termination is not effective unless and until RFC and the Morgan Keegan Defendants collectively fail to pay the Settlement Amount within fourteen (14) calendar days of such written notice.

42.     If, before the Settlement becomes Final, a trustee, receiver, conservator, or other fiduciary is appointed under Title 11 of the United States Code (Bankruptcy), or any similar law, and in the event of the entry of a Final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Settlement Fund by or on behalf of RFC and/or a Morgan Keegan Defendant to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiffs, the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment or Alternative Judgment entered, and Defendants, Plaintiffs and the members of the Class shall be restored to their litigation positions immediately prior to the execution of the Settlement Term Sheet on April 26, 2012.

43.     If an option to withdraw from and terminate this Settlement Agreement and Settlement arises under any of Paragraphs 39-42 above: (i) neither Defendants nor Plaintiffs (as the case may be) will be required for any reason or under any circumstance to exercise that

option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of Defendants or Plaintiffs, as applicable.

44.      In the event the Settlement is terminated or fails to become effective for any reason, then: the Settlement shall be without prejudice, and none of its terms, including, but not limited to, the certification of the Class, selection of Class Representative, and appointment of Class Counsel, shall be effective or enforceable except as specifically provided herein; the Parties to this Settlement Agreement shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to their execution of the Settlement Term Sheet on April 26, 2012; and the Parties in the Action shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered.  In such event, the Settlement Term Sheet, this Settlement Agreement or any aspect of the discussions or negotiations leading to this Settlement Agreement, shall not be admissible in this Action and shall not be used by Plaintiffs against or to the prejudice of Defendants or by Defendants against or to the prejudice of Plaintiffs in any court filings, depositions, at trial or otherwise.

45.      In the event the Settlement is terminated or fails to become effective for any reason, any portion of the Settlement Amount previously paid on behalf of or by Defendants, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Amount shall be returned to the entities that made the payment(s) within ten (10) business days after written notification of such event.  In such event, at the request of Defendants' Counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), for refund to the applicable funder or as otherwise directed.

## <u>NO ADMISSION OF WRONGDOING</u>

46.     Except as set forth in Paragraphs 47-48 below, this Settlement Agreement, whether or not consummated, and any discussions, negotiations, proceedings or agreements relating to the Settlement Agreement, the Settlement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties for any purpose, and in particular:

(a)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by Defendants with respect to the truth of any allegation by Plaintiffs and the Class or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants;

(b)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Plaintiffs or any other members of the Class as evidence of any infirmity in the claims of Plaintiffs or the other members of the Class;

(c)     do not constitute, and shall not be offered or received against or to the prejudice of Defendants or against Plaintiffs or any other members of the Class, as evidence of a presumption, concession or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Parties to this Settlement Agreement, in any other civil, criminal, or administrative action or proceeding, or arbitration, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement;

(d)      do not constitute, and shall not be construed against Defendants, Plaintiffs, or any other members of the Class, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

(e)      do not constitute, and shall not be construed as or received in evidence as, an admission, concession, or presumption against Plaintiffs or any other members of the Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

47.      Defendants may file this Settlement Agreement and/or the Judgment or Alternative Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies.  The Parties may file this Settlement Agreement and/or the Judgment or Alternative Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and/or the Judgment or Alternative Judgment.  All Parties submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

48.      Subject to the prohibited purposes identified in Paragraph 46(a)-(e) above, the Trustee *Ad Litem* or his counsel may file this Settlement Agreement, the Preliminary Approval Order, the Judgment, or the Alternative Judgment in any civil action or other legal proceeding in response to a challenge to the Trustee *Ad Litem*'s compliance with his authority or responsibilities under the TAL orders, or in a legal proceeding seeking a discharge of the Trustee *Ad Litem* under the TAL Orders.

## MISCELLANEOUS PROVISIONS

49.     All of the exhibits to the Settlement Agreement, except any plan of allocation, to the extent incorporated in those exhibits, are material and integral parts hereof and are fully incorporated herein by this reference.

50.     RFC and the Morgan Keegan Defendants warrant that, as to the payments made on behalf of Defendants, at the time of such payment, RFC and the Morgan Keegan Defendants will not be insolvent, nor will the payment render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

51.     The Parties to this Settlement Agreement intend the Settlement of the Action to be the full, final and complete resolution of the Released Claims and Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted or defended in bad faith or without a reasonable basis.  The Parties and their counsel agree that each has complied fully with Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense and settlement of the Action and shall not make any applications for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action.  The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Parties and their respective counsel, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

52.     The Parties and their respective counsel agree that they will refrain from disparaging each other in any publicly disseminated statements concerning the Action.[4]  The

---

[4] "Publicly disseminated statements" does not include direct communications by the Trustee *Ad Litem* with Persons who may have interests in trusts or custodial accounts that are or have

*(continued . . . )*

- 41 -

Parties and their respective counsel also agree to keep the information disclosed to them during

the acts contemplated by the Settlement and this Settlement Agreement confidential unless

required to publicly disclose such information by applicable law, except that this agreement

excludes information that the Parties or their counsel obtain through means independent of acts

contemplated by this Settlement (including confidential communications exchanged in relation to

the mediations referenced in Paragraphs I and L above) or this Settlement Agreement.

53.     This Settlement Agreement may not be modified or amended, nor may any of its

provisions be waived, except by a writing signed by all Parties hereto or their successors.

54.     The headings herein are used for the purpose of convenience only and are not

meant to have legal effect.

55.     The administration and consummation of the Settlement as embodied in this

Settlement Agreement shall be under the authority of the Court, and the Court shall retain

jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any

expenses, and implementing and enforcing the terms of this Settlement Agreement.

56.     The waiver by one Party of any breach of this Settlement Agreement by any other

Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement

Agreement.

57.     This Settlement Agreement, its exhibits and the Supplemental Agreement

constitute the entire agreement among the Parties hereto concerning the Settlement of the Action

as against Defendants, and no representations, warranties, or inducements have been made by

any party hereto concerning this Settlement Agreement and its exhibits other than those

---

*( . . . continued)*
been within the scope of the TAL Orders to the extent necessary or appropriate for the Trustee
*Ad Litem*'s discharge of his duties or responsibilities arising from the TAL Orders.

contained and memorialized in such documents.  It is understood by the Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Settlement Agreement is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each Party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Settlement Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

58.      Nothing in the Settlement Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

59.      This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Signatures sent by facsimile or by e-mail on a "pdf" document shall be deemed originals.

60.      This Settlement Agreement shall be binding when signed, but the Settlement shall be effective only on the condition that the Effective Date occurs.

61.      This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

62.      Nothing in this Settlement Agreement removes the parties' obligations under the Confidentiality Agreement entered into by the parties prior to mediation in this Action, and all such obligations shall continue to be observed in accordance with that agreement.

63.      The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the

State of Tennessee without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

64.     This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

65.     All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so in the capacities stated therein, and that they have the authority to take appropriate action in such capacities required to be taken pursuant to the Settlement Agreement to effectuate its terms.  Plaintiffs and Lead Counsel represent and warrant that none of Plaintiffs' claims or causes of action referred to herein or that could have been alleged in the Action have been assigned, encumbered or in any manner transferred in whole or in part.

66.     The Parties and their counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a hearing for consideration of final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses, and to promptly agree upon and execute all such other documentation as reasonably may be required to obtain final approval by the Court of the Settlement.

67.     Except as otherwise provided herein, each Party shall bear its own costs.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed, by their duly authorized attorneys, as of October 12, 2012.

LABATON SUCHAROW LLP


By:         */s/ Joel H. Bernstein*
Joel H. Bernstein
*jbernstein@labaton.com*
David J. Goldsmith
*dgoldsmith@labaton.com*
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477

*Lead Counsel for Lead Plaintiffs*
*Lion Fund, L.P., Dr. J. Samir Sulieman*
*and Larry Lattimore and the Class*


BRANSTETTER, STRANCH
  & JENNINGS, PLLC


By:         */s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR# 023045)
*gstranch@branstetterlaw.com*
227 Second Avenue North
Nashville, Tennessee  37201
Telephone:  (615) 254-8801
Facsimile:   (615) 250-3937

*Liaison Counsel for Lead*
*Plaintiffs and the Class*

CABANISS, JOHNSTON, GARDNER
  DUMAS & O'NEAL LLP


By:         */s/ Crawford S. McGivaren*
            Crawford S. McGivaren
            *csm@cabaniss.com*
            R. Carlton Smyly
            *rcs@cabaniss.com*
            Suite 700, Park Place Tower
            2001 Park Place North
            Birmingham, Alabama  35203
            Telephone:  (205) 716-5200
            Facsimile:  (205) 716-5389

            *Additional counsel for C. Fred Daniels in*
            *his capacity as Trustee Ad Litem for the*
            *Leroy McAbee, Sr. Family Foundation Trust*


PEARSON, SIMON, WARSHAW
  & PENNY, LLP


By:         */s/ George S. Trevor*
            George S. Trevor
            *gtrevor@pswplaw.com*
            44 Montgomery Street, Suite 2450
            San Francisco, California  94104
            Telephone:  (415) 433-9000
            Facsimile:  (415) 433-9008

            *Additional Counsel for Plaintiffs*

BASS BERRY & SIMS PLC


By:    */s/ Britt K. Latham*
     Michael L. Dagley
     *mdagley@bassberry.com*
     Britt K. Latham
     *blatham@bassberry.com*
     W. Brantley Phillips, Jr.
     *bphillips@bassberry.com*
     150 Third Avenue South, Suite 2800
     Nashville, Tennessee  37201
     Telephone: (615) 742-6200
     Facsimile: (615) 742-6293

     Shepherd D. Tate
     *state@bassberry.com*
     Michael A. Brady
     *mbrady@bassberry.com*
     100 Peabody Place, Suite 900
     Memphis, Tennessee  38103-3672
     Telephone: (901) 543-5900
     Facsimile: (901) 543-5999

     *Attorneys for Morgan Keegan*
     *& Company, Inc. and MK Holding, Inc.*


     MAYNARD, COOPER & GALE, P.C.


By:    */s/ Peter S. Fruin*
     Peter S. Fruin
     *pfruin@maynardcooper.com*
     Scott Brown
     *scottbrown@maynardcooper.com*
     1901 6th Avenue North, Suite 1900
     Birmingham, Alabama  35203
     Telephone: (205) 254-1000
     Facsimile: (205) 254-1999

     - and -

SULLIVAN & CROMWELL LLP
David B. Tulchin
*tulchind@sullcrom.com*
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Regions*
*Financial Corporation and*
*Morgan Asset Management, Inc.*
*(now known as Regions*
*Investment Management, Inc.)*


PAUL HASTINGS LLP


By:      _____/s/ Kevin C. Logue_____
Kevin C. Logue
*kevinlogue@paulhastings.com*
75 East 55th Street
New York, New York  10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel for Defendants Helios Advantage*
*Income Fund, Inc., Helios High Income*
*Fund, Inc., Helios Multi-Sector High Income*
*Fund, Inc., and Helios Strategic Income*
*Fund, Inc. (formerly RMK Advantage*
*IncomeFund, Inc., RMK High Income Fund,*
*Inc., RMK Multi-Sector High Income*
*Fund, Inc., and RMK Strategic Income*
*Fund, Inc., respectively)*

SUTHERLAND ASBILL
& BRENNAN, LLP


By: _____/s/ S. Lawrence Polk_____
S. Lawrence Polk
*larry.polk@sutherland.com*
999 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone: (404) 853-8225
Facsimile: (404) 853-8806

*Attorney for Allen B. Morgan, Jr.,*
*J. Kenneth Alderman, Brian B. Sullivan,*
*Joseph T. Weller, and James C. Kelsoe, Jr.*


PURSLEY LOWERY MEEKS LLP


By: _____/s/ R. Hal Meeks_____
R. Hal Meeks
*hmeeks@plmllp.com*
260 Peachtree Street, N.W.
Suite 2000
Atlanta, Georgia  30303
Telephone: (404) 880-7180
Facsimile: (404) 880-7199

*Attorney for Defendant Carter E. Anthony*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2012, I electronically filed the foregoing documents with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following participating CM/ECF participants:

**Adam Julien Gana**
agana@nbrlawfirm.com

**Albert C. Harvey**
harveya@thomasonlaw.com

**Andrew Berke**
andy@berkeattys.com

**Asa R. Danes**
asadanes@paulhastings.com

**B. J. Wade**
bwade@gewwlaw.com

**Beth A. Keller**
bkeller@faruqilaw.com

**Charles H. Jones, Jr.**
fwatson@watsonburns.com

**Christopher Marlborough**
cmarlborough@faruqilaw.com

**D. Andrew Pietro**
pietroda@sullcrom.com

**Dale H. Tuttle**
dtuttle@gewwlaw.com

**David B. Tulchin**
tulchind@sullcrom.com

**David E. Swarts**
swartsd@sullcrom.com

**Emily C. Komlossy**
ekomlossy@faruqilaw.com

**Emily Nicklin**
enicklin@kirkland.com

**Ernest Koella**
nf@fallsveach.com

**Eugene J. Podesta, Jr.**
gpodesta@bakerdonelson.com

**Frank L. Watson, III**
fwatson@watsonburns.com

**Harold Naill Falls, Jr.**
nf@fallsveach.com

**Ira Horowitz**
fwatson@watsonburns.com

**J. Timothy Francis**
francis@bham.rr.com

**Jeffrey B. Maletta**
jeffrey.maletta@klgates.com

**Jeffrey R. Sonn**
jsonn@sonnerez.com

**Jerome A. Broadhurst**
jbroadhurst@appersoncrump.com

**John A. Cremer**
cmb@indylaw.com

**Derek W. Loeser**
dloeser@kellerrohrback.com

**Edge Partners, Ltd.**
fwatson@watsonburns.com

**Ellen M. Doyle**
edoyle@stemberfeinstein.com

**Kevin C. Logue**
kevinlogue@paulhastings.com

**Kristopher S. Ritter**
ritterk@kirkland.com

**Leo Maurice Bearman , Jr**
lbearman@bakerdonelson.com

**Marc Jay Bern**
mjbern@nbrlawfirm.com

**Mark P. Chalos**
mchalos@lchb.com

**Martin W. Zummach**
martin@sparkman-zummach.com

**Matthew M. Curley**
mcurley@bassberry.com

**Michael A. Brady**
mbrady@bassberry.com

**Michael L. Dagley**
mdagley@bassberry.com

**Nicole A. Baker**
nicole.baker@klgates.com

**Peter H. Burke**
pburke@bhflegal.com

**John B. Veach, III**
tv@fallsveach.com

**John J. Carey**
jcarey@careydanis.com

**Kenneth C. Johnston**
kjohnston@krel.com

**Peter S. Fruin**
pfruin@maynardcooper.com

**Randall K. Pulliam**
rpulliam@cauleybowman.com

**Richard A. Lockridge**
ralockridge@locklaw.com

**Scott L. Adkins**
sadkins@sonnerez.com

**Scott T. Beall**
sbeall@bealllaw.com

**Seymour Warren**
fwatson@watsonburns.com

**Shepherd D. Tate**
state@bassberry.com

**Steven Lawrence Polk**
larry.polk@sutherland.com

**Timothy A. Duffy**
tduffy@kirkland.com

**W. Brantley Phillips, Jr.**
bphillips@bassberry.com

_/s/ Joel H. Bernstein_
JOEL H. BERNSTEIN