IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION<br><br>This Document Relates to:<br><br>*In re Regions Morgan Keegan Closed-End Fund Litigation,*<br><br>No. 07-cv-02830-SHM-dkv | No. 09-md-02009-SHM |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
<u>OF PROPOSED SETTLEMENT AND CLASS CERTIFICATION</u>**

Joel H. Bernstein
David J. Goldsmith
Nicole M. Zeiss
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
(212) 907-0700

J. Gerard Stranch, IV (BPR # 023045)
BRANSTETTER, STRANCH
  & JENNINGS, PLLC
227 Second Avenue North
Nashville, Tennessee  37201
(615) 254-8801

*Counsel for Lead Plaintiffs
Lion Fund, L.P., Dr. J. Samir
Sulieman and Larry Lattimore*

[Additional counsel
listed on signature pages]

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................... iii

Preliminary Statement ......................................................................................................... 1

Factual Background ............................................................................................................. 3

    A.    Summary of Allegations and Claims ........................................................ 3

    B.    Procedural History ................................................................................... 5

    C.    Settlement Negotiations ........................................................................... 6

    D.    Settlement Consideration ......................................................................... 7

ARGUMENT ...................................................................................................................... 7

I.    THE COURT SHOULD GRANT PRELIMINARY
    APPROVAL TO THE PROPOSED SETTLEMENT .............................................. 7

    A.    Applicable Standards ............................................................................... 7

    B.    The Proposed Settlement Is the Product of Good
        Faith, Arm's-Length Negotiations Among Experienced
        Counsel Facilitated by a Respected Private Mediator ............................. 9

    C.    The Proposed Settlement Falls Well Within
        a Range of Reasonableness and Warrants
        Notice and a Hearing on Final Approval ............................................... 11

    D.    The Proposed Settlement Has No Obvious Deficiencies ....................... 13

II.    THE COURT SHOULD GRANT PRELIMINARY CLASS
    CERTIFICATION FOR PURPOSES OF THE SETTLEMENT ...................... 13

    A.    Applicable Standards ............................................................................. 13

    B.    This Action Meets the Requirements of Rule 23(a) ............................. 14

        1.    The Class and TAL Subclass
            Are Sufficiently Numerous ....................................................... 14

        2.    Common Questions of Law and Fact Exist ............................... 15

        3.    The Proposed Class and TAL Subclass
            Representatives' Claims Are Typical of
            Those of Other Class and Subclass Members ........................... 16

        4.      The Proposed Class and Subclass
Representatives Will Fairly and Adequately
Protect the Interests of the Class and TAL Subclass ................................ 16

C.      The Proposed Class and TAL
Subclass Satisfy Rule 23(b)(3)................................................................... 17

        1.      Common Questions of
Law and Fact Predominate......................................................... 18

        2.      A Class Action Is the
Superior Method for Resolution ................................................. 19

D.      The Court Should Appoint Lead Counsel as Class Counsel ................................ 20

III.    THE COURT SHOULD APPROVE THE
PROPOSED FORMS OF NOTICE AND PLAN
FOR PROVIDING NOTICE TO THE CLASS.............................................. 20

Conclusion ........................................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amchem Products v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................18

*Aro Corp. v. Allied Witan Co.,*
  531 F.2d 1368 (6th Cir. 1976) ...............................................................................7

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ................................................................................................19

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ................................................................................16

*Bovee v. Coopers & Lybrand,*
  216 F.R.D. 596 (S.D. Ohio 2003) .......................................................................19

*In re Cardizem CD Antitrust Litigation,*
  218 F.R.D. 508 (E.D. Mich. 2003) ...............................................................14, 19

*In re Cardizem CD Antitrust Litigation,*
  200 F.R.D. 297 (E.D. Mich. 2001) ......................................................................18

*Castillo v. Envoy Corp.,*
  206 F.R.D. 464 (M.D. Tenn. 2002) ................................................................. 19-20

*In re Delphi Corp. Securities, Derivative*
  *& ERISA Litigation,*
  248 F.R.D. 483 (E.D. Mich. 2008) ...............................................................10, 15

*Grier v. Goetz,*
  No. 79-cv-03107, 2012 WL 1393057
  (M.D. Tenn. Apr. 23, 2012) ...................................................................................16

*International Union, United Automobile,*
  *Aerospace & Agricultural Implement*
  *Workers of America v. General Motors Corp.,*
  497 F.3d 615 (6th Cir. 2007) ...................................................................................8

*International Union, United Automobile, Aerospace*
   *& Agricultural Implement Workers of America*
   *v. Ford Motor Corp.*, No. 05-74730, 2006 WL 1984363
   (E.D. Mich. July 13, 2006), *aff'd sub nom. International*
   *Union, United Automobile, Aerospace & Agricultural*
   *Implement Workers of America v. General Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ....................................................................8, 9, 16, 17

*Kizer v. Summit Partners, L.P.*,
   No. 11-CV-38, 2012 WL 1598066
   (E.D. Tenn. May 7, 2012) ........................................................................8,4, 17, 21

*In re Kmart Corp. Securities Litigation*,
   No. 95-CS-75584-DT, 1996 U.S. Dist. LEXIS 22609
   (E.D. Mich. Dec. 16, 1996) ...................................................................................15

*In re Packaged Ice Antitrust Litigation*,
   No. 08-MDL-01952, 2011 WL 6209188
   (E.D. Mich. Dec. 13, 2011) .....................................................................................8

*In re Packaged Ice Antitrust Litigation*,
   No. 08-MD-01952, 2010 WL 5638219
   (E.D. Mich. Sept. 2, 2010) ....................................................................................13

*Powers v. Hamilton County Public*
   *Defender Commission*,
   501 F.3d 592 (6th Cir. 2007) .................................................................................18

*Sheick v. Automotive Component Carrier, LLC*,
   No. 09-14429, 2010 WL 3070130
   (E.D. Mich. Aug. 2, 2010) ..................................................................................9, 12

*In re Skechers Toning Shoe*
   *Products Liability Litigation*,
   No. 11-MD-2308-TBR, 2012 WL 3312668
   (W.D. Ky. Aug. 13, 2012) ...........................................................9, 14-15, 21

*In re Southeastern Milk Antitrust Litigation*,
   No. 08-MD-1000, 2012 WL 2236692
   (E.D. Tenn. June 15, 2012)...........................................................9-10, 12

*Tennessee Association of Health Maintenance*
   *Organizations, Inc. v. Grier*,
   262 F.3d 559 (6th Cir. 2001) ...................................................................................8

*In re Whirlpool Corp. Front-Loading*
   *Washer Products Liability Litigation*,
   678 F.3d 409 (6th Cir. 2012) .................................................................................20

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(7) ..................................................................................21

Fed. R. Civ. P. 23(a) ............................................................... 2, 13-14, 20

Fed. R. Civ. P. 23(a)(1) ...............................................................................14

Fed. R. Civ. P. 23(a)(2) ...............................................................................15

Fed. R. Civ. P. 23(a)(3) ...............................................................................16

Fed. R. Civ. P. 23(a)(4) .........................................................................16, 17

Fed. R. Civ. P. 23(b) .........................................................................2, 14, 20

Fed. R. Civ. P. 23(b)(3) ...................................................................14, 18, 19

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................20, 22

Fed. R. Civ. P. 23(c)(3) ...............................................................................21

Fed. R. Civ. P. 23(e) ......................................................................................1

Fed. R. Civ. P. 23(g)(1) ...............................................................................20

**Other Authorities**

Renzo Comolli, *et al.*, *Recent Trends*
   *in Securities Class Litigation:*
   *2012 Mid-Year Review* (NERA July 24, 2012) ...................................11

Ellen M. Ryan & Lauren E. Simmons,
   *Securities Class Action Settlements:*
   *2011 Review and Analysis* (Cornerstone Research 2012)........................12

## **Preliminary Statement**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Lion

Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore ("Lead Plaintiffs") and C. Fred Daniels,

in his capacity as Trustee *ad Litem* for the Leroy McAbee, Sr. Family Foundation Trust (the

"McAbee Foundation Trust"), on behalf of the Class[1] and TAL Subclass (collectively with Lead

Plaintiffs and the McAbee Foundation Trust, "Plaintiffs"), respectfully submit this memorandum

of law in support of their unopposed motion for preliminary approval of the proposed settlement

("Settlement") of this class action and certification of the Class and TAL Subclass for settlement

purposes.

The Settlement, as set forth in the Settlement Agreement, provides for the payment of

Sixty-Two Million Dollars in cash ($62,000,000.00) for the benefit of the Class and TAL

Subclass.  Lead Plaintiffs, their counsel, and the McAbee Foundation Trust believe the

Settlement represents an excellent result for the Class and TAL Subclass and should be approved

by the Court as fair, reasonable, and adequate.

Lead Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily

Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), annexed to

the Settlement Agreement and submitted separately herewith for the Court's convenience.  The

Preliminary Approval Order, among other things: (i) preliminarily approves the Settlement as

within a range of reasonableness; (ii) schedules a hearing (the "Settlement Hearing") to consider

the fairness, reasonableness, and adequacy of the proposed Settlement, the Plan of Allocation of

the Net Settlement Fund (the "Plan of Allocation" or the "Plan"), and Lead Counsel's application

for an award of attorneys' fees and expenses; (iii) preliminarily certifies the Class pursuant to

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement dated as of October 12, 2012 and filed contemporaneously herewith (the "Settlement Agreement").

Rules 23(a) and (b)(3) for purposes of the Settlement; (iv) approves the forms and methods of

disseminating pre-hearing notice to the Class, and directs that such notice be issued; (v) appoints

the Claims Administrator recommended by Lead Counsel to administer the Settlement and assist

with its implementation; (vi) establishes procedures and a deadline for persons to request

exclusion from the Class; (vii) establishes procedures and a deadline for Class Members to object

to the terms of the Settlement, Plan of Allocation, or requested attorneys' fees and expenses; and

(viii) establishes procedures and a deadline for Class Members to submit Proofs of Claim for

payments from the Net Settlement Fund.

  If the Court grants preliminary approval to the Settlement, Lead Plaintiffs respectfully

propose the following schedule for the settlement consideration and approval process:

- Mailing of individual Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses ("Notice") and Proof of Claim form to all Class Members who can be identified through reasonable effort:  ***Ten (10) business days after entry of the Preliminary Approval Order*** (the "Notice Date").

- Publication of Summary Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses ("Summary Notice") in *Investor's Business Daily* and on the *PRNewswire*:  ***Fourteen (14) calendar days after the Notice Date.***

- Deadline for filing with the Court any submissions in support of final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses:  ***Thirty-five (35) calendar days before the Settlement Hearing***.

- Deadline for filing with the Court one or more affidavits or declarations by Lead Counsel or the Claims Administrator showing timely compliance with the mailing and publication requirements for notice to the Class:  ***Seven (7) calendar days before the Settlement Hearing***.

- Deadline for submission of requests for exclusion from the Class or TAL Subclass or objections to the Settlement, Plan of

Allocation, or application for attorney's fees and expenses: *Twenty-one (21) calendar days before the Settlement Hearing*.

- Date of Settlement Hearing: *At the Court's convenience, but no earlier than January 22, 2013* (approximately 100 days after the filing of this motion). This will allow sufficient time between the date the Notice is mailed and the deadline for opt-outs or objections, and for Defendants to issue, at their election, notice pursuant to the Class Action Fairness Act of 2005 ("CAFA").

- Postmark deadline for submission of Proofs of Claim: *One hundred twenty (120) calendar days after the Notice Date*.

## Factual Background

### A.   Summary of Allegations and Claims

The allegations and claims in this action are familiar to this Court as a result of the proceedings in this and other related litigations, and Lead Plaintiffs therefore provide only a brief overview here.

This securities class action arises from the 2007 collapse of four Regions Morgan Keegan closed-end investment companies ("Closed-End Funds" or simply "Funds") managed by James C. Kelsoe Jr. ("Kelsoe"), Morgan Keegan's Senior Portfolio Manager, and then known as RMK High Income Fund, Inc. ("RMH"); RMK Strategic Income Fund, Inc. ("RSF"); RMK Advantage Income Fund, Inc. ("RMA"); and RMK Multi-Sector High Income Fund, Inc. ("RHY"). Plaintiffs allege, among other things, that the Closed-End Funds were marketed as high-yield bond funds that invested most of their assets in corporate bonds, but in fact, unbeknownst to investors, the Funds' overlapping portfolios had large amounts of low-priority tranches of asset-backed securities ("ABS") and mortgage-backed securities ("MBS"). Plaintiffs also allege that the Funds misclassified more than $200 million-worth of ABS and MBS in the portfolios, falsely reporting them to investors as "corporate bonds" or "preferred stocks" to make the portfolios appear more diversified than they actually were. Moreover, Plaintiffs allege that the Funds

represented that a Lehman Brothers high-yield bond index composed solely of corporate bonds and preferred stock was the appropriate benchmark for their performance.  Because of the alleged mismatch between this benchmark index and the Funds' portfolios, Class Members allegedly were misled as to the heightened investment risks associated with Fund shares.

Following this Court's March 30, 2012 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (the "March 30 Opinion," ECF No. 246), the following claims are currently pending in this action:

- Violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. § 240.10b-5, against Kelsoe and the Closed-End Funds for alleged material misstatements of fact in various reports of the Funds filed publicly with the SEC;

- Violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Kelsoe, Joseph T. Weller ("Weller"), Brian B. Sullivan ("Sullivan") and Carter E. Anthony ("Anthony," and collectively with Kelsoe, Weller and Sullivan, the "Officer Defendants"); Allen B. Morgan, Jr. and J. Kenneth Alderman (together, the "Director Defendants," and collectively with the Officer Defendants, the "Individual Defendants"); Morgan Asset Management, Inc., Morgan Keegan & Company, Inc. ("Morgan Keegan"), and MK Holding, Inc. (collectively, the "Morgan Keegan Defendants"); and Defendant Regions Financial Corporation ("RFC") as alleged controlling persons of the Funds;

- Violations of Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, against RHY, Morgan Keegan, and the Director Defendants in connection with alleged material misstatements of fact in the Registration Statement for the public offering of RHY shares;

- Violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), against RHY and Morgan Keegan in connection with alleged material misstatements of fact in the Prospectus for the public offering of RHY shares; and

- Violations of Section 15 of the Securities Act, 15 U.S.C. § 77*o*, against the Director Defendants as alleged controlling persons of RHY.

**B.      Procedural History**

Beginning in December 2007, shareholders filed several securities class action complaints in the United States District Court for the Western District of Tennessee on behalf of persons and entities that purchased or otherwise acquired shares in the Closed-End Funds as well as three open-end mutual funds ("Open-End Funds") offered by Morgan Keegan.

On September 23, 2008, this Court issued an order consolidating one set of actions on behalf of purchasers of shares in the Closed-End Funds under the style *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 07-cv-02830 SMH dkv (W.D. Tenn.), which is this Action, and a separate set of actions on behalf of purchasers of shares in the Open-End Funds under the style *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 07-cv-02784 SMH dkv (W.D. Tenn.) (the "Open-End Funds Action").

On August 26, 2009, this Court issued another Order further consolidating the set of actions brought by C. Fred Daniels, in his capacity as court-appointed Trustee *ad Litem*, on behalf of certain Trusts and Custodial Accounts invested in the Closed-End Funds and the Open-End Funds under either this Action or the Open-End Funds Action.  This consolidated Action asserts, and this Settlement is intended to settle, all Released Claims relating to investments in the four Closed-End Funds only.

On December 15, 2010, after notice concerning lead plaintiff proceedings pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") was reissued, this Court appointed Lead Plaintiffs and approved their selection of Labaton Sucharow LLP as Lead Counsel to represent the Class in this Action.

C. Fred Daniels was appointed by the Probate Court of Jefferson County, Alabama in June of 2008 to serve as a temporary special fiduciary known as a Trustee *ad Litem* for the limited and specific purposes of monitoring, evaluating and participating in securities litigation,

5

and taking other litigation actions, in substitution for Regions Bank d/b/a Regions Morgan Keegan Trust ("Regions Bank") in Regions Bank's capacities as trustee, directed trustee, custodian, agent, or other fiduciary on behalf of certain trusts and custodial accounts with investments in the Open-End Funds and the Closed-End Funds.

Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") on February 22, 2011.

On April 13, 2011, Defendants filed five motions to dismiss, which were fully briefed and *sub judice* as of August 2011.  On March 30, 2012, this Court issued its March 30 Opinion, dismissing Plaintiffs' claims for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 as against Defendants Weller, Sullivan, and Anthony, and otherwise denying the motions to dismiss.

On April 25, 2012, the Morgan Keegan Defendants, RFC, and certain Individual Defendants moved the Court to amend the March 30 Opinion, to include a statement certifying the decision for interlocutory appeal to the United States Court of Appeals for the Sixth Circuit on three controlling questions of law.

## C.   Settlement Negotiations

The Parties engaged Professor Eric D. Green, a respected and experienced mediator in securities class actions, to assist them in exploring a potential negotiated resolution of this Action.  On October 27 and 28, 2011, the Parties and their counsel met with Professor Green in Nashville, Tennessee for two days of intensive settlement negotiations.  The mediation sessions were preceded by an exchange of comprehensive mediation statements and supporting evidence, including information from expert reports.  On July 11, 2011, Defendants also provided Lead Counsel with more than 6.7 million pages of confidential documents and other confidential information pursuant to an agreement in advance of the mediation.  While these discussions

6

narrowed the Parties' differences and clarified the merits and value of the Parties' claims and defenses, no agreement was reached.

In January 2012, the Parties agreed to reconvene before Professor Green for resumed mediation efforts to proceed on April 26, 2012.  On March 30, 2012, the Court issued the March 30 Opinion.  On April 26, 2012, the Parties engaged in resumed settlement negotiations facilitated by Professor Green, in Nashville.  The Parties ultimately reached an agreement-in-principle to settle the Action and signed a Settlement Term Sheet consistent with the terms and conditions set forth in the Settlement Agreement.

**D.      Settlement Consideration**

The Settlement provides that all Released Defendant Parties will be released in exchange for payment by the Morgan Keegan Defendants and RFC of $62 million in cash into an interest-bearing escrow account for the benefit of the Class and TAL Subclass.  This Settlement consideration and any accrued interest, after the deduction of attorney's fees and expenses awarded by the Court, notice and administration expenses, and taxes and related expenses (the "Net Settlement Fund"), will be distributed among all Class Members who submit timely and valid Proofs of Claim ("Authorized Claimants"), in accordance with the Plan of Allocation.

<u>**ARGUMENT**</u>

**I.      THE COURT SHOULD GRANT PRELIMINARY
         APPROVAL TO THE PROPOSED SETTLEMENT**

**A.      Applicable Standards**

There is a strong policy in favor of settlement of complex litigation.  *See*, *e.g.*, *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlements of disputes without litigation.").  This judicial policy of promoting settlements is given even greater weight with respect to class actions because class actions invariably result in

the expenditure of substantial resources by the parties and the courts.  *See*, *e.g.*, *International Union v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *7 (E.D. Mich. Dec. 13, 2011) (noting that the "Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits").

The procedure for approval of a proposed class action settlement in this Circuit involves three steps: "(1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) the members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable."  *Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)).

This matter is at the first step of the process.  In this regard, preliminary approval should be granted if "the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies."  *International Union v. Ford Motor Corp.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006), *aff'd sub nom. International Union v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).  In making this assessment, the Court should base preliminary approval of the proposed settlement "upon its familiarity with the issues and evidence of the case as well as the arm's-length nature of the negotiations prior to the settlement."  *Kizer v. Summit Partners*, *L.P.*, No. 11-CV-38, 2012 WL 1598066, at * 7 (E.D. Tenn. May 7, 2012) (quoting *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001)).

At the preliminary approval stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012) (quoting David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012)). Instead, the Court must only "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing." *Id.* (quoting *Manual for Complex Litigation (Fourth)* § 21.632 (2004)). Applying these standards, the Settlement warrants preliminary approval.

> **B.      The Proposed Settlement Is the Product of Good
> Faith, Arm's-Length Negotiations Among Experienced
> Counsel Facilitated by a Respected Private Mediator**

Courts accord considerable weight to the opinion of experienced and informed counsel. *See Sheick v. Automotive Component Carrier, LLC,* No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."); *International Union*, 2006 WL 1984363, at *26 ("Courts respect the integrity of and presume good faith in the absence of fraud or collusion in settlement negotiations unless someone offers evidence to the contrary.") (quotation marks and citation omitted).

Here, the Settlement is the product of extensive, arm's-length negotiations, including several sessions with a highly experienced mediator, Professor Eric D. Green. The negotiations were well-informed by the exchange of comprehensive mediation statements and supporting evidence, including information and analyses from experts. The mediation sessions were indispensable in airing the issues and obstacles to a resolution and clarifying the strengths and

weaknesses of the Parties' claims and defenses.  Professor Green's close involvement in the settlement negotiations strongly supports a finding that the negotiations were conducted at arm's-length and without collusion.  *See*, *e.g.*, *In re Southeastern Milk Antitrust Litig.*, No. 08-MD-1000, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) (noting that the participation of a mediator helps support the court's conclusion that settlement negotiations were made at arm's-length); *In re Delphi Corp. Sec.*, *Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated by mediator).

Moreover, pursuant to an agreement in advance of the first mediation session, the Morgan Keegan Defendants provided Lead Plaintiffs nearly 7 million pages of nonpublic e-mails, valuation-related materials and other confidential internal documents.  Lead Plaintiffs also reviewed (i) publicly available orders, reports and other information concerning the administrative and enforcement proceedings brought by the SEC, multiple State securities regulators, and the Financial Industry Regulatory Authority ("FINRA") against certain Defendants and concerning shares of the Closed-End Funds; (ii) documents filed publicly by the Funds and certain Defendants with the SEC; (iii) other publicly available information and data concerning the Funds and the claims asserted in the Complaint, including press releases, news articles, and other public statements issued by or concerning the Funds and the Defendants; (iv) research reports issued by financial analysts concerning the Funds and securities held in the Funds' portfolios; (v) pleadings filed in other pending litigations naming certain of the Defendants herein as defendants or nominal defendants; and (vi) the applicable law governing the claims and potential defenses.  Lead Counsel also identified and interviewed former employees of Morgan Keegan and other persons with relevant knowledge (some of whom have

provided information as confidential witnesses), and consulted with a qualified expert on damages and causation issues.

Finally, counsel for all Parties have significant experience prosecuting or defending securities class actions and are well informed about the strengths and weaknesses of the Parties' claims and defenses.  In sum, the Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel, and is deserving of preliminary approval.

### C.     The Proposed Settlement Falls Well Within a Range of Reasonableness and Warrants Notice and a Hearing on Final Approval

Lead Plaintiffs believe this Settlement represents an excellent result for the Class in light of the risks, costs and duration of continued litigation, and falls well within a range of what is considered fair, reasonable, and adequate.  The $62 million recovery compares favorably against other securities class action settlements in recent years.  A study of such settlements by NERA Economic Consulting, a firm that frequently consults with defendants in securities cases on damages and causation issues, reported that in 2012 the median settlement amount for securities class actions was $7.9 million, and that between 1996 and 2011, median settlement amounts in securities class actions ranged between $3.7 and $7.5 million, with a high of $11 million in 2010. *See* Renzo Comolli, *et al.*, *Recent Trends in Securities Class Litigation: 2012 Mid-Year Review*, at 26 (NERA July 24, 2012), annexed as Exhibit A to the accompanying supporting Declaration of Joel H. Bernstein ("Counsel Decl.").  A recent study by Cornerstone Research further notes that the median settlement amount in 2011 for securities class actions alleging both Exchange Act and Securities Act claims was $10.8 million.  *See* Ellen M. Ryan & Lauren E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 11 (Cornerstone Research 2012), Counsel Decl. Ex. B.

Furthermore, continued litigation of this action would be subject to the many risks of complex securities litigation.  Defendants have raised a number of substantial arguments and defenses which they would continue to raise at summary judgment and trial.  In considering whether to enter into the Settlement, Lead Plaintiffs, represented by experienced counsel, took into particular account the risks inherent in establishing materiality and reliance, scienter, loss causation, and recoverable damages, as well as the expense and likely duration of continued litigation.  *See Southeastern Milk*, 2012 WL 2236692, at *4 (noting risk, expense and delay of further litigation as factors supporting final approval of settlement).

Lead Plaintiffs also agreed to settle this Action based on their careful investigation and evaluation of the facts and law relating to the allegations in the Complaint, and consideration of the facts noted and views expressed by Professor Green and Defendants during the mediation process.  *See Sheick*, 2010 WL 300130, at* 13 ("Plaintiffs' Counsel's informed and reasoned judgment and their weighing of the relative risks and benefits of protracted litigation are entitled to deference.").

Further, Lead Plaintiffs took into consideration the substantial cash benefit to Class Members and the desirability of providing certain and effective relief to Class Members now, as opposed to years down the road after contentious fact discovery, dispositive motion practice, and a lengthy trial.  Regardless of who would be successful at trial, there is no doubt that both sides would have to present dense and nuanced information, including within the context of a "battle of the experts" on damages calculations and securities disclosure requirements.  The results of the trial would almost certainly not end the litigation, as one side would likely appeal, and it is quite possible that both sides would do so in the event that the jury found for the Class but substantially reduced the damages sought.  Absent a settlement, Class Members would have to

wait substantially longer before they obtained any relief, even assuming Plaintiffs were successful and overcame every obstacle.

Lead Plaintiffs, having considered the myriad risks of continued litigation and benefits to the Class, respectfully submit that if the Court preliminarily approves the Settlement, the Court ultimately will find that the Settlement is fair, reasonable, and adequate and should be approved.

### D.    The Proposed Settlement Has No Obvious Deficiencies

The Settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to Class Representatives." *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 5638219, at *1 (E.D. Mich. Sept. 2, 2010).  As discussed above, the $62 million recovery constitutes a significant and certain benefit for Class Members.  In addition to the cash recovery, all Class Members, including Plaintiffs, will be treated fairly and in a similar manner, each recovering their *pro rata* share of the Net Settlement Fund according to a Court-approved Plan of Allocation.

In sum, nothing in the course of the settlement negotiations or the terms of the Settlement itself disclose grounds to doubt its fairness.  Rather, the substantial recovery to the Class, the arm's-length nature of the negotiations and the participation of sophisticated counsel throughout the litigation, support a finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to justify notice to the Class and a hearing on final approval.  Lead Plaintiffs respectfully request preliminary approval of the Settlement.

## II.   THE COURT SHOULD GRANT PRELIMINARY CLASS CERTIFICATION FOR PURPOSES OF THE SETTLEMENT

### A.    Applicable Standards

In granting preliminary approval of the Settlement, the Court should also preliminarily certify the Class and TAL Subclass under Rules 23(a) and (b)(3) of the Federal Rules of Civil

Procedure.  A party seeking class certification must first show that the class action satisfies the

following four requirements set forth in Rule 23(a):

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking class certification must also satisfy one of the categories set forth in

Rule 23(b).  Here, certification is sought pursuant to Rule 23(b)(3), requiring that:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . .

Fed. R. Civ. P. 23(b)(3).

Courts have long acknowledged the propriety of certifying a class solely for purposes of a

class action settlement.  *See*, *e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 517 (E.D.

Mich. 2003).  Defendants have stipulated to certification for settlement purposes.

**B.     This Action Meets the Requirements of Rule 23(a)**

**1.     The Class and TAL Subclass Are Sufficiently Numerous**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

impracticable.  "There is not a strict numerical test for determining the impracticability of

joinder."  *Kizer*, 2012 WL 1598066, at *3 (citing *Santer v. General Motors Corp.*, 532 F.2d 511,

523 n.4 (6th Cir. 1976)).  "There is no automatic cut-off point at which the number of plaintiffs

make joinder impractical, thereby making a class-action suit the only viable alternative.

14

However, sheer number of potential litigants in a class, especially if it is more than several

hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Skechers*, 2012 WL 3312668 at

*3 (citing *Bacon v. Honda of Am. Mfg.*, *Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)).  Moreover, a

"court may assume that the numerosity requirement has been met in class action suits involving

purchasers or sellers of nationally traded securities."  *In re Kmart Corp. Sec. Litig.* No. 95-CS-

75584-DT, 1996 U.S. Dist. LEXIS 22609, at *12 (E.D. Mich. Dec. 16, 1996).

Since their respective initial public offerings, RMH, RSF, RMA and RHY have had 16.5

million, 21 million, 24 million, and 27 million shares outstanding and were actively traded on the

New York Stock Exchange ("NYSE").  Compl. ¶ 311.  Although the precise number of investors

may not be currently known, the proposed Class plainly exceeds the minimum numbers needed

to satisfy numerosity under Rule 23.  *See Delphi*, 248 F.R.D. at 493.  Similarly, the TAL

Subclass numbers more than 200 members.  The numerosity requirement is met.

## 2.    Common Questions of Law and Fact Exist

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

Fed R. Civ. P. 23(a)(2).  "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there

need only be one question common to the class."  *Skechers*, 2012 WL 3312668, at *3 (quoting

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  "Federal securities cases

easily satisfy the commonality requirement of Rule 23(a)(2)."  *Delphi*, 248 F.R.D. at 494.  Here,

the Complaint alleges a litany of issues of fact and law common to all Class Members, including,

among others, whether Defendants violated the federal securities laws; Defendants' public

statements were materially false and misleading; the Registration Statement and Prospectuses for

the RHY Offering contained material misstatements or omitted to state material information;

with respect to Plaintiffs' Securities Act claims, the Defendants subject to those claims can

sustain their burden of establishing an affirmative defense pursuant to the applicable statute; with

respect to Plaintiffs' Exchange Act claims, the Defendants subject to those claims acted with the requisite level of scienter; and whether and to what extent the Class has suffered recoverable damages. Compl. ¶ 314. The commonality requirement is met.

### 3. The Proposed Class and TAL Subclass Representatives' Claims Are Typical of Those of Other Class and Subclass Members

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement "is not onerous." *International Union*, 2006 WL 1984363, at *19. "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re American Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

Lead Plaintiffs' and the McAbee Foundation Trust's claims are typical of the claims of those of the Class and TAL Subclass as a whole. The claims of all Class Members arise from the same alleged uniform course of conduct, namely, the alleged misrepresentations of the types and true value of assets acquired by the Closed-End Funds. Like all Members of the Class, Plaintiffs purchased shares of the Closed-End Funds during the Class Period and were allegedly damaged as a result of material misstatements. The typicality requirement is met.

### 4. The Proposed Class and Subclass Representatives Will Fairly and Adequately Protect the Interests of the Class and TAL Subclass

Rule 23(a)(4)'s adequacy of representation requirement entails two showings: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Grier v. Goetz*, No. 79-cv-03107, 2012 WL 1393057, at *11 (M.D. Tenn. Apr. 23, 2012) (citing *American Med.*, 75 F.3d at 1083). "The adequacy inquiry under Rule

23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Kizer*, 2012 WL 1598066, at *5 (quoting *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012)).

First, Lead Plaintiffs have common interests with all Class Members.  Lead Plaintiffs purchased shares of the Closed-End Funds during the Class Period, as did the other Class Members, and have been similarly damaged by Defendants' alleged conduct.  Moreover, Lead Plaintiffs and Class Members share the common goal of maximizing recovery, and there is no conflict between them. *See International Union*, 2006 WL 1984363, at *19-20 (finding no conflict between named plaintiff and class members where both groups sought maximum recovery).  The same is true with respect to the McAbee Foundation Trust as a member of the TAL Subclass.

Second, Court-appointed Lead Counsel is amply qualified and experienced, and has conducted the Action vigorously and effectively on behalf of Lead Plaintiffs and the proposed Class and TAL Subclass.  It is respectfully submitted that Labaton Sucharow LLP is among the preeminent law firms representing plaintiffs in securities class actions in courts throughout the nation.  The firm has extensive experience in successfully prosecuting such actions and has achieved significant results for its clients and certified investor classes. *See* Counsel Decl. Ex. C (Labaton Sucharow firm resume).  The adequacy-of-representation requirement is met.

### C.     The Proposed Class and TAL Subclass Satisfy Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.  Both circumstances are present here.

### 1.    Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Id.* at 625. A district court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001).

Here, the common questions of law and fact set forth above predominate over any conceivable individual question because Defendants' alleged misconduct affected all Class Members in the same manner. Each Class Member would need to establish the same facts to prove Defendants' alleged violations of the Exchange Act, that is, whether Defendants' public statements during the Class Period misrepresented or omitted material facts about the Closed-End Funds; whether the Defendants acted knowingly, or with severe recklessness, in allegedly misrepresenting or omitting those material facts; whether the prices of the Closed-End Funds were artificially inflated during the Class Period due to the alleged false and misleading statements or omissions; and whether Plaintiffs and other Class Members suffered damages, as well as the appropriate measure thereof.

Similarly, each member of the TAL Subclass would need to establish the same facts to prove Defendants' alleged violations of the Securities Act, that is, whether statements made in the RHY Registration Statement, Prospectus, and Statements of Additional Information misrepresented or omitted material facts, whether Defendants' acts caused the alleged damages and, if so, the amount of damages caused.

Plaintiffs' Section 10(b) claims invoke the fraud-on-the-market doctrine, which dispenses with the requirement that an investor prove reliance on a particular statement, *see Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988), and the presumption of reliance on material omissions, which presumes investors' reliance and precludes any argument that issues of individual reliance defeat class certification.  The Closed-End Funds' shares were actively traded in an efficient market, the NYSE, throughout the Class Period.  Compl. ¶ 306.

Accordingly, Plaintiffs would be able to present common legal and factual arguments regarding all elements of their claims, including reliance, thus satisfying the predominance requirement of Rule 23(b)(3).

### 2.    A Class Action Is the Superior Method for Resolution

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; [and] (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum[.]"[2]  Fed. R. Civ. P. 23(b)(3)(A)-(C).

Here, as with most securities class actions, class action treatment is the best and, indeed, the only practicable means for adjudicating the controversy.  *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003) ("It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.") (citation omitted); *Castillo v. Envoy*

---

[2] "[T]he likely difficulties in managing a class action" is a fourth consideration generally relevant to whether the superiority requirement is met.  Fed. R. Civ. P. 23(b)(3)(D).  "Confronted with a request for settlement-only class certification," however, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."  *Cardizem CD*, 218 F.R.D. at 517 (quoting *Amchem*, 521 U.S. at 619).

*Corp.*, 206 F.R.D. 464, 474 (M.D. Tenn. 2002) ("Courts have generally considered that class actions are the most favorable means of adjudicating federal securities fraud claims."). Moreover, the scope and complexity of Plaintiffs' claims against Defendants, together with the massive cost of individualized litigation, make it unlikely that the vast majority of Class Members would be able to seek relief without class certification. *See In re Whirlpool Corp Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 421 (6th Cir. 2012) (finding that "class members are not likely to file individual actions because the cost of litigation would dwarf any potential recovery"). Accordingly, the Court should certify the Class and TAL Subclass for purposes of the Settlement.

### D.   The Court Should Appoint Lead Counsel as Class Counsel

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Plaintiffs respectfully request that Labaton Sucharow be appointed Lead Counsel for the Class. Labaton Sucharow has and will continue to fairly and adequately represented the Class. Proposed counsel are knowledgeable about the applicable law, experienced in handling class actions, have performed substantial work in pursuing the claims and in reaching a settlement, and have committed the necessary resources to representing the Class. Rule 23(g)(1)(A).

## III.   THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

Lead Plaintiffs request that the Court approve the form and content of the proposed Notice and Summary Notice. *See* Settlement Agmt. Exs. A-1 and A-3. The Notice is written in plain language and features a question-and-answer format that clearly sets out the relevant information and answers most questions Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice will be mailed to all potential Class Members who can be identified and apprises them of (among many other disclosures) the nature

of the action, the definition of the Class to be certified for purposes of the Settlement, the Class claims and issues, and the claims that will be released.  The Notice also advises that a Class Member may enter an appearance through counsel if desired, notes that the Court will exclude from the Class any Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), describes the binding effect of a judgment on Class Members under Rule 23(c)(3), how and by when to object to the proposed Settlement, Plan of Allocation or requested attorneys' fees and expenses, how and by when to submit a Proof of Claim against the Net Settlement Fund, and the date, time and location of the final Settlement Hearing.  *See Kizer*, 2012 WL 1598066, at *3 (approving notice that stated the settlement terms and that class members have the option to object to the settlement and requested attorneys' fees): *Skechers*, 2012 WL 3312668 at *11 (approving notice that includes benefits provided by the settlement, how to opt-out or object to the settlement, date of final fairness hearing, and contact information of relevant attorneys).

  The Notice also satisfies the PSLRA's separate disclosure requirements by, among other things, stating the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the Parties are proposing the Settlement; stating the amount of attorney's fees and maximum amount of expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Class Members.  *See* 15 U.S.C. § 78u-4(a)(7).  These disclosures are thorough and should be approved.

  Lead Plaintiffs also request that the Court appoint GCG, Inc. as the Claims Administrator.  GCG has extensive relevant experience and is a nationally recognized notice and

claims administration firm.  Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration.  GCG has administered five of the ten largest securities class action settlements approved by courts, including the *WorldCom*, *Tyco* and *Nortel Networks* settlements.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The proposed Notice plan readily meets these standards, and is typical of Notice plans in similar actions.  Lead Plaintiffs, through GCG, will cause the Notice, including the proposed Plan of Allocation and Proof of Claim form, to be mailed by first class mail to every Class Member who can be identified through reasonable effort.  The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the long-form Notice, will be published in *Investor's Business Daily* and transmitted over *PR Newswire*, a national business-oriented wire service.

The notice program clearly satisfies the requirements of Rule 23 and due process, and should be approved by the Court.

<u>Conclusion</u>

Plaintiffs respectfully request that the Court grant this unopposed motion in its entirety, and issue the proposed Preliminary Approval Order submitted herewith.

Dated:  October 12, 2012                    Respectfully submitted,

                                            LABATON SUCHAROW LLP

                    By:     /s/ Joel H. Bernstein
                            Joel H. Bernstein
                            *jbernstein@labaton.com*
                            David J. Goldsmith
                            *dgoldsmith@labaton.com*
                            Nicole M. Zeiss
                            *nzeiss@labaton.com*
                            140 Broadway
                            New York, New York  10005
                            Telephone: (212) 907-0700
                            Facsimile:  (212) 818-0477

                            *Lead Counsel for Lead Plaintiffs*
                            *Lion Fund, L.P., Dr. J. Samir*
                            *Sulieman and Larry Lattimore*

                            J. Gerard Stranch, IV (BPR #023045)
                            *gstranch@branstetterlaw.com*
                            BRANSTETTER, STRANCH
                               & JENNINGS, PLLC
                            227 Second Avenue North
                            Nashville, Tennessee  37201
                            Telephone: (615) 254-8801
                            Facsimile:  (615) 250-3937

                            *Liaison Counsel for Lead Plaintiffs*

                            Crawford S. McGivaren
                            *csm@cabaniss.com*
                            R. Carlton Smyly
                            *rcs@cabaniss.com*
                            CABANISS, JOHNSTON, GARDNER
                               DUMAS & O'NEAL LLP
                            Suite 700, Park Place Tower
                            2001 Park Place North
                            Birmingham, Alabama  35203
                            Telephone: (205) 716-5237
                            Facsimile:  (205) 716-5389

                            *Additional Counsel for C. Fred Daniels*
                            *in his capacity as Trustee* ad Litem *for the*
                            *Leroy McAbee, Sr. Family Foundation Trust*

                                            23

George S. Trevor
*gtrevor@pswplaw.com*
PEARSON, SIMON, WARSHAW
  & PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, California  94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

*Additional Counsel for Plaintiffs*