IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION<br><br>This Document Relates to:<br><br>*In re Regions Morgan Keegan Closed-End Fund Litigation,*<br><br>No. 07-cv-02830-SHM-dkv | No. 09-md-02009-SHM |

**DECLARATION OF DAVID J. GOLDSMITH IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED
SETTLEMENT AND PLAN OF ALLOCATION OF NET SETTLEMENT
FUND AND FOR FINAL CLASS CERTIFICATION AND LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**

DAVID J. GOLDSMITH declares as follows pursuant to 28 U.S.C. § 1746:

1. I am a member of the law firm of Labaton Sucharow LLP, Court-appointed Lead Counsel for Lead Plaintiffs Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore and the Class[1] in the above-titled action. I am admitted to practice before this Court *pro hac vice*.

2. This declaration is respectfully submitted in support of the motion of Lead Plaintiffs and C. Fred Daniels, in his capacity as Trustee *ad Litem* for the Leroy McAbee, Sr. Family Foundation Trust, on behalf of the Class and TAL Subclass (collectively, "Plaintiffs"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for final approval of the Settlement of this Action, approval of the Plan of Allocation of the Net Settlement Fund (the

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated October 12, 2012 (ECF No. 260, the "Settlement Agreement").

1

"Plan of Allocation" or "Plan"), and for final certification of the Class and TAL Subclass for purposes of the Settlement. This declaration is also respectfully submitted in support of Lead Counsel's motion, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for an award of attorneys' fees and payment of expenses incurred in this Action.

**A.   Benefits of the Settlement to the Class and TAL Subclass**

3.   The Settlement Agreement provides for the gross payment of Sixty-Two Million Dollars in cash ($62,000,000.00) (the "Settlement Amount") by and on behalf of Defendants for the benefit of the Class and the TAL Subclass.

4.   After the deduction of attorneys' fees and expenses and Notice and Administration Expenses awarded or approved by the Court, together with any Taxes and any other fees or expenses approved by the Court, the Net Settlement Fund will be distributed among Authorized Claimants, *i.e.*, Class Members who submit timely and valid Proof of Claim and Release forms, in accordance with the Plan of Allocation.

**B.   The Court's Preliminary Approval Order and Plaintiffs' Dissemination of Pre-Hearing Notices**

5.   On October 12, 2012, Plaintiffs filed the Settlement Agreement with the Court and moved for preliminary approval of the Settlement and certification of the Class and TAL Subclass for settlement purposes. (ECF Nos. 260-263.) The Court held a telephonic conference concerning preliminary approval on December 13, 2012 (*see* ECF Nos. 264 & 267) and held a full hearing on preliminary approval on January 3, 2013. On January 4, 2013, the Court issued an Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 276). For ease of reference, the Preliminary Approval Order, without its own attachments, is annexed hereto as Exhibit 1.

6.   In the Preliminary Approval Order, the Court, among other things:

    a.    granted preliminary approval to the Settlement as sufficiently fair, reasonable, and adequate to the Class Members to warrant providing notice of the Settlement to Class Members and holding a Settlement Hearing;

    b.    scheduled the Settlement Hearing for April 12, 2013 at 9:30 a.m. to determine, among other things, whether (i) the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable and adequate and should be approved by the Court; (ii) to finally certify a settlement class; (iii) the Final Judgment and Order of Dismissal should be entered in this Action; (iv) the proposed Plan of Allocation should be approved; and (v) to grant Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses;

    c.    certified the Class and TAL Subclass for purposes of Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

    d.    approved the form and content of the Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice"), the Summary Notice of Pendency of Class Action and Proposed Settlement (the "Summary Notice"), and the Proof of Claim and Release Form ("Proof of Claim"), and found that the procedures for mailing and distribution of the Notice and Proof of Claim and publishing of the Summary Notice met the requirements of Rule 23, due process, Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Section 21D of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, and constitute the best notice practicable under the circumstances and constitute due and sufficient notice to all persons and entities entitled thereto;

    e.    appointed The Garden City Group, Inc. ("GCG" or the "Claims Administrator") to supervise and administer the notice procedure and the processing of claims;

    f.    directed that the Notice and Proof of Claim form be mailed by first class mail to all Class Members who can be identified with reasonable effort not later than January 18, 2013;

    g.    directed that the Claims Administrator cause the Summary Notice be published once in *Investor's Business Daily* and on a different day to be transmitted over *PRNewswire*, not later than February 1, 2013;

    h.    directed nominee purchasers such as brokerage firms and other persons or entities who purchased or otherwise acquired the shares of the Closed-End Funds during the Class Period as record owners but not as beneficial owners to, within seven (7) calendar days of receiving the Notice and Proof of Claim, to provide names and last-known addresses of beneficial owners to the Claims Administrator or request additional copies of the Notice and Proof of Claim form to mail directly to such beneficial owners;

    i.    directed Defendants to serve on Lead Counsel and file with the Court, proof of the date and service upon the appropriate official(s) of the notice of the proposed Settlement set forth in 28 U.S.C. § 1715;

    j.    established detailed procedures and a deadline for Class Members to submit Proof of Claim forms;

    k.    established detailed procedures and a deadline for Class Members to request exclusion from the Class;

    l.    established detailed procedures and a deadline for Class Members to object to the fairness, reasonableness, or adequacy of the Settlement, the Plan of Allocation, any term of the Settlement Agreement, or the award of attorneys' fees and reimbursement of expenses requested by Lead Counsel; and

    m.    established detailed procedures for objecting Class Members or their counsel wishing to appear at the Settlement Hearing.

    7.    Annexed hereto as Exhibit 2 is the Claims Administrator's Affidavit Regarding (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Website and Telephone Hotline, dated March 7, 2013 (the "GCG Affidavit"). The GCG Affidavit attests in detail to the mailing of the Notice and Proof of Claim to potential Class Members (*id.* ¶¶ 2-8), the publication of the Summary Notice in *Investor's Business Daily* and on

the *PR Newswire* (*id.* ¶ 9), the posting of information regarding the Settlement and downloadable copies of the Notice, Proof of Claim, Settlement Agreement, and Preliminary Approval Order on the case-dedicated website established for this Action, www.rmkclosedendfundsettlement.com (*id.* ¶¶ 10-11), and GCG's receipt and prompt handling of inquiries sent by Class Members and other interested persons via the case-dedicated e-mail address and telephone hotline (*id.* ¶¶ 12-13), all in compliance with the Preliminary Approval Order.

8. On or about January 25, 2013, Lead Counsel made the Settlement Agreement, Preliminary Approval Order, Notice, and Proof of Claim publicly available on its firm website, www.labaton.com.

**C.     Summary of Plaintiffs' Allegations and Claims**

9. This is a securities class action brought under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") arising from the 2007 collapse of four Regions Morgan Keegan closed-end investment companies ("Closed-End Funds" or "Funds") known as RMK High Income Fund, Inc. ("RMH"), RMK Strategic Income Fund, Inc. ("RSF"), RMK Advantage Income Fund, Inc. ("RMA"), and RMK Multi-Sector High Income Fund, Inc. ("RHY").

10. The Funds were issued, underwritten, sold and managed by Defendants Morgan Keegan & Company, Inc. ("Morgan Keegan") and Morgan Asset Management, Inc. ("MAM"), two wholly owned subsidiaries of Defendant Regions Financial Corporation ("RFC"), a financial holding company that provides banking and other financial services through its subsidiaries. Defendant MAM was the Funds' investment adviser and a wholly owned subsidiary of Defendant MK Holding, Inc. ("MK Holding"), which itself was also a wholly owned subsidiary of RFC.

11. Plaintiffs allege in essence that the Funds were marketed as high-yield bond funds that invested most of their assets in corporate bonds and preferred stock, but in fact, and unbeknownst to investors, were heavily concentrated in asset-backed securities ("ABS"), mortgage-backed securities ("MBS"), and other structured finance instruments that together carried an extraordinary degree of undisclosed risk to investors.

12. Plaintiffs allege, among other things, that the Funds' annual, semi-annual, and quarterly reports, and the offering materials for the initial public offering of the RHY Funds, filed publicly with the Securities and Exchange Commission (the "SEC") during the Class Period, materially misrepresented the level of credit risk of the Funds' underlying asset pools and, accordingly, the investment risk of purchasing Fund shares, by (a) representing that the Funds' valuation policies and procedures were reliable and that the "fair value" of portfolio securities where market quotations are not readily available would be determined in accordance therewith; (b) assuring investors that the Funds' asset pools would remain broadly diversified across a wide range of asset types and would not become more than 25 percent concentrated in the securities of companies in the "same industry"; (c) falsely classifying certain ABS and MBS as "corporate bonds" or "preferred stock," making the portfolios appear more diversified and thus less risky than they actually were; and (d) holding out the Funds' benchmark index, the Lehman Brothers Ba High-Yield Index (the "Index"), as an appropriate comparator to the Funds' risk profile, when the assets held by the Funds were far riskier than those composing the Index.

13. Defendant James C. Kelsoe, Jr. ("Kelsoe") was an employee of MAM and the Funds' Senior Portfolio Manager. Plaintiffs further allege, among other things, that Kelsoe, in order to forestall declines in the Funds' Net Asset Values per share ("NAVs"), artificially propped-up and smoothed NAV by overvaluing the prices of certain of the Funds' ABS and

MBS assets by issuing 262 "price adjustments" between January and July 2007, assigning arbitrary values that deviated materially from fair value.

        14. Plaintiffs assert the following claims in this Action for violations of the federal securities laws:

      a. Violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Kelsoe and the Funds for alleged material misstatements of fact in various reports of the Funds filed publicly with the SEC;

      b. Violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Kelsoe, Joseph T. Weller ("Weller"),[2] Brian B. Sullivan ("Sullivan")[3] and Carter E. Anthony[4] ("Anthony," and collectively with Kelsoe, Weller and Sullivan, the "Officer Defendants"); Allen B. Morgan, Jr.[5] and J. Kenneth Alderman[6] (together, the "Director Defendants," and collectively with the Officer Defendants, the "Individual Defendants"); MAM, Morgan Keegan, and MK Holding, Inc. (collectively, the "Morgan Keegan Defendants"); and RFC, as alleged controlling persons of the Funds;

      c. Violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, against RHY, Morgan Keegan, and the Director Defendants in connection with alleged material misstatements of fact in the Registration Statement for the public offering of RHY shares;

      d. Violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), against RHY and Morgan Keegan in connection with alleged material misstatements of fact in the Prospectus for the public offering of RHY shares; and

---

[2] Treasurer of the Funds as of November 2006, Controller of Morgan Keegan and head of Morgan Keegan's Fund Accounting Department during the Class Period.

[3] President and Principal Executive Officer of the Funds and President and Chief Investment Officer of MAM during the Class Period.

[4] President of the Funds from 2003 until at least 2006 and President and Chief Investment Officer of MAM during the Class Period.

[5] Chairman of the Funds' Boards of Directors during the Class Period, a Director and Vice Chairman of RFC, and Director of MAM, and Chairman and Executive Managing Director of Morgan Keegan.

[6] Member of the Funds' Boards of Directors during the Class Period, and an Executive Vice President of RFC and Chief Executive Officer of MAM.

       e.       Violations of Section 15 of the Securities Act, 15 U.S.C. § 77*o*, against the Director Defendants as alleged controlling persons of RHY.

**D.     Procedural History**

15.     Beginning in December 2007, shareholders filed several securities class action complaints in the United States District Court for the Western District of Tennessee on behalf of persons and entities that purchased or otherwise acquired shares in the Closed-End Funds as well as three "open-end" mutual funds ("Open-End Funds") offered by Morgan Keegan.

16.     On September 23, 2008, this Court issued an Order consolidating one set of actions on behalf of purchasers of shares in the Closed-End Funds under the style *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 07-cv-02830 SMH dkv (W.D. Tenn.), which is this Action, and a separate set of actions on behalf of purchasers of shares in the Open-End Funds under the style *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 07-cv-02784 SMH dkv (W.D. Tenn.) (the "Open-End Funds Action").  (ECF No. 94.)

17.     On August 26, 2009, this Court issued an Order further consolidating the set of actions brought by C. Fred Daniels, in his capacity as court-appointed Trustee *ad Litem*, on behalf of certain Trusts and Custodial Accounts invested in the Closed-End Funds and the Open-End Funds under either this Action or the Open-End Funds Action.

18.     On December 15, 2010, after notice concerning lead plaintiff proceedings pursuant to the PSLRA was reissued, the Court appointed Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore as Lead Plaintiffs and approved their selection of Labaton Sucharow LLP as Lead Counsel to represent the Class in this Action.  Branstetter, Stranch & Jennings, PLLC was appointed as Liaison Counsel.  (ECF No. 179.)

19.     C. Fred Daniels was appointed by the Probate Court of Jefferson County, Alabama in June of 2008 to serve as a temporary special fiduciary known as a Trustee *ad Litem*

(or "TAL") for the limited and specific purpose of monitoring, evaluating and participating in securities litigation, and taking other litigation actions, in substitution for Regions Bank d/b/a Regions Morgan Keegan Trust ("Regions Bank") in Regions Bank's capacities as trustee, directed trustee, custodian, agent, or other fiduciary on behalf of certain trusts and custodial accounts with investments in the Open-End Funds and the Closed-End Funds.

20. On February 22, 2011, Plaintiffs filed their 140-page Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws and exhibits (the "Complaint," ECF No. 186).

21. On April 13, 2011, the Morgan Keegan Defendants, Defendant RFC, Defendant Funds; Defendants Kelsoe, Alderman, Morgan, Sullivan and Weller, and Defendant Anthony filed separate motions to dismiss the Complaint. (ECF Nos. 196-202.)

22. On June 10, 2011, the Morgan Keegan Defendants filed a Notice of Filing Supplemental Authority addressed to their motion to dismiss. (ECF No. 209.)

23. On June 17, 2011, Plaintiffs filed a 97-page omnibus memorandum on law in opposition to the motions to dismiss. (ECF No. 213.)

24. On June 29, 2011, Plaintiffs filed a Notice of Filing Supplemental Authority addressed to the motions to dismiss, bringing to the Court's attention various Consent Orders entered into in connection with public administrative and cease-and-desist proceedings instituted by the SEC against MAM, Morgan Keegan, Kelsoe, and Weller, and the Joint Administrative Proceedings brought by Tennessee and other State securities regulatory agencies against MAM, Morgan Keegan, Kelsoe and other individuals not named as Defendants here. (ECF No. 216.)

25. On August 12, 2011, Defendants filed reply submissions in further support of their motions to dismiss. (ECF Nos. 223-230.)

26. Between November 1 and 8, 2011, the Morgan Keegan Defendants and Plaintiffs filed and responded to various further Notices of Filing Supplemental Authority addressed to the motion to dismiss. (ECF Nos. 240-242.)

27. On March 30, 2012, this Court issued an Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("March 30 Opinion," ECF No. 246). The Court dismissed Plaintiffs' claims for violations of Section 10(b) of the Exchange Act as against Defendants Weller, Sullivan, and Anthony (leaving the Funds and Kelsoe as Section 10(b) Defendants), and otherwise denied the motions to dismiss.

28. On April 25, 2012, the Morgan Keegan Defendants, RFC, and certain Individual Defendants filed a motion pursuant to Fed. R. Civ. P. 59 and 60 and 28 U.S.C. § 1292(b) to amend the Court's March 30 Opinion to include a statement certifying the decision for interlocutory appeal to the United States Court of Appeals for the Sixth Circuit on three assertedly controlling questions of law including whether, in light of the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 132 S. Ct. 2296 (2011), Defendant Kelsoe himself made any alleged false or misleading statement or omission sufficient to subject him to liability under the Exchange Act. The motion also sought certification of two statute of limitations questions raised in Defendants' motions to dismiss. (ECF No. 251.)

29. On May 8, 2012, after the parties reached an agreement-in-principle to settle this Action, the parties jointly filed a motion requesting a 90-day stay of the proceedings to permit the parties to document the Settlement. (ECF No. 253.) The Court issued the stay order on May 9, 2012. (ECF No. 255.)

30. During August and September 2012, the parties jointly requested, and the Court granted, extensions of the litigation stay to October 12, 2012 to allow the parties to complete

negotiations over the lengthy and complex terms and conditions of the Settlement Agreement, including Lead Plaintiffs' development of the Plan of Allocation. (ECF Nos. 256-259.)

31. Plaintiffs filed the Settlement Agreement and motion for preliminary approval on October 12, 2012, and the Court issued the Preliminary Approval Order on January 4, 2013.

**E.   Mediated Settlement Negotiations**

32. In August 2011, the parties in this Action and the Derivative Action retained Professor Eric D. Green, a nationally recognized private mediator, to facilitate potential settlement discussions. Professor Green has submitted a declaration, annexed hereto as Exhibit 3 (the "Green Decl."), attesting to the arm's-length nature and the outcome of the mediated negotiations.

33. The first mediation session took place on October 27 and 28, 2011 at the offices of Bass, Berry & Sims PLC, counsel for the Morgan Keegan Defendants, in Nashville, Tennessee. The two-day mediation session was attended by a total of 23 attorneys and party representatives, including Lead Counsel and Liaison Counsel for Lead Plaintiffs in this Action, the Trustee *ad Litem* and his counsel, counsel for Morgan Keegan, Morgan Keegan's Deputy General Counsel and additional in-house counsel, counsel for RFC, in-house counsel for RFC, counsel for the Funds, and Lead and Liaison Counsel for plaintiffs in the Derivative Action.

34. In advance of the mediation, on October 17, 2011, all parties exchanged comprehensive mediation statements, with multiple exhibits, setting forth their positions on merits, causation and damages issues. Five separate mediation statements were submitted by Plaintiffs in this Action; plaintiffs in *In re Helios Closed-End Funds Derivative Litigation*, No. No. 11-cv-02935-SHM-dkv (W.D. Tenn.) (the "Derivative Action"); the Morgan Keegan Defendants and Individual Defendants; RFC; and the Funds.

11

35. Defendants' mediation statements included detailed discussions of liability issues and criticism of Plaintiffs' damages analyses, proffers of required offsets to damages, and expert materials and analyses contending, among other things: (a) that massive credit downgrades and the liquidity crisis caused the dramatic declines in the Funds' NAVs; (b) that other high-yield bond funds suffered heavy losses during the financial crisis; (c) that actual sales of assets held by the Funds indicated that the reported carrying values were not overstated; (d) that the SEC's own different approaches to setting NAV demonstrate the difficulty in fair valuing securities in 2007; and (e) that Kelsoe's valuation of Fund assets, and the resulting NAV, deviated immaterially from how the SEC would have valued the Funds' assets.

36. Plaintiffs' mediation statement included detailed discussions of liability, including key allegations and supporting evidence (in 69 exhibits), the SEC and State Consent Orders, and Plaintiffs' theory on loss causation and damages. Much of the nonpublic supporting evidence was drawn from millions of pages of documents, including e-mails and valuation-related materials, produced by the Morgan Keegan Defendants for purposes of mediation. Plaintiffs' mediation submissions also included a confidential report from their consulting loss causation and damages expert, Chad W. Coffman, CFA of Global Economics Group, prepared for purposes of mediation.

37. Although progress was made in airing obstacles to settlement and clarifying the strengths and weaknesses of the claims and defenses, and despite the good faith efforts of all parties, this two-day mediation session did not result in an agreement. Professor Green concluded that the parties needed more time to reflect on the developments that had taken place during that session. Green Decl., Ex. 3, ¶ 8.

38. In January 2012, the parties agreed to convene before Professor Green for resumed mediation efforts, which took place on April 26, 2012, again at the offices of Bass, Berry & Sims in Nashville. The mediation session was attended by essentially the same counsel and party representatives who attended the October 2011 session—22 persons in total. This session was preceded by the exchange of supplemental mediation statements by Plaintiffs and the Morgan Keegan Defendants and Individual Defendants as well as plaintiffs in the Derivative Action. Plaintiffs' supplemental mediation statement included this Court's March 30 Opinion deciding Defendants' motions to dismiss.

39. The sessions were marked by Professor Green's efforts in challenging the parties' respective positions and urging them to reconsider or revise their stances. Owing in part to the mediator's skill in facilitating the discussions, Plaintiffs reached an agreement-in-principle with Defendants and signed a Settlement Term Sheet at the end of the day on April 26, 2012.

40. Negotiation of the Settlement Agreement and associated documentation occurred between May 2012 and October 12, 2012, and was equally contentious and protracted, particularly with regard to negotiating terms affected by nonroutine issues bearing on the TAL's representation of the TAL Subclass.

F. **Investigation and Discovery for Mediation Purposes**

41. Plaintiffs submit that the Settlement was negotiated on an informed basis and with a thorough understanding of the merits and value of the Parties' claims and defenses. Before and during the settlement negotiations leading to the agreement-in-principle—separate and apart from the factual investigation undertaken for purposes of filing the Complaint—Plaintiffs possessed, among other evidence and information:

- More than 7.7 million pages of nonpublic internal documents (nearly 650,000 documents in total), including e-mails, valuation materials, and

  other confidential documents, produced by the Morgan Keegan
  Defendants in connection with mediation;

- The SEC Consent Order and the public administrative and cease-and-desist proceedings instituted against Defendants MAM, Morgan Keegan, Kelsoe and Weller (ECF No. 216-1);

- The Consent Orders entered into in June 2011 in the Joint Administrative Proceedings brought by multiple State securities regulators against MAM, Morgan Keegan, Kelsoe and other individuals (ECF Nos. 216-2 to 216-11), as well as the similar Consent Order entered into in October 2011 by the Georgia Securities Commissioner (ECF No. 241);

- A sophisticated damages and loss causation report and analysis by Plaintiffs' consulting expert estimating, among other things, maximum aggregate damages of approximately $339 million under an index methodology, together with numerous other confidential analyses prepared for purposes of mediation;

- Comprehensive initial and supplemental mediation statements submitted by Defendants;

- Plaintiffs' own initial and supplemental mediation submissions, which included analyses of, among other things, the SEC and State Consent Orders and the nonpublic documents produced by Morgan Keegan;

- The complete report of the SEC's valuation expert submitted in the SEC Administrative Proceeding;

- Comprehensive mediation statements submitted by the parties in the Derivative Action; and

- The complete briefing on Defendants' motions to dismiss, totaling 269 pages exclusive of exhibits (ECF Nos. 197-1, 198-1, 200-1, 201-1, 202-1, 213, 223, 225, 228, 229, 230), and this Court's March 30, 2012 Opinion granting those motions in part and denying them in part (ECF No. 246).

42.  Plaintiffs submit that the voluminous information and data concerning liability and damages issues, which included both documentary evidence and detailed narratives and analyses by the parties and others, including experts on loss causation and damages, enabled Plaintiffs to thoroughly evaluate the strengths and weaknesses of the claims and the risks of continued litigation, and accordingly enter into the Settlement on an informed basis.  These

myriad risks are discussed in detail in Plaintiffs' concurrently filed Memorandum of Law in Support of Motion for Final Approval of Proposed Settlement and Plan of Allocation of Net Settlement Fund and for Final Class Certification.

**G.     Additional Exhibits Pertinent to Plaintiffs'
        Motion for Final Approval of the Settlement**

43.     Annexed hereto as Exhibit 4 is a true and correct copy of a research study by Ellen Ryan & Laura E. Simmons of Cornerstone Research, titled *Securities Class Action Settlements: 2011 Review and Analysis* (2012).

44.     Annexed hereto as Exhibit 5 is a true and correct copy of cited excerpts of the transcript of the January 3, 2013 hearing on Plaintiffs' motion for preliminary approval of the Settlement and class certification.

**H.     Lead Counsel's Motion for an Award of
        Attorneys' Fees and Payment of Expenses**

45.     Lead Counsel, on behalf of itself and the law firms of Branstetter, Stranch & Jennings, PLLC and Pearson, Simon, Warshaw & Penny, LLP (collectively, "Plaintiffs' counsel"), respectfully seeks an award of attorneys' fees in the amount of thirty percent (30%) of the Settlement Fund, or Eighteen Million Six Hundred Thousand Dollars ($18,600,000.00), plus interest at the same rate earned by the Settlement Fund.

46.     Plaintiffs' counsel have at all times assumed the responsibility of litigating this Action on a contingent-fee basis, such that any attorneys' fee would be paid only upon achieving a recovery for the benefit of Plaintiffs and the Class by settlement or judgment.

47.     Each of Plaintiffs' counsel, including my firm, has prepared a detailed firm-specific declaration that itemizes the time spent and work performed in the Action. As supported by these individual fee declarations, Plaintiffs' counsel have collectively expended nearly 13,000 hours in the prosecution and investigation of the Action, resulting in a cumulative lodestar of

15

$5,980,680.50.  *See* Declarations of Plaintiffs' counsel, annexed hereto as Exhibits 6-8; Summary Table of Lodestars and Expenses, annexed hereto as Exhibit 9.

48. In further support of the reasonableness of the requested fee, Lead Counsel respectfully submits the Declaration of Brian T. Fitzpatrick ("Fitzpatrick Decl."), annexed hereto as Exhibit 10.  Professor Fitzpatrick is a Professor of Law at Vanderbilt University and former law clerk to Associate Justice Antonin Scalia of the Supreme Court of the United States.  *See* Fitzpatrick Decl. ¶ 1.

49. Professor Fitzpatrick has reviewed the history of this Action and the information pertinent to the reasonableness of the requested fee.  Professor Fitzpatrick opines that the requested fee is reasonable, observing among other things, that (a) the requested fee is in line with requested fees in the Sixth Circuit and elsewhere (*see id*. ¶¶ 12-13); (b) Plaintiffs faced substantial risks in terms of liability and damages in the absence of a settlement (*see id*. ¶ 14); and (c) Lead Counsel responded to five separate motions to dismiss the Complaint and reviewed millions of pages of documents (*see id*. ¶ 15).

50. Lead Counsel also respectfully submits the declarations of three experienced attorneys in private practice in Tennessee: George E. Barrett, Esq., Van Turner, Esq. and John L. Ryder, Esq., attesting to the reasonableness of the fee request.  The declarations are annexed hereto as Exhibits 11-13, respectively.

51. Given the significant benefit conferred by the Settlement, the complexity and magnitude of the Action, the responsibility undertaken by Plaintiffs' counsel, the difficulty of proof on liability and damages, the experience and skill of counsel representing Plaintiffs and Defendants, the contingent nature of Plaintiffs' counsel's agreement to prosecute this litigation,

and the public policy underlying an attorneys' fee award under these circumstances, Lead Counsel respectfully submits that the requested attorneys' fee is reasonable.

52. Lead Counsel, on behalf of all Plaintiffs' Counsel, also respectfully seeks payment of expenses incurred in connection with prosecution and settlement of the Action in the amount of $380,744.14. Plaintiffs' counsel, and Lead Counsel in particular, were required to lay out substantial funds and incur substantial obligations for, among other items, consulting expert fees and costs, mediation fees, legal research, photocopying, and travel and lodging. Plaintiffs' counsel's individual declarations, Exhibits 6-B, 7-B, and 8-B hereto, itemize these reimbursable expenses.

53. Lead Counsel submits that the reported expenses are reasonable and were necessary for the successful prosecution of the case and achieving this Settlement. Approximately $277,000, or nearly 75% of these expenses, relates to the cost of consulting experts, and more than $17,000, or nearly 5%, relates to the cost of the mediations. These expenses were critical to Lead Counsel's understanding of the claims and defenses, likelihood of success on the merits, and damages in the Action and both types of expenses were instrumental to its success in achieving the proposed Settlement.

54. Chad W. Coffman, CFA, President of Global Economics Group, LLC in Chicago, Illinois, performed extensive research and analyses for Plaintiffs relating to efficiency of the market for Fund shares, loss causation, materiality, damages and various other pertinent quantitative and analytic issues. *See* Declaration of Chad W. Coffman, CFA of Global Economics Group, LLC Concerning Fees and Costs for Services Rendered to Lead Plaintiffs, Exhibit 14, ¶ 5. Among other things, in connection with the mediation, Mr. Coffman prepared a confidential declaration in October 2011 examining and opining on issues relating to materiality,

causation and damages including (a) the market effect of the alleged misrepresentations and omissions, the materiality of certain facts misrepresented or omitted, and damages under Section 10(b) of the Exchange Act of investors who purchased Funds during the Class Period; and (b) a calculation of damages under Section 11 of the Securities Act for purchasers of the RHY Fund. *Id.* ¶ 5(a).

55. Additionally, Mr. Coffman assisted substantially in the preparation of Lead Plaintiffs' Plan of Allocation (*id.* ¶ 5(c)) which involved an extensive analysis of, *inter alia*, the price changes of the Funds, price changes of the Index, and interest payments by the Funds.

56. In total, Mr. Coffman incurred fees of $247,023.40 for his services as a consulting damages expert in this Action.  Mr. Coffman also incurred out-of pocket expenses of $4,529.65, principally for data collection and travel expenses.  *Id.* ¶ 8.

57. Forensic Economics, Inc. ("Forensic Economics"), in Rochester, New York, provided consulting services to Plaintiffs with respect to market efficiency and loss causation, and conducted a preliminary damages analysis.  Forensic Economics incurred $20,270.00 in fees for its services as a consulting expert in this Action.

58. FI Consulting, Inc. ("FI"), in Arlington, Virginia, provided consulting services to Plaintiffs with respect to the overall portfolio and fee structure of the Closed-End Funds, as well as the valuation and similarity of Fund assets, principally related to Plaintiffs' preparation of the Complaint.  FI incurred $5,000.00 in fees for its services as a consulting expert in this Action.

59. Plaintiffs' counsel's expenses also reflect routine and typical expenditures incurred in the course of litigation, such as the cost of legal research (*i.e.*, Westlaw and Lexis fees), travel and lodging, document duplication, telephone, and FedEx.

60. Based on the foregoing and the circumstances further discussed in Lead Counsel's memorandum of points and authorities in support of an award of attorneys' fees and payment of expenses, Lead Counsel respectfully submits that the total expenses for which payment is sought were reasonably and necessarily incurred in the prosecution and settlement of this Action.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 8, 2013, in New York, New York.

>    */s/ David J. Goldsmith*
>    David J. Goldsmith