IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: REGIONS MORGAN KEEGAN | ) | |
| CLOSED-END FUND LITIGATION | ) | |
| | ) | No. 07–cv–02830 SHM dkv |
| THIS PLEADING RELATES TO: | ) | |
| ALL CASES | ) | |

---

**MEMORANDUM IN SUPPORT OF OBJECTOR ALLEN McDONALD'S OBJECTION[1]**

---

## I. PRELIMINARY STATEMENT

> *"[T]here is a recognition that objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges are more cognizant of their responsibilities under Rule 23(e), and they increasingly realize that counsel for objectors can help them carry out their responsibilities.[2]*

Objector, Allen McDonald, is a bona fide Class Member and timely submitted an objection

and notice of intent to appear on March 22, 2013.[3]  On April 2, 2013, Class Counsel responded to

---

[1]On April 2, 2013, Plaintiffs filed a 42-page memorandum addressing McDonald's Objection, among others.  [Doc. 296].

[2]Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011).

[3]McDonald's counsel followed the terms of the Court's approved Notice, overnighting the original to the Clerk via UPS Next Day Air for delivery on March 22, 2013, and at the same time, sending copies to the counsel designated in the Notice via UPS Next Day Air.  McDonald's counsel received confirmation through UPS tracking services that the original was delivered to the Clerk on March 22, 2013 and that the copies were also delivered.  Upon noticing that McDonald's Objection did not appear on the Court's electronic docket for the case, McDonald's counsel contacted the Clerk and was informed that the Clerk "did not accept paper filings" of any sort in this MDL.  Upon learning this, McDonald's counsel immediately sought ECF registration.  Finally, on April 5, 2013, counsel was able to electronically file the Objection that had been submitted to the Clerk on March 22.  [Doc. 300].  By this time, Class Counsel had already responded to McDonald's Objection.  [Docs. 296-297].

McDonald's Objection and the objections made by other putative Class Members. [Docs. 296-297].

McDonald presented eight separate grounds for objecting to the proposed Settlement and reiterates

each of those at this time. McDonald submits this Memorandum in support of that Objection [Doc.

300], primarily to demonstrate the unreasonableness of Class Counsel's request for $18,600,000 in

attorneys' fees and $380,744.14 in expenses.[4]

As McDonald demonstrates below, Class Counsel's fee request was problematic from the

outset, as it failed to afford Class Members reasonable time or adequate opportunity to assess the fee

motion, brief, and voluminous supporting materials. Moreover, the fees requested by Class Counsel

are decidedly unreasonable for a variety of reasons, suffering from manifest difficulties involving

the ultimate result achieved for Class Members, the amount of work performed and time expended,

the hourly rates reported, and the flaws exhibited in the opinions offered by each of their

"independent" professionals, among others. And finally, because Defendants, caring only about the

gross amount of the settlement, have no incentive to challenge Class Counsel's fee request, the

burden necessarily falls upon Class Members, such as McDonald, to force Class Counsel to establish

their right to such a fantastic award.

## II.  LEGAL ARGUMENT

Class Counsel request an attorneys' fee award "equal to thirty percent (30%) of the

Settlement Fund, or $18,600,000.00, including interest on such fee at the same rate and for the same

period as earned by the Settlement Fund, and order payment of Plaintiffs' counsel's expenses in the

_____

[4]While the focus of this Memorandum is Class Counsel's motion for fees, McDonald by no means abandons his remaining grounds for rejecting the Settlement as set forth in his Objection. McDonald further adopts the arguments advanced by the Christenson Objectors in their Corrected Reply Memorandum. [*See* Doc. 302-1, at Page ID#: 11091-11102].

amount of $380,744.14." [Class Counsel's Memorandum, Doc. 286, at Page ID#: 10235]. They maintain that the reasonableness of this fee is supported by comparing it to their lodestar. This lodestar "cross-check" yields a 3.1 multiplier that Class Counsel suggests is appropriate in view of the risks they undertook, the amount of work performed, and the results achieved. [*Id.* at Page ID#: 10236]. To support their request, Class Counsel submitted the affidavits of Brian T. Fitzpatrick, a Vanderbilt law professor, and three Tennessee private-practice attorneys, each of whom indicates that the proposed 30% fee award "is within the range considered reasonable and fair in the Sixth Circuit." [Doc. 296, at Page ID#: 10756].

Predictably, Class Counsel argue that any assertion that their requested fee is "exorbitant" is simply "conclusory and unsupported" and should be rejected. [*Id.*] Not only does McDonald's produce ample support for his claim that the fee is excessive under the circumstances presented, but he further demonstrates that the fee approval process was fundamentally flawed and that the opinions of Class Counsel's "independent professionals" are entirely unpersuasive.

### A. Objectors and Other Class Members Were Not Afforded Sufficient Time or Adequate Opportunity to Review All of the Materials Submitted in Support of Class Counsel's Fee Motion.

At the outset, Class Counsel failed to post their March 8, 2013 motion for attorneys' fees and expenses, brief, and affidavit [Docs. 285-287] on the settlement website prior to the objection/exclusion deadline of March 22, 2013. They have failed to do so even as of today's date. Consequently, Class Members, unlike McDonald and his counsel, who do not happen to have subscriber-access to PACER, lack the information necessary to draw their own conclusions as to the reasonableness of the attorney's fees sought by Class Counsel.

-3-

It is simply wrong to suggest that ordinary Class Members could somehow scrutinize Class Counsel's substantial fee and expense request without having first been given an opportunity to see and review the supporting documents. Put simply, every Class Member – not merely those who also happened to be attorneys – was entitled to know precisely why Class Counsel think they have earned such a substantial fee.

Aside from its basic unfairness, setting the objection/exclusion deadline on a date without having first provided Class Members with sufficient information to assess the reasonableness of the requested fee appears to contravene Rule 23(h)[5] as well. It also resulted in a denial of due process in this case, as it deprived Class Members of a full and fair opportunity to contest the motion. Unmistakably, the rule's plain language rightly requires that Class Members be given an opportunity to object to the "motion" itself, not merely to the summary notice that such a motion will be filed.

Although notice of the motion was provided to Class Members, they were deprived of an adequate opportunity to object because (1) Class Counsel filed the motion just two weeks before the objection/exclusion deadline[6] and (2) the motion, brief, and voluminous supporting materials were

---

[5]The relevant portions of Rule 23(h) provide:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

> (2) A class member, or a party from whom payment is sought, may object to the motion.

[6]The Notice required Class Members to put their exclusions or objections into the hands of the Clerk and 7 attorneys by March 22, 2013, 14 days after the fee papers were submitted.

-4-

merely filed on the Court's electronic docket, but never posted on the Court-authorized settlement website, where ordinary Class Members could obtain access to them.

The Advisory Committee Notes to the 2003 amendments to Rule 23(h) support this reading of the rule, *see* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion"), and further advise that, where appropriate, the court will permit an "objector discovery relevant to the objections." *Id.  See also* 5 *Moore's Federal Practice* § 23.124[4] (3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request.")  As one court correctly observed,

> "[a]llowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members.  It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee."

*In re Mercury Interactive Corp. Securities Litig.,* 618 F.3d 988, 994 (9th Cir. 2010).[7]

The reasoning behind this interpretation of the rule is both logical and sound, for during the fee motion stage of the proceedings,

> "[p]laintiffs' counsel, otherwise a fiduciary for the class, . . . become[s] a claimant against the fund created for the benefit of the class."  *Class Plaintiffs v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.),* 19 F.3d 1291, 1302 (9th Cir. 1994) (internal quotation marks omitted).  This shift puts plaintiffs' counsel's

---

[7]Incidentally, Labaton Sucharow was also class counsel in *Mercury Interactive.*

understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members.  Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."  *Id.*  As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."  *Id.*  Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests.

*In re Mercury Interactive,* 618 F.3d at 994-95.

For all of this, the process afforded Class Members to assess the reasonableness of Class Counsel's fee request was unfair and failed to provide many Class Members an adequate opportunity to object.  Accordingly, the Court should continue the "fairness hearing," require Class Counsel to post the motion and supporting materials on the settlement website, and provide Class Members with sufficient time in which to object to Class Counsel's fee request.

**B.   Based Merely Upon the Record Before This Court, Class Counsel's Application for an $18,600,000 Attorneys' Fee is Excessive.**

> *"In the vast majority of cases class counsel appears before the court to request a big percentage of the settlement fund, cooperative settling defendants offer no opposition, and class members rarely oppose the request.  The court is abandoned by the adversary system and left to the plaintiff's unilateral application and the judge's own good conscience.  [citation omitted]  The situation is a fundamental conflict of interest and is inherently collusive . . . . The lack of opposition to a proposed fee award give a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment."[8]*

---

[8]*In Re Quantum Health Resources, Inc. Securities Litigation,* 962 F. Supp. 1254, 1255 (C.D. Cal. 1997); *see also Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 515 (6th Cir. 1993).

1.   **Rules Governing Attorneys' Fee Awards in Class Actions Within the Sixth Circuit**

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (emphasis added). *See also* H.R. Rep. No. 104-369, at 36 (conference report on the PSLRA noting that "[t]he House and Senate heard testimony that counsel in securities class actions often receive a disproportionate share of settlement awards" and asserting that newly enacted § 78u-4(a)(6) is intended to "limit[] the award of . . . fees and costs to counsel for a class . . . to a reasonable percentage of the amount of recovery awarded to the class"). Thus, the PSLRA expressly contemplates inquiry into the reasonableness of an overall percentage reflecting a grant of both fees and expenses.

It is well-established that "'[w]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class . . . the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund.'" *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 136 (S.D. N.Y. 2008) (ellipsis in original) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). Courts typically employ one of two methods in analyzing a request for attorneys' fees--the lodestar analysis or the percentage of the fund analysis. *Rawlings,*, 9 F.3d at 516-17; *see also Lonardo v. Travelers Indem. Co.*, 2010 U.S. Dist. LEXIS 33180, at *18 (N.D. Ohio Mar. 31, 2010). "Use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and the determination of which method is appropriate in any

given case will depend upon its circumstances." *Rawlings,* 9 F.3d at 516.  The Sixth Circuit generally accepts either method, and "requires only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id*. at 517 (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

The lodestar formula suggests "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).[9]  Many courts, however, have rightly concluded that the lodestar method should be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result.  *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (requiring use of the percentage of the fund in common fund cases), *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 689-91 (M.D. Ala. 1988) (cataloging recent criticism of the lodestar approach to fee calculation).

Therefore, the percentage of the fund method exists as an alternative in the context of class actions.  Rather than the court's ascertaining a "reasonable fee," the attorney receives a percentage of the fund awarded to the class.  The specific percentage is left to the court's discretion.  While "the lodestar method better accounts for the amount of work done, . . . the percentage of the fund method more accurately reflects the results achieved." *Fournier*, 997 F. Supp. at 832 (citing *Rawlings*, 9 F.3d at 516).  The benefits the percentage of the fund calculation provides are: (1) readily ascertainable fee amounts and (2) increased settlements.  *Id*.  The court is to determine the

---

[9]The Sixth Circuit tacitly approved the use of the lodestar with the additional multiplier in a securities case, noting that the multiplier accounts for the inherent risk of litigation, the work product quality, and the public benefit achieved. *Rawlings*, 9 F.3d at 516.

appropriate percentage based on a standard of reasonableness under the circumstances.  *In re Quantum Health Resources, Inc.*, 962 F. Supp. at 1257 (citing *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 28 L. Ed. 915, 5 S. Ct. 387 (1885)).[10]

> **2.    Class Counsel's Fee Request of *More Than Three Times* Their Actual Time and Charges Is Excessive.**

Not surprisingly, Class Counsel advocate the use of a percentage-of-the-fund method to calculate their fee award in this case.  McDonald does not dispute that this is an appropriate case to apply the percentage method.  McDonald, however, strongly disputes the propriety of an award of $18,600,000, or 30% of the Settlement Fund, fully more than *three times* the actual face value of Class Counsel's time, as they have summarized.[11]

---

[10]However, awarding attorney's fees out of the common fund logically raises concerns that class members no longer have someone representing their interest.  The Sixth Circuit has accurately characterized these fears:

> In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases.  The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class.  In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Rawlings*, 9 F.3d at 516.  As a result, the Court approving the settlement must take on the fiduciary mantle discarded by class counsel and act as a fiduciary for all parties, but particularly for absent Class Members.  *Court Awarded Attorney Fees*, 108 F.R.D. at 255.

[11]As demonstrated below, McDonald also disputes the reasonableness of many of the hourly rates reported by Class Counsel, particularly hourly rates for paralegals of $300, for private investigators of $485, for "Research Assistants" of $405, for partners of hourly rates approaching $1000, for associates of rates of $425-$665, and of non-partner, non-associate

The so-called "benchmark" percentage for this standard has been 25%, with the ordinary range for attorney's fees between 20–30%. *See Fournier*, 997 F. Supp. at 832 (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Court Awarded Attorney Fees*, *Report of the Third Circuit Task Force* 108 F.R.D.237, 247 n. 32(1985).

The Sixth Circuit has accepted the following six factors as a valid means to determine the reasonableness of attorney's fees: the value of the benefit rendered to the class, the value of the services on an hourly basis, whether the services were undertaken on a contingent fee basis, the benefit to society, the complexity of the litigation and the professional skill and standing of counsel. *Bowling v. Pfizer Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie*, 710 F.2d at 275.  This analysis must be tempered with the understanding that the attorney's interest has become adverse to that of his client, as both seek compensation from the same fund. *Fournier,* 997 F. Supp. at 832.  It is not necessary for McDonald to analyze each of these factors, as the first two factors are plainly dispositive of Class Counsel's request.

### 3.   The Results Obtained For the Class and the Amount of Time Expended Fail to Support the $18,600,000 Attorneys' Fee Award.

"Courts have consistently held that the most important factor within this analysis is what results were obtained for the class." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D. N.M. 2012). McDonald addressed the value of the claims of Class Members in his Objection and also adopted the arguments made by the Christensons Objection.  [Doc. 292].  Here, as the Christensons well developed in their Objection and Reply Brief [Doc. 302-1], the results for the Class pale in

---

attorneys of $325-$435.  These rates, while perhaps reasonable (or not) for a New York securities law firm, nevertheless appear quite excessive for even highly-skilled lawyers the Memphis market.

-10-

comparison to the actual damages suffered by Class Members. To be sure, this is not a case that went "south" for Class Counsel. Indeed, they defeated the only substantive motion brought by Defendants in this case. Why Class Counsel failed to engage in even minimal adversarial discovery before beginning to discuss the prospect of settlement is both inexplicable and problematic, raising serious concerns about the propriety of the negotiations that occurred in this case.

*Two Recent Securities Class Action Settlements Demonstrate*
*the Poor Result and Excessiveness of Class Counsel's Fee Request*

To serve as a barometer for the Court's analysis of the results obtained for Class Members and a gauge for Class Counsel's fee request, two recent securities class action settlements stand out in stark contrast to the one negotiated by Class Counsel. *In re Charles Schwab Corporation Securities Litig.,* 2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011) was a certified class action that involved the alleged violation of state and federal law in the management of, disclosures concerning, accounting for, and marketing and sales of the Schwab YieldPlus Fund. The parties settled for a combined $235 million. *Id.* at *17. The recoveries under separate settlements were 35.9% and 23.4% percent of the initial estimated damages by plaintiffs' damages expert. *Id.* at *18. The court had no problem approving these settlements, and turned to the issue of attorneys' fees.

Unlike Class Counsel here, class counsel in *Charles Schwab,* who undeniably achieved tremendous results, sought fees of about 11% of the $235 million settlement, which included a multiplier of 2.68.[12]  *Id.* at *28. The court noted that reducing counsel's percentage-of-fund recoveries to take into account their waived reimbursement of expenses (after dividing expenses

---

[12]Notably, the fees paid under the structure of class counsel's agreement in Charles Schwab would be the only payment to class counsel for litigation expenses, *i.e.*, expenses would not be separately reimbursed. *Id.* at *27. Their expenses, which they agreed to waive, totaled $2,710,112. *Id.* at *28.

between the funds based on their proportionate sizes), the percentage-of-fund recoveries were just 7.6% of the federal settlement fund and 10.6 % of the state settlement fund. *Id.* at *29.

In the second case, the Northern District of California recently rejected a fee application by class counsel for 25% of the common fund in a securities class action under circumstances very similar to those presently before this Court. *See In re Cadence Design Systems, Inc. Securities and Derivative Litig.,* 2012 U.S. Dist. LEXIS 56785 (N.D. Cal. April 23, 2012). The case involved a $38 million settlement and a fee request of 25% of the settlement, plus expenses and interest. *Id.* at *15. Though acknowledging the 25% benchmark, "the uncertainty of success in securities class actions," that "a $38  million settlement is no small achievement," and that the 3.8 multiplier was "not necessarily outside the norm," the court nevertheless rejected the fee request, reasoning that awarding class counsel "over $9.5 million for surviving a motion to dismiss, conducting some discovery, and participating in settlement negotiations would be inappropriate and unfair to the class members who will share in the proceeds of the settlement fund." *Id.* at **15-16. The court ultimately awarded class counsel $7.2 million in attorney fees, plus interest and expenses – still more than 2.88 times its lodestar amount. *Id.* at *17-18.

> *Professor Fitzpatrick's Opinion Is Fundamentally Flawed, as it Fails to Consider*
> *The Size of the Settlement in Determining Whether a 30% Fee Award Is Appropriate.*

Class Counsel look to the affidavit of Professor Fitzpatrick to justify their requested fee. Professor Fitzpatrick offers that the fee "is in line with percentages awarded by other courts in the Sixth Circuit and across the nation," pointing to an empirical study that showed that for 2006 and 2007, there were twenty-five (25) cases in the Sixth Circuit in which courts used the percentage-of-the-fund method to award attorneys' fees. [Class Counsel's Memorandum, Doc. 286, at Page ID#:

10240]. The average fee in those cases was 26.1%, with a median of 28%. *Id*. However, even assuming, arguendo, the correctness of this survey, using the average fee percentage would put Class Counsel's fee at *$16,182,000, fully $2,418,000 less* than the actual fee requested by them here.

Moreover, with due respect to Professor Fitzpatrick, his opinion is fundamentally flawed, as it fails to consider the size of the settlement in determining whether a 30% fee award is appropriate. As professors Eisenberg and Miller demonstrate in their own 2010 study, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical L. Stud. 248, 260 (2010), "[t]he existence of a scaling effect – the fee percent decreases as class recovery increases – is central to justifying aggregate litigation such as class actions." Based on their study, the mean and median attorneys' fees for the $62 Million settlement would be 20.5% and 21.9%, respectively – that is, nearly 1/3 lower than the fee Class Counsel seeks here. *Id*. at p. 265, Table 7 (Exhibit 1).

Notably, although he inexplicably ignores the so-called "scaling effect" in this case, Professor Fitzpatrick's own study fully supports the premise that the fee-percentage decreases as the recovery increases. *See* Fitzpatrick, Brian, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 837 (2010) ("prior empirical studies have shown that fee percentages are strongly and inversely related to the size of the settlement both in securities fraud and other cases …. the 2006-2007 data are consistent with prior studies") (Exhibit 2).

For the forty-two (42) settlements between $30 Million and $72.5 Million, Professor Fitzpatrick determined the mean and median fees were 22.3% 24.9%, respectively. While these figures are somewhat higher from Eisenberg and Miller, the data is nonetheless conclusive that "in all the regressions, the size of the settlement was strongly and inversely associated with fee percentages." *Id*. at 843. Moreover, the data from Eisenberg and Miller are undoubtedly more

statistically relevant:  their decile contained more cases (70 vs. 42 in Fitzpatrick's study) in a smaller range of settlements ($38.3 Million to $69.6 Million) covering sixteen (16) years – compared to only two (2) years of data in Professor Fitzpatrick's study.  After all, Professor Fitzpatrick's study was intended merely as attempt to "fill some of the gaps in our knowledge about class action litigation."  *Id*. at 845.

In the end, the studies by Professors Eisenberg, Miller and Fitzpatrick fully support McDonald's objection that the fees requested by Class Counsel in this case are excessive.  Accordingly, to the extent the opinions of the academic community is deemed instructive or of use, the Court should look first and foremost to the scholarly work contained in peer-reviewed articles – as opposed to the *$495 per hour* work bought and bought and paid for by Class Counsel.

*Class Counsel's Request for $18,600,000 in Fees is Not*
*Remotely Supported By the Record Before The Court*

***The time expended appears excessive for a case in which little substantive motion practice occurred.***   While Class Counsel maintain that "[t]he lodestar cross-check confirms the reasonableness of the requested fee," pointing to a total of 12,910.2 hours of attorney and professional time, "representing $5,980,680.50 in fees at current hourly rates, yielding a  lodestar multiplier of 3.1 with a requested fee of $18.6 million" [*Id*. at Page ID#:10243], even a cursory review of the electronic docket for the case reveals innumerable flaws in Class Counsel's opinion.

For instance, as to the number of hours reported, without an opportunity to review the actual time records which Class Counsel were required to contemporaneously maintain, McDonald cannot fully assess the reasonableness of the actual hours expended by Class Counsel.  However, given the lack of adversarial discovery, the lack of class certification proceedings, the limited number of

-14-

hearings and substantive motions briefed, the fact no summary judgment motions were filed by any party, that no trial occurred, and considering the record fact that the second-most litigated issue in the litigation was the motion to appoint lead plaintiffs and/or counsel, McDonald would respectfully suggest that nearly 13,000 hours of work appears unreasonable and quite excessive.

What's more, reviewing the electronic docket also provides a fair assessment of the work performed in the case by Class Counsel. They filed the original complaint in December 2007; they fought over consolidation and postured for various leadership positions; they briefed motions to stay discovery, filed an amended complaint in February 2011, and successfully defended the Defendants' motion to dismiss, decided on April 13, 2011. Three months later, they received "confirmatory discovery" from the Defendants, and three months after that, were in mediation, which eventually resolved the case. For this work, they seek $18,600,000 out of $62,000,000 and $380,744.14 on top of that as expenses.

This conclusion that the requested fee is excessive is reinforced by the fact that Class Counsel vouches for their experience in handling securities litigation. This experience must necessarily translate into economies of scale. For example, drafting an amended complaint should require minutes, not hours, and the research necessary to make or defend a motion to dismiss should be minimal, not exhaustive. Indeed, one reason that experienced attorneys can command a high hourly billing rate is the attorney's presumed efficiency in handling familiar legal issues.

But neither the Court nor Objectors' counsel, and certainly not other absent Class Members have the requisite information before them to assess the reasonableness of the time spent by partners, associates, attorneys, research assistants or paralegals on any task in this litigation. By requesting a multiplier of *more than three times* their purported actual charges, Class Counsel have opened the

-15-

door to discovery of their time records and McDonald would respectfully ask the Court to either require Class Counsel to turn over copies of those records or at least present them to the Court for an in-camera inspection by the Court.

Class Counsel substantially downplay the merits of Plaintiffs' legal claims in an effort to convince the Court of the risk of Plaintiffs' lawsuit. Amazingly, they do so despite the fact that they took no depositions in the case, and from the record available to McDonald and other Class Members, did not even send out so much as a single interrogatory, document request, or request for admission. Rather, they were handed seven million pages of documents during the mediation stage. The only real test made of Plaintiffs' claims was when Plaintiffs survived the Defendants' motions to dismiss, an occurrence which should have logically improved the value of Plaintiffs' case.

Accordingly, McDonald would request that the Court require Class Counsel to submit their actual contemporaneous time records for inspection, or at least, for the Court's *in-camera* review.

**The hourly rates reported by Labaton Sucharow are excessive.**   The hourly rates requested by Class Counsel are not reasonable in this case. The hourly rates reported by Labaton Sucharow for partners ($750-$975/about $1.2 million), associates ($425-$665/over $1 million), attorneys ($325-$435), "research assistants" ($270 - $405) and paralegals ($190 – $300/over $250,000) appear excessive. Labaton Sucharow generally supports its hourly rates with an affidavit detailing skill and experience and affidavits from a law professor and three well-regarded attorneys stating that having reviewed the instant case, the fee reasonable. [Doc. 297-4, 297-5]. McDonald strongly suggest that lower rates are appropriate here.

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to

command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Therefore, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *B&G Mining, Inc. v. Director, Office of Workers Comp. Programs*, 522 F.3d 657, 663 (6th Cir. 2008). In determining a reasonable hourly rate, the Court may consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar requests for fees. *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007).

Significantly, Affiant John L. Ryder merely stated that the "Proposed Rates requested are justified and reasonable." [Doc. 287-13, at Page ID#: 10595]. Nowhere in his affidavit does Mr. Ryder assess the reasonableness of individual rates or assess such rates in comparison to the Memphis market. [*Id*. at Page ID#: 10592-10600]. Affiant Van Turner based his opinion of the reasonableness of the hourly rates on the location of the particular attorney, not on the reasonable rate for the attorneys in the Memphis market. [Doc. 287-12, at Page ID#: 10575]. Affiant George Barrett gave no opinion whatsoever concerning the reasonableness of any hourly rates. [Doc. 287-11, at Page ID#: 10536-10568]. Similarly, Professor Fitzpatrick does not provide an opinion as to the reasonableness of the hourly rates reported. [Doc. 287-10, at Page ID#: 10514-10535].

## No Multiplier is Justified in This Case

In its discretion, a court may use a multiplier to enhance the lodestar figure in recognition of the "risk an attorney assumes in undertaking a case, the quality of the attorney's work, and the public benefit achieved." *Rawlings*, 9 F.3d at 515-517. By its very nature, a multiplier is a "bonus" to the attorneys, compensating them beyond what they would otherwise have earned from a paying client.

-17-

As the Supreme Court has recently cautioned, however, courts should hesitate to employ a multiplier, especially when the factors supporting a multiplier have already been considered in the underlying lodestar calculation. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494, 2010 U.S. LEXIS 3481, at *8 (2010). Although decided in the context of statutory fee shifting under 42 U.S.C. § 1988, *Perdue* nevertheless provides persuasive caution that multipliers must be reserved for "rare" and "exceptional" circumstances. *Id*. While *Perdue* should not be read to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate. Here, nothing before this Court suggests that Class Counsel are justly entitled to a "bonus" of three times their actual time and charges.

### 4. The Settlement Agreement's Clear-Sailing Provision Requires Rejection of the Requested Fee.

*"The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation of plaintiffs' counsel."[13]*

The Settlement Agreement also has a "clear sailing" provision [Stipulation and Agreement of Settlement, Doc. 260, at Page ID# 9677], which "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991). The clauses "are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.3 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223, 120 S. Ct. 2237, 147 L. Ed. 2d 265 (2000).

---

[13]*Anthony v. Superior Court*, 59 Cal. App.3d 760, 130 Cal. Rptr. 758, 766 (Cal. App. 1976).

To be sure, "the very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Weinberger*, 925 F.2d at 525. Therefore, when confronted with such a provision, the Court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the Class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

Although clear sailing provisions are not prohibited, they "by [their] nature deprive[ ] the court of the advantages of the adversary process" in resolving fee determinations and are therefore disfavored. *Weinberger*, 925 F.2d at 525.

For all of this, the Court should reject the request for $18,600,000 and scrutinize the fee request on a sufficient record.

### 5.    The Court Should Not Approve Reimbursement of Computer Aided Research Expenses.

Class Counsel's request for expense reimbursement appear reasonable, with one exception. The Court should not approve "computer research" expenses as recoverable costs in a common fund case where, as here, the attorneys will likely recover fees based on a percentage of the common fund. *See, e.g., Montgomery v. Aetna Plywood*, 231 F.3d 399, 409-410 (7th Cir. 2000), *cert. denied*, 532 U.S. 1038, 121 S. Ct. 2000, 149 L. Ed. 2d 1003 (2001) ("As a form of attorneys' fees, the charges associated with [computer] research are not separately recoverable expenses. When a court uses the percentage-of-recovery method of calculating attorney's fees, such charges are simply subsumed in the award of attorneys' fees."); *Abrams v. Van Kampen Funds, Inc.*, 2006 U.S. Dist. LEXIS 2129, at *5 (N.D. Ill. Jan. 18, 2006).

Here, Class Counsel seek reimbursement of computer research expenses totaling $26,102.05.
[*See* Goldsmith Affidavit, Doc. 287-6, at Page ID#: 10396]. Accordingly, the Court should subtract this amount from Class Counsel's request, representing the costs incurred for computerized legal research, and award costs in the amount of $354,642.09.

III.   **CONCLUSION**

For the reasons set forth herein and in McDonald's Objection, the Court should deny the motion to grant final approval to the settlement and either deny the motion for attorneys' fees and expenses outright, permit discovery or in-camera review of Class Counsel's time records, or enter an order appropriately reducing the fee and expense request.

Respectfully submitted, this 10th day of April, 2013.


Christopher T. Cain
Christopher T. Cain (TN BPR# 19997)
**SCOTT & CAIN**
Bank of America Center, Suite 601
550 Main Street
Knoxville, Tennessee 37902
Tel: 865-525-2131

-20-

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

This 10th day of April, 2013.

Christopher T. Cain

Christopher T. Cain
