IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

In re REGIONS MORGAN KEEGAN )
SECURITIES, DERIVATIVE and )
ERISA LITIGATION )
)
This Document Relates to: )
)
In re Regions Morgan Keegan )  No. 2:09-2009 SMH V
Closed-End Fund Litigation, )
)
No. 2:07-cv-02830-SHM-dkv )

---

**ORDER**

---

On January 4, 2013, the Court entered an Order preliminarily approving settlement, providing for notice, and preliminarily certifying a plaintiff class. ("Preliminary Order," ECF No. 276.) The settlement was reached among Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore, on behalf of the Class, and C. Fred Daniels, in his capacity as Trustee ad Litem ("TAL")[1], on behalf of the TAL Subclass, (collectively the "Lead Plaintiffs"), and J. Kenneth Alderman, Carter E. Anthony, James C. Kelsoe, Jr., MK Holding, Inc., Allen B. Morgan, Jr., Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., Regions Financial Corporation, Brian B. Sullivan,

---

[1] C. Fred Daniels is the court-appointed Trustee for the Leroy McAbee, Sr. Family Foundation Trust, the Harold G. McAbee Family Trust, the KPS Group, Inc. Profit Sharing Retirement Plan, the Boyd F. Horn IRA Rollover Trust, the Alice C. Cade for the benefit of Carroll Corbin Bays Trust, and the Patricia Penzone Irrevocable Trust for the benefit of Charles A. Penzone. (Combined Amended Complaint ¶ 1, ECF No. 186.)

Joseph C. Weller, and the Regions Morgan Keegan Closed-End Funds (the "Funds" [2]), (collectively the "Defendants").

Before the Court are Jerome Christenson, Gloria Christenson, and Jerome Christenson as IRA Beneficiary's (collectively the "Christensons") Motion for Permissive Intervention, ("Mot. to Intervene," ECF No. 291), and Notice of Objection to the Proposed Final Settlement ("Christenson Obj.", ECF No. 292). Also before the Court are the Objections of W. Allen McDonald, ("Allen Obj.", ECF No. 300), Robert Shattuck, ("Shattuck Obj.", ECF No. 282; ECF No. 297-5), David W. Burns ("Burns Obj.", ECF No. 297-7), and Brian A. Shaffer, ("Shaffer Obj.", ECF No. 288). The Lead Plaintiffs filed a combined Response in opposition to the Christensons' Motion to Intervene and the five Objections on April 2, 2013. ("Lead Pls.' Resp.", ECF No 296.) The Lead Plaintiffs' Response also argues that 5 requests for exclusion from the class are untimely, 12 requests for exclusion fail to supply required information, and 25 requests for exclusion are moot because made by persons alleged by the Lead Plaintiffs to be excluded from the class. (Id.)

For the following reasons, the Christensons' Motion to Intervene is DENIED. The Christensons' Objection is disallowed.

---

[2] "Funds" refers to the RMK High Income Fund, Inc. ("RMH"), RMK Strategic Income Fund, Inc. ("RSF"), RMK Advantage Fund, Inc. ("RMA"), and RMK Multi-Sector High Income Fund, Inc. ("RHY"). (Id.) The names of the Funds in this action were changed to Helios High Income Fund, Inc., RMK Strategic Income Fund, Inc., Helios Advantage Fund, Inc., and Helios Multi-Sector High Income Fund, Inc. after the Funds were acquired by Hyperion Brookfield Asset Management, Inc. on July 29, 2008. (Id. at n.1.)

The other four individuals' Objections are properly before the Court and will be considered in determining whether to approve the Final Settlement. The Court need not rule on the exclusions because the Lead Plaintiffs have not properly moved to invalidate.

### I. Background

Lead Plaintiffs bring suit against Defendants in the Closed-End Fund Litigation. Lead Plaintiffs assert claims on behalf of a class of individuals and entities that purchased or acquired publicly traded securities of four closed-end mutual Funds that were "issued, underwritten, sold, and managed by two wholly owned and controlled subsidiaries of Defendant Regions Financial Corporation ("RFC")." (Combined Amended Complaint, "CAC", ¶ 4, ECF No. 186.) Lead Plaintiffs bring a federal securities class action generally alleging that the Defendants misrepresented the types of assets and the true value of assets in which the Funds invested. (CAC ¶¶ 5-6.) Lead Plaintiffs allege that the Funds heavily invested in Asset-Backed Securities ("ABS") and, in particular, subprime mortgage-related ABS, in violation of a "fundamental investment limitation" meant to assure diversification of assets in which the Funds could invest. (CAC ¶¶ 6, 15-16.) Lead Plaintiffs also allege that the Funds falsely classified their portfolio securities as corporate bonds and preferred stocks in SEC filings, overstated the values of

3

their portfolio securities, mischaracterized the Funds as "high yield," and misrepresented the professional management of the Funds' portfolios. (CAC ¶¶ 6, 17-18, 21-22, 26-28, 25.)

Plaintiffs filed suit on December 21, 2007. (See ECF No. 1.) This Court consolidated two then-separately pending suits and appointed Lead Plaintiffs and Lead Counsel by Order dated December 15, 2010. (See ECF No. 179, Order Appointing Lead Plaintiffs and Lead Counsel and Consolidating Cases.) Lead Plaintiffs filed the CAC on February 22, 2011. The CAC alleges five causes of action, all based on federal law. Lead Plaintiffs allege Defendants violated §§ 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. § 77a ("'33 Act"), and §§ 10(b) and 20(a), and Rule 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a ("'34 Act"). (CAC ¶¶ 317-67.) Lead Plaintiffs seek preliminary and permanent injunctive relief, restitution in the form of compensatory damages for their losses, prejudgment interest, rescission rights, costs, and reasonable attorneys' fees. (Id. at Section XIII.)

On October 12, 2012, Lead Plaintiffs filed their Unopposed Motion for Preliminary Approval of a Proposed Settlement and for Preliminary Class Certification. (ECF No. 261.) On January 4, 2013, the Court granted Lead Plaintiffs' Motion, approving the preliminary settlement and preliminarily certifying the class. (Preliminary Order.) On March 8, 2013, the Lead Plaintiffs

4

filed a Motion for Final Approval of the Proposed Settlement and Final Class Certification. ("Mot. for Final Approval," ECF No. 283.)

## II. Standard of Review

The Christensons move for permissive intervention under Federal Rule of Civil Procedure 24(b). Under Rule 24(b), where there is no conditional right to intervene by federal statute, a court "must consider two factors: (1) whether the proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact'; and (2) 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" Vassalle v. Midland Funding LLC, 708 F.3d 747, at *28 (6th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(1)(B); 24(b)(3)). A court may allow any individual or entity that meets these criteria to intervene. See Brewer v. Republic Steel Corp., 513 F.2d 1222, 1224-25 (6th Cir. 1975); Fed. R. Civ. P. 24(b)(1). The Court has discretion to determine whether allowing intervention will cause undue delay or prejudice. See Head v. Jellico Housing Auth., 870 F.2d 1117, 1124 (6th Cir. 1989).

Whether the motion is timely made is a threshold question in deciding a motion for permissive intervention. Bradley v. Milliken, 828 F.2d 1186, 1191 (6th Cir. 1987). Five factors guide a court's determination of timeliness:

5

> 1) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case; (2) the point to which the suit has progressed; (3) the purpose for which intervention is sought; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew of or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

United States v. City of Detroit, No. 77-71100, 2012 U.S. Dist. LEXIS 172926, at *37 (E.D. Mich., Dec. 6, 2012); see also Stotts v. City of Memphis Fire Dep't, 679 F.2d 579, 582 (6th Cir. 1982).

The contours of class membership are determined by the definition of the class provided by the party or parties moving for certification. See Arlington Video Prods. v. Fifth Third Bancorp, No. 11-4077, 2012 U.S. App. LEXIS 3355, at *33 (6th Cir. Feb. 14, 2013). The definition must be precise enough to allow a court to make an administrative determination about the membership of a particular individual. Id. The Court may, in its discretion, modify or limit the definition of the class. Powers v. Hamilton County Public Def. Comm'n, 501 F.3d 592, 619 (6th Cir. 2007). "Any class member may object" to a proposed settlement if it requires approval by the Court to become final. Fed. R. Civ. P. 23(e)(5).

### III. Analysis

#### A. Christenson Objection

6

The Lead Plaintiffs argue that the Christensons' Objection should be disallowed because they are not members of the class under the definition of the Preliminary Order and therefore have no standing to object to the terms of the settlement. (Lead Pls.' Resp.) Lead Plaintiffs contend that the class definition excludes the Christensons because they filed a proceeding with the Financial Industry Regulatory Authority ("FINRA") that was dismissed with prejudice. (Id.)

The preliminary definition states that:

> Excluded from the Class and as Class Members [is]...any Person who has filed a proceeding with FINRA against one or more Released Defendant parties concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and such proceeding was not subsequently dismissed to allow the Person to specifically participate as a Class Member.

(Preliminary Order ¶ 4.)

The Christensons admit that they filed two FINRA arbitration actions and that the second action was dismissed with prejudice. (Christensons' Reply, ECF No. 302; see also FINRA Award, ECF No. 297-1.) The Christensons argue however, that the Arbitrators did not, and did not have the authority to, rule on whether the Christensons could participate in the class action, and that it would not have been possible for their action to have been dismissed "to allow [them] to specifically participate as a Class Member." (Christensons' Reply.) They also argue that they never released their claims against the Defendants or

7

received any consideration, and that they should not be left without redress in either forum. (Id.)

The Christensons argue that the "settlement class definition purports to require a specific affirmative finding by a FINRA Panel that someone can participate in the class action." (Id.) That is not a correct interpretation of the definition. The definition requires not that the FINRA panel make a determination that the party bringing the arbitration is a proper class member, but that the party bringing the case voluntarily dismiss its FINRA proceeding for the purpose of participating in the class action. The dismissal of the Christensons' first FINRA arbitration is of the kind contemplated by the definition. (FINRA Award.) The dismissal of their second action with prejudice is not, and it bars them from class membership. (See Id.)

Because the Christensons are not class members, they cannot object as a matter of right under Rule 23(e) or the Preliminary Order. The Christensons do not cite any precedent that would allow a non-class member who will not be bound by a settlement reached among solely private parties to object to the terms of that settlement. Contrary to the Lead Plaintiffs' contention, there is also no precedent in this Circuit that forbids a court

from hearing such objections in its discretion.[3]

Based on the principles underlying the right of objection to settlement, the Christensons' Objection is not properly before the Court and it is disallowed. The basis of a class member's right to object to or appeal from a settlement is the fact that he will be bound by it. See Fidel v. Farley, 534 F.3d 508, 512 (6th Cir. 2008). The Christensons are not members of the class or parties to the litigation, they are not bound by the settlement, and it has no impact on their rights.

Certain kinds of consent decrees "'affect more than the rights of the immediate litigants'" because they impact institutions or public services. Lorain NAACP v. Lorain Bd. of Educ., 979 F.2d 1141, 1148 (6th Cir. 1992) (quoting Heath v. DeCourcy, 888 F.2d 1105, 1109 (6th Cir. 1989). In such cases, courts in this Circuit have at times allowed objections and comments by non-parties, either by statute or in their discretion. See, e.g., Tennessee Ass'n of Health Maintenance Orgs., Inc. v. Grier, 262 F.3d 559, 566-67 (6th Cir. 2001); United States v. City of Loveland, 621 F.3d 465, 468 (6th Cir. 2010); Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983) (when parties seek to implement a consent decree, "[t]he reasonableness hearing is

---

[3] The Lead Plaintiffs' reliance on Tennessee Ass'n of Health Maintenance Orgs., Inc. v. Grier, 262 F.3d 559, 566-67 (6th Cir. 2001), is misplaced. The court in that case limited its bar on non-class member objections to cases in which a non-member claimed that the class members had not received sufficient notice.

a forum for all interested parties to comment on the proposed decree.") The Christensons do not allege any facts that would lead the Court to conclude that the proposed private settlement should be equated with an institutional consent decree. They do not argue that the settlement will affect the broader public interest. To the extent that the Defendants' alleged wrongdoing implicates the rights and interests of the public, it is reasonable to assume that the public is sufficiently protected by the actions brought by the Securities and Exchange Commission and the State Attorneys General without the addition of the Christensons' Objection.

The Christensons' Objection to the proposed class settlement is not properly before the court, and it is therefore disallowed.

### B. Christenson Motion to Intervene

Although the Christensons are not class members and are not entitled to object as class members, they may raise their objections to the settlement if they become parties to the litigation by intervention. It is undisputed that intervenors may object to the terms of a settlement reached among fewer than all of the parties to an action. See Midwest Realty Mgmt. Co. v. City of Beavercreek, 93 F. App'x 782, 789 (6th Cir. 2004) ("While we express no opinion on the merits of the intervenors' objections to the proposed settlement agreement, it is clear

10

they are entitled to assert their interests in this litigation and are entitled to an adjudication thereof by the district court in the first instance."); see also, e.g., Grier, 262 F.3d at 566-567.

The Lead Plaintiffs do not address the Christensons' Motion to Intervene directly, but it is in the discretion of the Court to determine whether intervention should be allowed, even if unopposed. Applying the five-part test articulated by the Sixth Circuit, it is clear that the Christensons' motion is untimely and must be denied. City of Detroit, 2012 U.S. Dist. LEXIS 172926, at *37.

First, "a party is required to seek to intervene as soon as they know, or reasonably should know, that its rights or interests may be affected by the litigation." Id. at *42. The party "need not have knowledge of the precise manner in which its interests will be affected; it need only be aware of the risk that its interest may be affected by the litigation and that its interests may not be fully protected by the existing litigants." Id. (internal quotations omitted). The Christensons' interest in this case is not new. The original class action complaint was filed on December 21, 2007. (ECF No. 1.) Even giving the Christensons the benefit of the doubt, their own action in withdrawing their first FINRA complaint to participate in the class action in September of 2009 shows that

11

they were aware then that their interests might be affected by the litigation. (FINRA Award.) The Christensons cannot argue that they were unaware of the possible impact of the litigation on their rights after their second FINRA complaint was dismissed on May 11, 2010, nearly three years before they filed their Motion to Intervene. (Id.) The Christensons' extended delay in filing weighs heavily against their Motion to Intervene. City of Detroit, 2012 U.S. Dist. LEXIS 172926, at *43 (allowing intervention after an extended delay "condone[s] the very wait-and-see approach that the Sixth Circuit has condemned." (internal quotations omitted)).

Second, if the suit has progressed significantly at the time a party seeks to intervene, this fact weighs against granting its motion. A motion to intervene "filed during the final stages of a proceeding is not favorably viewed." United States v. BASF-Inmont Corp., No. 93-1807, 1995 U.S. App. LEXIS 9158, at *7-8 (6th Cir. Apr. 18, 1995). When the Christensons filed their motion, "only one step in the litigation remained: the...court's approval of the proposed [settlement]." Id. at *8. Because "[t]his is the final stage of the proceeding" it weighs against the Christensons' Motion to Intervene. Id. (emphasis in original).

Third, a motion to intervene is required to state a permissible purpose for the proposed intervention. A motion to

12

intervene must "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The only pleadings that may be filed in a civil action are "1) a complaint; 2) an answer to a complaint; 3) an answer to a counterclaim designated as a counterclaim; 4) an answer to a crossclaim; 5) a third-party complaint; 6) an answer to a third-party complaint; and 7) if the court orders one, a reply to an answer." City of Detroit, 2012 U.S. Dist. LEXIS 172926, at *44; Fed. R. Civ. P. 7(a). The Christensons' Motion to Intervene states only that they move "to intervene to preserve their right to appeal from approval of the settlement," and is not accompanied by any of the permissible pleadings. (Mot. to Intervene.) Because "this failure is not simply a technical oversight," it weighs against the Christensons' motion to intervene. City of Detroit, 2012 U.S. Dist. LEXIS 172926, at *45.

Fourth, a motion to intervene should not be granted if prejudice will result to the original parties because of the proposed intervenors' failure to promptly intervene after they knew or should have known of their interest in the case. As discussed above, the Christensons became aware of their interest in this litigation no later than, and arguably much earlier than, May 11, 2010. Between May 11, 2010, and January 4, 2013,

13

Lead Plaintiffs and Defendants engaged in extensive litigation and negotiation, and reached a proposed settlement agreement. The Christensons seek to intervene only three weeks before the final settlement hearing so that their concerns may be taken into consideration in the final formation of the settlement. Because the Christensons did not intervene promptly, substantial prejudice would result to the original parties if the Christensons were allowed to intervene now.

Fifth, the Christensons have not alleged any facts demonstrating that unusual circumstances favor allowing them to intervene at this time.

The Christensons' motion to intervene is untimely. Because the Christensons have failed to meet this threshold condition, the Court need not address the other factors of the Rule 24(b) test. The Christensons' motion to intervene is DENIED.

### C. Other Objections

The Lead Plaintiffs' Response asks the Court to overrule the Objections of the other four Objectors in their entirety. (Lead Pls.' Resp.) Both Rule 23(e) and the Court's Preliminary Order state that any class member may object. The Preliminary Order also states that any class member who files a proper objection in conformity with the terms of the Order may appear at the hearing. (Preliminary Order.) The Lead Plaintiffs do not argue that the Objectors are not members of the class or that their

14

Objections violate the terms of the Preliminary Order. The Lead Plaintiffs' Response addresses the content of the Objections instead of whether they are properly before the Court. Because the Objectors are entitled to present their claims, and because the Lead Plaintiffs' responses go to the merits of the Objectors' arguments rather than their right to object, the content of the Objections is more appropriately considered at the Final Approval Hearing.

### D. Requests for Exclusion

The Lead Plaintiffs ask the Court to declare the allegedly improper requests for exclusion invalid or moot. (Lead Pls.' Resp.) Because the Lead Plaintiffs have not properly moved the Court to consider the requests for exclusion, the Court need not decide whether they should be denied at this time.

### IV. Conclusion

For the foregoing reasons the Christensons' Motion to Intervene is DENIED. The Christensons' Objection is disallowed. The Objections of Burns, McDonald, Shaffer, and Shattuck are allowed.

So ordered this 10th day of April, 2013.

                                            s/ Samuel H. Mays, Jr._____
                                            SAMUEL H. MAYS, JR.
                                            UNITED STATES DISTRICT JUDGE