**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| In re REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| In re Regions Morgan Keegan Closed-End Fund Litigation, | ) ) | No. 2:09-2009 SMH V |
| | ) | |
| No. 2:07-cv-02830-SHM-dkv | ) | |

**ORDER APPROVING PROPOSED SETTLEMENT AND AWARD OF ATTORNEY'S FEES
AND EXPENSES**

On behalf of the Class and the Subclass, Plaintiffs the Lion Fund L.P., Dr. Samir J. Sulieman, and Larry Lattimore (collectively, "Lead Plaintiffs"), and C. Fred Daniels in his capacity as Trustee Ad Litem for the Leroy S. McAbee, Sr. Family Foundation Trust (the "TAL") (collectively with the Lead Plaintiffs, "Plaintiffs"), filed a Motion on March 8, 2013, for Final Approval of the Proposed Settlement and Plan of Allocation entered into with Defendants Morgan Keegan & Co., Inc. ("Morgan Keegan"), MK Holding, Inc., Morgan Asset Management, Inc., Regions Financial Corporation ("RFC"), the Closed-End Funds, Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph Thompson Weller, James C. Kelsoe, Jr., and Carter Anthony (collectively, "Defendants"). (Mot. for Final App., ECF No.

283.)  Also before the Court is Plaintiffs' Motion for Award of Attorney's Fees and Expenses.  (Mot. for Atty. Fees, ECF No. 285.)

For the following reasons, Plaintiffs' proposed Class is CERTIFIED.  Plaintiffs' Motion for Final Approval is GRANTED. Plaintiffs' Motion for Attorney's Fees and Expenses is GRANTED. The parties' joint Stipulation and Agreement of Settlement and their Plan of Allocation are APPROVED.

**I.    Standard of Review**

**A. Approval of Settlement and Certification of Class**

Under Federal Rule of Civil Procedure 23, a member of a class may bring suit on behalf of all other members if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

If these conditions are met a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The "claims, issues, or defenses of a certified class may
be settled, voluntarily dismissed, or compromised only with the
court's approval." Fed. R. Civ. P. 23(e). When parties to a
class action seek to settle, the Court must comply with the
following procedures:

> (1) The court must direct notice in a reasonable manner to
> all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may
> approve it only after a hearing and on finding that it is
> fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement
> identifying any agreement made in connection with the
> proposal.
> (4) If the class action was previously certified under Rule
> 23(b)(3), the court may refuse to approve a settlement
> unless it affords a new opportunity to request exclusion to
> individual class members who had an earlier opportunity to
> request exclusion but did not do so.
> (5) Any class member may object to the proposal if it
> requires court approval under this subdivision (e); the
> objection may be withdrawn only with the court's approval.

Id.

### B. Attorney's Fees and Expenses

Under Rule 23(h), in a "certified class action, the court
may award reasonable attorney's fees and nontaxable costs that
are authorized by law or by the parties' agreement." When
parties to a class action seek attorney's fees and costs, the
Court must comply with the following procedures:

(1) A claim for an award must be made by motion under Rule
54(d)(2), subject to the provisions of this subdivision
(h), at a time the court sets. Notice of the motion must be
served on all parties and, for motions by class counsel,
directed to class members in a reasonable manner.
(2) A class member, or a party from whom payment is sought,
may object to the motion.
(3) The court may hold a hearing and must find facts and
state its legal conclusions under Rule 52(a).
(4) The court may refer issues related to the amount of the
award to a special master or a magistrate judge, as
provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h).

**II. Analysis**

The Court has reviewed the record in this case, the joint

Stipulation and Agreement of Settlement, the Plan of Allocation,

all attached exhibits, the Plaintiffs' Motions for preliminary

and final approval of the Settlement, the supporting memoranda,

and the written objections of Class Members.  The Court has held

a Preliminary Fairness Hearing and a Final Approval Hearing.

(Prelim. Hearing, ECF No. 275; Final Hearing, ECF No. 312.)  At

the Final Approval Hearing, the Court heard presentations from

the Lead Plaintiffs, TAL counsel, the Defendants, and objecting

Class Members as well as testimony from the Plaintiffs' expert.

(Final Hearing.)

Based on its independent assessment of the record and the

information presented by the parties, the Court makes the

following findings and reaches the following conclusions.

**A. Class Certification**

The conditions of Rule 23(a) have been satisfied.  There is no dispute that the Class satisfies the numerosity, commonality, and typicality requirements.  At the time of the Final Approval Hearing, the claims administrator had distributed nearly 100,000 class action notices to potential Class Members and more than 7,000 proofs of claim had been filed.  All potential Class Members had purchased or acquired shares of the Closed-End Funds between 2003 and 2009.

After considering numerous motions for appointment, the Court decided that the Lead Plaintiffs were best qualified to represent the Class.  (Order Appt. Counsel, ECF No. 179.)  There is no dispute about the adequacy of the Class representatives. No party or Class Member has given the Court good cause to believe that the Lead Plaintiffs have not fairly and adequately protected the interests of the Class.

The conditions of Rule 23(b)(3) have been satisfied.  The injuries of the Class Members are the same in kind if not in degree.  The questions of law and fact common to the Class predominate over any questions affecting only individual members.  Because there are so many potential Class Members, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Class is CERTIFIED as described in the Preliminary Approval Order:

All Persons who purchased or otherwise acquired the publicly traded shares of (i) RMH between June 24, 2003 and July 14, 2009, inclusive, and were damaged thereby; (ii) RSF between March 18, 2004 and July 14, 2009, inclusive, and were damaged thereby; (iii) RMA between November 8, 2004 and July 14, 2009, inclusive, and were damaged thereby; (iv) RHY between January 19, 2006 and July 14, 2009, inclusive, or pursuant or traceable to the Registration Statement, Prospectus, and Statement of Additional Information (the "RHY Offering Materials") filed by RHY on or about January 19, 2006 with the SEC, and were damaged thereby; and (v) all members of the TAL Subclass.

Excluded from the Class and as Class Members are the Defendants; the members of the immediate families of the Defendants; the subsidiaries and affiliates of Defendants; any person who is an executive officer, director, partner or controlling person of the Closed-End Funds or any other Defendant (including any of its subsidiaries or affiliates, which include but are not limited to Morgan Asset Management, Inc., Regions Bank, Morgan Keegan, RFC, and MK Holding, Inc.); any entity in which any Defendant has a controlling interest; any Person who has filed a proceeding with FINRA against one or more Released Defendant Parties concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and such proceeding was not subsequently dismissed to allow the Person to specifically participate as a Class Member; any Person who has filed a state court action that has not been removed to federal court, against one or more of the Defendants concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and whose claims in that action have been dismissed with prejudice, released, or fully adjudicated absent a specific agreement with such Defendant(s) to allow the person to participate as a Class Member; and the legal representatives, heirs, successors and assigns of any such excluded person or entity. These exclusions do not extend to trusts or accounts as to which the control or legal ownership by any Defendant (or by any subsidiary or affiliate of any Defendant) is derived or arises from an appointment as trustee, custodian, agent, or other fiduciary ("Fiduciary Accounts") unless with respect to any such Fiduciary Account any Person has filed a proceeding with FINRA against one or more Released Defendant Parties concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and such proceeding was not

subsequently dismissed to allow the Person to specifically participate as a Class Member; any Person who has filed a state court action that has not been removed to federal court, against one or more of the Defendants concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and whose claims in that action have been dismissed with prejudice, released, or fully adjudicated absent a specific agreement with such Defendant(s) to allow the Person to participate as a Class Member (and such exclusion shall apply to the legal representatives, heirs, successors and assigns of any such excluded Person, entity or Fiduciary Account). With respect to Closed-End Fund shares for which the TAL Orders authorize the Trustee Ad Litem to prosecute the claims or causes of action pleaded in the Complaint in the Action ("TAL Represented Closed-End Fund Shares"), "Class" and "Class Member" also excludes Persons who are, or were during the Class Period, trust and custodial account beneficiaries, principals, settlors, co-trustees, and others owning beneficial or other interests in the TAL Represented Closed-End Fund Shares ("Such Persons"), but this exclusion applies only to any claims or causes of action of Such Persons that the Trustee Ad Litem is not authorized by the TAL Orders to prosecute. With respect to Closed-End Fund Shares that are not TAL Represented Closed-End Fund Shares and in which Such Persons have a beneficial or other interest, the foregoing partial exclusion of Such Persons does not apply. Also excluded from the Class and as Class Members are those Persons who submit valid and timely requests for exclusion from the Class in accordance with the requirements set forth in the Notice.

(Prelim. Order, ECF No. 276.)

Persons and entities who have been deemed excluded from Class Membership are identified in the Court's May 17, 2013 and July 26, 2013 Orders, (ECF No. 330; ECF No. 344), and in the Plaintiffs' May 24, 2013 exhibit, (ECF No. 331-2).

**B. Sufficiency of Notice**

Due process requires that notice to a class be "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." Vassalle v. Midland Funding LLC, 708 F.3d 747, 759 (6th Cir. 2013) (internal quotation marks and citations omitted)). "[A]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." Id. (internal quotation marks and citations omitted).

The Court approved the Notice submitted by Plaintiffs at the Preliminary Approval Hearing. (Prelim. Order.) The Notice describes the nature of the class action, the proposed settlement terms, the proposed Plan of Allocation, and the requested attorney's fees and expenses in detail. (Notice, ECF No. 260-2.) The Notice is written to be understood by non-attorneys. (Id.) The Court approved the proposed methods of disseminating the Notice. At the time of the Final Approval Hearing, the claims administrator had sent nearly 100,000 Notices by mail and had received more than 7,000 proofs of claim in response. The Defendants had received more than 10,000 requests for share purchase and sale information in response to the Notice. The Court received four timely and valid objections, one untimely objection, and one invalid objection from a non-class member.

The Notice was sufficient.  The due process requirements have been met.

### C. Settlement Approval

In compliance with Rule 23(e), the Court required the Plaintiffs to send Notices of Class Action, Proofs of Claim, and information about Requests for Exclusion to all Class Members by means reasonably calculated to give them actual notice of the pendency of the class action and the terms of the proposed Settlement. (Prelim. Order); Fed. R. Civ. P. 23(e)(1).  The parties filed a Stipulation and Agreement of Settlement identifying all agreements made in connection with the proposed Settlement.  (ECF No. 260); Fed. R. Civ. P. 23(e)(3).  The Court allowed all Class Members to file written objections to the proposed Settlement and held a Final Approval Hearing at which proper objectors were entitled to appear.  (Prelim. Order; Final Hearing); Fed. R. Civ. P. 23(e)(2), 23(e)(5).

The procedural requirements of Rule 23(a), (b), and (e) have been satisfied.  Final approval of the proposed Settlement is warranted if the Court finds that the terms of the Settlement are fair, reasonable, and adequate.

"A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: '(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3)

the  amount of discovery engaged in by the parties; (4) the
likelihood of success on the merits; (5) the opinions of class
counsel and class representatives; (6) the reaction of absent
class members; and (7) the public interest.'" Vassalle, 708 F.3d
at 754-755 (quoting UAW v. GMC, 497 F.3d 615, 631 (6th Cir.
2007)). The Court has "'wide discretion in assessing the weight
and applicability' of the relevant factors." Id. (quoting
Granada Invest., Inc. v. DWG Corp., 962 F.2d 1203, 1205-06 (6th
Cir. 1992)).  Although the Court need not decide the merits of
the case or resolve unsettled legal questions, the Court cannot
"'judge the fairness of a proposed compromise' without 'weighing
the plaintiff's likelihood of success on the merits against the
amount and form of the relief offered in the settlement.'"  Id.
(quoting UAW, 497 F.3d at 631) (internal citations omitted).

    The parties seek approval of a monetary Settlement in the
amount of $62,000,000.00.  All of the UAW factors support the
fairness, reasonableness, and adequacy of the proposed
Settlement.  The parties protected against the risk of fraud or
collusion by using a highly qualified and experienced
independent mediator during settlement negotiations.  The
parties engaged in arms-length negotiations.  The complexity and
expense of the litigation are evident.  The litigation has been
pending for more than five-and-a-half years.  The matter before
the Court represents a consolidation of seven cases; tens of

thousands of claims could be made on the settlement fund.

If the case were to proceed to trial, the Plaintiffs would face a daunting task in establishing loss causation and liability because there is evidence of both management failures and market decline.  The parties have stated that they will proceed to trial if the proposed Settlement is rejected. Although the case has not reached the summary judgment stage, the Plaintiffs have completed a substantial amount of discovery to support their loss valuation theory and their mediation position.  Because of the complexity of the case, discovery costs would be much higher before the case could proceed to trial.

The opinions of Class counsel and the reactions of Class Members also support approval of the Settlement.  Class counsel have represented to the Court that, given the circumstances of the case and the anticipated litigation risk, they believe they have achieved the best possible result.  From the tens of thousands of potential Class Members, the Court has received four valid and timely objections, one untimely objection, and one invalid objection raised by a non-class member.  (ECF No. 309.)  The Court has considered all of the objections and heard from two of the objectors at the Final Approval Hearing.  None of the objections has caused the Court to conclude that the proposed Settlement is unfair, unreasonable, or inadequate.

Settlement is also in the public interest.  It will conserve judicial resources and permit monetary recovery for potentially tens of thousands of individuals and entities.  The Release is narrow and does not implicate individuals or entities with claims outside the Class.

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of settlement must be measured.'" Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011) (quoting In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1086 (6th Cir. 1984)).  The Plaintiffs' likelihood of success on the merits is questionable for several reasons.  First, the Defendants argue that they have strong defenses but have chosen to settle because of the projected costs of discovery, the uncertainty and disruption to the Defendants' ongoing businesses, and the risk of higher damages.  Second, the Defendants argue, and the Plaintiffs admit, that the Plaintiffs did not have to show loss causation to obtain the proposed Settlement.  The Defendants contend that loss causation would be difficult to prove under the circumstances of this case.  They argue that, if the Plaintiffs were required to prove the portion of the loss attributable to the Defendants, recovery would be significantly reduced.  The

Defendants also argue that it would be difficult at trial for the Plaintiffs to prove material fraudulent misrepresentations and to establish that Morgan Keegan and RFC were controlling persons of the Funds.

Finally, the Plaintiffs' novel damages valuation methodology could be excluded at trial for failure to satisfy the expert testimony standard in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). "Before an expert may testify at trial, the district 'court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" United States v. Watkins, 450 F. App'x 511, 515 (6th Cir. 2011) (quoting United States v. Smithers, 212 F.3d 306, 313 (6th Cir. 2000) (internal quotations and citations omitted)).  At the Final Approval Hearing, the Plaintiffs' expert described substantial differences between the methodology he employed and generally accepted methodologies.  Plaintiffs' expert admitted that his method was otherwise untested and that it used daily net asset values as a novel proxy for the potentially fraudulent or misleading statements of Fund managers.  It is possible that the expert's method would be found invalid.  If the Plaintiffs' damages valuations were excluded at trial, their likelihood of success on the merits and the amount of any recovery would be

greatly reduced.

The proposed Settlement offers the Class Members a monetary recovery for their monetary loss.  Based on the information presented by the parties and the objectors, counsel for the Plaintiffs were able to negotiate a multi-million dollar recovery for the Class based on a novel theory.  The Plaintiffs' expert testified that, under generally accepted damages valuation models, the total loss to the Class attributable to the Defendants would have been between one sixth and one third of the proposed Settlement amount.

Although the proposed Settlement allows the Class Members to recover, at best, 18% of their losses as alleged by the Plaintiffs, monetary relief is guaranteed.  The Plaintiffs could succeed on the merits, but the likelihood is problematic and their theory of recovery introduces unusual litigation risks.  Based on these considerations, the proposed Settlement confers a substantial benefit on the Class Members.

The Sixth Circuit looks beyond the UAW factors when evaluating the fairness of a settlement to determine whether the proposed settlement "'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'"  Vassalle, 708 F.3d at 755 (quoting Williams v. Vukovich, 720 F.2d 909, 925 n.11 (6th Cir. 1983)).  Under the proposed Settlement, each Class Member receives a pro rata share

of the settlement fund based on the number of shares the Class
Member purchased.  The parties have represented to the Court
that there is no side agreement promising a bonus or a different
type of relief to the named Plaintiffs.

The form and amount of recovery in the proposed Settlement
appropriately balance the risks of litigation.  All of the UAW
factors weigh in favor of concluding that the proposed
Settlement is fair, reasonable, and adequate.  Plaintiffs'
Motion for Final Approval is GRANTED.  The Stipulation and
Agreement of Settlement and the Plan of Allocation are ADOPTED
and APPROVED.

### E. Attorney's Fees and Expenses

In compliance with Rule 23(h), the Plaintiffs have filed a
Motion for Award of Attorney's Fees and Expenses that conforms
to the requirements of Rule 54(d)(2).  (Mot. for Atty. Fees.)
Notice of the Motion was served on all parties through the
Court's Electronic Filing Docket and on Class Members by mail.
(See ECF No. 301.)  The Class Members and the Defendants were
given an opportunity to object to the Motion.  (Prelim. Order.)
The Court heard argument from the Lead Plaintiffs, TAL Counsel,
Defendants, and several objectors at the Final Approval Hearing.

All of the procedural prerequisites to an award of
attorney's fees and expenses have been satisfied.  The question
is whether the attorney's fees and expenses requested are

15

reasonable.  In general, "there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 F. App'x 496, 498 (6th Cir 2011).  "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" Id. (quoting Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993)).  "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." Rawlings, 9 F.3d at 516.  A district court "generally must explain its 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'"  Id. (quoting Moulton v. U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009)).

Plaintiffs move the Court to approve a percentage-of-the-fund, or common fund, award of attorney's fees in the amount of $18,600,000.00, or 30% of the total common fund.  (Mem. in Supp. of Mot. for Atty. Fees, ECF No. 86.)  The Plaintiffs contend that the reasonableness of their request is supported by a "lodestar cross-check," a method by which the party requesting an award works backward from the requested amount to determine the multiplier that would be necessary to reach that amount if the party had instead used the lodestar method to determine the

16

requested fee.  (Id.)  If the resulting multiplier is within the accepted range, it supports the party's contention that its fee request is reasonable.  (Id.)

To recover attorney's fees under the common fund doctrine, "(1) the class of people benefitted by the lawsuit must be small in number and easily identifiable; (2) the benefits must be traceable with some accuracy; and (3) there must be reason for confidence that the costs can in fact be shifted with some exactitude to those benefitting." Geier v. Sundquist, 372 F.3d 784, 790 (6th Cir. 2004).  These factors are not satisfied "'where litigants simply vindicate a general social grievance,'" but are satisfied "'when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.'"  Id. (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).  For that reason, "the common fund method is often used to determine attorney's fees in class action securities cases."  Id.

The instant class action is a securities case.  Each Class Member who submits a proper proof of claim will receive a pro rata share of the settlement fund based on the number of shares the Member purchased during the Class Period.  Although the Class is large, each Class Member is easily identifiable and the benefit to each Member is easily traceable to the work of Plaintiffs' counsel.  Because recovery is pro rata, if the

17

common fund method is applied, each Class Member will in effect pay a portion of the attorney's fees and expenses based on the size of the Class Member's recovery.

The common fund method is the more appropriate method for calculating attorney's fees in this case.  "In common fund cases, the award of attorney's fees need only 'be reasonable under the circumstances.'"  Id. (quoting Rawlings, 9 F.3d at 516).  "The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"  Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 426 (quoting Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1294 (11th Cir. 1999)).  Although the Court may award fees in its discretion, it should consider:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Moulton, 581 F.3d at 352 (quoting Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996)).

In this case, there is no dispute that the litigation is complex, that counsel for all parties are highly skilled and nationally well-regarded, and that counsel for the Plaintiffs undertook a substantial risk and bore considerable costs by accepting this case on a contingent fee basis.  The requested

fee is within the typical range for awards in common fund cases, and society has a clear stake in rewarding attorneys as an incentive to take on complicated, risky, contingent fee cases.

The value of Plaintiffs' legal services on an hourly basis is established by their lodestar cross-check. See Johnson v. Midwest Log. Sys., No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *16 (S.D. Ohio May 25, 2013). "In contrast to employing the lodestar method in full, when using a lodestar cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Id. at *17 (internal quotations and citations omitted). Plaintiffs spent approximately 13,000 hours in preparation for this case, producing a cumulative lodestar value of $5,980,680.50. (ECF No. 287-1.) Each firm comprising Plaintiffs' counsel submitted an accounting of the hourly rate and hours spent for each attorney who worked on the case. (ECF No. 287-6; ECF No. 287-7; ECF No. 287-8.) The hours spent and the rates applied are reasonable. The resulting lodestar multiplier is approximately 3.1. "Most courts agree that the typical lodestar multiplier in a large post-PSLRA securities class action[] ranges from 1.3 to 4.5." In re Cardinal Health Inc. Sec. Litigs., 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (collecting cases). The lodestar cross-check multiplier is within the reasonable range.

The most important factor in determining the reasonableness

of the requested attorney's fees in this case is the value of the benefit conferred on the Class.  This is a complex case, and the Plaintiffs' likelihood of success on the merits is in question.  Nevertheless, Plaintiffs' counsel was able to negotiate a multimillion-dollar settlement on a novel theory of recovery to be distributed pro rata to all Class Members. Plaintiffs' counsel created substantial value for the Class Members.  Had the litigation proceeded on an accepted damages valuation theory, the total recovery was projected to be from one third to as little as one sixth of the proposed settlement fund.  If the case had proceeded to trial, the Class Members faced a substantial risk of no recovery at all.

The Plaintiffs also seek payment of expenses from the common fund totaling $380,744.14.  (ECF No. 287.)  The Plaintiffs state that approximately $277,000.00 represents payments to experts, approximately $17,000.00 represents the costs of mediation, and the remainder includes photocopying, travel, and lodging.  (Id.)  The Plaintiffs have submitted itemized lists of all expenses.  (ECF No. 287-6; ECF No. 287-7; ECF No. 287-8.)  No objections have been raised to the Plaintiffs' expenses.  After review of the Plaintiffs' submissions, the Court finds that the requested expenses are reasonable and should be paid from the common fund.

The Plaintiffs' requested attorney's fees and expenses are

reasonable under the unique circumstances of this case.  The
common fund method is the more appropriate method of addressing
attorney's fees.  All of the Bowling factors weigh in favor of
the requested fee of 30% of the fund, $18,600,000.00.
Plaintiffs' Motion for Attorney's Fees and Expenses is GRANTED.

### III. Dismissal of Claims and Release

Except as to any individual claim of those persons who have
been excluded from the Class, this action, together with all
claims asserted in it, is dismissed with prejudice by the
Plaintiffs and the other members of the Class against each and
all of the Defendants. The Parties shall bear their own costs,
except as otherwise provided above or in the joint Stipulation
and Agreement of Settlement and the Plan of Allocation.

After review of the record, including the Complaint and the
dispositive motions, the Court concludes that, during the course
of this action, the parties and their respective counsel have
complied at all times with the requirements of Rule 11.

The Release submitted by the parties as part of Exhibit B
to the joint Stipulation and Agreement of Settlement, (ECF No.
260-5), is APPROVED and ADOPTED by the Court.

### IV. Continuing Jurisdiction

The Court retains jurisdiction for purposes of effecting
the Settlement, including all matters relating to the
administration, consummation, enforcement, and interpretation of

the joint Stipulation and Agreement of Settlement and the Plan of Allocation.

### V. Conclusion

For the foregoing reasons, Plaintiffs' proposed Class is CERTIFIED.  Plaintiffs' Motion for Final Approval is GRANTED. Plaintiffs' Motion for Attorney's Fees and Expenses is GRANTED. The parties' Stipulation and Agreement of Settlement and their Plan of Allocation are APPROVED.  The Class settlement fund is approved in the amount of $62,000,000.00.  Attorney's fees are approved in the amount of $18,600,000.00.  Expenses are approved in the amount of $380,744.14.  All claims in this matter are DISMISSED except as provided above.


So ordered this 5th day of August, 2013.


s/ Samuel H. Mays, Jr.____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE