**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| In re REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| In re Regions Morgan Keegan Closed-End Fund Litigation, | ) ) | No. 2:09-2009 SMH |
| | ) | |
| No. 2:07-cv-02830-SHM-dkv | ) | |

---

**ORDER**

---

Before the Court is Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore's[1] (collectively, "Lead Plaintiffs") June 25, 2015 Motion for Approval of Distribution of Net Settlement Fund (the "Motion"). (Motion, ECF No. 365.) They seek an Order authorizing distribution of the Net Settlement Fund in this class action, which was settled pursuant to the terms of the Settlement Agreement dated October 12, 2012. (Settlement Agreement, ECF No. 260.) The Court held a Final Approval Hearing on the fairness of the terms and conditions of the Settlement on April 12, 2013, at which all Class Members were provided an opportunity to be heard. (Minutes, ECF No. 312.) With the entry of a Final Order and Judgment on August 5, 2013,

---

[1] A suggestion of death was filed on behalf of Mr. Lattimore on September 9, 2015. (Suggestion of Death, ECF No. 366.)

the Court approved the Settlement. (Final Approval Order, ECF No. 345.)   The Final Order found, inter alia, that the Settlement was fair, reasonable, and adequate. (Id.)   The Court reserved jurisdiction over all matters for purposes of effecting the Settlement, including all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement and Plan of Allocation. (Id. at 21-22.)

On June 25, 2015, Labaton Sucharow LLP ("Lead Counsel") filed a declaration and The Garden City Group, LLC ("GCG" or "Claims Administrator") filed an affidavit with the Court addressing the administration, review, processing, validation, and calculation of claims. (Goldsmith Decl., ECF No. 365-2; Hanshe Aff., ECF No. 365-3.)   Lead Counsel and GCG have completed all steps required for the administration, review, processing, and validation of claims set forth in the Settlement Agreement. (Id.)   All deductions for fees and expenses have been completed pursuant to the terms of the Settlement Agreement and Final Approval Order. (Goldsmith Decl., ECF No. 365-2.)

GCG received and processed 21,412 claims submitted on behalf of persons and entities ("Claimants"). (Hanshe Aff., ECF No. 365-3 at ¶ 7.)   GCG recommends that 13,512 of those claims be approved by the Court as claims eligible for payment in whole or in part ("Eligible Claims"). (Id. at ¶ 45.)   Those claims represent an aggregated Recognized Claim amount of approximately

$340,363,671.42.  (Id.)

Of those 13,512 claims, 264 claims were not timely submitted ("Late Eligible Claims").  (Id.)  GCG recommends that the Court approve a revised cut-off date of May 22, 2015.  (Id. at ¶ 49.)  It recommends that the Court accept the 264 Late Eligible Claims because the claims only represent approximately 1.95% of the aggregated Recognized Claim amount of all 13,512 Eligible Claims and no delay has resulted from their provisional acceptance.  (Id. at ¶ 45.)

The Settlement Agreement provides that the cut-off date may be extended by Lead Counsel in their discretion, or by Order of the Court.  (Settlement Agreement, ECF No. 260 at ¶ 28(b).)  Courts have discretion to allow late claims to be eligible for the distribution of settlement funds.  Wade v. Kroger, Co., No. 3:01CV-699-R, 2008 WL 4999171 at *2 n.2 (W.D. Ky. Nov. 20, 2008).  The Late Eligible Claims represent a small percentage of the Eligible Claims.  The Late Eligible Claims will not cause any delay in distribution.  The 264 Late Eligible Claims are APPROVED.  The proposed revised cut-off date of May 22, 2015, is APPROVED.

GCG recommends that 7,900 claims be rejected ("Rejected Claims").  (Id. at ¶ 47.)  It provides a table explaining the reasons for rejection.  (Rejected or Ineligible Claimants, ECF No. 365-8.)  Four of the Rejected Claims are disputed ("Disputed

3

Claims"). A Court review of the Disputed Claims has been requested by GCG or the Claimant. (Hanshe Aff., ECF No. 365-3 at ¶¶ 50-54.)

GCG recommends that two Disputed Claims, Claims 1005943 and 1024108, be rejected because they do not calculate to a Recognized Claim pursuant to the Plan of Allocation. (Hanshe Aff., ECF No. 365-3 at ¶ 53.) The Notice sent to all Class members provides that under the Plan of Allocation, purchases made after August 13, 2007 would have a "Recognized Loss Amount of zero ($0.00)." (Notice, ECF No. 365-4 at 24-27.) Any prorated payment that calculated to a Recognized Claim amount of less than $10.00 would not be included in the distribution. (Id. at 23.) The documents submitted on behalf of Claims 1005943 and 1024108 provide that all purchases of Closed-End Funds were made by the Claimants after August 13, 2007. (Claim 1005943, ECF No. 365-9; Claim 1024108, ECF No. 365-10.) The two Disputed Claims are REJECTED.

GCG recommends that two Disputed Claims, Claims 735 and 758, be rejected because the Claimants are not Class Members. (Hanshe Aff., ECF No. 365-3 at ¶ 54.) The Settlement Agreement provides, in relevant part:

> Excluded from the Class and as Class Members are . . . any Person who has filed a proceeding with FINRA against one or more Released Defendant Parties concerning the purchase of shares in one or more of the Closed-End Funds during the Class Period and such

4

proceeding was not subsequently dismissed to allow the
Person to specifically participate as a Class Member .
. . .

(Settlement Agreement, ECF No. 260 at ¶ 1(e).)

The two Disputed Claims were submitted by the same
Claimant, one in his individual capacity and one on behalf of an
entity. (Hanshe Aff., ECF No. 365-3 at ¶ 54.) That Claimant
had previously filed a proceeding with FINRA on behalf of
himself and the entity. (Id.) A "General Release and
Settlement Agreement" was reached in that proceeding. (Id.)
That Agreement provides, in relevant part: "nothing contained
herein or in any release or dismissal executed by RELEASOR will
constitute a waiver or release of RELEASOR'S right to
participate in and/or apply for any settlement amount and/or
distribution made to RMK Fund shareholders pursuant to any
regulatory settlement." (Claim 735, ECF No. 365-11 at 19-20;
Claim 758, ECF No. 365-12 at 21-22.)

GCG contends that the agreement from the FINRA proceeding
must have specifically carved out this Action to prevent the
Claimant from being excluded from the Class. (Hanshe Aff., ECF
No. 365-3 at ¶ 54.) Claimant contends that he and the entity
are Class Members based on the FINRA agreement. (Claim 735, ECF
No. 365-11 at 15-16; Claim 758, ECF No. 365-12 at 17-18.)

Because settlements are a type of contract, state contract
law governs questions of interpretation. Universal Settlements

<u>Intern., Inc. v. National Viatical, Inc</u>., 568 F. App'x. 398, 401 n.2 (6th Cir. 2014). The Settlement Agreement provides that Tennessee law applies. (Settlement Agreement, ECF No. 260 at ¶ 63.) Neither GCG nor the Claimant states that the Settlement Agreement should be interpreted under another state's law. Where, as here, there is no dispute that a certain state's substantive law applies, the Court will not conduct a "choice of law" analysis <i>sua sponte</i>. <u>See</u> <u>GBJ Corp. v. Eastern Ohio Paving Co.</u>, 139 F.3d 1080, 1085 (6th Cir. 1998).

Under Tennessee law, "[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." <u>Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.</u>, 521 S.W. 2d 578, 580 (Tenn. 1975). "The intention of the parties is to be gleaned from the four corners of the contract, and the contract's terms are to be given their ordinary meaning in the absence of any ambiguity." <u>United States v. Tennessee</u>, 632 F. Supp. 2d 795, 800 (W.D. Tenn. 2009) (citing <u>Riverside Surgery Ctr., LLC v. Methodist Health Sys., Inc.</u>, 182 S.W. 3d 805, 811 (Tenn. Ct. App. 2005)) (internal quotations omitted).

After reviewing the Settlement Agreement, the language "to specifically participate as a Class Member" implies that a person who previously brought a FINRA proceeding is a Class

6

Member only if that proceeding was dismissed for the specific purpose of allowing the person to participate as a Class Member in this Settlement.   That intention is consistent with the language excluding persons from joining the Class who previously "filed a state court claim . . . whose claims in that action have been dismissed with prejudice, released, or fully adjudicated absent a specific agreement with such Defendant(s) to allow the person to participate as a Class Member . . . ." (Settlement Agreement, ECF No. 260 at ¶ 1(e).)

The FINRA General Release and Settlement Agreement entered into by the Claimant as an individual and on behalf of the entity does not bar the Claimant from recovering in settlements benefiting RMK fund shareholders, but the proceeding was not dismissed specifically for the purpose of allowing the Claimant to join in this Action.   The Claimant is not a Class Member under the terms of the Settlement Agreement.   Claims 735 and 758 are REJECTED.

The Court has considered all submissions presented as to the Motion and for good cause shown the Court hereby ORDERS, FINDS, CONCLUDES, ADJUDGES, AND DECREES AS FOLLOWS:

1.   Unless otherwise defined herein, all of the capitalized terms used shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated October 12, 2012, filed with the Court.

2.   The procedures and methods used in the administration of the Settlement and the review, processing, validation, calculation, and distribution of claims submitted by Claimants fully complied with the Settlement Agreement.

3.   Lead Counsel has fully and properly discharged its duties and responsibilities in the administration, implementation, and oversight of the Settlement.

4.   The administrative recommendations of GCG, the Court-appointed Claims Administrator, to accept the Proof of Claim and Release forms ("Proofs of Claim"), including the late but otherwise eligible Proofs of Claim, listed in Exhibits C-1 and C-2 to the Affidavit of Gerard E. Hanshe of GCG, dated June 18, 2015 ("Hanshe Affidavit"), are APPROVED.

5.   As determined by the Claims Administrator, wholly rejected or otherwise ineligible Proofs of Claim, listed in Exhibit C-3 to the Hanshe Affidavit, are REJECTED.

6.   As determined in this Order, the disputed Proofs of Claim, listed in Exhibits D1-D4 to the Hanshe Affidavit, are REJECTED.

7.   The distribution of the Net Settlement Fund to Authorized Claimants is AUTHORIZED and shall be conducted in accordance with the Settlement Agreement, Plan of Allocation, and distribution plan for payment of the Net Settlement Fund,

set forth in paragraphs 55-59 of the Hanshe Affidavit, which is APPROVED.

8. No Proofs of Claim received by the Claims Administrator on or after May 23, 2015 will be accepted.

9. Pursuant to the Settlement Agreement, if any funds remain in the Net Settlement Fund by reason of tax refunds, uncashed checks or otherwise, after at least twelve (12) months from the date of the initial distribution, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks and after the payment of Taxes and outstanding Notice and Administration Expenses, if any, the funds remaining in the Net Settlement Fund, plus five percent (5%) reserve to the extent that it has not been depleted, shall be redistributed in a second distribution among claimants who have cashed their checks, in an equitable and economical fashion. Thereafter, GCG, at direction of Lead Counsel, shall, if feasible, continue to reallocate any further balance remaining in the Net Settlement Fund among eligible claimants who have cashed their checks in an equitable and economical fashion.

10. Once Lead Counsel determines that further redistribution of any balance is no longer feasible, that balance, after payment of outstanding Notice and Administration

Fees and Expenses and Taxes, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest that is designated by the Lead Plaintiffs and approved by the Court.

11. A payment in the amount of $293,900.28 from the Settlement Fund for the outstanding fees and expenses of GCG in payment for the balance of its fees and expenses in the administration of the Settlement and its fees and expenses to be incurred in the initial distribution of the Net Settlement Fund is APPROVED.

12. GCG is authorized to destroy paper copies of the Proofs of Claim and all supporting documents one (1) year after the initial distribution of the Net Settlement Fund, and to destroy electronic copies of the same three (3) years after the final distribution of the Net Settlement Fund.

13. The Court retains jurisdiction to consider any further applications addressing the administration of the Settlement, and such other and further relief as the Court deems appropriate.


So ordered this 3rd day of November, 2015.


s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

10