# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| In re REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) ) ) No. 09-2009 ) |
| This Document Relates to: | ) ) |
| In re Regions Morgan Keegan Closed-End Fund Litigation, | ) ) ) |
| No. 2:07-cv-02830-SHM-dkv | ) ) ) ) |

## ORDER

On January 4, 2013, the Court entered an Order preliminarily approving settlement, providing for notice, and preliminarily certifying a plaintiff class. (Prelim. Order, ECF No. 276.) That settlement was reached among Lion Fund, L.P., Dr. J. Samir Sulieman, and Larry Lattimore, on behalf of the Class, and C. Fred Daniels, in his capacity as Trustee ad Litem ("TAL")[1], on behalf of the TAL Subclass, (collectively the "Lead Plaintiffs"), and J. Kenneth Alderman, Carter E. Anthony, James C. Kelsoe,

---

[1] C. Fred Daniels is the court-appointed Trustee for the Leroy McAbee, Sr. Family Foundation Trust, the Harold G. McAbee Family Trust, the KPS Group, Inc. Profit Sharing Retirement Plan, the Boyd F. Horn IRA Rollover Trust, the Alice C. Cade for the benefit of Carroll Corbin Bays Trust, and the Patricia Penzone Irrevocable Trust for the benefit of Charles A. Penzone. (Combined Amended Complaint ¶ 1, ECF No. 186.)

Jr., MK Holding, Inc., Allen B. Morgan, Jr., Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., Regions Financial Corporation, Brian B. Sullivan, Joseph C. Weller, and the Regions Morgan Keegan Closed-End Funds (the "Funds"[2]), (collectively the "Defendants"). On August 5, 2013, the Court entered an Order that approved the proposed settlement, approved the Plaintiffs' award of attorney's fees and expenses, and certified the Plaintiff class ("Final Approval Order"). (ECF No. 345.)

Before the Court are two motions. The first is Defendant Morgan Keegan & Company, Inc.'s ("Morgan Keegan") May 3, 2018 Motion to Enjoin Arbitration Filed by George W. Porter, Jr. (the "Motion"). (ECF No. 377.) The second is Morgan Keegan's October 17, 2018 Emergency Motion for Preliminary Injunction (the "Emergency Motion") seeking the same relief. (ECF No. 385.) Morgan Keegan asks the Court to enjoin Porter from proceeding with a Financial Industry Regulatory Association ("FINRA") arbitration, Case No. 17-02221, filed on August 17, 2017 (the "FINRA Arbitration"). (Id.; FINRA Stat. Claim, ECF No. 377-2.) Porter responded on May 17, 2018. (Resp., ECF No. 378.) Morgan

---

[2] The "Funds" refers to the RMK High Income Fund, Inc. ("RMH"), RMK Strategic Income Fund, Inc. ("RSF"), RMK Advantage Fund, Inc. ("RMA"), and RMK Multi-Sector High Income Fund, Inc. ("RHY"). (Id.) The names of the Funds in this action were changed to Helios High Income Fund, Inc., RMK Strategic Income Fund, Inc., Helios Advantage Fund, Inc., and Helios Multi-Sector High Income Fund, Inc. after the Funds were acquired by Hyperion Brookfield Asset Management, Inc. on July 29, 2008. (Id. at n.1.)

2

Keegan replied on May 30, 2018. (Reply, ECF No. 382.) Porter filed a sur-reply on June 1, 2018. (Sur-reply, ECF No. 384.) Porter responded to the Emergency Motion on October 22, 2018. (ECF No. 386.)

For the following reasons, Morgan Keegan's Motion and Emergency Motion are DENIED.

I. **Background**

In this Closed-End Fund Litigation, Lead Plaintiffs asserted claims on behalf of a class of individuals and entities that purchased or acquired the publicly traded securities of four closed-end mutual Funds that were "issued, underwritten, sold, and managed by two wholly owned and controlled subsidiaries of Defendant Regions Financial Corporation ("RFC")." (Combined Amended Complaint, "CAC" ¶ 4, ECF No. 186.) Lead Plaintiffs generally alleged that Defendants had misrepresented the types of assets and the true value of assets in which the Funds had invested. (CAC ¶¶ 5-6.) Lead Plaintiffs alleged that the Funds had invested heavily in Asset-Backed Securities ("ABS") and, in particular, subprime mortgage-related ABS, in violation of a "fundamental investment limitation" meant to assure diversification of assets. (CAC ¶¶ 6, 15-16.) Lead Plaintiffs also alleged that the Funds had falsely classified their portfolio securities as corporate bonds and preferred stocks in SEC filings, overstated the values of their portfolio securities,

mischaracterized the Funds as "high yield," and misrepresented the professional management of the Funds' portfolios. (CAC ¶¶ 6, 17-18, 21-22, 26-28, 25.)

Lead Plaintiffs filed suit on December 21, 2007. (ECF No. 1.) This Court consolidated two separately pending suits and appointed Lead Plaintiffs and Lead Counsel by Order dated December 15, 2010. (Order App. Lead Plaintiffs and Lead Counsel and Consol. Cases, ECF No. 179.) Lead Plaintiffs filed the Combined Amended Complaint on February 22, 2011. The CAC alleged five federal causes of action against Defendants: (1) violation of section 11 of the Securities Act of 1933; (2) violation of section 12(a)(2) of the Securities Act of 1933; (3) violation of section 15 of the Securities Act of 1933; (4) violation of section 10(b) of the Securities Exchange Act of 1934; and (5) violation of section 20(a) of the Securities Exchange Act of 1934. (CAC ¶¶ 317-67.) Lead Plaintiffs sought preliminary and permanent injunctive relief, restitution in the form of compensatory damages for their losses, prejudgment interest, rescission rights, costs, and attorney's fees. (Id. § XIII.)

On October 12, 2012, Lead Plaintiffs filed their Unopposed Motion for Preliminary Approval of a Proposed Settlement and for Preliminary Class Certification. (ECF No. 261.) On January 4, 2013, the Court granted Lead Plaintiffs' Motion, approving the preliminary settlement and preliminarily certifying the class.

(Prelim. Order, ECF No. 276.)  The Preliminary Approval Order included in the Class "[a]ll Persons who purchased or otherwise acquired the publicly traded shares" of the Funds during the Class Period "and were damaged thereby . . . ."  (Id. ¶ 4.)

The Preliminary Approval Order gave Class Members the opportunity to request exclusion from the Class.  (Id. ¶ 6.)  To be excluded, a Class Member had to mail a written request containing certain information to the address designated in the Notice.  (Id. ¶ 10.)  The Court appointed a Class Administrator to process all Class Member claims and requests for exclusion.  (Id. ¶ 8.)

The Preliminary Approval Order prohibited Class Members from pursuing any Released Claims against Defendants in any other proceeding or forum.  (Id. ¶ 24.)  The prohibition was "necessary to protect and effectuate the Settlement and to enter judgment when appropriate, and [was] ordered in aid of the Court's jurisdiction and to protect its judgments."  (Id.)

On March 8, 2013, Lead Plaintiffs filed a Motion for Final Approval of the Proposed Settlement and Final Class Certification.  (Mot. for Final Approval, ECF No. 283.)  On August 5, 2013, the Court granted Lead Plaintiffs' Motion and entered the Final Approval Order.  (Final Approval Order, ECF No. 345.)  The Final Approval Order dismissed with prejudice all claims asserted in the action against all Defendants.  (Final

5

Approval Order § III.) The Final Approval Order also approved the Release submitted as part of Exhibit B to the joint Stipulation and Agreement of Settlement (the "Stipulation"). (Id.; Stipulation, ECF No. 260-5.) The Release prohibited Class Members from pursuing any Released Claims[3] against Defendants in any other proceeding or forum. (Stipulation ¶¶ 10-17.) The Court retained jurisdiction to enforce the Release and the Stipulation. (Final Approval Order § IV.)

On August 17, 2017, George W. Porter, Jr. filed a statement of claim for FINRA Arbitration on behalf of himself, the George W. Porter, Jr. IRA, and the Porter Living Trust (collectively "Claimants"). (See ECF No. 377-2.) On October 25, 2017, Claimants filed an Amended Statement of Claim. (See ECF No. 377-3.) Claimants' claims against Morgan Keegan are: (1) misrepresentations and omissions; (2) breach of fiduciary duty; (3) unsuitable investments; (4) violation of section 11 of the 1933 Securities Act; (5) violation of section 12 of the 1933 Securities Act; (6) liability under section 15 of the 1933 Securities Act; (7) breach of the Securities Act of 1934; (8) violations of the Tennessee Securities Act; (9) fraud; (10)

---

[3] "'Released Claims' means any and all claims, rights, causes of action, demands, actions, debts, sums of money, obligations, judgments, suits, and liabilities of every nature and description . . . that arise out of, relate to, or are in connection with the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations or omissions or failures to act involved, set forth, or referred to in the Complaint filed in the [Class] Action[.]" (ECF No. 260 at 14.)

6

negligence; (11) failure of supervision; (12) breach of contract; (13) vicarious liability; and (14) violations of FINRA rules. (Stat. Claim at ¶¶ 72-118.)

Morgan Keegan argues that Claimants' arbitration action violates the Final Approval Order. Claimants contend that they are not bound by that Order because they opted out of the Class.

## II. Standard of Review

The All Writs Act "'authorizes a federal court to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of . . . orders it has previously issued in exercise of jurisdiction otherwise obtained.'" Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, 589 F.3d 835, 844 (6th Cir. 2009) (quoting United States v. City of Detroit, 329 F.3d 515, 522 (6th Cir. 2003)). Federal courts have broad injunctive powers to protect the finality of their judgments, including the power to enjoin arbitration to prevent relitigation of claims and issues the Court has already decided. See Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067, 1069 (11th Cir. 1993), cert. denied, 510 U.S. 1011, 114 S. Ct. 600 (1993).

Where a district court has retained jurisdiction to enforce a final settlement agreement, "'it necessarily makes compliance with the terms of the settlement agreement a part of its order so that a breach of the agreement would be a violation of the

7

order.'"  In re Lehman Bros. Sec. and ERISA Litig., 2012 WL 2478483, at *4 (S.D.N.Y. June 29, 2012) (quoting In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011)). Where the alleged relitigation at issue is an arbitration, a court has "authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement, as reflected in a settlement agreement." Am. Express, 672 F.3d at 141.

## III. Analysis

Morgan Keegan argues that Claimants are Class Members who submitted invalid opt-out notices to the Class Administrator. (See ECF No. 377-1 at 14716.) Morgan Keegan contends that Claimants did not adequately opt out of the Class, and that the Final Approval Order permanently enjoins them from pursing an arbitration action against it for any Released Claims. (Id.)

Claimants argue that they opted out of the Class when they submitted two valid opt-out notices to the Class Administrator. (ECF No. 378 at 14789.) Claimants contend that those opt-out notices excluded them from the Class, and that, as a result, the Final Approval Order does not enjoin their arbitration action against Morgan Keegan. (Id.)

Claimants are Class Members because they bought shares of the Closed-End Funds during the Class Period. (See ECF No. 377-

4.) The Final Approval Order applies to them unless they opted out of the Class. (See Prelim. Order, ECF No. 276 ("All Class Members (other than those persons or entities who shall timely and validly request exclusion from the Class) shall be bound by all determinations and judgments in the Action . . .").)

The Preliminary Approval Order established the requirements for a valid opt-out request. (ECF No. 276 ¶ 6.) Each Request for Exclusion was required to: (1) include the name, address, and telephone number of the person seeking exclusion; (2) state that the person requests exclusion from the Class in "In re Regions Morgan Keegan Closed-End Fund Litigation, Case No. 2:07-cv-02830-SHM-dkv"; (3) be signed and dated by each person seeking exclusion; and (4) list the date of each purchase or acquisition of Closed-End Fund shares during the Class Period and the number of shares purchased or acquired in each transaction. (Id.) The deadline to request exclusion was March 22, 2013. (Id.) The Preliminary Approval Order provided that no request would be effective "unless it provides all of the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court or allowed by Lead Counsel and counsel for the Morgan Keegan Defendants and RFC." (Id.) Counsel did not object to Claimants' opt-out notices, and Claimants did not receive any proceeds from the settlement.

Morgan Keegan argues that "Porter is in violation of the permanent injunction entered by the Court in the [Final Approval Order] because he indisputably failed to follow the process to exclude himself from the Closed-End Fund Class." (ECF No. 377-1 at 14721 (footnote omitted).) Morgan Keegan contends that Porter failed to submit a notice excluding himself from the Class, and that Claimants submitted requests to exclude only certain transactions listed by the Porter Trust and the Porter IRA. (Id. at 14722.) Morgan Keegan argues that Porter is enjoined from bringing any arbitration action in his individual capacity, and that the Porter IRA and the Porter Trust are enjoined from bringing an arbitration action that is not limited to the transactions identified in their opt-out notices. (Id.)

Claimants argue that they are not enjoined from bringing an arbitration action against Morgan Keegan because they opted out of the Class. (ECF No. 378 at 14788.) Claimants contend that their opt-out notices met the requirements of the Court's Preliminary Approval Order. (Id.) They argue that Porter, as an individual, effectively opted-out of the Class because he "was the only individual involved and [he] was in privity with his IRA and the Porter Living Trust." (Id.) Claimants do not dispute that they failed to list all of the Closed-End Fund shares they bought. They contend, however, that the opt-out notices are valid as to all their shares because they

10

"express[ed] a reasonable indication of a desire to opt-out" and "substantially complied with the opt-out procedure."[4]  (ECF No. 378 at 14794.)  Any failure to list certain transactions was a mere "technical deficiency."[5]  (ECF No. 384 at 14912, 14916.)

Under Federal Rule of Civil Procedure 23(b)(3), a notice must inform class members "that the court will exclude from the class any member who requests exclusion . . . ."  Fed. R. Civ. P. 23(c)(2)(B).  If there is a dispute about whether a class member has followed the appropriate procedure, the burden is on the class member to establish that it made a sufficient effort to communicate an intent to withdraw from the class through the appropriate channels.  See In re Travel Agent Comm'n Antitrust Litig., No. 1:03-cv-30000, 2006 WL 8439540, at *3 (N.D. Ohio Sept. 14, 2006) (citing In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1291 (10th Cir. 1974)).

The Sixth Circuit has not addressed the standard to be applied when determining whether a class member's technically deficient opt-out notice is valid.  Courts that have considered the issue have held that an opt-out notice need not perfectly conform to the format chosen by the district court to effectively

---

[4] Because no party has stated how many shares were omitted from Claimants' opt-out notices, the Court cannot determine the magnitude of the deficiency.
[5] Because the Court concludes that Claimants' opt-out notices validly excluded Claimants from the Class, the Court need not address Claimants' arguments that the relief Morgan Keegan seeks would violate Claimants' due process rights.

express a desire to opt out of a class action settlement. For example, in In re Four Seasons Securities Laws Litigation, the Tenth Circuit held that "the important question [is] whether notice [to opt out] was communicated," and that a "reasonable indication" of an intent to opt out is sufficient. 493 F.2d at 1291; see also Plummer v. Chem. Bank, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to get out should suffice."); In re Linerboard Antitrust Litig., 223 F.R.D. 357, 365 (E.D. Pa. 2004) amended 223 F.R.D. 370 (E.D. Pa. 2004) ("The Court agrees with the Tenth Circuit that a 'reasonable indication' of intent to opt out is sufficient."). "Considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to be excluded and any written evidence of that desire should suffice." 7AA WRIGHT & MILLER, FED. PRAC. & PROC., § 2785 (3d ed. 2005).

Claimants sent two opt-out notices to the Class Administrator. (See ECF No. 377-4.) They are labeled "Exclusion [R]equest 109" and "Exclusion [R]equest 110". (Id.) A cover letter attached to Exclusion Request 109 states:

> In connection with the settlement [in <u>In re Regions Morgan Keegan Closed-End Fund Litigation</u>, No. 07-cv-02380-SHM-dkv], please find enclosed the opt-out forms for the following:
>
> > George W. Porter
> > George W. Porter, Jr. — IRA
> > George and Kay Porter, Trustees for the Porter Living Trust

(ECF No. 377-4 at 14784.)

A cover letter attached to Exclusion Request 110 states:

> In connection with the settlement [in <u>In re Regions Morgan Keegan Closed-End Fund Litigation</u>, No. 07-cv-02380-SHM-dkv], please find enclosed the opt-out forms for the following:
>
> > George W. Porter
> > George W. Porter, Jr. — IRA
> > Laurie Ann Porter
> > George and Kay Porter, Trustees for the Porter Living Trust

(<u>Id.</u> at 14784.)[6]

Two other cover letters attached to the Exclusion Requests begin: "I hereby request exclusion from the class in <u>In re Regions Morgan Keegan Closed-End Fund Litigation</u>, No. 07-cv-02380 SHM dkv." (<u>Id.</u> at 14774.) Schedules showing the date Fund shares were purchased, the name of the fund, the number of shares purchased, the total cost of the purchase, and other

---

[6] The quoted passages of the opt-out notices refer to "George W. Porter," and the individual named in this lawsuit is "George W. Porter, Jr." The Court will assume that references to George W. Porter and George W. Porter, Jr. in this action refer to the same person. Claimants ground their arguments on that assumption (<u>see</u> ECF No. 386 at 14935), and Morgan Keegan has not argued otherwise.

information are attached to both Requests. (See id. at 14777, 14780–83.)

The quoted passages demonstrate that Claimants expressly requested exclusion from the Class. They provided the basic information required by the Preliminary Approval Order and listed transactions for 81,000 Closed-End Fund shares. (See ECF No. 377-4.) Claimants gave a "reasonable indication" that they intended to opt out of the Class. Four Seasons, 493 F.2d at 1291.

The record does not support Morgan Keegan's contention that "[n]o opt-out was filed by Porter individually." (ECF No. 377-1 at 14718l, 14784.) Both opt-out notices state that they are "the opt-out forms . . . for George W. Porter[.]" (ECF No. 377-4 at 14775, 14784.)

There is no evidence that Claimants intended to opt out only as to those transactions listed in the schedules attached to the Requests. The Preliminary Approval Order did not authorize partial opt-outs, and there is no reason to believe a partial opt-out was possible. A partial opt-out would be "inconsistent with the fundamental premise that a class member who opts-out cannot participate in the benefits of the case and is not bound by the judgment in the case." Muldrow v. H.K. Porter Co., 20 Fed. R. Serv. 2d 1069 (N.D. Ala. 1975). Assuming a partial opt-out were possible, Claimants demonstrated their

14

intent to fully opt out of the Class. They made no attempt to qualify or limit their withdrawal. Claimants should not be barred from continuing their arbitration action merely because they omitted certain transactions from their opt-out notices. Morgan Keegan argues that even minor errors would render an opt-out notice invalid. (See ECF No. 382 at 14902.) That standard imposes a significantly higher burden than the law requires.

Citing the Court's May 17, 2013 Order in this action, Morgan Keegan represents that the Court "has already found" that opt-out notices that do not comply with the Preliminary Approval Order are ineffective. (ECF No. 382 at 14902.) Morgan Keegan cites the Court's determination that the opt-out forms submitted by (1) Marion M. Stowers and (2) Steven E. Haddock were invalid. (Id. at 13074-76.) Unlike the notices Claimants submitted, Stowers and Haddock did not substantially comply with the Court's Preliminary Approval Order. Stowers said only that he "purchased several thousand shares of RMK funds[,]" and Haddock "decline[d] to give . . . the dates of each purchase or acquisition of Closed-End Fund shares . . . [because] [w]hat [he] bought or acquired is none of your business." (Id. at 13074, 13075.) By contrast, Claimants supplied all of the basic information required by the Preliminary Approval Order and listed the necessary information for 81,000 Closed-End Fund shares.

15

Morgan Keegan argues that a stringent standard should be applied when considering the validity of non-compliant opt-out notices because of the inclusion of a "blow-out provision" in its settlement with Lead Plaintiffs. (ECF No. 382 at 14904.) The blow-out provision allowed Defendants to withdraw from the settlement agreement if the number of excluded shares exceeded a certain number. (Id. at 14904 n.1.) Morgan Keegan argues that it needed to know the exact number of excluded shares to exercise its rights under the settlement, and that its right to terminate "would be eroded if [Claimants] were able to bring claims on non-excluded shares at this juncture, after Defendants are no longer able to exercise their rights under the blow out provision." (Id.) Morgan Keegan contends that allowing Claimants' arbitration action to continue would deprive it "of the benefit of [its] bargain by exposing [it] to liability [it] believed had been foreclosed as of March 22, 2013." (Id. at 14904.)

Courts have recognized the importance of invalidating non-compliant opt-out forms so that parties can meaningfully exercise their right to withdraw from a settlement. See Hughes v. Microsoft Corp., Nos. C98-1646C, C93-0178C, 2001 WL 34089697, at *2 (W.D. Wash. Mar. 26, 2001) (noting the importance of a defendant's termination rights when considering the validity of certain opt-out notices lacking basic information); In re Kitec

Plumbing Sys. Prod. Liab. Litig., No. 09-MD-2098, 2011 WL 13289881, at *4 (N.D. Tex. Oct. 27, 2011) (same).

Here, Claimants submitted valid opt-out notices, containing basic information. Defendants could have considered Claimants' shares when deciding whether to withdraw from the settlement agreement. Claimants made no claim to the settlement proceeds, so their intention to opt out should have been apparent. Assuming Morgan Keegan was entitled to ignore Claimants' opt-out notices, Morgan Kegan does not contend that Claimants' shares influenced its decision not to withdraw from the settlement. Although the number of excluded shares permitted Defendants to terminate the settlement, Defendants did not do so. (See ECF No. 382 at 14904 n.1.) Morgan Keegan does not contend that the number of Claimants' shares in excess of the 81,000 shares they disclosed in their opt-out notices would have caused Morgan Keegan to exercise its right to terminate the settlement agreement.

Claimants' opt-out notices were sufficient to exclude them from the Class. Because they opted out, Claimants are not subject to the Court's Final Approval Order prohibiting Class Members from pursuing Released Claims against Morgan Keegan in other forums. Morgan Keegan's Motion and Emergency Motion are DENIED.

17

**IV. Conclusion**

For the foregoing reasons, Morgan Keegan's Motion and Emergency Motion are DENIED.

So ordered this 2nd day of November, 2018.

    /s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE